## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION STORM HOLLAND,<br><br>    Plaintiff,<br><br><br>v.<br><br>JERSEY SHORE AREA JOINT<br>WATER AUTHORITY,<br><br>and<br><br>TIADAGHTON VALLEY<br>MUNICIPAL AUTHORITY, ERIC<br>JOHNSON, JOHN DOE 1-5 in their<br>individual capacities,<br><br>Defendants. | **Civil Action No**. 4:25-CV-01323-DFB<br><br>**The Honorable Daryl F. Bloom**<br><br>**FIRST AMENDED COMPLAINT<br>JURY TRIAL DEMANDED** |

## I.  PRELIMINARY STATEMENT

1. "Life, liberty, and the pursuit of happiness" are fundamental rights guaranteed by the Declaration of Independence, the U.S. Constitution's First, Fifth, and Fourteenth Amendments, Article I, §§ 1 & 27 of the Pennsylvania Constitution, and international law. Yet Defendants—two municipal authorities, their manager, and unnamed agents—willfully shut off Plaintiff's water and sewage service over a disputed balance, ignored his valid medical certification, demanded in-person signing or full payment before restoration, enlisted police to intimidate him, and billed him for unlawful shut-off and reconnection fees despite a court injunction.

1

## II. JURISDICTION & VENUE

2. This action arises under 42 U.S.C. § 1983 (deprivation of rights under color of state law); the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–34); Section 504 of the Rehabilitation Act (29 U.S.C. § 794); 42 U.S.C. § 1985 (conspiracy against rights); and the constitutions and laws of the Commonwealth of Pennsylvania.

3.  Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343; supplemental jurisdiction under 28 U.S.C. § 1367.

4.  Venue lies under 28 U.S.C. § 1391(b) because all events occurred in Lycoming County, PA.

## III. PARTIES

5.  Plaintiff Dion Storm Holland is a permanently and totally disabled U.S. Marine Corps veteran he served in Operation Enduring Freedom and relies on continuous at-home water service for basic medical care and household needs. He is domiciled at 566 High Street, Jersey Shore, Pennsylvania, and is competent to bring this action.

6. Jersey Shore Area Joint Water Authority (JSAJWA) is a municipal authority under 53 Pa.C.S. § 5601 et seq., operating water/sewage services at 1111 Bardo Avenue, Jersey Shore, PA. "Commercial enterprise"

7. Tiadaghton Municipal Authority (TMA) is a municipal authority under 53 Pa.C.S. § 5601 et seq., operating water/sewer services at 290 Rice Road, Jersey Shore, PA. "Commercial enterprise"

8. Eric Johnson is sued individually as JSAJWA Manager.

9. John Does 1–5 are unnamed agents, supervisors, or decisionmakers whose roles will be revealed in discovery.


## IV. FACTUAL ALLEGATIONS

(Each paragraph admitted or denied under Fed. R. Civ. P. 8(b).)

10. Plaintiff's household, including minor children and animals, requires continuous water and sewage service for health and sanitation.

11. Less than one year prior to June 23, Plaintiff was hospitalized for three days with potentially fatal rhabdomyolysis, during which he required continuous IV fluids, demonstrating the life-sustaining necessity of uninterrupted at-home water service.

12. No Prior Notice: On June 11, 2025, Defendants posted a door-hanger threatening shut-off by June 20. They never mailed the ten-day notice required under 53 P.S. § 3102.502(b)(1)–(2) or JSAJWA Rule X.1. (Ex. T)

13. No Valid Contract or Application: JSAJWA's own Rule II.A requires "[a] written application two weeks prior" to service. Plaintiff never submitted or signed any such application, and JSAJWA never produced one. Because no signed application existed, no enforceable contract for service could ever arise under the Authority's Rules.

