## EXHIBIT INDEX

Exhibit A:  Termination Notice (door-hanger) dated June 11, 2025.

Exhibit B:  Medical-Emergency & Billing-Error Dispute E-mail (June 11, 2025).

Exhibit C:  Notice of Emergency & Conditional Acceptance (June 11, 2025).

Exhibit D:  Affidavit of Billing Error & Demand for Forensic Audit—reasserted under oath on July 2, 2025 (original e-mailed June 11, 2025; "not for purpose of delay").

Exhibit E:  Two-page follow-up dispute e-mail sent June 24, 2025.

Exhibit F:  Jersey Shore Area Joint Water Authority Rules & Regulations (Rule X – Notice & Termination Procedures).

F-1- Application Requirement rule II.A

F-2 Mailing Requirement rule VII.G  Due date & dispute procedure Rule VII.B, VII. F.

F-3 Signed Authority Agreement Rule XIII. H

Exhibit G:  Medical Certificate signed by Dr. Sean Burke (hand-delivered June 23, 2025).

Exhibit H:  Post-termination notice handed by Eric Johnson  in the amount of \$511.15 (June 23, 2025).

Exhibit I:  Text of 53 Pa.C.S. § 3102.502 (Ten-Day Notice Requirement).

Exhibit J:  Photograph of Plaintiff handing the Medical Certificate to Eric Johnson at the shut-off site (June 23, 2025).

Exhibit K:  Image of armed Lycoming County Regional Police officers (Det. Segura & Capt. Smith) on Plaintiff's property (June 25, 2025).

Exhibit L:  Schedule of Commercial Liability for Rights Violations (Fee Schedule), executed July 2, 2025.

Exhibit M:  Water-usage charts for Plaintiff's household (June 2025).

Exhibit N:  Affidavit of Jessica D. Wileman regarding animal harm missing or unmailed bills (July 22, 2025).

Exhibit N-1: Veterinary invoice—initial visit for lethargy (\$158.00) (July 3, 2025).

Exhibit N-2: Veterinary invoice & records—emergency pyometra surgery (\$6,316.87) (July 9–11, 2025).

Exhibit O:  USPS Certified-Mail green-card return receipts for service of Complaint & Exhibits (July 2, 2025).

Exhibit P:  Complete Notices & Dispute Packet served July 2, 2025 (reasserted dispute June 11th–July 2 notices, affidavits, and fee schedule).

Exhibit Q:  Evidence of second police intimidation visit and towing threat (July 9, 2025).

Exhibit R:  Screenshot of TMA Principal Cheryl Brungard "following" Plaintiff on Facebook (July 13, 2025).

Exhibit T: June 30th order Judge carlucci

Exhibit U: June 30th Field worker handing plaintiff a 10 day notice failing to post.

# Exhibit A

Exhibit (A)

# TERMINATION NOTICE

**Name** DION HOLLAND       **Date** 6-11-25

**Address** 566 HIGH ST

**Acct. No.** 5000960.00-0

The water service to this property will be terminated on  6-20-25

This action will be taken because your bill period is 30 days or more overdue in

the amount of $ 461.15

As stated in our Rate Resolution, a $50.00 reconnection fee will be required to have the
service restored and this charge will be collected in addition to the total amount due on the bill.

Service will only be restored during the normal working hours of this company.

You may arrange for restoration of service by contacting a Service Representative at the
address or telephone number listed below to make payment arrangements.

### MEDICAL EMERGENCY NOTICE

If you, or anyone presently and normally living in your home is seriously ill, we will restore
your water service during such illness provided you:

(a)  Have a physician certify by phone or in writing that such illness exists and that it may be
     aggravated if your service is not restored; and
(b)  Make some equitable arrangements to pay the company your past due and current bills
     for service.
(c)  Contact us by calling the telephone number listed below.

Jersey Shore Area Joint Water Authority
Office: 1111 Bardo Avenue, Jersey Shore, PA 17740
Telephone: (570) 398-1443

Tiadaghton Municipal Sewer Authority
P.O. Box 5039 • 290 Rice Road
Telephone: (570) 398-2366

Mr. Mike Print Shoppe - JSAJWA Termination Notice - Orbit Orange

# Exhibit B

Free Speak Exhibit (B).
LR 5.2 (d)(4)

M Gmail

Dion Holland <subarudion@gmail.com

---

## First Legal Notice – Medical Hardship & Billing Dispute – Acct #50209902.00-0

**Dion Holland** <subarudion@gmail.com>                                          Wed, Jun 11 at 12:49 PM
To: <janet@jerseyshorewater.com>

To Whom It May Concern,

This email serves as my first and original formal notice regarding the account referenced below:

Account Name: DION HOLLAND
Service Address: 566 High Street, Jersey Shore, PA
Account No.: ▓▓▓▓▓▓2.00-0

On June 11, 2025, a termination notice was left on my private property without prior contact, contract, or disclosure of lawful billing records. The notice claimed an overdue balance of $461.15, while your online system reports a conflicting amount of $559.84. These inconsistencies, combined with the absence of any signed agreement, constitute a material billing error and failure of lawful due process.

I am attaching the following legal notices:
1. **FIRST Notice of Medical Emergency and Conditional Acceptance of Termination Notice**
2. **FIRST Affidavit of Billing Error and Demand for Forensic Audit**

Be advised that I am a permanently disabled veteran with Traumatic Brain Injury and PTSD. Any disconnection of essential water/sewer service would endanger my health and violate both the Americans with Disabilities Act (ADA) and your own emergency provisions. You are now on legal notice of a medically documented hardship, and all disconnection efforts must immediately cease.

You are hereby demanded to:
- Provide a complete forensic audit and itemized statement for the alleged account.
- Refrain from any termination or further collection activity until this dispute is lawfully resolved.
- Acknowledge receipt of this notice within **72 hours** and respond to all points made in the attached affidavits.

Failure to respond or act in good faith will result in immediate legal escalation, including but not limited to: injunctive relief, ADA violation claims, and formal regulatory complaints.

Respectfully,

Dion Storm Holland
Authorized Agent for the Estate of DION HOLLAND
c/o 566 High St, Jersey Shore, Pennsylvania Republic, near [17740]
FIRST_Affidavit_of_Billing_Error_and_Demand_for_Forensic_Audit_Dion_Holland.docx,
FIRST_Notice_of_Medical_Emergency_and_Conditional_Acceptance_Dion_Holland.docx

# Exhibit C

Exhibit (C)

# NOTICE OF MEDICAL EMERGENCY AND CONDITIONAL ACCEPTANCE

To: Jersey Shore Area Joint Water Authority

1111 Bardo Avenue

Jersey Shore, PA 17740


To: Tiadaghton Municipal Sewer Authority

290 Rice Road, P.O. Box 5039

Jersey Shore, PA 17740


From: Dion Storm Holland, Private American National, House of Holland

In care of: 566 High Street, Jersey Shore, Pennsylvania Republic, near [17740]


Date: June 11, 2025


RE: Notice of Medical Emergency and Conditional Acceptance of Termination Notice


Dear Agents of the Above-Named Municipal Corporations,


This letter serves as the first and only formal notice of record that I am asserting a medical hardship and billing dispute regarding the water and sewer account referenced herein. A Termination Notice dated June 11, 2025, was left on my private property by your agent(s), without prior notice, lawful process, or consent.


I conditionally accept your demand upon proof of claim and full forensic audit and accounting of the alleged debt pursuant to 15 U.S.C. § 1666, 12 CFR § 226.13, UCC 3-501 and UCC 3-603, showing that the debt has not been discharged, set-off, securitized, or otherwise prepaid through prior tender.


Further, this serves as a formal Medical Emergency Notice. I am a permanently and totally disabled veteran with serious health conditions including Traumatic Brain Injury and Post-Traumatic Stress Disorder (PTSD), documented with the Department of Veterans Affairs. Termination of water service poses a serious health hazard and may cause substantial aggravation to my existing condition.


Accordingly, you are required under the emergency provision listed in your own notice to immediately cease all collection and termination activity, and to accept equitable arrangements pending full resolution of the billing dispute.


Any attempt to terminate essential services while this matter is under lawful dispute, and

while a medical hardship is active, shall constitute knowing and intentional harm, disability discrimination under Title II of the ADA, and gross negligence under color of law.

Case 4:25-cv-01323-DFB    Document 10-1    Filed 08/01/25    Page 9 of 93    Exhibit (C) pg

You are hereby instructed to respond within seventy-two (72) hours of receipt of this notice with acknowledgment and verification of account status. Silence shall be construed as agreement to all facts stated herein.

Without prejudice, all rights reserved, UCC 1-308.

By: Dion Storm Holland

Authorized Agent for DION HOLLAND, ESTATE

In care of 566 High Street, Jersey Shore, Pennsylvania Republic, near [17740]

Additionally, I note a discrepancy in the reported account balance: the door notice dated June 11, 2025, claims $461.15 is due, while the online billing system simultaneously reflects an amount of $559.84. This material inconsistency further supports the presence of a billing error and mandates full reconciliation prior to any lawful termination of service.

# Exhibit D

Exhibit (D)
Pg 1

# AFFIDAVIT OF BILLING ERROR AND DEMAND FOR FORENSIC AUDIT

To: Jersey Shore Area Joint Water Authority

1111 Bardo Avenue

Jersey Shore, PA 17740


To: Tiadaghton Municipal Sewer Authority

290 Rice Road, P.O. Box 5039

Jersey Shore, PA 17740


From: Dion Storm Holland, House of Holland

In care of: 566 High Street, Jersey Shore, Pennsylvania Republic, near [17740]


Date: June 11, 2025


RE: AFFIDAVIT OF BILLING ERROR AND DEMAND FOR FORENSIC AUDIT


I, Dion Storm Holland, a living man and beneficiary of the private estate/trust known as DION HOLLAND, submit this first and original Affidavit of Billing Error and Demand for Forensic Audit, initiated after receiving a door notice without prior written billing records, formal agreement, or lawful contract. This serves as my formal dispute and demand under the Truth in Lending Act (15 U.S.C. § 1666), the Fair Credit Billing Act, and Uniform Commercial Code Sections 3-501, 3-603, and 9-210.


I dispute the validity and accuracy of the alleged balance claimed by your office as due and owing under account number 50209902.00-0. A Termination Notice left on my door on June 11, 2025, claimed a balance of $461.15. However, upon logging into the online billing system, I observed a different balance listed as $559.84.


This inconsistency represents a material defect in your accounting records, and constitutes prima facie evidence of a billing error under 15 U.S.C. § 1666(b). Any attempt to enforce collection or termination based on fluctuating or inaccurate balances without proper documentation and reconciliation is unlawful, deceptive, and may constitute constructive fraud.


This document also serves as a formal request for a full and complete forensic audit and itemized accounting of the following:


(1) The original contract bearing my signature that created a lawful debt obligation.

(2) All transactions posted to the account from inception to present, including interest calculations and fees.

(3) Evidence of securitization or public trust funds applied to or on behalf of my account.

(4) The accounting method used to determine the outstanding balance, and explanation for the conflicting totals.

Absent this documentation, continued demands for payment shall constitute willful billing fraud, deceptive trade practices, and potential violations under the RICO Act (18 U.S.C. § 1962).

You are hereby instructed to suspend all collection activity and cease any threat of service termination until such time as these matters are resolved lawfully. Failure to respond with all requested documentation within ten (10) business days will result in a Notice of Default, Estoppel, and potential civil litigation.

This affidavit shall stand as truth in commerce unless rebutted by sworn affidavit point-for-point within the allotted timeframe.

Without prejudice, UCC 1-308, all rights reserved.