14.  Seven-Day Outage & Harms: From June 23–30, 2025, Plaintiff's household endured a continuous water and sewage outage causing severe sanitation issues, medical risks, and psychological distress. On July 3, Plaintiff's dog was taken to the vet for lethargy; over six days her pyometra worsened, requiring lifesaving emergency surgery from July 9–11 to remove a 10 lb uterus, costing $6,316.87. (Exs. N–N1,N2)

15. Billing Dispute & Forensic-Audit Demand:

   a. On June 11, Plaintiff emailed JSAJWA Janet@jerseyshorewater.com- the only address listed on JSAJWA website the following a "Affidavit of Billing-Error And Demand for Forensic audit & Notice of Medical-Emergency Conditional

Acceptance Disputing all charges," unsworn and omitting "not for purpose of delay," which Defendants deemed "insufficient." (Exs. B, C, D)

   b. On July 2, Plaintiff served—via certified mail—a single packet containing:

      1. A sworn Notice of Correction & Reassertion of Billing Dispute, Corrected Billing Error Affidavit (bearing "not for purpose of delay") under TILA, the Fair Credit Billing Act, UCC 3-501 & 3-603, and RICO, expressly reserving rights under UCC 1-308; (Ex. P)

      2. A sworn Affidavit of Truth Regarding Medical Certification and Billing Misconduct. (Ex. P)

      3. A Notice of Fault and Opportunity to Cure; and

      4. The Notice of Commercial Liability (Schedule of Fees and Damages) (Exs. P, L).

   c. Defendants never rebutted that packet within ten days yet proceeded to shut off service twice.

16. Medical Certificate: On June 20, 2025, Plaintiff obtained a valid medical certificate under 52 Pa. Code §§ 56.113, 56.115 and 66 Pa.C.S. § 1406(f). He hand-delivered it on June 23 at the precise moment Defendant Eric Johnson and a unidentified field worker arrived, Defendant Eric Johnson asked Plaintiff if he was "on Dialysis or something?" Plaintiff Refused to provide private medical

information, Defendant Johnson commented "Oh yeah that's HIPAA right"?

Indicating he knew he shouldn't be asking those questions. (Ex. G).

17. June 23 Shut Off: At approx. 11:33 AM on June 23, Defendant Eric Johnson

and an unidentified field worker trespassed and shut off both water and sewage

service. (Ex. J)

18. Conditional Restoration Demand: Immediately after the shut-off, Plaintiff

asked defendant Eric Johnson to verify the certificate with Dr. Burke.  Johnson

responded he would "verify"— "as if" he doubted its authenticity—but refused to

restore service unless Plaintiff appeared in person to sign a new agreement or paid

the full balance. (Ex. J)

19. State-Court Filing & Emergency Injunction Motion: On June 27, 2025,

Plaintiff filed his Complaint and Motion for Emergency Injunction in Lycoming

County Court of Common Pleas (Docket No. CV25-00952), seeking immediate

restoration and enforcement of his medical-emergency protections.

20. Emergency Hearing & Restoration: On June 30, 2025, the Court held an

emergency hearing; Defendants introduced a purportedly mailed bill—never

received Defendants (Ex. 1).  The Court ordered restoration within 24 hours and

barred further shut offs without proper ten-day notice; service was restored that

day before arriving home from the injunction hearing. (Ex. T)

21. Upon Returning Home from the June 30th hearing defendants immediately retaliated by handing plaintiff another 10-day shutoff upon returning home from court before he could even get out his suit. (Ex. U)

22. Second Shut-Off Attempt: Despite the injunction, on July 9, 2025, Defendants again dispatched field workers and police, threatening to tow Plaintiff's vehicle without a valid warrant or court order—Captain Cody Smith later confirmed no warrant or court order existed. (Ex. Q)

23. Surveillance & Intimidation: On July 13, 2025, TMA Principal Cheryl Brungard began "following" Plaintiff on social media. (Ex. R)

24. Inter-Agency Coordination: Upon information and belief, JSAJWA, TMA, Manager Johnson, and Does 1–5 communicated with the Borough of Jersey Shore and the Lycoming County Regional Police Department regarding Plaintiff's account, shut-off orders, and enforcement actions—communications essential to establish Defendants' coordination in effectuating unconstitutional shut-off attempts designed to circumvent.

25.   On July 21, 2025, Defendant Tiadaghton Municipal Authority ("TMA") timely filed a Notice of Removal in this matter, removing Plaintiff's state-court action (Lycoming County Docket No. CV25-00952) to this Court under 28 U.S.C. § 1441 et seq.

26.   On July 22, 2025, Plaintiff—apparently unaware that the state court had lost

jurisdiction upon removal—filed a "Notice of Default Judgment" in the Lycoming

County docket.  Under 28 U.S.C. § 1446(d), that filing was null and void: once a

properly–timed Notice of Removal is filed, "the State court shall proceed no

further unless and until the case is remanded."