By: Dion Storm Holland

Authorized Agent for DION HOLLAND, ESTATE

In care of 566 High Street, Jersey Shore, Pennsylvania Republic, near [17740]

# Exhibit E

M Gmail

Dion Holland <subarudion@gmail.com>

---

# Final Notice: Rule X Violations, Medical Hardship, and Pending Legal Action

**Dion Holland** <subarudion@gmail.com>                                                    Tue, Jun 24 at 3:25 PM
To: <janet@jerseyshorewater.com>, <scams@attorneygeneral.gov>, <consumer@paoca.org>, <RA-DHCOMPLAINTS@pa.gov>,
<ComplaintsOffice08@hud.gov>, <ra-ocs@pa.gov>, <intake@disabilityrightspa.org>, <ncomplai@pa.gov>

To the Jersey Shore Area Joint Water Authority,

This letter serves as formal and final notice of serious violations of your own Rules and Regulations (Rule X), the Pennsylvania Consumer Protection Law, and applicable medical hardship and billing protections under 66 Pa. C.S. § 1406(f) and the Americans with Disabilities Act (ADA), Title II.

1. 1. Violation of Rule X – No Mailed Notice of Shutoff:

Your records will show I never received any written mailed notice as required under Rule X(10). Door hangers do not satisfy the mandate that "written notice shall be mailed to the customer at least ten (10) days prior to termination of service."

2. 2. Violation of Rule X – Judicial Determination Required Before Shutoff:

Your Rules also state:
"If a written statement under oath or affirmation is submitted within the 10-day notice period asserting a just defense to the charges, the water supply shall not be shut off until the claim is judicially determined."

I submitted both:
- A affidavit asserting a billing dispute and
- A physician-certified medical hardship notification.

Despite this, your agents proceeded to shut off my water on June 23, 2025, without any judicial determination, in direct violation of Rule X and due process.

3. 3. Medical Necessity Ignored – ADA and § 1406(f) Violation:

I suffer from multiple medical conditions, including a diagnosed traumatic brain injury (TBI) and complications from rhabdomyolysis that impair kidney function. My physician certified my need for water, which I personally handed to Mr. Eric Johnson during the shutoff. He dismissed the certificate, asked intrusive medical questions (e.g., "Are you on dialysis?"), and willfully ignored my rights under both federal and state law.

4. 4. Billing Error and Inconsistencies:

Since June 11, I have received three different balances on my water bill, demonstrating clear billing inaccuracies. These inconsistencies are actionable under federal billing error laws, and your refusal to provide consistent and itemized billing records violates principles of fair trade and transparency.

5. 5. Admissions of Misconduct:

Mr. Eric Johnson admitted to me that he was unfamiliar with Rule X, which governs your shutoff procedures.

Ignorance of your own policies is not a defense it is gross administrative negligence.

Exhibit (E)
Pg 2

You are hereby put on final notice:

If my water is not immediately restored, and this matter not addressed in good faith, I will pursue all lawful remedies, including:

- A civil complaint for damages, injunctive relief, and emotional distress;
- UCC claims and commercial liens for breach of trust;
- Regulatory complaints with the PUC, Attorney General, Office of Consumer Advocate, and Disability Rights PA;
- Potential federal ADA and civil rights actions.

I have documented evidence and will submit it to the court and regulators if you do not cure these violations.

Respectfully,

Dion Storm Holland
In care of 566 High St
Jersey Shore, Pennsylvania

Please refer to page 11



https://jerseyshorewater.com/wp-content/uploads/2024/06/Jersey-Shore-Water-Authority-Rules-Regs.pdf

# Exhibit F

Exhibit (F)

# JERSEY SHORE AREA JOINT WATER AUTHORITY REGULATIONS

# GOVERNING THE FURNISHING OF WATER SERVICE

# TO

# THE GREATER JERSEY SHORE AREA

# ADOPTED JUNE 4, 2024

# JERSEY SHORE AREA JOINT WATER AUTHORITY

## RULES AND REGULATIONS

### TABLE OF CONTENTS

| Title Page | | Page No. |
|---|---|---|
| I. | Definitions | 1 |
| II. | Application for Service | 1 |
| III. | Service Connections | 2 |
| IV. | Service | 4 |
| V. | Discontinuance of Service | 5 |
| VI. | Renewal of Water Service After Discontinuance | 6 |
| VII. | Bills for Water Services | 6 |
| VIII. | Meters | 7 |
| IX. | Main Extensions | 9 |
| X. | Turning Off Water and Turn on Charge | 9 |
| XI. | Vacating the Premises | 10 |
| XII. | Fire Protection | 10 |
| XIII. | General | 11 |
| XIV. | Schedule of Rates | 12 |

Exhibit (F-1)

## I.     DEFINITIONS.

A.     The word "Authority," when used in these Rules and Regulations shall mean the "Jersey Shore Area Joint Water Authority," Lycoming County, Pennsylvania.

B.     A "Customer" is a person or entity who contracts for water service to a property, including but not necessarily limited to the following:

    1.     Residential user-provision of water to domestic properties.

    2.     Commercial user-provision of water to customers engaged in commerce, trade, or service.

    3.     Municipal user-provision of water to municipalities, including but not necessarily limited to boroughs and townships and their associated facilities.

    4.     Rental (multi-family) dwelling-provision of water to multi residential buildings such as apartment buildings.

    5.     Industrial user-provision of water to customers engaged in manufacturing or processing activities.

    6.     Institutional user- provision of water to school districts, related educational facilities, hospitals, nursing homes, personal care homes, or other similar facilities.

C.     The term "Service Connection" means the service pipe beginning at its connection with the street main and ending with and including the curb stop and curb box, just inside the line of the curb.

D.     A "Consumer" is any person receiving water service from the Authority.

## II.     APPLICATION FOR SERVICE.

A.     Service connections will be made, and water will be furnished upon written application by the prospective customer (or their properly authorized agent) on a form furnished by the Authority, at least two (2) weeks before service is required and upon approval by the Authority, or its duly authorized agent. A connection charge is to be paid by the prospective customer in accordance with the existing Authority rate schedule.

B.     The application and its acceptance by the Authority shall constitute a contract between the applicant and Authority obligating the applicant to pay the Authority its rates for water service from the date the water is turned on.

C.  The rules and regulations of Authority as amended from time to time are part of the contract with every person, municipality, Authority, or political sub-division which takes water service furnished to such person, Authority, or political sub-division, by contracting with the Authority, agrees to be bound by any said rules and regulations.

D.  A customer who has made application for water service to any property shall be held liable for all water service furnished to such property until such time as the customer properly notifies the Authority in writing to discontinue the service for their account.

E.  The customers will be responsible for the actual costs of connection as incurred by the Authority and established in their rate schedule.

F.  A new application for service must be made to, and approved by, the Authority upon any change in the ownership of the property, or in the service as described in the application.

G.  No agreement will be entered into by the Authority with any applicant for water service, whether owner or tenant, until all arrearages for water service rendered at any property previously owned or occupied by him shall have been paid in full or until satisfactory arrangements for payment of such unpaid bill shave been made.

H.  The payment of any undisputed bill, within the meaning of the Public Utility Law, shall be payment of the bill with penalty, within thirty (30) days for residential and commercial customers following the date of the bill except in the case of bills to the Commonwealth of Pennsylvania.

I.  Upon approval of the application made by any customer, the Authority will tap the main, install the service line to the curb property line or right of way line, and install curb stop, service box and meter in accordance with the Authority's fee schedule.

J.  The Authority shall have the right in its discretion to determine whether it is desirable or advisable to permit connections to the Water System.

K.  Adequate pressure must be available to provide proper service, the Authority will make which determination. In any situation where the Authority determines adequate water pressure not to be available, Authority may provide service upon the receipt of a signed agreement by customer that Authority will not be responsible for inadequate water pressure.

## III.  SERVICE CONNECTIONS.

A.  The Authority will install and maintain at its own cost and expense all service connections as defined above for general service. Service connections for special services not

considered to be permanent, shall be installed and maintained, unless otherwise provided, at the expense of the applicant.

B.    The service line beyond the curb stop shall be installed and maintained by and at the expense of the customer. The portion of the service line installed by the customer shall be not less in size and quality than the service line in the street laid by the Authority and shall be laid below the surface at a depth specified by the Authority and shall not be covered until the tap on the main is made and the service line tested and inspected by a representative of the Authority. If any defects in workmanship are found, the service shall not be turned on until such defects are remedied at the expense of the applicant. All materials must meet the specifications established by the Authority and installed to the specifications of the Authority, as from time to time amended.

C.    The service line from the curb to the premises of the customer shall be kept in good condition by the customer under penalty of discontinuance of service by the Authority. No service line shall be laid in the same trench with any gas pipe, sewer pipe or any other facility of a public service company, nor within three (3) feet of any maintenance hole, vault, or open ditch.

D.    A service line will be used to supply a single customer only. No customer shall have more than one service connection except where impossible or impractical to adequately furnish water service thereto through one service connection in which event the Authority may agree to the installation and use of more than one service connection. In case two or more customers are supplied with water from the same service pipe, a distinct and separate shut off curb stop, and curb box will be provided for each customer.

E.    Where two or more premises are supplied through a single service (and it is not possible to provide separate curb stop for each premise), any violation of these rules by either or any of the consumers shall be deemed a violation as to all, and unless said violation is corrected, the Authority may, after reasonable notice, take such action as can be taken against a single customer, except that such action shall not be taken until the innocent consumer, who has not violated the rules and regulations, has been given a reasonable opportunity to attach their service pipe to a separately controlled service connection and make application to become a customer.

F.    Service lines will not be installed when the service line must pass through property which at the time of installation may be the property of a party other than the owner of the premises to be supplied unless the owner of the premises supplied provides in writing at their sole expense all necessary rights-of-way in the name of the Authority and assumes all liability.

G.    Curb stops at the curb line are for the exclusive use of the Authority and shall not be used by the consumer or customer. The customer shall have installed on their service line a stop and check valve to be located, in general, just inside the building wall at the nearest

point of entry. This stop valve is the customer's control of their water supply and will provide for the turn-off of water in case of leaks and to drain the pipes to prevent freezing.

H.     The Authority reserves the right to require any customer to install at their expense on or in conjunction with their service connection such valves, backflow preventers, check valves, relief valves, pressure regulating valves, air chamber, tank, float valves, or other apparatus of approved design, when and where, in the opinion of the Authority, the conditions may regulate it for the safeguarding and protection of the Authority's property or water supply.

I.     The Authority shall in no event be liable for any damage done by water escaping from the service pipe or any other pipe or fixture on the outlet side of the curb stop, and it is expressly understood by the Authority and the customer that no claims shall be made against the Authority on account of the bursting or breaking of any main or service pipe or any attachment to said water works unless said damage is a direct result of gross negligence on the part of Authority employees. All leaks in service lines from the curb stop to, in, and upon the premises supplied, shall be promptly repaired by the customer at their expense. On failure to make such repairs with reasonable dispatch, the Authority will turn off the water and it will not be turned on again until all proper and necessary repairs are made, and the fee for turning on the water is paid in full.

J.     All water passing through a meter shall be billed at the regular rate and no allowance will be made for excessive or unusual consumption due to leaks and waste.

K.     The proper officials of Authority may prescribe the size and material of the service pipe, when it is deemed necessary, to give satisfactory service.

## IV.  SERVICE.

A.     In case of accident, breakdown, emergency or for any other unavoidable cause, the Authority shall have the right to temporarily shut off the water supply to make necessary repairs, renewals or replacements, and Authority shall in no manner be held responsible for any consequences of such shutoffs, without limitation.

B.     The Authority shall have the right to renew all service pipes from the main to the curb line upon notification to resurface or rebuild any street, alley, or roadway.

C.     The Authority will make every effort to give continuous and uninterrupted service and in the event of a shut-off, notice will be given, when practical, to all customers affected. Nothing in these rules shall be construed as a guarantee, covenant, or agreement to give such notice of shut off, or to give such continuous and uninterrupted service, and such temporary shut-off of the water supply shall not entitle the customer to any abatement or reductions in charges.

D.      Whenever the customer desires to have their service contract terminated, they shall notify the Authority of that effect in writing. The customer will be responsible for the payment for all services rendered by the Authority until such written notice is received, or until water service is discontinued by the Authority, whichever should occur later in time.

E.      The properly identified agents of the Authority shall have at all reasonable hours free access to all parts of the property to property to which water is delivered for the purposes of inspection, examination of fixtures, etc., and all persons using water must at all times answer all questions asked to them relating to their service and consumption.