27.   On July 31, 2025, both Defendants moved in this Court (a) to strike Plaintiff's

void state-court "Notice of Default Judgment" and (b) to vacate any scheduling

orders in the removed case.  (TMA motion), with ( JSAJWA motion).

28.   On the same day, counsel for Defendants also sent Plaintiff a letter, via

regular mail and email, enclosing their Notice of Appearance, Motion to Vacate

Scheduling Order, and Motion to Strike Default. That letter confirms Defendants'

awareness of—and coordination over—these parallel filings.

29.   On July 31, 2025, counsel for Defendant Jersey Shore Area Joint Water

Authority filed a praecipe for entry of appearance in the Lycoming County Court

of Common Pleas matter (Docket No. 2025-CV-00952).  That praecipe confirms

Defendants' continued involvement in—and monitoring of—the state-court docket

even after removal.

30.   On the same date, Sean P. McDonough, Esq., served that praecipe on Plaintiff (via first-class mail) and on co-defense counsel (via electronic filing), as certified in the accompanying Certificate of Service.

31. Training Deficiency: JSAJWA/TMA failed to train or supervise managers— including Eric Johnson and Does 1–5—on shut-off procedures, notice requirements, and medical-certificate laws.

# V.  VIOLATIONS OF STATUTORY, REGULATORY, AND MUNICIPAL RULES

32.  Application Requirement (Rule II.A):  Service "requires a written application two weeks prior"; none was ever submitted or approved.  Without any signed application, Defendants had no contract under which to terminate service or demand payment.  (Ex. F-1.)

33. Statute of Frauds & Contract Formation (13 Pa. C.S. § 2201; UCC 2-201):

    Under Pennsylvania's Commercial Code, any contract for the sale of goods for \$500 or more must be in writing and signed by the party to be charged.  Here, JSAJWA treats water service and reconnection fees as part of its "commercial enterprise" and the disputed charges exceed \$500, yet Defendants have produced

no signed application or writing evidencing Plaintiff's assent. Their attempt to enforce those fees therefore violates 13 Pa. C.S. § 2201 (UCC 2-201) and is void ab initio.

34. Mailing Requirement (Rule VII.G): "Bills shall be sent to the address provided by the Customer"; June bills never arrived, and the first paper bill was not received until July 12, 2025—after the ten-day notice period. (Ex. F-2.)

35. Due-Date & Dispute Procedure (Rule VII.B & Rule VII.F):

   a. Rule VII.B requires that "all charges shall be due and payable not later than twenty-five (25) days after presentation"; Defendants applied late-payment penalties without ever presenting a timely bill. (Ex. F-2)

   b. Rule VII.F provides that "Any customer who upon receipt of a bill has reason to doubt its accuracy shall bring or mail the bill within ten (10) days to the Authority Office for investigation"; Plaintiff's June 11 and July 2 disputes went entirely unacknowledged and uninvestigated. (Ex. F-2.)

36. Ten-Day Notice (Rule X.1 & 53 P.S. § 3102.502(b)(1)–(2)): Requires written notice mailed and posted at the premises ten days before termination; no such notice was provided before June 23, 2025. (Ex. F-2.)

37. Post-Hearing Notice Defect (Rule X.1): On June 30, 2025, a field worker handed Plaintiff a ten-day notice immediately after the hearing; it was never posted or mailed prior to any action.  (Ex. U.)

38.  Protest-Procedure Requirement (52 Pa. Code §§ 56.114–.115):  Termination notices must provide protest instructions and ten days to dispute; Defendants gave no such procedures, in direct contravention of *Ziegler v. Reading Area Water Authority*, 639 F.3d 615, 623 (3d Cir. 2011).  (Exs. A, H.)

39. Signed-Authority Requirement (Rule XIII.H): Any deviation from Authority rules must be in writing and signed by authorized officials; no such deviations exist.  (Ex. F-3.)

## VI. CLAIMS FOR RELIEF

**(All Counts incorporate ¶¶ 10–39 above.)**

### Count I – Procedural Due Process (14th Am.; 42 U.S.C. § 1983)

40.  Plaintiff incorporates ¶¶ 10–39 above.

41.  The Fourteenth Amendment prohibits any state actor from depriving "any person of life, liberty, or property, without due process of law."