F.      Under no circumstances shall any person not authorized by the Authority open or close curb stops or valves in any public line.

## V.    DISCONTINUANCE OF SERVICE.

A.      Service to any customer under any contract may be discontinued, after due notice, for any of the following reasons:

1.      For any material misrepresentation in the application.

2.      For adding to any property or fixtures or altering the use to be made of water supplies, without notice to the Authority.

3.      For unreasonable waste of water, or for waste of water in emergency situations.

4.      For failure to maintain in good order any connection, service lines or fixtures beyond the curb stop, owned by the customer.

5.      For molesting or interfering with any service pipe, meter seal, curb stop or any appliance of the Authority.

6.      For failing to make payment for water supplied or service maintained.

7.      For refusal or access to property for the purpose of inspection or for reading, caring for or removing meters or installing remote readers.

8.      For failure to maintain a suitable atmosphere in the area where the water meter is located or failure to maintain unrestricted access to the meter.

9.      For violation of any of the Rules and Regulations of the Authority.

B.    Procedures for Discontinuance of Service:

The procedures to be used in discontinuing service shall be as set forth in Article X hereafter set forth.

## VI.    RENEWAL OF WATER SERVICE AFTER DISCONTINUANCE.

When water service to any property has been terminated for any reason, it will be renewed only after the acceptance of a new application and when the conditions, circumstances or practices which caused the water service to be disconnected are corrected to the satisfaction of the Authority.

## VII.    BILLS FOR WATER SERVICES.

A.    Bills for customers shall be rendered monthly. Bills for metered services shall be determined by meter registration unless the meter fails to register in which case a bill will be rendered based on previous average consumption. Average consumption as used herein is defined as the average of the previous three months usage. Estimated bills will not be included in the average.

B.    All charges shall be due and payable upon presentation of bill(s) covering service for the billing period completed and shall be payable twenty-five (25) days from the date of billing; date of billing shall mean the date appearing on the face of the bill.

C.    If water and water service invoices are not paid within twenty-five (25) days from the date of billing, the Authority will add to the bill and ten (10%) percent late penalty charge.

D.    The Authority will accept without penalty remittance bearing local postmarks for the last day of payment without penalty.

E.    Payments in advance of furnishing service may be required for:

1.    Private fire protection service.

2.    Restoration or connection of service where service has been actually discontinued for failure to comply with tariff provisions.

3.    Construction of facilities and furnishing of special equipment.

F.    Any customer who upon receipt of a bill has reason to doubt its accuracy, shall bring or mail the bill within ten (10) days to the Authority Office for investigation.

G.    Bills shall be sent to the address provided by the Customer. The Customer shall immediately notify the Authority of any change in billing address. Failure to receive a bill shall not exempt any customer from incurring a penalty. The presentation of a bill to the customer is only a matter of accommodation and not a waiver of the Rules and Regulations of this tariff.

H.    Final billing, when a final billing is requested, the minimum charge for the size meter in service and Distribution Fee (divided by 30 days) will be assessed times the number of days in billing cycle plus their usage of water. The new customer of the premises will be afforded the remainder of the thirty days in their initial bill plus their metered consumption.

I.    All water bills and water charges shall be the ultimate responsibility of the owner or their authorized representative agent.

J.    Partial payments may be accepted upon approval by the Authority Office; however, full payment must be made within sixty (60) days from the date of billing.

K.    Payment may be made either in person by cash, check, or money order without additional fees. Payments may by credit or debit cards are subject to an additional fee in at the current processing fees in addition to the billed charges. ACH is available on the website for no additional fee or can be set up upon the completion of an ACH Authorization Agreement Form.

L.    No checks payments or ACH payments will be accepted from a customer for a period of one (1) year after a return check or return ACH.

## VIII.    METERS.

A.    The Authority will, without charge, furnish and install for each customer supplied with a suitable meter of type and size to be determined by the Authority and will keep the same in repair except in case of misuse or damage by (1) frost in basement settings; (2) hot water; or (3) external cause, in which case the expense of repair must be borne by the customer and except for negligence or carelessness as set forth in VIII-F, hereafter. Auxiliary water meters may be installed at the expense of the customer with prior approval of the Authority.

B.    For existing connections, the customer will provide, at no expense to the Authority, a meter location in an easily accessible place in the cellar near the entrance of service pipes to the cellar, with a stop valve at the inlet side of the meter and a check; valve-on the outlet side of the meter. In any case, where it is not convenient to place the meter within the building or when the length of the service line from the property line to the building is excessive, it must be placed in an approved meter pit furnished by the Authority at the expense of the customer, installed according to Authority specifications with suitable stop valve and backflow connections. The installation must be inspected and approved by an authorized representative of the Authority before the service is turned on.

C.    For all new connections, the customer will be responsible for the installation of a meter pit at or near the property line, unless otherwise determined by the Authority.

D.    Under no circumstances shall any party receive water from the Authority without the water first passing through a water meter; any violation hereof shall result in termination of service and institution of appropriate criminal proceedings against the offending party.

E    Each customer shall have a separate meter, except for multiple dwellings or buildings where it is not practicable as determined in the sole discretion of the Authority to have individual meters. In such cases, the Authority rate scheduled for water charges shall apply.

F.    All water meters connected directly to the Authority water system shall be furnished by and remain the property of the Authority. The Authority will not furnish any additional or auxiliary water meter, where the water to be metered by the additional meter has been previously metered.

G.    The customer shall be responsible for any injury to, or loss of, any meter arising out of or caused by the customer's negligence or carelessness, or that of their servants, employees, members of their household, or any person upon their property under or by their consent or sufferance. The customer shall permit no one, except an agent of the Authority, to remove, inspect or tamper with the Authority's meter, or other property of the Authority on their premises.

H.    Meter By-Pass – All meters two (2) inches in size or over, are required to have a by-pass with approved valves. It is the responsibility of the customer to provide all required by-passes and valves at their own expense for all meters two (2) inches and over in size presently installed, which do not have an approved by-pass and valves. If for any reason a water meter which does not have an approved by-pass cannot be repaired or evaluated during regular working hours, the additional costs (overtime) for working irregular hours shall and will be charged to the customer. All valves on the approved by-pass shall be sealed by the Authority.

I.    Remote Reading Meter

1.    The Authority shall have the right to install upon all metered properties a remote reading device.

2.    Any structure hereafter built or moved within the service area of the Authority Water System requiring the installation of water meters shall be constructed so that the remote reading device connected to the water meter shall be located at a location easily accessible to Authority personnel.

3.   The Authority is hereby authorized to alter all existing water meters so that a remote reading device connected to said meter is in a convenient and accessible location. The Authority shall bear the cost of such alteration.

4.   The Authority reserves the right to determine type, location, and number of remote reading devices required for any service.

5.   If a discrepancy occurs between the remote reading device and the meter generator, the generator reading shall take precedence over the remote reading.

6.   If, due to a discrepancy between the meter generator and the remote reading device, the volume of water used differs from the amount billed, that difference will be included in the next monthly water bill.

J.   Testing of Meters

1.   At the written request of a customer, the Authority will evaluate the meter supplying their premises upon payment of the fee specified by resolution. If the meter evaluated upon such request shall be found to be accurate within ten (10) per cent, the fee shall be retained by the Authority; but if not so found, then the cost thereof shall be borne by the utility and the fee paid by the customer shall be refunded.

## IX.   MAIN EXTENSIONS.

Main extensions shall only be made upon the execution of a Water Extension Agreement entered between the customer and the Authority upon such terms and conditions established by the Authority.



## X.   TURNING OFF WATER AND TURN ON CHARGE.

The Authority always reserves the right, after ten (10) days notice to the customer, to shut off water for non-payment of water bills and the water shall remain shut off until the water bill(s) together with all applicable penalties and charges for turning on water (except as otherwise provided herein) have been fully paid.  Notice shall be sent in accordance with the following:

A.   The charge for turning on/off water service, following discontinuance thereof, whether at the request of the customer or their duly appointed agent or by Authority forces because of settlement on non-payment or correction of violation of the rules and regulations shall be as set forth in the Authority's schedule of fees.



B.   Procedures for Discontinuance of Service.



1.  In no case shall the water supply be shut off to any premises until ten (10) days after written notice of an intention so to do has been mailed to the person liable for payment for the rentals and charges and in addition thereto, there has been posted a written notice at the main entrance to the premises. If during such ten (10) day period, the person liable for the payment of the rentals and charges delivers to the Authority a written statement, under oath or affirmation, stating that he has a just defense to the claim, or part of it, for such rentals or charges, then the water supply shall not be shut off until claim has been judicially determined. The statement shall also contain a declaration under oath or affirmation that it was not executed for the purpose of delay.



2.  Nothing contained in this section shall authorize Authority to shut off or deny water service to any lessee of a property because a previous lessee failed to pay either the water service rate, rental, or charge.



## XI.  VACATING THE PREMISES.

A.  When the premises are vacated, the owner must give notice at the office of the Authority so that water may be turned off at the curb. The property owner is responsible for water, until notice is given.

B.  A new application must be made on any change in ownership of property as described in any application and the Authority shall be at liberty to discontinue the water supply until such new applications have been made and approved.

C.  A customer desiring an abatement from water bills during a temporary vacancy shall report the same in writing at the office of the Authority. When a temporary vacancy (not less than ninety (90) days) is properly reported in advance, an allowance will be made for the vacancy. Any vacancy for an indeterminant period shall permit the Authority at its discretion to remove the meter, the cost of which and its installation shall be paid by the customer in accordance with the Authority's current fees.

## XII.  FIRE PROTECTION.

A.  Private Fire System – The owner of premises having a private fire protection system shall pay, in addition to the established meter rates, for all water used except that used for extinguishment of fires in accordance with current Authority rate schedule.

1.  Customers will understand that fire protection charges are a compensation for "Standing Ready to Serve," and that for said charge the use of water is not contemplated except for the actual extinguishing of fires or for testing of the system. Testing shall not be done without first notifying and receiving approval of the Authority.

2.      It is expressly understood by and agreed between the parties receiving private
fire service and the Authority that the Authority does not assume any liability as
insurers of property of person(s) and that the agreement does not contemplate
any special service, pressure, capacity, or facility, other than the ordinary or
changing conditions of the Authority as the same exist from day to day, and the
Authority hereby declares and agreed by the party receiving service that the
Authority shall be free from all claims for injuries to persons or property by
reason of fire, water, failure to supply water, pressure or capacity, or any reason
incidental hereto.

3.      All fire services shall have an approved check valve and a gate valve. If a fire
Connection is used for the sole purpose of fire protection; a fire line meter shall
be required on such connection. No extension shall be made or any additional
fixtures be installed on such connections.

4.      It shall be expressly understood by and agreed between the parties having a
private hydrant that the maintenance of the private hydrant is the responsibility
of the property owner. The Authority hereby declares, and it is hereby agreed by
the owner on whose property the private fire hydrant is located, that the
Authority shall be free and exempt from all claims for injuries to
persons or property due to an inoperative fire hydrant and said property owner
shall hold the Authority safe and harmless from all claims, including attorney
fees, arising because of any injuries or damages caused thereby.

B.      Public Fire Hydrants -- The Authority shall own all public fire hydrants within
the service area. The Authority shall maintain said hydrants in working condition provided that
the conditions hereinafter set forth are complied with in full.

1.      The Authority shall inspect and maintain all public fire hydrants and branches
located within the service area. The Authority shall furnish and install hydrants
as prudent and necessary in areas of existing development.

2.      General Fire Hydrant Usage -- No person or persons shall take water from any
fire hydrant, public or private, except for fire purposes. Fire Companies may
evaluate the hydrants with the permission and prior approval of the Authority.
No public or private fire hydrant shall be used for any purpose other than fire
purposes, unless specifically permitted by the Authority for that time or
occasion. The person or persons requesting permission for the use of any public
or private fire hydrant, for other than fire emergencies, must obtain from the
Authority a permit stating the time, location and purpose for use of the hydrant,
and the person or persons including property owner or their duly authorized
agent who will be responsible for all costs and water consumed at the regular
meter rates as measured by a hydrant meter supplied by the Authority.