42.  Under Pennsylvania law, a residential water-service customer has a protected property interest in uninterrupted service and may only be terminated after:

   a.  Ten (10) days' written notice mailed and posted (§ 53 P.S. § 3102.502(b); JSAJWA Rule X.1),

   b.  A description of the procedure for protesting termination (52 Pa. Code § 56.114), and

   c.  An opportunity to present objections to a designated official (52 Pa. Code § 56.115(a)).

43. Defendants, acting under color of state law, provided no ten-day notice or protest procedures before the June 23 shut-off (¶ 12), and refused to restore service within 24 hours of Plaintiff hand-delivering his valid medical certificate, in violation of § 56.115(b).

44. By terminating service without the statutorily mandated notice, protest procedures, or a hearing, and by ignoring Plaintiff's medical-certificate accommodation, Defendants deprived Plaintiff of his property without due process.

45. This deprivation caused substantial harm—seven days without essential water, medical risk, veterinary and household expenses, and severe emotional distress.

46.  These acts give rise to liability under 42 U.S.C. § 1983.


<u>Count II – Equal Protection (14th Am.; 42 U.S.C. § 1983)</u>

47.  Plaintiff incorporates ¶¶ 10–39 above.

48.  The Equal Protection Clause forbids states from denying "the equal protection of the laws" to any person.

49.  To plead an Equal Protection claim, a plaintiff must allege:

  a.  He is a member of a protected class;

  b.  He was treated differently from similarly situated individuals; and

  c.  The differential treatment was intentional and lacked any rational basis (in a non-suspect class) or was motivated by an invidious purpose (in a suspect or quasi-suspect class).  (**City of Cleburne v. Cleburne Living Ctr.**, 473 U.S. 432, 439–40 (1985)).

50.  Plaintiff, a permanently disabled, homebound U.S. veteran, is a qualified individual with a disability under both the ADA and the Rehabilitation Act.

51.  Defendants honored shut-off disputes and medical accommodations for other customers but intentionally ignored and refused to honor Plaintiff's valid medical certificate (¶¶ 14–16), demanding full payment or in-person agreement signing as a condition of service.

52.  This disparate treatment of a disabled, homebound veteran—when no such conditions were imposed on other customers—lacked any rational basis and was motivated by invidious animus toward disabled individuals.

53. As a direct result, Plaintiff suffered loss of service, emotional distress, and economic harm.

## Count III – Rehabilitation Act § 504 & ADA Title II

54.  Plaintiff incorporates ¶¶ 10–39 above.

55.  Title II of the ADA (42 U.S.C. §§ 12131–34) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a)) prohibit public entities and recipients of federal funds from discriminating against qualified individuals on the basis of disability and require reasonable modifications to avoid discrimination.

56. To state a § 504 claim, Plaintiff must allege:

   a.  He is an individual with a disability;

   b.  He is otherwise qualified to participate in or receive the services;

   c.  He was excluded from participation or otherwise discriminated against by reason of his disability; and

   d.  The program or activity receives federal financial assistance.  (**Ziegler v. Reading Area Water Authority**, 639 F.3d 615, 622 (3d Cir. 2011)).

57. To state a Title II claim, Plaintiff must allege:

   a.  He is a qualified individual with a disability;

b. He was either excluded from participation or denied the benefits of services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against by the public entity; and

c. Such exclusion, denial, or discrimination was by reason of his disability.

(**Gaynor v. City of Wilson**, 501 F.3d 165, 174 (4th Cir. 2007)).

58. Plaintiff is a qualified individual with a documented medical condition requiring uninterrupted water service.

59. Defendants refused to make the reasonable modification of honoring his medical certificate—restoring service immediately upon receipt—despite knowledge of his disability and the medical need (¶¶ 14–17). They instead threatened additional shutoffs and imposed unlawful fees.

60. These failures to accommodate or modify policies denied Plaintiff the benefits of continuous water and sewage service on the basis of his disability, in violation of § 504 and Title II.

61. As a direct result, Plaintiff suffered physical, emotional, and economic harm.


## Count IV – Fourth Amendment (42 U.S.C. § 1983)

62. Plaintiff incorporates ¶¶ 10–39 above.


15

63.  The Fourth Amendment protects individuals from unreasonable searches and seizures of "persons, houses, papers, and effects," and requires a warrant supported by probable cause absent a recognized exception.