C.     The Authority shall be free from all claims and damages resulting from any such use of public or private fire hydrants.

## XIII.   GENERAL.

A.     No customer supplied with water by the Authority will be allowed to supply other people or families or other premises except by a written permit from the Authority. A person who violates this section may have their water shut off thirty (30) days after written notice is given to that person and it may remain so until the Authority is satisfied that provisions of the Rules and Regulations will be complied with.

B.     In the case of large properties, two or more connections may be allowed provided they meet Authority approval in the Authority's sole discretion.

C.     The Authority may, at any time, declare that an emergency exists and restrict the use of water. After notice of said order is published on three (3) different days in at least one (1) local newspaper, any customer or consumer who violates said order and is found guilty of the same by the District Magistrate shall be subject to a One Hundred ($100.00) Dollar fine under the first offense and to simular fine and the discontinuance of service under the second offense.

D.     No customer shall permit any condition to exist upon premises served whereby there is, or in the opinion of the Authority could be, a backflow into the mains of the Authority of non-potable matter, not or other liquids, or any leakage or seepage of such matter into said main.

E.     For the prevention of backflow, all connections are required to have a stop valve on the inlet side of the meter and a check valve on the outlet side of the meter of a type approved by the Authority.

F.     The Authority will not be responsible for any damage caused within the consumer's premises by an increase or decrease of pressure within the Authority's distribution mains. It shall be incumbent on the customer to install and maintain, in their service line, between the curb stop and meter, such pressure regulating devices as may be necessary to prohibit excessive pressure from being transmitted to the inside piping or fixtures.

G.     Changing of Rates – The Authority may change or amend the rates, rules, and regulations for water service, as necessary.

H.     No agent or authorized representative of the Authority shall have the authority to make any promise, agreement or representation not provided for herein, unless such in writing and signed by the property Authority officials.

I.    The Authority shall not be liable for turbid water or for a deficiency or failure in the supply or for increase or decrease of pressure when occasioned by shutting off water to make repairs or connections or for failure from any cause beyond the control of the Authority.

## XIV.  SCHEDULE OF RATES.

A.    Rates shall be as determined from time to time by Resolution of Authority.

# Exhibit G

Exhibt (G)

# STANDARD MEDICAL CERTIFICATE FORM

## To Be Completed By The Physician, Nurse Practitioner, or Physician's Assistant

**Name of the customer or applicant in whose name the utility account is or will be registered:**

Dion Holland

**Utility account number (optional):**



**Address of the customer or applicant in whose name the utility account is or will be registered:**

566 High Street Jersey Shore, PA 17740

**Name and address of patient if different from the customer or applicant above:**



**Relationship of patient to customer or applicant if patient is different from the customer or applicant above:**



**Anticipated length of the affliction/medical condition:**

Lifetime

**Printed name of the Physician, Nurse Practitioner, or Physician's Assistant:**

Sean D. Burke DO

**License number of the Physician, Nurse Practitioner, or Physician's Assistant:**

OS 009989L

**Office address and Office Phone number of the Physician, Nurse Practitioner, or Physician's Assistant:**

16 West Market Street Lewistown, PA 17044

**Signature (or E-signature) of the Physician, Nurse Practitioner, or Physician's Assistant and the Date signed:**

6-19-26

# Exhibit H



# POST TERMINATION NOTICE

**Name** DION HOLLAND      **Date** 6-23-25

**Address** 546 HIGH ST

**Acct. No.** 5000960.00-0

The water service to this property was terminated on      6-23-25

**This action was taken because your bill period is 30 days or more overdue in**

**the amount of $** 511.15        .

As stated in our Rate Resolution, a ~~$50.00~~ reconnection fee will be required to have the service restored and this charge will be collected in addition to the total amount due on the bill.

Service will only be restored during the normal working hours of this company.

You may arrange for restoration of service by contacting a Service Representative at the address or telephone number listed below to make payment arrangements.

MEDICAL EMERGENCY NOTICE

If you, or anyone presently and normally living in your home is seriously ill, we will restore your water service during such illness provided you:

(a) Have a physician certify by phone or in writing that such illness exists and that it may be aggravated if your service is not restored; and

(b) Make some equitable arrangements to pay the company your past due and current bills for service.

(c) Contact us by calling the telephone number listed below.

**Jersey Shore Area Joint Water Authority**
**Office: 1111 Bardo Avenue, Jersey Shore, PA 17740**
**Telephone: (570) 398-1443**
Ye Olde Print Shoppe - JSAJWA Post Termination Notice

# Exhibit I

# CHAPTER 5
## WATER UTILITIES

Section 501.  Definitions.
  The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:
  "Water utility."  The term includes a city, borough, township, municipal authority and public utility engaged in supplying water or water service.
Section 502.  Termination of service.
  (a)  General rule.--Except as set forth in subsection (c), all of the following apply:
    (1)  If the owner or occupant of a premises served by a water utility neglects or fails to pay, for a period of 30 days from the due date, a rental, rate or charge for sewer, sewerage or sewage treatment service imposed by a municipality or municipal authority, the water utility shall, at the request and direction of the municipality, the authority or a city, borough or township to which the authority has assigned its claim or lien, shut off the supply of water to the premises until all overdue rentals, rates, charges and associated penalties and interest are paid.
    (2)  If the authority, city, borough or township also supplies water to premises, the authority, city, borough or township is authorized to shut off the supply of water to the premises.
    (3)  If the rental rate or charge for sewer, sewerage or sewage treatment service is imposed by a municipality as lessee of an authority and the lessee also supplies water to the premises, the municipality is authorized to shut off the supply of water to the premises without prior request from the authority or without prior assignment of its claim or lien for the service.
  (b)  Written notice.--Except as set forth in subsection (c), all of the following apply:
    (1)  In no case shall the water supply to premises be shut off until ten days after a written notice of intention to do so has been posted at a main entrance and mailed to the person liable for payment of the rentals and charges and the owner of the property or property manager.
    (2)  If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of the claim and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been judicially determined.
  (c)  Exception.--Prior to discontinuing service in a residential building as defined under the act of November 26, 1978 (P.L.1255, No.299), known as the Utility Service Tenants Rights Act, a water utility shall comply with the provisions of that act.
  (d)  Failure of previous lessee to pay bill.-- Nothing in this section shall be construed to authorize an authority or privately owned sewer or water company to shut off or deny water service to a lessee for failure of a previous lessee to pay a water or sewer service rate, rental or charge.
Section 503.  Submission of water meter readings and flat-rate water bills.
  A water utility shall, at the request of an authority, supply to the authority, on or before the 15th day of the month following the month during which water bills are issued, a list of all water meter readings and flat-rate water bills issued during the preceding calendar month and the basis of

# Exhibit J

Exhibit (J)



Kitchen

Playland 06/23 11:34:41 AM

# Exhibit K

Exhibit (K)  Pg 1 of 2



Kitchen

Played back 10/25/11 29 28 AM



Exhibit(K)
Pg 2 of

# Exhibit L

*Exhibit (L) pg 1 of 4*

## EXHIBIT L – SCHEDULE OF COMMERCIAL LIABILITY FOR RIGHTS VIOLATIONS

**This schedule is incorporated by reference into the Verified Complaint and applies to all named Defendants upon service. All fees listed below are per violation, per day where applicable, and reflect the commercial value of infringements upon Plaintiff's secured rights, bodily integrity, emotional and psychological well-being, medical hardship, and private property.**

| Violation Type | Commercial Liability (USD) |
|---|---|
| Unlawful Utility Shutoff in Violation of 66 Pa.C.S. § 1406(f) | $75,000 per occurrence |
| Denial of Access to Medical Necessity Water (Kidney Failure, Rhabdomyolysis Risk) | $150,000 per day |
| Failure to Honor Valid Medical Certificate | $50,000 per occurrence |
| Trespass on Private Property Without Due Process | $25,000 per person, per entry |
| Coercion to Pay Disputed Balance During Protected Period | $50,000 per attempt |
| Emotional Distress and Psychological Harm to Disabled Veteran | $100,000 flat rate |
| Failure to Respond in Good Faith to Billing Dispute Affidavit | $10,000 per day post-deadline |
| Violation of Due Process & Equal Protection (14th Amendment) | $75,000 per violation |
| ADA Title II Violation (Medical Discrimination) | $100,000 per incident |
| Intimidation or Surveillance by Law Enforcement Without Legal Cause | $35,000 per officer, per visit |
| Refusal to Reinstate Water Service After Proof of Medical Need | $50,000 per day delayed |
| Unlawful Demand for Payment Under Duress or Threat | $75,000 per instance |
| Suppression or Disregard of UCC Notice, Affidavit, or Private Negotiable Instrument | $20,000 per document ignored |



# AUTHORITY FOR FINES (DAMAGES) CAUSED BY CRIMES BY GOVERNMENT OFFICERS:
## APPLICABLE TO AUTHORIZING BODIES, CAPTAINS, CHIEFS, SUPERVISORS, EMPLOYERS, AGENTS, CLERKS, AND ADMINISTRATORS.

These Damages (charged per COUNT), in part, were determined by THE GOVERNMENT ITSELF for the violation listed:

| BREACH | PENALTY | AUTHORITY |
|---|---|---|
| VIOLATION OF OATH OF OFFICE | $250,000.00 | 18 USC § 3571<br>28 USC § 3002(15) |
| ARMED ABUSE OF OFFICE | $200,000.00 | |
| ARMED ABUSE OF AUTHORITY | $200,000.00 | |
| ARMED USE OF EMERGENCY LIGHTING IN A NON-EMERGENCY | $200,000.00 | |
| ARMED USE OF EMERGENCY SIREN IN A NON-EMERGENCY | $200,000.00 | |
| ARMED ASSAULT AND BATTERY | $200,000.00 | |
| ARMED THREAT OF VIOLENCE | $200,000.00 | |
| ARMED COERCION | $200,000.00 | |
| DENIED PROPER WARRANT(S) | $250,000.00 | 18 USC § 3571 |
| DENIED RIGHT OF REASONABLE DEFENSE ARGUMENTS | $250,000.00 | 18 USC § 3571 |
| DEFENSE EVIDENCE (RECORDS) | $250,000.00 | 18 USC § 3571 |
| DENIED RIGHT TO TRUTH IN EVIDENCE | $250,000.00 | 18 USC § 3571 |
| ARMED VIOLATION OF DUE PROCESS | $200,000.00 | |
| SLAVERY (Forced Compliance to contracts not held) | $250,000.00 | 18 USC § 3571 |
| DENIED PROVISIONS IN THE CONSTITUTION | $250,000.00 | 18 USC § 3571 |
| ARMED TREASON, WAR AGAINST AMERICANS | $250,000.00 | 18 USC § 3571 |
| GENOCIDE AGAINST HUMANITY | $1,000,000.00 | 18 USC § 1091 |
| APARTHEID | $1,000,000.00 | |
| ARMED DEPRIVATION OF RIGHTS UNDER COLOR OF LAW | $200,000.00 | 18 USC § 242 |
| EMOTIONAL DISTRESS | $200,000.00 | 32 CFR § 536.77(a)(3)(vii) |
| MENTAL ANGUISH ABUSE | $200,000.00 | 42 CFR § 488.301 |
| PEONAGE (Felony) | $200,000.00 | 18 USC § 1581<br>42 USC § 1994 |