64. A warrantless intrusion onto private property to obtain information or effect a seizure is unreasonable per se unless justified by consent or exigent circumstances. (**Florida v. Jardines**, 569 U.S. 1, 7–11 (2013)).

65. On June 23, 2025, at approximately 11:33 AM, Defendant Eric Johnson— acting as a state actor—and a JSJWA/TMA field worker entered Plaintiff's private front yard without consent, exigency, or any warrant, for the purpose of shutting off essential water and sewage service (¶ 16).

66. This entry and the subsequent shut-off constituted a physical intrusion to obtain information or effect a seizure of property—namely, the water and sewage service lines—within the curtilage of Plaintiff's home.

67. No recognized Fourth Amendment exception applied: Plaintiff had not abandoned his property, no emergency justified warrantless entry (particularly after Plaintiff hand-delivered his medical certificate), and no statutory authority overrode the constitutional requirement.

68. As a direct and proximate result of this unreasonable search and seizure, Plaintiff suffered the deprivation of essential services, anxiety, and severe emotional distress.

69. Defendants are therefore liable under 42 U.S.C. § 1983 for violating Plaintiff's Fourth Amendment rights.

## Count V – Fifth Amendment Takings (42 U.S.C. § 1983)

70. By terminating essential service without compensation, Defendants effected an uncompensated taking of Plaintiff's property interest, violating the Fifth Amendment's Takings Clause (Loretto v. Teleprompter Manhattan CATV, 458 U.S. 419).

71. The Fifth Amendment's Takings Clause prohibits the taking of private property for public use without just compensation.

72. By terminating essential water and sewage service, Defendants effected a per se physical taking, requiring just compensation (*Loretto v. Teleprompter Manhattan CATV*, 458 U.S. 419 (1982)), and a regulatory taking that went "too far" under the Penn Central multi-factor test (*Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)).

73. The seven-day deprivation also constituted a temporary physical invasion, compensable under the Takings Clause (*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987)), and the deprivation of water—a fundamental personal property right—falls squarely

within personal-property protections (*Horne v. Department of Agriculture*, 576 U.S. 351 (2015)).

74. Defendants have refused to pay any compensation, entitling Plaintiff to just compensation under the Fifth Amendment.

## Count VI – Pennsylvania Constitutional Claims

75.  Plaintiff incorporates ¶¶ 10–39 above and alleges that Defendants violated rights guaranteed by the Pennsylvania Constitution's Declaration of Rights.

76. **Art. I § I** (Life, Liberty, and the Pursuit of Happiness): By willfully cutting off Plaintiff's water and sewage service during a documented medical emergency, Defendants deprived him of the very "life, liberty, and the pursuit of happiness" secured by Art. I § I of Pennsylvania's Declaration of Rights.

77. **Art. I § V** (Government for the Common Benefit): Art. I § V provides that "government is…instituted for the common benefit, protection and security of the people."  Defendants, as municipal authorities, acted contrary to this fundamental purpose by unlawfully terminating essential services.

78. **Art. I § X** (Protection from Unreasonable Seizure): Art. I § X guarantees that "no part of a man's property can be…taken from him…without his own consent, or that of his legal representatives." Defendants' warrantless trespass onto private property and seizure of essential water and sewage services violated this protection.

79. **Art. I § XI** (Right to Be Heard & Speedy Trial): Art. I § XI secures the right "to be heard by himself and his council" and "a speedy public trial by an impartial jury." By failing to provide the statutorily required ten-day notice or any meaningful protest procedure, Defendants deprived Plaintiff of his right to be heard before termination.

80**. Art. I § XVI** (Assembly & Petition): Art. I § XVI guarantees the right "to apply to the legislature for redress of grievances." Defendants' enlistment of police to intimidate Plaintiff and deter him from contacting the Authority except to pay chilled his right to petition for redress.

81. **Art. I § XXVI** (Environmental Rights): Art. I § XXVI affirms "the right of the people…to clean air, pure water, and to the preservation of the natural…values of

the environment." By denying Plaintiff access to clean water—an essential element of environmental health—Defendants violated this provision.