Exhibit (L) 30f4

| | | |
|---|---|---|
| UNLAWFUL INCARCERATION | $200,000.00 | |
| MALICIOUS PROSECUTION | $200,000.00 | |
| DEFAMATION OF CHARACTER | $200,000.00 | |
| SLANDER | $200,000.00 | |
| LIBEL | $200,000.00 | |
| ARMED TRESPASS | $200,000.00 | |
| NEGLECT/FAILURE TO PROTECT/ACT | $200,000.00 | 18 USC § 1621<br>42 USC § 1986 |
| ARMED GANG PRESSING | $200,000.00 | |
| ARMED LAND PIRACY/PLUNDER | $200,000.00 | |
| UNAUTHORIZED BOND PRODUCTION | $200,000.00 | |
| ARMED FORGERY | $200,000.00 | |
| ARMED EMBEZZLEMENT | $200,000.00 | |
| ARMED STALKING | $200,000.00 | |
| ARMED IMPERSONATING A PUBLIC OFFICIAL | $200,000.00 | |
| ACTING AS AGENTS OF FOREIGN PRINCIPLES | $200,000.00 | 18 USC § 219 |
| ARMED TORTURE | $200,000.00 | |
| ARMED OPERATING STATUTES WITHOUT BOND | $200,000.00 | |
| EXPLOITATION OF A LEGAL JUSTICE MINORITY GROUP BY BAR CLOSED UNION COURTS- CIVIL RIGHTS | $1,000,000.00 | |
| BAR VIOLATION OF ANTI-TRUST LAWS | $200,000.00 | |
| MISAPPROPRIATION OF TAXPAYER FUNDS | $200,000.00 | 18 USC § 641-664 |
| VIOLATIONS OF THE UNIVERSAL DECLARATION OF HUMAN RIGHTS ARMED BREACH OF TRUST | $200,000.00 | |
| ARMED DISTURBING THE PEACE | $200,000.00 | |
| ARMED KIDNAPPING | $200,000.00 | 18 USC § 1201 |
| ARMED MALFEASANCE/MALPRACTICE | $200,000.00 | 22 CFR § 13.3 |
| ARMED MISREPRESENTATION/PERSONAGE | $200,000.00 | |
| MISPRISON OF FELONY | $500.00 | 18 USC § 4 |
| ARMED CONSPIRACY AGAINST RIGHTS OF PEOPLE | $200,000.00 | 18 USC § 241 |
| ARMED CRIMINAL EXTORTION/ECONOMIC OPPRESSION | $200,000.00 | 18 USC § 141<br>18 USC § 872<br>25 CFR § 11.417 |

| ARMED EXTORTION OF RIGHTS | $200,000.00 | Title 15 |
|---|---|---|
| ARMED ROBBERY | $200,000.00 | |
| ARMED THEFT BY FORCED REGISTRATION | $200,000.00 | |
| MAIL THREATS | $5,000.00 | 18 USC § 876 |
| MAIL FRAUD | $10,000.00 | 18 USC § 1341 |
| ARMED FRAUD | $10,000.00 | 18 USC § 1001 |
| ARMED VIOLATION OF LIEBER CODE AGAINST NON-COMBATANTS | $200,000.00 | |
| ARMED WRONGFUL ASSUMPTION OF STATUS/STANDING | $200,000.00 | |
| ARMED FALSIFICATION OF DOCUMENTS/RECORD | $10,000.00 | 18 USC § 1001 26 USC § 7701(a)(1) |
| ARMED FICTITIOUS OBLIGATIONS | $200,000.00 | 18 USC § 514 |
| ARMED PERJURY | $2,000.00 | 18 USC § 1621 |
| ARMED SUBORDINATION OF PERJURY | $2,000.00 | 18 USC § 1622 |
| ARMED RACKETEERING (Criminal, Felony) | $200,000.00 | 18 USC § 1961-1968 |
| ARMED RACKETEERING (Civil) | $200,000.00 | |
| Wages Taken | $triple sustained damages | 18 USC § 1964 (c) |

Debtors are responsible for any IRS obligations resulting from the discharge or cancellation of any debts, as well as earned income resulting from accepted settlements.

"Immunity" is invalid, as validity would violate U.S. Constitution Article 2 ¶ IV; 18 USC § 241, 42 USC § 1983, 42 USC § 1985, 42 USC § 1986, and state Constitutions. **The listed laws AUTHORIZE and/or MANDATE removal from public office!**

Violations of law are legally unassailable due to precedents (violations of law) established by court cases. Such situations violate numerous specifically stated intents and purposes of the Constitution, as set forth in the Preamble.

## APPLICABLE TO ANYONE IN ANY BRANCH OF GOVERNMENT

# Exhibit M

July 22nd, 2025

**Prothonotary**
**Lycoming County Court of Common Pleas**
**48 West Third Street**
**Williamsport, PA 17701**

Re: Dion Storm Holland v. Jersey Shore Area Joint Water Authority, et al.
Docket No. CV-25-00952

Dear Prothonotary:

Please find enclosed for filing the following supplemental exhibits in the above-captioned matter:

• Exhibit M – Water Usage Charts
• Exhibit N – Affidavit of Jessica D. Wileman
• Exhibit N-1 – Veterinary Record (July 3, 2025)
• Exhibit N-2 – Veterinary Record and Invoice (July 9–11, 2025)
• Exhibit O – Combined Certified Mail Return Receipts (Proof of Service of Motion for Contempt and
Proposed Order)

A Table of Exhibits and a Certificate of Service are also enclosed.

Kindly time-stamp a copy of this cover letter for my records and return it to me in the enclosed
self-addressed envelope if possible.

Thank you for your assistance.

Respectfully submitted,

Dion Storm Holland
Pro Se Plaintiff
566 High Street
Jersey Shore, Pennsylvania 17740

**IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA**
**CIVIL ACTION – LAW**

DION STORM HOLLAND,                        :
  Plaintiff,                              :
                              :          Docket No. CV-25-00952
v.                                        :
                              :

JERSEY SHORE AREA JOINT
WATER AUTHORITY and
TIADAGHTON MUNICIPAL SEWER AUTHORITY,
  Defendants.

## TABLE OF EXHIBITS

Exhibit M – Water Usage Charts

Exhibit N – Affidavit of Jessica D. Wileman

Exhibit N-1 – Veterinary Record from July 3, 2025 (Initial Visit)

Exhibit N-2 – Veterinary Record and Invoice (Two Pages) from July 9–11, 2025 (Emergency Surgery)

Exhibit O – Combined Certified Mail Return Receipts (Proof of Service of Plaintiff's Motion for Contempt and Proposed Order)

Respectfully submitted,

Date: ___Jun 22nd___, 2025

_[signature]_
Dion Storm Holland
Pro Se Plaintiff
566 High Street
Jersey Shore, PA 17740

**IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA**
**CIVIL ACTION – LAW**

DION STORM HOLLAND,                          :
  Plaintiff,                                     :
                                                 :
                                                 :    Docket No. CV-25-00952
v.                                             :
                                                 :
JERSEY SHORE AREA JOINT                        :
WATER AUTHORITY and
TIADAGHTON MUNICIPAL SEWER AUTHORITY,
  Defendants.

### CERTIFICATE OF SERVICE

I, DION STORM HOLLAND, certify that on _____ July 22nd _____, 2025, I served the following documents by **Certified Mail, Return Receipt Requested,** upon all parties listed below:

- Exhibit M – Water Usage Charts
- Exhibit N – Affidavit of Jessica D. Wileman
- Exhibit N-1 – Veterinary Record (July 3, 2025)
- Exhibit N-2 – Veterinary Record and Invoice (July 9–11, 2025)

Additionally, attached hereto as **Exhibit O** are true and correct copies of the certified mail return receipts (PS Form 3811) confirming that on _July 11th, 19th_, 2025, I previously served **Plaintiff's Motion for Contempt and Proposed Order** by **Certified Mail, Return Receipt Requested,** upon the same parties.

Service was made upon:

**Paul Ryan, Esq.**
Coploff, Ryan & Houser
136 East Water Street
Lock Haven, PA 17745

**Jersey Shore Area Joint Water Authority**
1111 Bardo Avenue
Jersey Shore, PA 17740

**Tiadaghton Valley Municipal Authority**
290 Rice Road
Jersey Shore, PA 17740

Date: July 22nd, 2025

Dion Storm Holland
Pro Se Plaintiff
566 High Street
Jersey Shore, PA 17740

**EXHIBIT M**

Fluctuating Utility Usage and Billing Irregularities (March – June 2025)

Plaintiff includes the following data as Exhibit M to demonstrate inconsistent and unexplained fluctuations in billed usage amounts and associated charges for water and sewer services, suggesting inaccurate metering, improper estimation practices, or potential overbilling by the Defendants.

| Billing Period | Water Usage (Gallons) | Sewer Usage (Gallons) | Billed Amount |
|---|---|---|---|
| March 2025 | 3,210 gallons | 3,120 gallons | $153.67 |
| April 2025 | 8,050 gallons | 8,300 gallons | $298.91 |
| May 2025 | 3,300 gallons | 3,190 gallons | $161.00 |
| June 2025 | 8,200 gallons | 8,390 gallons | $307.86 |

Plaintiff notes the following irregularities:

1. Alternating Usage Spikes: Usage nearly triples every other month without any change in household occupancy, habits, or leaks.

2. Sewer Usage Exceeds Water Usage: In some months, the recorded sewer usage exceeds water usage—an impossibility unless meters are improperly calibrated or usage is estimated arbitrarily.

3. Billing Discrepancies: Corresponding bills fluctuate drastically, rising from $153.67 to over $307 within 30-day cycles.

Plaintiff contends these irregularities further justify the demand for a forensic audit and raise reasonable doubt as to the accuracy, fairness, and legitimacy of Defendant's accounting and shutoff actions.

8:49
Case 4:25-cv-01323-DFB     Document 10-1     Filed 08/01/25     Page 54 of 93
jerseyshore.authoritypay.com

Exhibit
(A)
Pg 1of2

Total                                    $003.04

## WATER Usage Report ▼

Current                Previous

3,000.00              8,000.00
gal                   gal

Total

29,000.00
gal

06/25     05/25     04/25     03/25     02/25     01/25

## SEWER Usage Report ▼

jerseyshore.authoritypay.com

Exhibit (M)

Pg. 2 of 2

gal

06/25    05/25    04/25    03/25    02/25    01/25

## SEWER Usage Report ▼

Current                    Previous

3,000.00                   8,000.00
gal                        gal

Total

29,000.00
gal

8,000

7,000

6,000

5,000

Gallons 4,000

3,000

2,000

1,000

0

06/25    05/25    04/25    03/25    0

# Exhibit N



# IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

DION STORM HOLLAND,        :
    Plaintiff,                   :
                               :             Docket No. CV-25-00952
v.                            :
                               :
JERSEY SHORE AREA JOINT
WATER AUTHORITY and
TIADAGHTON MUNICIPAL SEWER AUTHORITY,
    Defendants.

## AFFIDAVIT OF JESSICA D. WILEMAN

I, JESSICA DANIELLE WILEMAN, being duly sworn according to law, depose and state as follows:

1. I am over the age of eighteen (18), competent to testify to the matters stated herein, and have personal knowledge of the facts set forth below.

2. I reside at 566 High Street, Jersey Shore, Pennsylvania, and I am the majority owner (90%) of Ambushbullies LLC, a business engaged in breeding & showing of ABKC and UKC Registered XL American Bullys.

3. I am responsible for regularly checking and collecting all mail delivered to our residence. I check the mailbox daily.

4. I affirm under oath that we have never received the first bill that Defendants claim to have mailed and entered as **Exhibit 1** in this case. At no time did I find such a bill in our mailbox or receive it by any other means. If such a bill had been delivered, I would have seen it during my regular mail collection.

5. Because of Defendants' unlawful termination of water service from June 23, 2025 through June 30, 2025, our home was without clean water, which directly endangered our animals and interfered with the operations of Ambushbullies LLC.

6. One of our female dogs, a key part of our breeding program, went into a life-threatening medical crisis during this period and required emergency surgery. The lack of fresh, sanitary water during the shutoff period contributed to her developing a severe uterine infection while in heat, resulting in an emergency operation and permanent loss of her reproductive ability.

7. This particular female was the last remaining offspring of my original foundation dog — the dog I owned before ever starting Ambushbullies LLC and before I met Dion Storm Holland. That foundation dog's bloodline was the cornerstone of our entire breeding program. With this female now unable to

reproduce, it is no longer possible to continue that bloodline. This loss is permanent, both financially and to the core of our business's purpose, and has caused significant emotional and economic harm.

8. I make this Affidavit to support Plaintiff's claims in this action and to verify that we did not receive the bill Defendants rely upon, and that their actions have caused direct and measurable damage to our household and business.