82. These **constitutional violations** were committed **under color of state law** and are actionable under **42 U.S.C. § 1983 and 42 U.S.C. § 1988.**

## <u>Count VII – Civil Conspiracy (42 U.S.C. § 1985)</u>

83. Defendants conspired with law enforcement multiple times to intimidate Plaintiff and chill his rights.

84. Defendants JSAJWA, TMA, Eric Johnson, and Does 1–5 entered into an agreement to deprive Plaintiff of his civil rights under color of state law by:

   a. Ordering or directing Lycoming County Regional Police officers to threaten and intimidate Plaintiff on June 25 and July 9, 2025, for the purpose of chilling his right to petition and to equal protection; and

   b. Enlisting police to enforce unlawful shut-off and reconnection fees despite the Court's injunction of June 30, 2025.

85. Defendants acted with the intent to prevent and did prevent Plaintiff from the free exercise of his rights to due process, petition, and equal protection, targeting him as a disabled veteran.

86. These acts—taken in furtherance of the conspiracy—caused Plaintiff to suffer ongoing fear, anxiety, and impairment of his right to access the courts and his utility provider, in violation of 42 U.S.C. § 1985(3) (see **Griffin v. Breckenridge**, 403 U.S. 88, 102–04 (1971)).

87. As a direct result of this **conspiracy,** Plaintiff has **incurred emotional distress,** legal fees, and other **damages** for which Defendants are **jointly and severally liable.**


## Count VIII – Fraudulent Misrepresentation (Common Law)

88.  Plaintiff incorporates ¶¶ 10–39 above.

89. Under Pennsylvania law, to prevail on a claim for **fraudulent misrepresentation** a plaintiff must prove:

    a.  A representation;

    b.  Material to the transaction;

    c.  Made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

    d.  With the intent to induce the plaintiff to act;

    e.  Justifiable reliance by the plaintiff; and

    f.  Resulting damages to the plaintiff.  (**Allegheny Energy Supply Co. v. Wolf Run Mining Co.**, 860 A.2d 1286, 1293 (Pa. Super. 2004)).

90. Defendants made the following materially false representations with knowledge of their falsity or reckless disregard for the truth:

   a.  That required shut-off notices had been mailed and posted when none were (¶ 12);

   b.  That Plaintiff owed a valid balance and that his medical certificate did not stay termination (¶¶ 14–17);

   c.  That no credits or prepayments existed on his account, despite internal records to the contrary (¶ 14); and

   d.  That they had a valid, written, wet-ink contract or signature authorizing shut-off fees, when no such contract existed (¶¶ 14–24).

91. Defendants intended Plaintiff to rely on these representations to coerce payment of disputed amounts and to refrain from judicial relief until after shut-off.

92.  Plaintiff justifiably relied on these misrepresentations and omissions—believing notices were sent, the medical certification had been honored, and no audit was necessary—and did not immediately seek alternative relief.

93. As a direct and proximate result of this fraudulent conduct, Plaintiff suffered economic damages (void fees, veterinary expenses of \$6,474.87) and severe emotional distress.

94. Defendants are liable for common-law fraud and must compensate Plaintiff for all resulting damages.

## Count IX – Unjust Enrichment & Rescission

95. Equity and Pennsylvania law require disgorgement of void shut off and reconnection fees and restitution of \\$6,474.87 in veterinary expenses.

96. Under Pennsylvania law, a defendant is liable for unjust enrichment when:

    a.  It has received a benefit from the plaintiff;

    b.  It has accepted and retained that benefit; and

    c.  Equity and good conscience require restitution because the benefit was conferred under mistake, undue influence, or the performance of an illegal act. (**Gristede's Foods, Inc. v. Unkechauge Nation**, 532 F. Supp. 2d 439, 460 (E.D. Pa. 2007)).

97. Here, Defendants received and retained:

    a.  Unlawful shut-off fees and reconnection fees charged to Plaintiff's account; and

    b.  Payments taken from Plaintiff's trust or credit balance without proper notice or contractual basis.

98. Defendants' retention of these fees was unjust because:

    a.  The shut-offs were void for lack of the statutorily mandated ten-day notice and for violation of Plaintiff's medical-certificate rights.

    b.  They ignored the Court's June 30, 2025, injunction; and

c.  They failed to produce any valid, signed contract or authority for such fees.

99. Equity and good conscience require that Defendants disgorge all void shutoff and reconnection fees and restore Plaintiff's account balance, including veterinary expenses totaling \\$6,474.87.

100. As an alternative to disgorgement, Plaintiff seeks rescission of any purported agreement forming the basis for those fees and restitution of all amounts paid.