9. Attached hereto as Exhibit N-1 is a true and correct copy of the veterinary record from the initial visit on July 3, 2025. Attached hereto as Exhibit N-2 are true and correct copies of the two-page veterinary record and invoice from the emergency surgery performed between July 9 and July 11, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _July 22nd_, 2025

_Jessica D Wileman_
Jessica Danielle Wileman
Affiant

Subscribed and sworn before me this 22 day of _July_, 2025.

_Blair Bitner_
Notary Public
My commission expires: _2/7/2026_

Commonwealth of Pennsylvania - Notary Seal
Blair Bitner Notary Public
Lycoming County
My Commission Expires 2/7/2026
Commission Number 1413236



# INVOICE

**RoseBird Veterinary Center, LTD**

204 Thomas Street
Jersey Shore, PA  17740
(570) 865-6735

**FOR:**  Dion Holland
566 High Street
Jersey Shore, PA  17740
(814) 574-9664

**Printed:** 07-03-25 at 3:59p
**Date:** 07-03-25
**Account:** 10342
**Invoice:** 198282

| Date | For | Qty | Description | Price | Discount | Price |
|------|-----|-----|-------------|-------|----------|-------|
| Services by Andy Vangorder DVM | | | | | | |
| 07-03-25 | Luna | 1 | Exam - Sick / Injured | | | 41.00 |
| 07-03-25 | | 1 | Rabies Vaccine, 1 Year | | | 21.00 |
| 07-03-25 | | 1 | Mometamax Otic 30gm | | | 68.00 |
| 07-03-25 | | 1 | Mal-A-Ket Otic 4 oz | | | 28.00 |

| | | |
|---|---|---|
| Total charges, this invoice... | | 158.00 |
| Your old balance... | | 0.00 |
| Total payment(s) received... | | 158.00 |
| 07-03-25  Mastercard payment | 158.00 | |
| Your new balance... | | 0.00 |

Reminders for: **Luna**  (Weight: 90.6 lbs - 3y)          Last done

| | | |
|---|---|---|
| 07-03-26 | Rabies Vaccine, 1 Year | 07-03-25 |

**Luna's weight history** (in lbs)

| | |
|---|---|
| 07-03-25 | 90.60 |

Exhibit N-2

Pg 1 of 2



| | **VCA Metzger Animal Hospital** |
|---|---|
| | 1044 Benner Pike| State College, PA 16801| (814) 237 - 5333 |

**John Griffiths, DVM** | Date: **7/11/2025 at 13:32** | Invoice: **6568296458** | Cashier: **Kaitlin D**

### Client

Jessica Wileman (#66769)
**Dion Holland**
566 High St
Jersey Shore, PA 17740

### Patient

Luna (#161540)
Species: Canine (Pitbull Mix)
Sex: Female Spayed | Color: Black And White
Birth: 10/09/2021 | Age: 3y 9m | Weight: 80.00 lb

### Detailed Visit Information

| Date | Description | Qty | Price | Tax | Total Price |
|---|---|---|---|---|---|
| 7/9/2025 | Emergency Exam | 1.00 | $179.00 | $0.00 | $179.00 |
| | Ultrasound FAST Test | 1.00 | $149.00 | $0.00 | $149.00 |
| | Catalyst Chem17 CBC Lytes SDMA EP | 1.00 | $278.50 | $0.00 | $278.50 |
| | - Hospitalization Setup | 1.00 | $39.95 | $0.00 | $39.95 |
| | - Hospitalization/hour | 1.00 | $10.00 | $0.00 | $10.00 |
| | - IV Fluids Setup | 1.00 | $179.00 | $0.00 | $179.00 |
| | - Fluids IV Maintenance/hour | 1.00 | $5.55 | $0.00 | $5.55 |
| | - FentaNYL (gen) 50mcg/mL/mL ADD | 9.00 | $21.23 | $0.00 | $21.23 |
| | - Lidocaine (gen) 20mg/mL/mL | 34.00 | $12.86 | $0.00 | $12.86 |
| | Idexx Cortisol SNAP Test | 1.00 | $136.70 | $0.00 | $136.70 |
| | IV Fluid Bolus/mL | 600.00 | $55.65 | $0.00 | $55.65 |
| | Ampicillin/Sulbactam (gen) 3g 300mg/mL/mL | 4.00 | $41.15 | $0.00 | $41.15 |
| | Maropitant(Cerenia)10mg/mL/mL | 4.00 | $110.99 | $0.00 | $110.99 |
| | Enrofloxacin (Baytril) 22.7mg/mL/mL | 8.60 | $57.50 | $0.00 | $57.50 |
| | Fluids IV Maintenance/hour | 7.00 | $38.85 | $0.00 | $38.85 |
| | Hospitalization/hour | 7.00 | $70.00 | $0.00 | $70.00 |
| | Catalyst CRP (C-reactive protein) IDX | 1.00 | $79.55 | $0.00 | $79.55 |
| 7/10/2025 | Fluids IV Maintenance/hour | 7.00 | $38.85 | $0.00 | $38.85 |
| | Hospitalization/hour | 7.00 | $70.00 | $0.00 | $70.00 |
| | Ampicillin/Sulbactam (gen) 3g 300mg/mL/mL | 4.00 | $41.15 | $0.00 | $41.15 |
| | Pyometra | 1.00 | $1,111.20 | $0.00 | $1,111.20 |
| | - Block Local Anesthesia | 1.00 | $59.95 | $0.00 | $59.95 |
| | - Anesthesia 1-2.5hr Risk 1 | 1.00 | $629.00 | $0.00 | $629.00 |
| | - Mechanical Ventilation (Anesthesia) | 1.00 | $69.95 | $0.00 | $69.95 |
| | - Nail Trim under Anesthesia/Sedation | 1.00 | $0.00 | $0.00 | $0.00 |
| | - Ear Clean under Anesthesia/Sedation | 1.00 | $0.00 | $0.00 | $0.00 |
| | - Ligasure Small Jaw Sealer/Divider | 1.00 | $479.35 | $0.00 | $479.35 |
| | - Surgery Suction | 1.00 | $41.70 | $0.00 | $41.70 |
| | - Surgical Flush/Lavage ADD | 1.00 | $41.70 | $0.00 | $41.70 |
| | Pre/Post Procedure X-Ray | 1.00 | $82.95 | $0.00 | $82.95 |
| | Enrofloxacin (Baytril) 22.7mg/mL/mL | 7.80 | $55.65 | $0.00 | $55.65 |
| | - Infused Medication 15-45min | 1.00 | $37.90 | $0.00 | $37.90 |
| | Ampicillin/Sulbactam (gen) 3g 300mg/mL/mL | 3.60 | $40.79 | $0.00 | $40.79 |
| | Hospitalization/hour | 12.00 | $120.00 | $0.00 | $120.00 |
| | Fluids IV Maintenance/hour | 12.00 | $66.60 | $0.00 | $66.60 |
| | - FentaNYL (gen) 50mcg/mL/mL ADD | 9.00 | $21.23 | $0.00 | $21.23 |
| | added 9ml Fentanyl to NaCl. cmf | | | | | |

For information on how we collect and use information about you and your pet, and how you may opt-out of some uses,
please see our Privacy Policy at vcahospitals.com/privacy-policy.

Thank you for trusting us with your pet's care.  Your friends at VCA Metzger Animal Hospital.

Exhibit N-2
pg 2 of 2



**VCA Metzger Animal Hospital**
1044 Benner Pike | State College, PA 16801 | (814) 237 - 5333

**John Griffiths, DVM** | Date: **7/11/2025 at 13:32** | Invoice: 6568296458 | Cashier: **Kaitlin D**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| | - Lidocaine (gen) 20mg/mL/mL | 34.00 | $12.86 | $0.00 | $12.86 |
| | added 34ml Lidocaine to NaCl. cmf | | | | |
| | Ondansetron (gen) 2mg/mL/mL | 9.00 | $42.41 | $0.00 | $42.41 |
| | Catalyst Chem17 CBC Lytes Recheck | 1.00 | $279.00 | $0.00 | $279.00 |
| | Catalyst CRP (C-reactive protein) IDX | 1.00 | $79.55 | $0.00 | $79.55 |
| | Catalyst CRP (C-reactive protein) IDX | 1.00 | $79.55 | $0.00 | $79.55 |
| | Fluids IV Maintenance/hour | 5.00 | $27.75 | $0.00 | $27.75 |
| | Hospitalization/hour | 5.00 | $50.00 | $0.00 | $50.00 |
| | Ondansetron (gen) 2mg/mL/mL | 9.00 | $42.41 | $0.00 | $42.41 |
| | Ampicillin/Sulbactam (gen) 3g 300mg/mL/mL | 3.60 | $40.79 | $0.00 | $40.79 |
| | Maropitant(Cerenia)10mg/mL/mL | 3.60 | $103.65 | $0.00 | $103.65 |
| | Enrofloxacin (Baytril) 22.7mg/mL/mL | 7.80 | $55.65 | $0.00 | $55.65 |
| | - Infused Medication 15-45min | 1.00 | $37.90 | $0.00 | $37.90 |
| | Administer Meds (Client Owned) Inpatient | 1.00 | $0.00 | $0.00 | $0.00 |
| | Gabapentin (gen) 800mg Tab | 21.00 | $27.83 | $0.00 | $27.83 |
| | Carprofen (Rimadyl) 75mg Caplet | 20.00 | $45.60 | $0.00 | $45.60 |
| 7/11/2025 | Fluids IV Maintenance/hour | 7.00 | $38.85 | $0.00 | $38.85 |
| | Hospitalization/hour | 7.00 | $70.00 | $0.00 | $70.00 |
| | Ampicillin/Sulbactam (gen) 3g 300mg/mL/mL | 3.60 | $40.79 | $0.00 | $40.79 |
| | Enrofloxacin (Baytril) 136mg Tab | 20.00 | $57.60 | $0.00 | $57.60 |
| | AmoxiClav (Clavamox) 125mg Chew | 28.00 | $65.84 | $0.00 | $65.84 |
| | AmoxiClav (Clavamox) 375mg Chew | 28.00 | $115.12 | $0.00 | $115.12 |
| | Proviable Forte Kit K9 over 20lbs | 1.00 | $28.82 | $1.73 | $30.55 |
| | Hospitalization/hour | 6.00 | $60.00 | $0.00 | $60.00 |
| | Fluids IV Maintenance/hour | 6.00 | $33.30 | $0.00 | $33.30 |
| | Catalyst CRP (C-reactive protein) IDX | 1.00 | $79.55 | $0.00 | $79.55 |
| | Catalyst Chem17 CBC Lytes IDX | 1.00 | $319.00 | $0.00 | $319.00 |
| | Buster Clic Elizabethan Collar Size 30cm | 1.00 | $7.42 | $0.45 | $7.87 |

Subtotal: $6,316.87

### Invoice Summary

| Patient Name | Total Price | Total Tax | Total Due |
|---|---|---|---|
| Luna | $6,314.69 | $2.18 | $6,316.87 |

| | | | |
|---|---|---|---|
| Discover - 8217 | $2,816.87 | Prev Balance: | -$3,500.00 |
| | | Total Due: | $6,316.87 |
| | | Amount Paid: | $2,816.87 |
| | | Amount Due: | $0.00 |

For information on how we collect and use information about you and your pet, and how you may opt-out of some uses, please see our Privacy Policy at vcahospitals.com/privacy-policy.

Thank you for trusting us with your pet's care.  Your friends at VCA Metzger Animal Hospital.