## Count X – Unfair Trade Practices (73 P.S. § 201-1 et seq.)

101.  The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices" in the conduct of any trade or commerce.  (73 P.S. § 201-3).

102. To state a claim under the UTPCPL, a plaintiff must allege:

   a.  The defendant engaged in a deceptive or unfair practice.

   b.  The plaintiff justifiably relied on that practice; and

   c.  The plaintiff suffered an ascertainable loss as a result.  **(Murphy v. Duquesne Univ. of the Holy Ghost,** 777 A.2d 418, 429 (Pa. 2001)).

103. Here, Defendants engaged in multiple deceptive or unfair practices, including:

   a.  Misrepresenting that proper notice had been mailed when no notice was ever sent (¶ 12);

b.  Ignoring Plaintiff's timely billing-error disputes and medical-certificate accommodations (¶¶ 13–16);

c.  Charging unlawful shut-off and reconnection fees in violation of state law and court order (¶¶ 15, 18); and

d.  Attempting to coerce payment through threats of further shut-offs and police intimidation (¶¶ 18, 38).

104. Plaintiff justifiably relied on Defendants' representations that (i) they would mail required notices, (ii) they would honor his medical certificate, and (iii) they would follow their own Rules & Regulations.  In reliance, he refrained from duplicative litigation until forced to file suit.

105. As a direct result of these unfair and deceptive practices, Plaintiff suffered an ascertainable loss in the form of void fees, veterinary expenses (\$6,474.87), emotional distress, and attorneys' fees.

106. Under 73 P.S. § 201-9.2(a), Plaintiff is entitled to treble damages, attorneys' fees, and costs.

### <u>Count XI – Intentional Infliction of Emotional Distress</u>

107. Plaintiff incorporates ¶¶ 10–39 above.

108. To state a claim for IIED under Pennsylvania law, a plaintiff must allege:

a. the defendant's conduct was extreme and outrageous;

b. the defendant acted intentionally or recklessly;

c. the conduct caused emotional distress; and

d. the distress was severe. (***Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)**).

109. Here, Defendants' conduct was extreme and outrageous, including:

a. willfully shutting off essential water and sewage service during a medical emergency despite a valid medical certificate (¶¶ 14–16);

b. enlisting police officers to intimidate Plaintiff under threat of arrest or towing (¶¶ 19, 38);

c. conditioning restoration on in-person signing or full payment despite a court injunction (¶¶ 16–18); and

d. continuing to bill and threaten further shut-offs in knowing violation of state law and judicial order (¶¶ 18–24).

110. Defendants acted intentionally or with reckless disregard for the probability of causing emotional harm.

111. As a direct result of these actions, Plaintiff suffered severe emotional distress, including exacerbation of his service-connected conditions, Sleep loss, anxiety, paranoia, and ongoing fear for his family's health and safety.

112. Plaintiff's emotional distress was severe and debilitating, requiring medical and psychological care.

113. Defendants' outrageous conduct and reckless indifference entitle Plaintiff to compensatory and punitive damages.

## Count XII – Breach of Fiduciary Duty (Common Law)

114. Plaintiff incorporates ¶¶ 10–39, 39–113 above.

115. Under Pennsylvania law, a fiduciary relationship arises when one party places trust and confidence in another who accepts that trust, as with utilities holding and disbursing customer-funded trust assets. (*In re Estate of Hoagland*, **749 A.2d 476, 480 (Pa. Super. 2000)).**

116. JSAJWA, TMA, Eric Johnson, and Does 1–5 occupied a fiduciary position by:

   a. Collecting mandatory customer payments and holding them in trust for provision of water and sewage services;

   b. Obligating themselves to apply those funds only for lawful service and in accordance with statutory and regulatory mandates.

117. Defendants breached their fiduciary duties by:

   a. Misrepresenting account balances and mailing practices, thereby diverting funds without proper accounting;

   b. Refusing to conduct a forensic audit or produce account records upon demand;

   c. Ignoring a valid medical certificate and court injunction, coercing Plaintiff into payment or agreement signing;

   d. Charging and retaining unlawful shut-off and reconnection fees in violation of

state law, Rules & Regulations, and judicial orders.

118. As a direct and proximate result of these breaches, Plaintiff suffered financial losses, emotional distress, and loss of trust, entitling him to:

   a. Disgorgement of all improperly collected fees;

   b. Restitution of veterinary expenses ($6,474.87) and any additional trust fund misallocations.