# Exhibit O

Exhibit (O)
pg 1 of 3

---

**Receipt 1:**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Jersey Shore Joint
Water Authority
1111 Bardo Avenue
Jersey Shore, PA 17740

9590 9402 9374 5002 8363 08

2. Article Number (Transfer from service label)
9589 0710 5270 0851 1205 72

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X Chad Marshall
☐ Agent
☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
Chad Marshall    7|31|25
D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No
PO Box 5046
Jersey Shore PA 17740

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

---

**Receipt 2:**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Jersey Shore Water
Authority
1111 Bardo Avenue
Jersey Shore PA, 17740

9590 9402 9374 5002 8363 39

2. Article Number (Transfer from service label)
9589 0710 5270 0851 1206 19

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X Chad Marshall
☑ Agent
☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
Chad Marshall    07/11/2025
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... Mail
☐ ... Mail Restricted Delivery ($500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

---

**Receipt 3:**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Jersey Shore
Water Authority
1111 Bardo Ave
Jersey Shore PA 17740

9590 9402 9374 5002 8361 31

2. Article Number (Transfer from service label)
9589 0710 5270 0851 1206 40

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X Janet Hillyard
☐ Agent
☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
JANET HILLYARD    7/23/2025
D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No
P. O Box 5046
Jersey Shore PA.
17740

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... Mail
☐ ... Mail Restricted Delivery ...
☐ Priority Mail Express®
☑ Registered Mail™
☑ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

Exhbit (O)
Pg 2 of 3

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tiadaghton valley Municipal
authority "sewage"
290 Rice Road
Jersey Shore PA 17740

||||||||||||||||||||||
9590 9402 9374 5002 8363 15

2. Article Number (Transfer from service label)

9589 0710 5270 0851 1205 89

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Gretchen Speich_
☐ Agent
☐ Addressee

B. Received by (Printed Name)  GRETCHEN SPEICHER
C. Date of Delivery  7/03/202e

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

P.O.BOX 5039
Jerseyshore PA 17740

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   (00)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tiadaghton valley
municipal authority
290 Rice Road.
Jersey Shore PA 17740

||||||||||||||||||||||
9590 9402 9374 5002 8363 53

2. Article Number (Transfer from service label)

9589 0710 5270 0851 1206 33

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Gretchen Speicher_
☐ Agent
☐ Addressee

B. Received by (Printed Name)  GRETCHEN SPEICHER
C. Date of Delivery  7/14/05

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   (00)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tia daghton
Municipal sewer Authority
290 rice Road.
Jersey Shore PA 17740

||||||||||||||||||||||
9590 9402 9374 5002 8361 24

2. Article Number (Transfer from service label)

9589 0710 5270 0851 1206 57

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Gretchen Speicher_
☐ Agent
☐ Addressee

B. Received by (Printed Name)  GRETCHEN SPEICHER
C. Date of Delivery  7/14/05

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

P.O.BOX 5039
JerseyShore PA 17740

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   (00)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

Exhibit (O)
Pg 3 of 3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paul Ryan, Esq.
:oploff, Ryan & Houser
136 East Water St.
Lock Haven PA 17745

9590 9402 9374 5002 8363 60

2. Article Number *(Transfer from service label)*

9589 0710 5270 0851 1206 26

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _C. Crays_

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery
7/14/202

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ~~Mail~~
☐ Mail Restricted Delivery
~~(over $500)~~

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

# Exhibit P

**IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA**
**CIVIL ACTION**

DION STORM HOLLAND,                          :
   Plaintiff,                                              :
                                  :
   v.                                                      :     No. CV-2025-00952
                                    :
JERSEY SHORE AREA JOINT              :
WATER AUTHORITY, et al.,                    :
   Defendants.                                         :

## CERTIFICATE OF SERVICE

I, Dion Storm Holland, hereby certify that on the __2nd__ day of July, 2025, I served true and correct copies of the following legal documents by U.S. Certified Mail, return receipt requested, postage fully prepaid, to the below-listed entities:

**Documents Served:**
1. Notice of Correction and Reassertion of Billing Dispute
2. Corrected Billing Error Affidavit of Truth
3. Affidavit of Truth Regarding Medical Certification and Billing Misconduct
4. Notice of Fault and Opportunity to Cure
5. Notice of Commercial Liability
6. Fee Schedule (Exhibit L)
7. Cover Letter

**Recipients:**
- Jersey Shore Area Joint Water Authority
  1111 Bardo Avenue
  Jersey Shore, PA 17740

- Tiadaghton Valley Municipal Authority
  290 Rice Road
  Jersey Shore, PA 17740

I affirm under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct.

Executed this __2nd__ day of July, 2025.

Respectfully submitted,

_UCC 1-308_
_without prejudice_

**Dion Storm Holland**
566 High St
Jersey Shore, PA 17740
Phone: (814) 574-9664
Email: subarudion@gmail.com
Pro Se

## NOTICE OF CORRECTION AND REASSERTION OF BILLING DISPUTE

Dion Storm Holland

566 High Street

Jersey Shore, Pennsylvania [17740]

TO: Jersey Shore Area Joint Water Authority

AND: Tiadaghton Municipal Sewer Authority

DATE: July 1, 2025

RE: Formal Notice of Correction and Lawful Cure Under 66 Pa.C.S. § 1406(b)(1)

Dear Authorities,

This Notice serves to formally correct any procedural defect previously alleged regarding my prior Billing Error Affidavit and to reaffirm that all billing-related disputes remain active, unresolved, and pending judicial determination.

Pursuant to 66 Pa.C.S. § 1406(b)(1), enclosed please find a Corrected Affidavit of Billing Error, now submitted under oath, duly notarized, and expressly not made for the purpose of delay.

You are now placed on notice that:

- No lawful shutoff action may be taken while this dispute remains unresolved.

- Your attempt to re-issue the same shutoff notice dated June 30, 2025 — including by hand delivery, certified mail, and regular mail — is procedurally defective and executed in bad faith.

- You have failed to post the notice at the residence per your own regulations.

- The billing statements remain disputed under 53 Pa.C.S. § 502(b)(2), which requires judicial determination of claims before termination.

Any further shutoff attempt may constitute retaliation, willful misconduct, and violation of my rights under color of law, subject to future litigation.

You are hereby demanded to:

1. Cease all shutoff attempts immediately.

2. Acknowledge receipt of this correction and adjust your records accordingly.

3. Provide a full forensic audit and contract validation upon request.

Failure to comply shall be construed as bad faith and an ongoing violation of statutory and constitutional rights.

Respectfully,

Dion Storm Holland

566 High Street Jersey Shore, Pennsylvania

Email: subarudion@gmail.com

Phone: (814) 574-9664

Executed this 1st day of July, 2025.

Signature: _____  UCC 1-308
                                       without recourse

DION STORM HOLLAND


Notary Acknowledgment:

Commonwealth of Pennsylvania

County of ___Lycoming___

On this __1st__ day of ___July___, 2025, before me, the undersigned notary public, personally appeared Dion Storm Holland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

Notary Public Signature: ___Blair Bitner___

Name of Notary: ___Blair Bitner___

My Commission Expires: ___2/7/2026___

Notary Seal: (Affix)

Commonwealth of Pennsylvania - Notary Seal
Blair Bitner Notary Public
Lycoming County
My Commission Expires 2/7/2026
Commission Number 1413236

## CORRECTED BILLING ERROR AFFIDAVIT

(Sworn Statement Under 66 Pa.C.S. § 1406(b)(1))

Dion Storm Holland

566 High Street

Jersey Shore, Pennsylvania [17740]

TO: Jersey Shore Area Joint Water Authority

AND: Tiadaghton Municipal Sewer Authority

RE: Correction and Reassertion of Prior Billing Error Notice

I, Dion Storm Holland, a living man, over the age of 18, competent to testify, hereby declare under oath the following facts to be true, correct, and complete to the best of my knowledge:

1. I am the named account holder with Jersey Shore Area Joint Water Authority and Tiadaghton Municipal Sewer Authority for service at 566 High Street, Jersey Shore, Pennsylvania.

2. On or about June 11th, 2025, I issued a Billing Error Affidavit to the Authorities asserting material and procedural discrepancies related to the amounts billed and failure to provide paper bills.

3. At the June 30, 2025 hearing, the Court acknowledged that Defendants failed to comply with mailing procedures under law, but noted my original affidavit did not state that it was "not made for the purpose of delay" and was not notarized under oath, as required under 66 Pa.C.S. § 1406(b)(1).

4. I now resubmit and correct that affidavit under oath, with this statement made voluntarily and not for the purpose of delay, and executed with full awareness of its legal weight.

5. To date, I have not received any paper bills or mailed shutoff notices from either entity, until July 1, 2025, when I received duplicate copies of a new shutoff notice dated June 30, 2025 — one by regular mail and one by certified mail — both referencing an alleged balance of $561.15.

6. Furthermore, I was personally handed this same notice by a field agent on June 30, 2025, while service was being restored, in violation of the Authority's own procedures which require the notice to be posted at the residence — not personally delivered. This undermines any claim of proper delivery or posting under the law.

7. These actions, along with lack of contract, refusal to provide a forensic accounting, and demand for payment under disputed conditions, continue to violate my due process rights, the Pennsylvania Commercial Code, and protections under 53 Pa.C.S. § 502(b)(2), which states that no shutoff shall occur until a dispute is judicially resolved.

8. This affidavit is executed under oath and in full compliance with the statutory requirements of 66 Pa.C.S. § 1406(b)(1).

I hereby demand that no further shutoff or collection action be taken until all disputed matters are judicially and lawfully resolved. This affidavit supersedes and corrects any prior submission for the record.

Executed this 1st day of July, 2025.

Signature: _____ _UCC 1-308_
_without recourse._

DION STORM HOLLAND

Notary Acknowledgment:

Commonwealth of Pennsylvania

County of _Lycoming_

On this _1st_ day of _July_, 2025, before me, the undersigned notary public, personally appeared Dion Storm Holland, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

Notary Public Signature: _Blair Bitner_

Name of Notary: _Blair Bitner_

My Commission Expires: _2/7/2026_

Notary Seal: (Affix)

> Commonwealth of Pennsylvania - Notary Seal
> Blair Bitner Notary Public
> Lycoming County
> My Commission Expires 2/7/2026
> Commission Number 1413236

### AFFIDAVIT OF TRUTH REGARDING UTILITY MEDICAL CERTIFICATION AND BILLING MISCONDUCT

I, Dion Storm Holland, a living man, authorized agent of the estate known as DION HOLLAND, do solemnly swear and affirm the following statements as true, correct, and made in good faith under penalty of perjury under the laws of the united States of America and the Pennsylvania Constitution.

1. On or about June 23, 2025, I hand-delivered a physician-certified Medical Certificate signed by Dr. Sean Burke to Mr. Eric Johnson, manager of the Jersey Shore Area Joint Water Authority ("Authority"), as required under 52 Pa. Code § 56.113.

2. Said certificate included:

   ○ My full name and address (customer);

   ○ Name/address of the afflicted person and relationship (self);

   ○ Anticipated length of affliction;

   ○ Dr. Burke's office contact details;

   ○ His physical signature.

3. Despite being fully compliant with § 56.113, Mr. Johnson refused to accept the certificate and made unauthorized medical inquiries, demanding disclosure of diagnosis and condition, in direct violation of HIPAA, the ADA, and state utility regulations.

4. The Authority then proceeded to execute a shutoff of my water service on June 23, 2025, without due process, violating:

   ○ 52 Pa. Code § 56.113 (Medical Certifications)

   ○ 66 Pa. C.S. § 1406(f) (protection from shutoff with a valid medical certificate)

   ○ 53 Pa. C.S. § 502(b)(2) (requiring judicial determination before termination over a disputed amount)

   ○ JERSEY SHORE AREA JOINT WATER AUTHORITY REGULATIONS, Rule X

5. To date, I have never received a single monthly billing statement via U.S. Mail. The only documents received were:

- A door-hung shutoff notice on June 11, 2025;

- A termination notice handed to me in person by a field worker during restoration on June 30, 2025;

- Copies of that same termination notice, mailed by certified and regular mail on July 1, 2025, after the hearing date.

6. This sequence of events reflects deliberate attempts to deprive me of notice, access, and compliance opportunities, constituting constructive fraud, retaliation, and systemic disability-based discrimination.

7. I declare that all billing disputes remain pending and unresolved, and all alleged amounts are in controversy and under formal billing error dispute supported by Affidavits of Truth and Forensic Audit Demand.

8. All further attempts to demand payment, issue shutoff threats, or impose penalties, without resolution of these disputes and proper accommodation of medical certification, shall be deemed acts of bad faith, civil conspiracy, and potential violations of 18 U.S.C. §§ 241, 242.

I respectfully reserve all rights, remedies, and defenses.

Without prejudice, UCC 1-308. All rights reserved.