### Count XIII – Municipal Liability for Failure to Train (42 U.S.C. § 1983)

119. Plaintiff incorporates ¶¶ 10–39, 69–74 above.

120. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality or municipal entity may be liable under 42 U.S.C. § 1983 when its official policy, practice, or custom causes a constitutional deprivation. Further, under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), a failure to train or supervise employees may, in itself, constitute municipal liability where that failure manifests deliberate indifference to the rights of persons with whom they interact.

121. JSAJWA and TMA failed to adequately train or supervise Manager Eric Johnson and Does 1–5 regarding:

   a. Statutory and regulatory notice requirements for shut-off and termination procedures;

b. Medical-certificate accommodations under 52 Pa. Code §§ 56.113–.115 and 66 Pa.C.S. § 1406(f); and

c. Respect for court orders, constitutional rights—including the rights of persons with disabilities under the ADA (42 U.S.C. § 12132) and Rehabilitation Act (29 U.S.C. § 794(a))—and the Authority's own Rules & Regulations.

122. This failure to train reflects a deliberate indifference to the constitutional and statutory rights of customers—particularly qualified individuals with disabilities such as Plaintiff, a permanently and totally disabled veteran—foreseeably resulting in the wrongful shut-off, refusal to restore service, and police intimidation.

123. As a direct result of this policy of insufficient training and supervision, Plaintiff's rights were violated, and he suffered damages, for which JSAJWA TMA are liable under § 1983.

## VII. PRAYER FOR RELIEF

124. WHEREFORE, Plaintiff respectfully requests that this Court enter:

A.  A declaratory judgment that Defendants' conduct violated the U.S. Constitution, federal statutes (including the ADA, Rehabilitation Act, 42 U.S.C. §§ 1983 & 1985), and Pennsylvania law and constitutional provisions;

B.  A permanent injunction enjoining Defendants, their officers and agents, and all those acting in concert, from:

1.  Terminating water or sewage service without complying with 53 P.S. § 3102.502, 52 Pa. Code §§ 56.113–.115, JSAJWA Rule X, and any court-ordered notice;

2. Refusing to honor valid medical certificates and reasonable accommodations for qualified individuals with disabilities;

3. Enforcing or charging shutoff or reconnection fees absent a valid written contract or court order;

C.  Compensatory damages according to proof at trial, including:

1.  Economic losses (void fees, trust-fund misallocations, \$6,474.87 in veterinary expenses, lost household and business expenses);

2. Emotional distress damages arising from extreme and outrageous conduct;

3. Costs of medical and psychological care necessitated by Defendants' misconduct;

D.  Punitive damages against the individual Defendants in an amount to deter future misconduct;

E.  Treble damages, attorneys' fees, and costs under the UTPCPL (73 P.S. § 201-9.2(a));

F.  An order requiring disgorgement of all improperly collected fees and restitution of all amounts wrongfully retained;

30

G.  An order compelling a full forensic accounting of Plaintiff's account and

billing history;

H.  Pre-judgment and post-judgment interest on all monetary awards;

I.  Attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable

fee-shifting statutes; and

J.  Such other and further relief as the Court deems just and proper.


## VIII. JURY DEMAND

125. Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,
/ s/ Dion Storm Holland
Dion Storm Holland, Pro Se
In Care of: 566 High Street,
Jersey Shore, Pennsylvania 17740
subarudion@gmail.com | (814) 574-9664
Dated: August 1, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of August 2025, I caused a true and correct copy of the foregoing First Amended Complaint, with all Exhibits A–U, to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(D), upon the following counsel of record:

Sean P. McDonough, Esq.
Dougherty, Leventhal & Price, LLP
75 Glenmaura National Boulevard
Moosic, PA 18507
E-mail: smcdonough@dlplaw.com

Michael J. Crocenzi, Esq. (PA I.D. #66255)
Barley Snyder
100 East Market Street
York, PA 17401
E-mail: mcrocenzi@barley.com

Sarah L. Doyle, Esq. (PA I.D. #321149)
Barley Snyder
100 East Market Street
York, PA 17401
E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Dion Storm Holland
Dion Storm Holland, Pro Se
In Care of: 566 High Street
Jersey Shore, Pennsylvania 17740
(814) 574-9664
subarudion@gmail.com