Executed this 2nd day of July, 2025

By: Dion Storm Holland

In care of: 566 High Street, Jersey Shore, Pennsylvania Republic [17740]


Commonwealth of Pennsylvania

County of Lycoming

Subscribed and sworn before me this _2nd_ day of _July_, 2025, by Dion Storm Holland, known to me or satisfactorily proven to be the signer of the foregoing instrument.

_(signature)_

Notary Public

My commission expires: _2/7/2026_

Commonwealth of Pennsylvania - Notary Seal
Blair Bitner Notary Public
Lycoming County
My Commission Expires 2/7/2026
Commission Number 1413236

## NOTICE OF FAULT AND OPPORTUNITY TO CURE
### Affidavit Attached

To:
JERSEY SHORE AREA JOINT WATER AUTHORITY
Attn: Manager, Trustee, or Authorized Representative
1111 Bardo Ave
Jersey Shore, Pennsylvania 17740

And:
TIADAGHTON VALLEY MUNICIPAL AUTHORITY
Attn: Manager, Trustee, or Authorized Representative
290 Rice Rd
Jersey Shore, Pennsylvania 17740

From:
Dion Storm Holland
566 High St
Jersey Shore, Pennsylvania 17740

Date: 07-02-2025

Re: Commercial Presentment, Notice of Billing Error, and Emergency Medical Objection

This NOTICE OF FAULT AND OPPORTUNITY TO CURE is issued to inform you that you are in commercial and legal fault for the failure to honor and cure the items presented in the following documents:
• Billing Error Affidavit of Truth (notarized)
• Notice of Correction and Reassertion of Billing Dispute
• Medical Emergency Certificate presented on June 23, 2025, and again via certified mail.

You unlawfully interrupted water service to a permanently disabled veteran despite having received legal notice of a pending billing dispute and medical hardship.

Further, on July 1, 2025, your agent handed me a new shutoff notice while reconnecting water service. This notice was not properly posted at the premises, violating Pennsylvania utility protocol. Duplicative copies of the same notice were mailed via regular and certified mail the next day.

This constitutes bad faith and procedural abuse, and will not be tolerated.

You have ten (10) days to fully cure and respond to the facts and affidavits already entered into record. Failure to cure will result in formal default and commercial lien filings.

Respectfully,

Dion Storm Holland
All Rights Reserved, Without Prejudice
UCC 1-308 / UCC 3-501 / UCC 3-505

## **NOTICE OF COMMERCIAL LIABILITY**

To:
JERSEY SHORE AREA JOINT WATER AUTHORITY
Attn: Manager, Trustee, or Authorized Representative
1111 Bardo Ave
Jersey Shore, Pennsylvania 17740

And:
TIADAGHTON VALLEY MUNICIPAL AUTHORITY
Attn: Manager, Trustee, or Authorized Representative
290 Rice Rd
Jersey Shore, Pennsylvania 17740

From:
Dion Storm Holland
566 High St
Jersey Shore, Pennsylvania 17740

Date: 07-02-2025

RE: Personal and Commercial Liability for Continuing Injury and Trespass

You are formally served NOTICE OF COMMERCIAL LIABILITY due to your
agents' repeated violations of public trust, rights, and statutory obligations. This
includes:

• Unlawful service interruption despite pending dispute
• Failure to follow posting procedures
• Continued demand for disputed funds after affidavit presentment

Statutes violated include but are not limited to:
• 66 Pa.C.S. § 1406(f)
• 53 Pa.C.S. § 502(b)(2)
• Title II of the ADA
• 42 U.S.C. § 1983
• 18 U.S.C. §§ 241, 242

You now face individual and commercial liability and penalties under Exhibit L
(Fee Schedule). You have ten (10) days to rebut and cure.

Respectfully,

Dion Storm Holland
Trustee, The Nation of Holland Trust
All Rights Reserved, Without Prejudice
UCC 1-308 / UCC 3-505 / 1-103.6

## EXHIBIT L – SCHEDULE OF COMMERCIAL LIABILITY FOR RIGHTS VIOLATIONS

This schedule is incorporated by reference into the Verified Complaint and applies to all named Defendants upon service. All fees listed below are per violation, per day where applicable, and reflect the commercial value of infringements upon Plaintiff's secured rights, bodily integrity, emotional and psychological well-being, medical hardship, and private property.

| Violation Type | Commercial Liability (USD) |
|---|---|
| Unlawful Utility Shutoff in Violation of 66 Pa.C.S. § 1406(f) | $75,000 per occurrence |
| Denial of Access to Medical Necessity Water (Kidney Failure, Rhabdomyolysis Risk) | $150,000 per day |
| Failure to Honor Valid Medical Certificate | $50,000 per occurrence |
| Trespass on Private Property Without Due Process | $25,000 per person, per entry |
| Coercion to Pay Disputed Balance During Protected Period | $50,000 per attempt |
| Emotional Distress and Psychological Harm to Disabled Veteran | $100,000 flat rate |
| Failure to Respond in Good Faith to Billing Dispute Affidavit | $10,000 per day post-deadline |
| Violation of Due Process & Equal Protection (14th Amendment) | $75,000 per violation |
| ADA Title II Violation (Medical Discrimination) | $100,000 per incident |
| Intimidation or Surveillance by Law Enforcement Without Legal Cause | $35,000 per officer, per visit |
| Refusal to Reinstate Water Service After Proof of Medical Need | $50,000 per day delayed |
| Unlawful Demand for Payment Under Duress or Threat | $75,000 per instance |
| Suppression or Disregard of UCC Notice, Affidavit, or Private Negotiable Instrument | $20,000 per document ignored |

### Affidavit of Schedule Authenticity

I, Dion Storm Holland, affirm under penalty of perjury that the attached Exhibit L constitutes my lawful and enforceable Fee Schedule for violations outlined in the Verified Complaint and associated notices served upon Defendants. All commercial liabilities accrued under this schedule are binding and non-negotiable unless rebutted point-for-point within ten (10) days of notice.

Executed this 02 day of July, 2025

_Dion Storm Holland_    UCC 1-308
Dion Storm Holland    without prejudice

State of Pennsylvania
County of Lycoming

Subscribed and sworn to (or affirmed) before me on this 2ᴺᴰ day of July, 2025, by Dion Storm Holland, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public

My Commission Expires: 2/7/2026

```
Commonwealth of Pennsylvania - Notary Seal
        Blair Bitner Notary Public
              Lycoming County
    My Commission Expires 2/7/2026
         Commission Number 1413236
```

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tiadaghton Valley Municipal Authority "Sewage"
290 Rice Road
Jersey Shore PA 17740

9590 9402 9374 5002 8363 15

2. Article Number *(Transfer from service label)*

9589 0710 5270 0851 1205 89

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Gretchen Speigel
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*
GRETCHEN SPEIGHER

C. Date of Delivery
7/03/2026

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

P.O Box 5039
Jersey Shore PA 17740

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery 00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jersey Shore Joint Water Authority
1111 Bardo Avenue
Jersey Shore, PA 17740

9590 9402 9374 5002 8363 08

2. Article Number *(Transfer from service label)*

9589 0710 5270 0851 1205 72

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Chad Marshall
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*
Chad Marshall

C. Date of Delivery
7/3/25

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

PO Box 5046
Jersey Shore PA 17740

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

# Exhibit Q

# Exhibit R

8:24    LTE 

# Notifications    •••    🔍    

**New**    TMA  pricipel listed on
Dun and Bradstreet "Buisness listing" website.

    **Cheryl Brungard** followed you.    •••
2m

# Exhibit S

**Jersey Shore Area Joint Water Authority**

**Account Info**

ACCOUNT # 5000960.00-0    CID # 616
ADDRESS 566 HIGH ST
SERVICE FROM 06/09/2025 TO 07/09/2025

**Meter Readings**

| CURR READING | PREV READING | USED |
|---|---|---|
| 51 | 47 | 4000 |

**Amount Due**

| | |
|---|---|
| Previous Balance | 659.84 |
| Penalty | 9.87 |
| Payments | 0.00 |
| Adjustments | 0.00 |
| Prior Balance | 669.71 |
| SEWER | 49.50 |
| WATER | 52.19 |
| DSI FEE | 5.00 |
| | ------------ |
| Current Charges | 106.69 |
| Pay This Amount | 776.40 |
| After 08/04/2025    Pay | 787.07 |

Bills due within 25 days from last day of service
on bill face. 30 days late 10% added. Day 45 a
10 day shut off notice. Day 57 shut off for
nonpayment. New payment policy-call for details.

PRESORT
FIRST CLASS MAIL
U.S. POSTAGE PAID
PERMIT NO. 73
WILLIAMSPORT PA

**ADDRESS SERVICE REQUESTED**

**Jersey Shore Area Joint Water Authority**
1111 Bardo Avenue
PO BOX 5046
Jersey Shore, PA 17740
(570) 398-1443

ACCOUNT # 5000960.00-0    CID # 616
ADDRESS 566 HIGH ST
Pay    776.40
After 08/04/2025    Pay    787.07

RETURN THIS PORTION WITH PAYMENT

DION HOLLAND
566 HIGH ST
JERSEY SHORE PA 17740-1028

Office Hours - 8 to 4 Monday - Friday
After hours Emergency Phone # 570-398-1158
or 570-502-9492
www.jerseyshorewater.com

*[handwritten]* Exhibit(S)

*[handwritten]* Bill of Exchange
with unlawful shut
off and restoration charge

# Exhibit T

Case 4:25-cv-01323-DFB    Document 10-1    Filed 08/01/25    Page 89 of 93    *Exhibit* (CT.)

pg 1 of 2

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| DION STORM HOLLAND,<br>  Plaintiff | : | No. CV-2025-00952 |
| | : | |
| | : | |
| VS | : | CIVIL ACTION - LAW |
| | : | |
| JERSEY SHORE AREA JOINT | : | |
| WATER AUTHORITY,<br>  Defendant | : | PETITION FOR PRELIMINARY INJUNCTION |

## O R D E R

AND NOW, this 30th day of June, 2025, after hearing on Plaintiff's Emergency Motion for Preliminary Injunctive Relief filed June 27th, 2025, the Court finds by clear and convincing evidence that the Defendant posted a termination notice introduced into evidence as Defendant's Exhibit 2 more than ten (10) days prior to the termination of water service.  The Court further finds by clear and convincing evidence that the Defendant failed to mail the same notice to "the person liable for payment of the rentals and charges and the owner of the property or property manager".

The written documents introduced as Plaintiff's Exhibits A through L consisting of 22 pages do not satisfy the statute with regard to the claim of a just defense because those documents do not indicate that the Plaintiff ever delivered a written statement under oath or affirmation and those documents do not include a statement that "the statement was not executed for the purpose of delay."  Therefore, the Plaintiff has not established that the Plaintiff served notice of a bona fide

1

Holland v Jersey Shore Water Authority – CV-2025-00952

dispute consistent with the terms of the statute.  However, the Court notes that the statute provides that "in no case shall the water supply to premises be shut off until ten days after a written notice of intention to do so has been posted at the main entrance and mailed to the person liable for payment of the rentals and charges and the owner of the property or property manager."

Defendant concedes that Defendant never mailed Defendant's Exhibit 2 to anyone.  Thus, the termination notice was never mailed to anyone as required by the statute.  For that reason, Plaintiff's Emergency Motion for Preliminary Injunctive Relief is granted in part.

Defendant is directed, within twenty-four (24) hours of the filing of this Order to restore water service to 566 High Street, Jersey Shore, Pennsylvania.  That water service may be terminated after ten (10) days after mailing and posting of a new termination notice, unless Plaintiff provides a written notice in the form required by the statute.

BY THE COURT,

_William P. Carlucci_

WILLIAM P. CARLUCCI, JUDGE

cc: Dion Holland - 566 High Street, Jersey Shore, PA 17740
    Paul Ryan, Esquire
        Coploff, Ryan & Houser
        136 East Water Street, Lock Haven, PA 17745
WPC/clj

2

# Exhibit U



**July 1**
8:24 AM

From Jess



 Jun. 30 ▼  2:26:31 PM

 





