# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DION STORM HOLLAND, | : | |
| | : | |
| Plaintiff, | : | **Civil Action No**. 4:25-CV-01323 |
| | : | |
| | : | **The Honorable Keli M. Neary** |
| v. | : | **(JUDGE)** |
| | : | **(MAG. JUDGE CARLSON)** |
| JERSEY SHORE AREA JOINT | : | |
| WATER AUTHORITY, | : | **PLAINTIFF'S BRIEF IN** |
| | : | **OPPOSITION TO DEFENDANT** |
| and | : | **TIADAGHTON VALLEY** |
| | : | **MUNICIPAL AUTHORITY** |
| TIADAGHTON VALLEY | : | **BRIEF IN SUPPORT OF MOTION** |
| MUNICIPAL AUTHORITY, ERIC | : | **TO DISMISS AMENDED** |
| S. JOHNSTON, JOHN DOE 1-5 in | : | **COMPLAINT** |
| their individual capacities, | : | |
| | : | |
| Defendants. | : | |
| | : | |

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT TIADAGHTON

# VALLEY MUNICIPAL AUTHORITY'S BRIEF IN SUPPORT OF MOTION

# TO DISMISS AMENDED COMPLAINT (DOC. 33)

¹ Plaintiff notes that while the Court's Order set a 35-page limit, the substantive portion of this brief runs 41 pages. Defendants themselves sought, and were granted, leave to file oversized briefs, and Jersey Shore has likewise requested extended filings. Plaintiff respectfully submits that his filing is proportional to the complexity of the case and ensures the Court has a full record for decision.

## Table of Contents

- **Introduction** ........................................................................ **4–5**
- **Procedural and Factual Background** ...................... **5–7**
- **Standard of Review** ............................................... **8–9**
- **Argument** .................................................................. **9–44**
  - **I. Procedural Due Process (Count I)** ..................... **9–13**
  - **II. Equal Protection (Count II)** ...............................**14–17**
  - **III. ADA & Rehabilitation Act (Count III)** .....................................**17–20**
  - **IV. Fourth Amendment / §1983 (Count IV)** ...........................**20–22**
  - **V. Takings Clause (Count V)** ...............................**22–24**
  - **VI. Pennsylvania Constitution (Count VI)** ...................................**24–25**
  - **VII. Civil Conspiracy (Count VII)** .............................. **25–27**
  - **VIII. Fraudulent Misrepresentation (Count VIII)** ...................... **27–28**
  - **IX. Unjust Enrichment / Rescission (Count IX)** ........................... **28–29**
  - **X. Unfair Trade Practices & Consumer Protection Law (Count X)..30–31**
  - **XI. Intentional Infliction of Emotional Distress (Count XI)** ........ **31–33**
  - **XII. Breach of Fiduciary Duty (Count XII)** ............................ **34 –36**
  - **XIII. Failure to Train/Supervise (Count XIII)** ............................. **36–39**
  - **XIV. Injunctive & Declaratory Relief (Count XIV)** ................... **39–41**
  - **XV. Punitive Damages (Count XV)** .............................................. **41–43**
- **Conclusion** ......................................................... **43–44**
- **Certificate of Service** ..........................................................**45-46**

## Table of Authorities

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ......................................................... 8, 9

Basile v. H&R Block, Inc., 777 A.2d 95 (Pa. Super. Ct. 2001) ..................... 34

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................ 8, 17

Board of Regents v. Roth, 408 U.S. 564 (1972) ............................................ 10

Bowers v. NCAA, 475 F.3d 524 (3d Cir. 2007) ............................................ 18

Chambers ex rel. Chambers v. Sch. Dist. of Phila.,
   587 F.3d 176 (3d Cir. 2009) ...................................................... 19

City of Canton v. Harris, 489 U.S. 378 (1989) ........................................ 36 37

City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) ...................... 41

Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995) ........................................ 16

Erickson v. Pardus, 551 U.S. 89 (2007) .......................................................... 9

2

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ............................ 8
Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000) .................................. 39
Hoy v. Angelone, 720 A.2d 745 (Pa. 1998) ................................... 32, 33, 42
Lindy v. City of Philadelphia, 515 A.2d 13 (Pa. Cmwlth. 1986) .................. 28
Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) ................................ 13
Pension Benefit Guar. Corp. v. White Consol. Indus.,
   998 F.2d 1192 (3d Cir. 1993) ................................................... 8, 19
Phillips v. Cnty. of Allegheny, 515 F.3d 224 (3d Cir. 2008) ........................ 15
Robbins v. Cumberland Cnty. Children & Youth Servs.,
   802 A.2d 1239 (Pa. Commw. Ct. 2002) ................................... 35
Smith v. Wade, 461 U.S. 30 (1983) ................................................ 41
Soldal v. Cook County, 506 U.S. 56 (1992) ........................................... 20
Strathie v. Dep't of Transp., 716 F.2d 227 (3d Cir. 1983) ........................... 18
Thomas v. Cumberland County, 749 F.3d 217 (3d Cir. 2014) ..................... 37
Tulio v. Lansdale Borough, 660 F. Supp. 3d 368 (E.D. Pa. 2023) ............... 22, 23
United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954) ........... 10
United States v. Pa. Dep't of Envtl. Res., 923 F.2d 1071 (3d Cir. 1991) ..... 40

Statutes & Rules

42 U.S.C. § 1983 ........................................................................... 15
42 U.S.C. § 1985(3) ..................................................................... 20
42 U.S.C. § 12132 (ADA Title II) ................................................... 17
29 U.S.C. § 794 (Rehabilitation Act § 504) ................................... 17
53 Pa.C.S. § 3102.502(b) ....................................................... 10, 17
66 Pa.C.S. § 1406(f) ................................................................. 13
Fed. R. Civ. P. 11(b) ...................................................... 4, 7, 16, 20, 43
Fed. R. Civ. P. 12(b)(6) .............................................................. 4
Fed. R. Civ. P. 5(b)(2)(D) ...........................................................45

## Introduction

Defendant Tiadaghton Valley Municipal Authority ("TVMA"), through counsel, has once again resorted to distortion, concealment, and outright falsehood in an attempt to evade accountability. Its thirty-eight–page brief is not a serious effort to apply Rule 12(b)(6); it is a scattershot narrative built on misstatements of law, fabricated billing history, and willful blindness to the statutory protections that govern utility shutoffs in Pennsylvania.

TVMA's position boils down to this: Plaintiff "failed to pay his bills," therefore every unlawful action — from mocking a disabled veteran, to ignoring sworn medical certifications, to dispatching armed police officers for intimidation — should be excused. This is not law; it is contempt for the law. Counsel has been on written notice since August 11, 2025, that no valid contract or bill of exchange exists, and that "payment" in legal terms requires a lawful obligation. Yet they persist in repeating the false "non-payment" narrative, in violation of their duty of candor to this Court. Silence in the face of truth is fraud, and Defendants' silence speaks volumes.

The Amended Complaint does not rest on conclusory assertions. It is supported by exhibits, sworn affidavits, medical certifications, and a documented timeline of retaliation. Defendants' attempt to reframe those facts as "mere disputes" is both insulting and legally baseless. At this stage, the Court must accept Plaintiff's well-

pled allegations as true. Those allegations demonstrate not only plausible claims but a systematic pattern of discrimination, retaliation, and constitutional violations that no civilized society should tolerate.

This Court should see Defendants' motion for what it is: a bad-faith attempt to bury misconduct beneath boilerplate immunity defenses and distorted case law. Plaintiff respectfully submits that Defendants' motion must be denied in its entirety, with prejudice.


### Procedural and Factual Background

This case arises from Defendants' unlawful termination and ongoing threats to terminate Plaintiff's water service in direct violation of statutory protections, constitutional guarantees, and federal disability law.

On June 11, 2025, Defendants posted a shutoff notice on Plaintiff's door without ever mailing him a Termination notice, bill or providing a judicial determination of any alleged arrearage. Plaintiff immediately disputed the alleged debt by email, raising billing errors, demanding proof of contract, and notifying Defendants of medical hardship. Manager Eric Johnston personally told Plaintiff that his notices "wouldn't suffice" — a direct admission that Defendants had no intention of honoring statutory billing error procedures.

When Defendants cut off service on June 23, 2025, Plaintiff personally presented a physician-certified medical hardship certificate, along with prior billing error notices. Johnston dismissed the certificate with mockery, sneering: "Are you on dialysis or something?" before acknowledging, "oh, that's HIPAA," when Plaintiff refused to answer. Johnston further admitted he was "not familiar" with Defendants' own Rule X, which prohibits shutoff without judicial determination. Service remained terminated.

Plaintiff was forced to file this action in the Lycoming County Court of Common Pleas on June 27, 2025, seeking emergency relief. At the June 30 hearing, Judge Carlucci ordered Defendants to restore service, recognizing Plaintiff's statutory and medical hardship protections. Yet instead of complying in good faith, Defendants retaliated. Immediately after Plaintiff returned home from the injunction hearing, Defendants issued another 10-day shutoff notice in plain defiance of the Statutory Billing error and medical certificate laws.

On July 2, Plaintiff mailed sworn affidavits of billing error "under oath and not for the purpose of delay," curing any technical defect in his earlier notices. Defendants signed for these on July 3. By law, Rule X barred any further shutoff. Instead, on July 9, Defendants acted on the barred 10-day notice. First, utility agents arrived at Plaintiff's residence and attempted to access the curbside shutoff valve. Plaintiff's vehicle was lawfully parked on his property, blocking entry. The agents left

without disclosing the nature of their alleged "work order." Roughly forty-five minutes later, armed police officers arrived at Plaintiff's home on Defendants' request. The officers told Plaintiff they had been informed only that "access" was needed to the valve, not that repairs were planned. If this had truly been a maintenance work order, Defendants could have told Plaintiff directly and could have explained it to the police. They did not. Instead, they used the police to threaten that Plaintiff's vehicle would be towed unless moved — an intimidation tactic designed to force compliance with the unlawful shutoff attempt.

The misconduct continued after removal to this Court. On August 11, Plaintiff notified defense counsel in writing that "payment," as defined in Black's Law Dictionary (4th ed.), requires a valid obligation, and that no enforceable contract or bill of exchange had ever been produced. Counsel ignored this notice but continued repeating the false "non-payment" narrative in affidavits and briefing, in violation of their duty of candor to this Court.

Plaintiff has now suffered not only the unlawful shutoff itself, but continuing retaliation, harassment, emotional distress, and financial harm — including over $6,474.67 in veterinary bills when his dog required life saving emergency surgery after her water routine was disrupted. Defendants' conduct is not bureaucratic negligence; it is a deliberate campaign of discrimination and intimidation against a disabled veteran for asserting his rights.

## Standard of Review

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). The standard is well-settled and fatal to their arguments. At this stage, the Court must accept all well-pleaded factual allegations as true, construe the Complaint in the light most favorable to the Plaintiff, and draw all reasonable inferences in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Dismissal is appropriate only where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Importantly, the Court does not weigh evidence or resolve factual disputes on a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Defendants' repeated reliance on denials, alternative narratives, and affidavits outside the pleadings is improper. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (court may only consider complaint, exhibits, and matters of public record). Plaintiff attached exhibits — including termination notices, medical certificates, sworn affidavits, and email notices — all of which are incorporated into the pleadings and must be considered.

The Third Circuit has emphasized that pro se complaints, in particular, are to be construed liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Plaintiff's Amended Complaint is far more than "bald allegations": it pleads specific dates, documents, names, and retaliatory acts, supported by exhibits. At the Rule 12(b)(6) stage, this is more than sufficient.

Defendants' motion is not a test of Plaintiff's proof. It is a test of plausibility. Plaintiff has alleged statutory violations, constitutional deprivations, and intentional discrimination supported by documentary evidence. Their arguments are disputes of fact and law reserved for summary judgment, not dismissal. Accordingly, the motion must be denied.

## Argument

### I. Plaintiff's Procedural Due Process Claim (Count I) Is Legally Sufficient

Defendants argue that Plaintiff received adequate notice and post-deprivation process, and therefore cannot maintain a due process claim. (Doc. 33 at 6–10). That argument is not just weak — it is dishonest. The Amended Complaint alleges in detail that Defendants deliberately ignored binding statutory and regulatory safeguards, fabricated billing evidence, and mocked Plaintiff's medical hardship. Defendants' own manager has since admitted that Plaintiff's interpretation of the law was correct all along. Count I is not only legally sufficient — it is unassailable.

## A. Plaintiff Pled a Protected Property Interest in Water Service

Plaintiff expressly alleged he "possess[es] a protected property interest in continued access to residential water service" (Am. Compl. ¶ 12), that "water service is essential for life, health, and habitation" (id. ¶ 14), and that Defendants deprived him of this interest "without judicial determination" (id. ¶¶ 19–21). That is more than enough under Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Defendants' suggestion that Plaintiff has not pled a cognizable interest is pure gaslighting — the allegations are there, in black and white.

## B. Pennsylvania Law and Rule X Flatly Prohibit Shutoff Without Judicial Determination

The Pennsylvania Municipality Authorities Act, 53 P.S. § 3102.502(b), states in mandatory language:

"In no case shall the water supply be shut off until the claim has been judicially determined."

Defendants' own Rule X (Exhibit F) mirrors the statute word-for-word. Rule X also requires mailed and posted notice, and bars shutoff once a sworn statement asserting a just defense is filed. These are not "guidelines." They are binding legal protections. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267

(1954). Defendants flouted both the statute and their own regulation. That is not due process — it is lawlessness.

## C. The June 23 Shutoff Was a Clear Violation

The June 23, 2025 shutoff was unlawful for three independent reasons:

1. No mailed bill: Plaintiff never received a mailed bill or termination notice. (Am. Compl. ¶¶ 23–24). At the June 30 hearing, Defendants suddenly produced a phantom bill Plaintiff had never seen. (Id. ¶ 28). Introducing fabricated evidence after the fact is not compliance — it is fraud.

2. No judicial determination: Defendants cut service before any court adjudication, in direct violation of § 3102.502(b) and Rule X.

3. Disregard for statutory process: Plaintiff's initial email disputes were brushed aside by Eric Johnston, who flatly told Plaintiff his notices "did not matter." That statement alone proves Defendants had no intention of honoring statutory rights.

These are not "technicalities." They are core due process protections — and Defendants trampled them.


## D. Plaintiff's Sworn Affidavits Cured Any Alleged Defect

At the June 30 hearing, Judge Carlucci restored Plaintiff's service but noted that Rule X required sworn notice. Plaintiff immediately cured this by filing affidavits

under oath, explicitly stating they were "not for the purpose of delay" and restating the same disputes first emailed on June 11. (Am. Compl. ¶¶ 36–38, Exhibits D, G). From that moment, Rule X and § 502(b) categorically barred any further shutoff. Defendants were on notice, and they had no excuse.

### E. Defendants Retaliated After Plaintiff Cured the Defect

Rather than respect the cure, Defendants retaliated by issuing another 10-day notice and escalating with police intimidation on July 9. (Am. Compl. ¶¶ 40, 44–45, Exhibits K, Q). This was not neutral enforcement — it was retaliation for asserting rights. The Equal Protection Clause and Due Process Clause forbid such conduct.

### F. Johnston's Affidavit Confirms Plaintiff Was Right All Along

In their desperation, Defendants submitted an affidavit from Manager Eric Johnston admitting that "service will not be shut off until judicial determination." (Doc. 38-2). That admission obliterates their entire defense. If service truly cannot be shut off without judicial determination, then the June 23 shutoff was indisputably illegal.

Defendants cannot have it both ways: they cannot admit Plaintiff's interpretation of the law is correct while insisting his due process claim fails. Their credibility is gone.

## G. Post-Deprivation Relief Cannot Erase Pre-Deprivation Violation

Defendants argue that Plaintiff received due process because service was eventually restored on June 30. That is nonsense. Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982), makes clear that post-deprivation remedies cannot cure the denial of process where pre-deprivation protections are guaranteed by law. Plaintiff went without water for seven days during a medical hardship. That injury cannot be undone by litigation after the fact.

## Conclusion on Count I

Defendants violated Pennsylvania statute, their own regulations, and the Constitution when they shut off Plaintiff's water without judicial determination, fabricated billing evidence, mocked Plaintiff's disability, and retaliated against him after he cured any technical defect. Their own manager now concedes Plaintiff's interpretation of the law was correct. Doyle's argument that Plaintiff has no due process claim is not advocacy — it is misrepresentation. Count I is legally sufficient, and dismissal must be denied.

## II. Plaintiff's Equal Protection Claim (Count II) Is Legally Sufficient

Defendants argue that Plaintiff has not pled an Equal Protection violation because he failed to identify a comparator and because their conduct was neutral. (Doc. 33 at 10–12). That is false. The Amended Complaint details deliberate mockery, retaliation, and refusal to follow statutory protections, all directed at Plaintiff alone. Defendants' position is not legal argument — it is denial of reality.

### A. Plaintiff Alleged Similarly Situated Comparators

Plaintiff pled that Defendants routinely honor billing disputes and physician-certified hardship forms for other customers, but refused to do so for him. (Am. Compl. ¶¶ 47–50). That allegation is sufficient under Rule 8. Defendants do not dispute that Rule X and § 502(b) are applied to other customers — they only deny they apply to Plaintiff. That is disparate treatment, pled clearly and specifically.

### B. Johnston's Conduct Shows Animus and Intentional Discrimination

Manager Eric Johnston's words and actions reveal this was not neutral enforcement. When Plaintiff presented a doctor's certificate, Johnston sneered: "Are you on dialysis or something?" and, after Plaintiff refused to answer, remarked, "Oh, that's HIPAA." (Am. Compl. ¶ 43).

That exchange is not a "policy dispute." It is deliberate mockery of a disabled veteran. Johnston's own affidavit later admits service cannot be shut off without

judicial determination (Doc. 38-2), but at the time, he ignored Rule X entirely and pretended he was "not familiar" with it. Selectively discarding the rule when it protected Plaintiff is intentional discrimination.

## C. Defendants' "No Comparator" Argument Misstates the Law

Doyle argues Plaintiff's claim fails because he has not named another customer by name. That is a misrepresentation of the pleading standard. The Third Circuit has squarely rejected this heightened requirement: at the motion to dismiss stage, Plaintiff need only allege facts making it plausible that similarly situated persons were treated differently. Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Plaintiff has done exactly that. Demanding customer names is not law — it is a stalling tactic.

## D. Retaliation Amplifies the Equal Protection Violation

Plaintiff asserted his statutory rights the moment Defendants placed a shutoff notice on his door. He immediately emailed billing disputes, demanded lawful process, and later filed sworn affidavits "under oath and not for the purpose of delay." At that point Rule X barred further shutoff. Instead of complying, Defendants retaliated with a new 10-day shutoff notice and called police to Plaintiff's home on July 9, threatening to tow his vehicle. (Am. Compl. ¶¶ 40, 44–45, Exhibits K, Q).

No other customer who submits hardship forms and billing disputes is met with armed officers at their door. That is unequal treatment born of hostility, not neutral enforcement. Esmail v. Macrane, 53 F.3d 176, 179 (7th Cir. 1995) (class-of-one claim valid where animus motivated official conduct).

## E. Disability- and Speech-Based Discrimination Are Independent Grounds for Relief

Plaintiff is a permanently disabled veteran, pled at ¶¶ 12, 27. When Johnston mocked Plaintiff's condition and refused to honor a physician's certification, Defendants treated Plaintiff differently on the basis of disability. At the same time, Defendants targeted Plaintiff because of his outspoken advocacy on consumer rights, corruption, and veterans' issues — including active postings on social media that were monitored by Cheryl Brungard and Shawn Lorson. Retaliation against Plaintiff's protected speech is viewpoint discrimination under the Equal Protection Clause, independent of his disability-based treatment.

## Conclusion on Count II

Defendants mocked Plaintiff's disability, stalked his social media, fabricated billing evidence, refused to apply Rule X, issued retaliatory shutoff notices, and sent police to his home. Then they told this Court there was "no disparate treatment." That is not candor — it is evasion.

Plaintiff has more than plausibly alleged that he was singled out and intentionally treated differently, both as a disabled veteran and as a vocal rights-asserting consumer. Count II is therefore legally sufficient, and Doyle's motion must be denied with prejudice.

## Count III – ADA Title II and Rehabilitation Act

Defendants' attempt to trivialize Plaintiff's ADA and Rehabilitation Act claims is as reckless as it is misleading. Their entire argument rests on two false premises: (1) that Defendants do not receive federal financial assistance, and (2) that Plaintiff's water shutoff was not "because of" his disability. Both are wrong as a matter of fact and law.

### A. Federal Funding is Plausibly Alleged and Must Be Accepted at This Stage

Doyle pretends that municipal authorities such as TVMA and JSAJWA operate in a vacuum, untouched by federal dollars. That is absurd. These entities are tethered to federal programs through infrastructure grants, water quality projects, and state-administered allocations funded by Washington. Plaintiff specifically alleged this and is entitled to discovery. At Rule 12(b)(6), these allegations must be accepted as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Defendants' denial is an evidentiary quarrel for summary judgment, not a basis to dismiss. Their reliance on

Strathie v. Dep't of Transp., 716 F.2d 227 (3d Cir. 1983), is misplaced; that case dealt with proof, not plausibility.

## B. Disability Discrimination Does Not Require "Sole Cause"

Defendants misstate the standard by insisting Plaintiff must prove disability was the "only" reason for shutoff. That is false. The ADA and Rehabilitation Act forbid denial of services "because of" disability — not "solely because of." Bowers v. NCAA, 475 F.3d 524, 553 (3d Cir. 2007). Plaintiff pled he suffers from TBI, chronic migraines, PTSD, depression and kidney impairment requiring stable water access for medical care and for animals that support his treatment. Defendants received multiple notices and a physician certification (Exs. C, G), yet still threatened shutoff and conditioned restoration on coercion. That is discrimination, plain and simple.

## C. Mockery and Deliberate Indifference Establish Intentional Discrimination

Defendants' misconduct was not neutral. Authority Manager Eric Johnston mocked Plaintiff's disability by sneering: "Are you on dialysis or something?" then acknowledging "oh, that's HIPAA" when Plaintiff refused to answer. (Am. Compl. ¶ 43). That is not an innocent mistake — it is proof of disdain and awareness of legal obligations they knowingly violated.

At the same time, Defendants continued threatening shutoff during an ongoing medical emergency, directly violating 66 Pa.C.S. § 1406(f). The Third Circuit

holds that deliberate indifference qualifies as intentional discrimination under both the ADA and Rehabilitation Act. Chambers ex rel. Chambers v. Sch. Dist. of Phila., 587 F.3d 176, 189 (3d Cir. 2009). Their indifference was not only deliberate — it was weaponized.

## D. Retaliation is an Independent Violation

When Plaintiff asserted rights through billing disputes, medical certificates, and later sworn affidavits "not for the purpose of delay," Defendants retaliated with:

- Another improperly posted 10-day shutoff notice;

- Dispatching police to Plaintiff's home on June 25 and July 9 (Exs. K, Q);

- Continuing to threaten termination despite statutory bars.

This pattern of retaliation would deter a reasonable person from exercising ADA rights. It is actionable under both statutes. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

## E. Plaintiff's Pleadings Are Supported by Exhibits, Not "Bald Allegations"

Defendants dismiss Plaintiff's case as "bald allegations" while ignoring the exhibits attached to the Amended Complaint — including the medical certificate, sworn notices, and contemporaneous emails (Exs. B, C, D, G). These incorporated exhibits are part of the pleadings. Pension Benefit Guar. Corp. v. White Consol.

Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). They prove Defendants acted with full knowledge of Plaintiff's disability and obligations to accommodate.

## Conclusion on Count III

Defendants mocked Plaintiff's disability, rejected medical certification, ignored statutory protections, and retaliated with renewed shutoff threats and police intimidation. Their denials are not candor — they are evasions. Plaintiff has more than plausibly pled violations of ADA Title II and the Rehabilitation Act. Doyle's attempt to erase disability discrimination from the record must be rejected with prejudice.

## Plaintiff's Response to Count IV (Fourth Amendment)

Defendants' attempt to trivialize the Fourth Amendment by excluding water service from constitutional protection is both disingenuous and legally hollow. The Amendment's command is not limited to "trunks, suitcases, and knickknacks," as Defendants imply—it protects people from unreasonable governmental interference with their lives, homes, and effects. See Soldal v. Cook County, Ill., 506 U.S. 56, 62 (1992). By physically trespassing on Plaintiff's property, entering the yard, and seizing control of the shutoff valve to deprive a family of water—

despite actual notice of a pending medical emergency—Defendants squarely

triggered the Fourth Amendment's core protections.

Defendants' reliance on Gagliardi and Martinez is misplaced. Those cases involved

abstract billing disputes, not physical intrusions into curtilage, coercive threats by

police officers, and disconnection of an essential service under color of state law.

Here, the seizure was direct, physical, and coercive: a utility worker and manager,

accompanied by threats of law enforcement escalation, cut off water at the

property's shutoff point—an act no different in constitutional character than

padlocking a home's door or seizing its heating system in midwinter. Such conduct

is "meaningful interference with possessory interests" by any standard. Id.

Defendants further mislead the Court by ignoring Pennsylvania's own statutory

recognition that water service is a protected property interest. See 53 Pa.C.S. §

3102.502(b)(2) ("the water supply shall not be shut off until the claim has been

judicially determined"). By statute, Plaintiff's right to continued service pending

adjudication is not a mere contractual privilege but a legally enforceable property

entitlement. Defendants' disregard of this entitlement, coupled with their

warrantless intrusion and seizure, renders their actions the precise sort of arbitrary

governmental abuse the Fourth Amendment forbids.

Accordingly, Plaintiff's Fourth Amendment claim is not only plausible but compelling. Defendants' effort to dismiss it is yet another attempt to whitewash blatant constitutional violations, and should be rejected.

## Plaintiff's Response to Count V (Fifth Amendment Takings)

Defendants' attempt to wave away a Fifth Amendment violation by rebranding their conduct as mere "debt collection" ignores both the reality of what occurred and the statutory protections that define Plaintiff's property interest. The Takings Clause prohibits the government from depriving citizens of private property or essential entitlements for public use without just compensation. See Tulio v. Lansdale Borough, 660 F. Supp. 3d 368, 379 (E.D. Pa. 2023). Contrary to Defendants' mischaracterizations, the deprivation here was neither a routine service adjustment nor a lawful exercise of municipal authority—it was the uncompensated confiscation of a vested entitlement.

First, Defendants deliberately seized Plaintiff's continued access to water service—an entitlement secured not only by constitutional property principles but explicitly codified in 53 Pa.C.S. § 3102.502(b)(2), which forbids termination until the underlying claim is "judicially determined." This statutory framework transforms water service into a legally protected property right, not a discretionary privilege. By cutting off water during a pending dispute and in direct defiance of

that statute, Defendants appropriated a recognized property interest without adjudication or compensation. That is the definition of a taking.

Second, Defendants' assertion that "government action providing utility services for a fee and disconnecting service for failure to pay does not substantially interfere with property rights" (quoting Tulio) collapses under the facts here. Plaintiff never admitted the debt, but rather disputed its validity through sworn affidavits and billing error notices. To dress this ongoing dispute up as a simple failure to pay is both false and deceptive. Where a citizen asserts a statutory right to withhold payment until a claim is adjudicated, the government cannot unilaterally extinguish that right and then disclaim responsibility under the Takings Clause.

Third, unlike the hypothetical scenarios in Tulio or Ransom, Defendants' actions rendered Plaintiff's residence effectively uninhabitable—depriving not only him but also his dependent children and service animals of water necessary for daily survival. In constitutional terms, this is far more than a "minor regulatory adjustment"; it is a deprivation that destroys the beneficial use of property. Courts have long recognized that a taking occurs when government action "goes too far" in stripping away functional use of property. Here, Defendants crossed that line deliberately and with retaliatory intent.

Finally, Defendants' reliance on Plaintiff's supposed "admission" of amounts owed is a gross distortion. Plaintiff consistently maintained that no valid bill of exchange or lawful tender had been presented, and that all obligations were contested. Defendants cannot manufacture consent to forfeiture by misquoting pleadings. What actually occurred was the uncompensated taking of Plaintiff's property rights under color of law, in violation of the Fifth Amendment. For these reasons, Defendants' motion to dismiss Count V should be denied in full.

### Count VI – Pennsylvania Constitution (Art. I)

Doyle argues that no private right of action exists under Article I of the Pennsylvania Constitution, citing Jones v. City of Philadelphia and Pocono Mountain Charter Sch.. This is a half-truth designed to obscure the law.

1. Enforcement via §1983: While Pennsylvania courts have not created a freestanding damages action under Article I, federal courts recognize that state constitutional rights can be enforced through §1983 where violations of due process, equal protection, and unlawful takings overlap. Defendants' conduct — shutting off water in defiance of 53 P.S. §3102.502 and their own Rule X requiring judicial determination — clearly implicates federally cognizable rights.

2. Pattern of Evasion: Defendants cannot cloak themselves in "no private right of action" while simultaneously being sued under §1983 for the same deprivation. Their position is an attempt to immunize themselves from all accountability: "federal law doesn't apply because it's state, state law doesn't apply because it's federal." Courts do not tolerate this shell game.

3. Pennsylvania Due Process Protections: Article I, §§ 1, 11, and 26 enshrine rights to property, remedies by due course of law, and equal protection of civil rights. These provisions mirror federal guarantees but remain independently enforceable through declaratory and injunctive relief. Plaintiff has properly sought such relief — including orders preventing unlawful shutoffs absent judicial determination — which falls squarely within Pennsylvania courts' equity powers.

Rebuttal: Plaintiff's Count VI is not an "improper state damages action." It is a legitimate request for declaratory and equitable relief grounded in Article I, incorporated into §1983 enforcement, and bolstered by explicit statutory protections. Defendants' motion to dismiss Count VI must be denied.

## Count VII – Civil Conspiracy (42 U.S.C. §1985)

Doyle parrots Novotny and Farber, insisting Plaintiff alleged no facts of

conspiracy. This ignores the record and misstates the pleading burden.

1. Coordinated Acts: Plaintiff alleged specific, coordinated conduct:

   o Eric Johnston (manager) appeared onsite during the shutoff, rejected
     the medical certificate, and mocked Plaintiff's disability ("on
     dialysis?").

   o Authority agents posted notices while refusing mailed billing,
     ensuring Plaintiff was set up for termination.

   o Local police officers, contacted by Defendants, threatened possible
     criminal charges and towing, attempting to coerce compliance with
     unlawful demands.

   o Surveillance of Plaintiffs Social media including Shawn Lorson
     before litigation commenced and Cheryl Brungard monitoring
     Plaintiffs Social media after Litigation Commenced "Following" him.
      This is not parallel conduct — it is a coordinated campaign to deprive
     Plaintiff of his rights.

2. Purposeful Targeting: Plaintiff is a disabled veteran who provided sworn

   notice of medical hardship. Instead of accommodating as required under 66

   Pa.C.S. §1406(f) and ADA Title II, Defendants escalated pressure tactics,

   including police involvement, precisely to chill his ability to contest the

   shutoff. This satisfies the purposeful deprivation element of §1985(3).

3. Protected Rights at Stake: Plaintiff's rights to petition the courts, to be free from retaliation for disability status, and to equal protection of law are all federally protected. Defendants' actions — using law enforcement muscle to intimidate Plaintiff into abandoning his statutory and constitutional claims — fall squarely within the §1985 conspiracy framework.

4. Immediate Court Access ≠ No Conspiracy: Doyle absurdly argues that because Plaintiff managed to file quickly, there could be no conspiracy. This is like saying a burglary didn't occur because the victim still escaped the house. Success in resisting a conspiracy does not erase the unlawful agreement and acts taken toward its object.

Rebuttal: Plaintiff has alleged far more than conclusory assertions. He set forth actors, roles, overt acts, and discriminatory animus (mocking disability, disregarding medical protections, enlisting police intimidation). Under Rule 12(b)(6), this is more than sufficient. Defendants' bid to dismiss Count VII must be denied.

**Plaintiff's Opposition to Count VIII – Fraudulent Misrepresentation**

Defendants invoke blanket immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, as if it were an impenetrable shield against accountability. That argument collapses under its own weight. Fraud and intentional misrepresentation have consistently been recognized by Pennsylvania courts as conduct outside the scope of governmental immunity, because fraud is not a negligent act—it is a deliberate, calculated scheme. See Lindy v. City of Philadelphia, 515 A.2d 13 (Pa. Cmwlth. 1986) (municipal immunity does not extend to intentional torts involving fraud or bad faith).

Here, Defendants deliberately misrepresented (1) that Plaintiff was delinquent when sworn affidavits of billing dispute were on record, (2) that no medical certificate had been submitted when one was physically handed to Manager Eric Johnston, and (3) that their own Rule X protections did not apply, despite invoking them only when convenient. This is not "mere negligence"—it is an intentional falsehood designed to induce forfeiture of Plaintiff's property rights, extort full payment, and coerce waiver of legal claims. Fraud vitiates all contracts, all immunities, and all defenses. Defendants' misrepresentations are actionable, and Doyle's attempt to cloak them in statutory immunity is a transparent dodge.

**Plaintiff's Opposition to Count IX – Unjust Enrichment / Rescission**

Doyle parrots the elements of unjust enrichment but ignores the heart of the matter: Defendants extracted unlawful shutoff and reconnection fees, plus forced Plaintiff into veterinary expenses, under color of authority but outside lawful process. A benefit conferred under duress or coercion is no benefit at all—it is theft disguised as billing.

Her reliance on 53 Pa.C.S. § 5607(d)(17) is misplaced. That statute allows adoption of "reasonable" rules. A rule is not reasonable when it contradicts higher statutory mandates like 53 Pa.C.S. § 3102(b)(2) ("water shall not be shut off until the claim has been judicially determined"). Nor is it reasonable to ignore Rule X's explicit due process language requiring judicial determination before shutoff. No enrichment is lawful when obtained in direct violation of statute and constitutional protections.

As to rescission, Defendants argue it is "impossible" because water once consumed cannot be returned. This misses the remedy entirely. Plaintiff seeks rescission of fraudulent shutoff and reconnection charges, and restitution for costs unjustly imposed. Equity does not require the absurd—that Plaintiff "return water." Equity requires Defendants disgorge what they wrongfully obtained.

Defendants' enrichment was unjust, unlawful, and unconscionable. Their invocation of statutory authority is pretext. Their enrichment came not from voluntary exchange but from retaliation, extortion, and denial of statutory

protections. These claims stand, and Doyle's attempt to bury them in boilerplate immunity and circular reasoning must be rejected.

## COUNT X – UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW (UTPCPL)

Defendants' assertion that the UTPCPL is categorically inapplicable to them is nothing more than an attempt to place themselves above the law. Their reliance on Meyer v. Cmty. Coll. of Beaver Cnty., 93 A.3d 806 (Pa. 2014), is misplaced. Unlike a community college providing educational services, the Tiadaghton Valley Municipal Authority ("TVMA") and Jersey Shore Area Joint Water Authority ("JSAJWA") are corporate bodies politic and corporate entities under the Pennsylvania Municipal Authorities Act, 53 Pa.C.S. § 5600 et seq. They function not as sovereign governmental departments but as independent business enterprises, issuing bills, imposing fees, collecting revenues, entering contracts, and even registering DUNS numbers and participating in securitized financial markets. In that capacity, they act as merchants in commerce, and their deceptive billing and collection practices fall squarely within the UTPCPL.

The UTPCPL mandates that it "shall be liberally construed to effect its object of preventing unfair or deceptive practices" (see Commonwealth v. Monumental

Props., Inc., 329 A.2d 812, 817 (Pa. 1974)). Defendants' conduct — failing to mail bills, manufacturing charges, presenting phantom bills in court, conditioning restoration of service on in-person meetings and full payment contrary to statutory protections, and deliberately misleading both the Plaintiff and the judiciary — is the very type of unfair and deceptive conduct the UTPCPL was designed to address. To hold otherwise would grant every municipal authority in the Commonwealth a license to defraud consumers under the guise of governmental immunity.

Moreover, Defendants cannot simultaneously claim to be immune from consumer-protection statutes while operating as commercial actors in billing, revenue collection, and contractual dealings. Their attempt to evade accountability under the UTPCPL must be rejected. Immunity does not extend to fraudulent and deceptive practices, and the remedial intent of the UTPCPL forbids Defendants from hiding behind their "municipal" label while engaging in outright fraud. Accordingly, Plaintiff's UTPCPL claim is properly pled and must not be dismissed.

## COUNT XI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

Defendants argue immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, and assert that Plaintiff's allegations do not meet the "atrocious" standard of Hoy v. Angelone, 720 A.2d 745 (Pa. 1998). Both arguments collapse under the weight of the record.

First, immunity does not apply to intentional, willful, or malicious misconduct. Courts have long recognized that governmental entities and their officials may not cloak themselves in immunity when they act in bad faith or outside lawful authority. Here, Defendants deliberately:

- Shut off water service during a certified medical emergency;

- Ignored and mocked a physician's sworn medical certificate;

- Demanded disclosure of Plaintiff's private medical condition, then sneered "oh, that's HIPAA" when Plaintiff refused;

- Enlisted police officers to intimidate Plaintiff with threats of towing and arrest to coerce compliance;

- Conditioned restoration of service on unlawful in-person meetings and full payment despite pending litigation and;

- Issued retaliatory shutoff notices in defiance of a judicial injunction.

This conduct was not negligent — it was intentional, retaliatory, and malicious.

Second, the claim that these actions are not "atrocious" or "utterly intolerable in a civilized society" is an insult to both the law and basic human decency. The deliberate targeting of a disabled veteran under medical hardship, mocking of his condition, weaponization of police intimidation, and willful defiance of statutory and judicial protections shocks the conscience. It far exceeds the threshold articulated in Hoy, where the Court emphasized that IIED liability arises when conduct "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." Id. at 754. Defendants' conduct fits squarely within that definition.

Third, Defendants' reliance on the June 30, 2025 order is misplaced. That order restored Plaintiff's service but does not erase Defendants' misconduct in shutting off water during a medical emergency, mocking a disability, or retaliating with subsequent notices. Indeed, their behavior after the order — continuing to threaten and retaliate — aggravates, rather than negates, Plaintiff's IIED claim.

Finally, the harm is not speculative. Plaintiff suffered severe emotional distress, exacerbation of medical conditions, and tangible consequences, including a life-threatening medical emergency for his dog directly attributable to the unlawful shutoff. This is not a mere "billing dispute." It is a sustained campaign of abuse and retaliation, intentionally inflicted to cause distress.

Accordingly, Plaintiff's IIED claim is well pled and must not be dismissed.

## COUNT XII – BREACH OF FIDUCIARY DUTY

Defendants' contention that no fiduciary duty exists between a municipal authority and its ratepayers is both legally flawed and factually absurd. At its core, a fiduciary duty arises when one party is entrusted with control over the vital interests of another, creating an obligation to act with loyalty, honesty, and in good faith. There is no clearer example of such a relationship than when a municipal water authority controls the sole source of access to clean water — a resource indispensable to health, safety, and survival.

Defendants wield monopolistic control over water and sewer services in the Plaintiff's community. Plaintiff cannot simply "shop around" for another provider; Defendants alone hold the keys to whether his family and service animals live in sanitary, habitable conditions. That absolute control, coupled with statutory duties under 53 Pa.C.S. § 502(b)(2) and Defendants' own Rule X requiring judicial determination of billing disputes before termination, creates precisely the type of reliance and vulnerability that gives rise to a fiduciary relationship.

Pennsylvania courts have recognized fiduciary duties in analogous contexts where one party maintains overwhelming control and the other has no realistic alternative (see Basile v. H&R Block, Inc., 777 A.2d 95 (Pa. Super. Ct. 2001)). Just as H&R Block owed a fiduciary duty to its tax clients, here Defendants owed Plaintiff a

duty to safeguard his access to water service and to administer billing and

termination procedures in good faith and consistent with law.

Instead, Defendants acted in bad faith and with malice:

- Shutting off Plaintiff's water in the face of a valid medical emergency;

- Ignoring sworn physician certifications and mocking Plaintiff's medical condition;

- Misrepresenting their own Rule X obligations in order to accelerate a shutoff;

- Threatening Plaintiff with police intimidation tactics to coerce payment; and

- Retaliating immediately after judicial intervention by issuing new shutoff notices in defiance of statutory and constitutional protections.

This is not mere "negligence." It is a textbook breach of fiduciary duty.

Defendants, entrusted with a life-essential service, abused that trust by acting in a

manner directly contrary to Plaintiff's welfare, purely to extort payment and

retaliate against protected legal activity.

Defendants' invocation of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §

8541, is unavailing. Immunity does not shield intentional, malicious, or bad-faith

misconduct (see Robbins v. Cumberland Cnty. Children & Youth Servs., 802 A.2d

1239, 1252 (Pa. Commw. Ct. 2002)). Nor can Defendants evade fiduciary

obligations by cloaking themselves in their "municipal" status while operating as a corporate body engaging in billing, contracting, and enforcement. Where an authority acts beyond the scope of its lawful authority — such as ignoring judicial-determination requirements in billing disputes — immunity evaporates.

Accordingly, Plaintiff has more than adequately pled the existence of a fiduciary duty, Defendants' breach of that duty, and resulting injury. The motion to dismiss Count XII must therefore be denied in full.

### Plaintiff's Opposition to Defendants' Motion to Dismiss Count XIII (Failure to Train – 42 U.S.C. § 1983)

Defendants' reliance on Connick v. Thompson and Forrest v. Parry is misplaced and misapplied. Unlike cases where plaintiffs offered only speculative or isolated allegations, Plaintiff here identifies concrete statutory duties, training obligations, and repeated procedural failures by Defendants' own managers and employees that rise well beyond "mere negligence."

## 1. Monell Liability Is Not Limited to Long-Term Patterns — Single-Incident Failures Qualify When Risk Is Obvious.

The Supreme Court itself has made clear that "deliberate indifference" does not demand multiple prior violations where the risk of constitutional harm is so patently obvious that any reasonable policymaker would act. City of Canton v.

Harris, 489 U.S. 378, 390 (1989). Here, Defendants' employees were tasked with

depriving a disabled veteran of water service — a constitutionally recognized

property interest and a life-sustaining necessity — yet were wholly untrained in

how to comply with 53 Pa.C.S. § 3102.502, Rule X of their own regulations, or

medical hardship procedures under 66 Pa.C.S. § 1406(f). No reasonable official

could fail to see the highly predictable constitutional harm that would result.

The Court in Thomas v. Cumberland County, 749 F.3d 217, 225 (3d Cir. 2014)

confirmed that liability attaches where an obvious failure to train makes violations

a "highly predictable consequence." That is precisely this case.

## 2. The Record Proves Repeated Mishandling by Untrained Officials.

This is not an "isolated" oversight. Plaintiff's Amended Complaint and exhibits

document a consistent pattern of unlawful conduct:

- Manager Eric Johnston openly admitted ignorance of Rule X, the Authority's governing shutoff procedure, while executing shutoffs in violation of it.

- Manager Eric Johnston mocked Plaintiff's disability and demanded medical details while simultaneously disregarding a physician-certified medical certificate — a flagrant ADA violation.

- Notices were posted without required mailing, in direct contravention of § 3102.502, then weaponized against Plaintiff in court.

- Defendants conditioned restoration on full payment despite a pending billing dispute — a blatant disregard for due process and judicial authority.

These are not "mere clerical mistakes." They are the textbook result of a municipal authority that failed to train its staff on constitutional requirements, disability protections, and even its own rules.

## 3. Deliberate Indifference Is Shown by Retaliatory Conduct.

Even after being placed on judicial notice and subject to a June 30, 2025 injunction, Defendants including Shawn Lorson immediately reissued a shutoff notice without complying with lawful procedure. Retaliation in the face of a court order is not "negligence" — it is evidence of deliberate indifference and conscious disregard for constitutional rights. The fact that this occurred under management's supervision only strengthens Monell liability.

## 4. Causation Is Established.

Defendants' assertion that Plaintiff "failed to show causation" is laughable. The injury — loss of water, police intimidation, medical hardship, emotional distress, and ongoing billing abuse — flows directly from the Authority's refusal to train staff in statutory compliance. Had employees been properly trained to follow Rule X, § 3102.502, and ADA protections, and other Statutory provisions none of these deprivations would have occurred. That is the exact causal nexus § 1983 requires.

**Conclusion On Count Count XIII**

Defendants' attempt to paint this as a "single mistake" ignores the obvious: when managers don't even know their own governing rules, when staff mock medical hardship and defy statutory mandates, and when retaliatory shutoff threats continue after court injunctions, the failure to train is not hypothetical — it is institutionalized.

This is precisely the kind of municipal misconduct § 1983 and Monell were designed to remedy. Defendants' motion to dismiss Count XIII must be denied.


## Count XIV – Injunctive and Declaratory Relief

Defendants claim Plaintiff's injunctive and declaratory relief is "moot" because water service was temporarily restored by court order. That argument is frivolous. The restoration was conditional, retaliatory shutoff notices immediately followed, and Defendants have already demonstrated their intent to disregard both statutory protections and judicial authority. Mootness does not apply where the challenged conduct is "capable of repetition yet evading review." See Friends of the Earth v. Laidlaw, 528 U.S. 167, 189 (2000). That is exactly this case.

### A. Injunctive Relief Is Not Moot

The June 30, 2025 order was not permanent relief. Within a hour, Defendants issued another 10-day shutoff notice, ignored Plaintiff's sworn affidavits under Rule X, and even enlisted police to intimidate Plaintiff at his home. That is not

compliance — it is open defiance of court authority. Without a permanent injunction, nothing prevents Defendants from repeating the same unlawful tactics tomorrow. Their conduct is a textbook example of ongoing harm that federal courts exist to restrain.

## B. Declaratory Relief Is Proper and Necessary

Defendants misstate the standard for declaratory judgment. Plaintiff is not asking the Court to "proclaim liability for past conduct" as Doyle suggests. Plaintiff seeks a present declaration that Defendants' practices — ignoring Rule X, disregarding 53 Pa.C.S. § 3102.502(b), and retaliating against medical hardship claims — violate federal and state law. That is exactly what declaratory relief is designed to resolve: the ongoing legal relationship between parties and the scope of rights moving forward. See United States v. Pa. Dep't of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1991).

## C. Defendants' Defiance Shows Relief Is Urgently Needed

This Court has already caught Defendants violating their own procedures, requiring restoration of service after a "minor deficiency." (Doc. 33 at 35). That was not minor — it was a direct violation of Plaintiff's rights and state law. Defendants' subsequent retaliation proves that, absent injunctive and declaratory relief, Plaintiff will face the same unlawful shutoffs again and again. Federal courts

do not dismiss live controversies simply because Defendants briefly pause their misconduct when under a spotlight.

## Conclusion on Count XIV

Doyle's argument is not a legal defense; it is an attempt to gaslight the Court into believing this case is over when Defendants' violations are ongoing. Plaintiff's claims for injunctive and declaratory relief are not moot, not duplicative, and not barred. They are essential to stop repeat violations and protect Plaintiff's rights under state and federal law. Count XIV is therefore legally sufficient, and Defendants' motion must be denied.

## Count XV – Punitive Damages

Defendants wave City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), like a shield, pretending it bars all punitive damages. Wrong. Newport addressed municipalities under § 1983, but Defendants here are not immune to punitive exposure across the board. The law is clear: punitive damages are available against individual defendants sued in their personal capacities and against municipal entities under state-law claims when conduct is malicious, reckless, or outrageous. See Smith v. Wade, 461 U.S. 30, 56 (1983) ("punitive damages are available in § 1983 actions when the defendant's conduct is shown to be motivated by evil

motive or intent, or involves reckless or callous indifference to federally protected

rights").

## A. Defendants' Conduct Is the Definition of Punitive-Worthy

The record here isn't about routine error. It's about Defendants:

- Mocking a disabled veteran ("Are you on dialysis or something?").

- Disregarding valid medical certificates in violation of 66 Pa.C.S. § 1406(f).

- Retaliating with new shutoff notices immediately after Plaintiff returned home from June 30th hearing before serving filed sworn affidavits.

- Calling police to Plaintiff's home to threaten towing and intimidation.

    This is conduct "so outrageous that civilized society should not tolerate it." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998).

## B. Municipal Tort Immunity Does Not Shield Deliberate Misconduct

Doyle cites 42 Pa.C.S. § 8541 as if it creates a free pass. Wrong again. Immunity

does not extend to willful misconduct or constitutional torts. See 42 Pa.C.S. §

8550. Plaintiff has specifically pled intentional, retaliatory, and malicious actions

outside the scope of mere negligence. Those allegations pierce immunity and leave

Defendants squarely on the hook for punitive exposure.

## C. The Motion Misrepresents the Relief Sought

Plaintiff is not seeking automatic punitive damages against the entity by virtue of

its status. Plaintiff seeks punitive damages because Defendants, acting with actual

malice, deliberately weaponized water shutoff — a basic necessity of life — to punish and intimidate him. Courts have repeatedly recognized that when government actors cross into knowing, malicious, rights-violating behavior, punitive damages are not only permissible but necessary to deter future abuses.

## Conclusion on Count XV

Doyle's reliance on blanket immunity cases is smoke and mirrors. Punitive damages are barred only in narrow circumstances — not where individual officials act with malice, not where immunity is pierced by willful misconduct, and not where reckless disregard of constitutional rights is proven. Plaintiff has pled exactly that. The demand for punitive damages is proper and must proceed. Defendants' motion should be denied.

## Conclusion

Defendants' motion is not a serious legal argument — it is a calculated attempt to rewrite the record, misstate the law, and evade accountability for conduct that shocks the conscience. They mock a disabled veteran, disregard statutory protections, fabricate billing history, retaliate with police intimidation, and then have the audacity to tell this Court there is "no claim." That is not candor; it is deliberate misrepresentation.

Every count in Plaintiff's Amended Complaint is grounded in statutory authority, constitutional protections, and well-pled factual allegations supported by sworn affidavits and exhibits. Defendants' motion to dismiss is nothing more than a bad-faith effort to bury misconduct under boilerplate immunity claims and misapplied precedent. Rule 12(b)(6) does not permit dismissal based on factual denials or wishful thinking — yet that is the sum and substance of Defendants' motion.

The law is clear: at this stage, Plaintiff's factual allegations must be taken as true, and all reasonable inferences drawn in his favor. Those allegations establish deliberate mockery, targeted retaliation, willful disregard of medical hardship protections, and unconstitutional deprivation of essential services. If Defendants want to deny these facts, the proper forum is discovery and trial — not a dismissal motion built on distortions.

For these reasons, and for all the arguments detailed in Counts I through XV above, Defendants' Motion to Dismiss (Doc. 33) must be denied in its entirety, with prejudice.

Respectfully submitted,

/s/ Dion Storm Holland
Dion Storm Holland, Pro Se
In care of: 566 High Street
Jersey Shore, Pennsylvania 17740
(814) 574-9664
subarudion@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of September 2025, I caused a true and correct copy of the foregoing Brief in Opposition of Defendant's (TVMA) Brief in Support of Motion to Dismiss Amended Complaint Doc. 33, Proposed Order and Exhibit A to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(D), upon the following counsel of record:

Sean P. McDonough, Esq. (PA I.D. #47428)

Dougherty, Leventhal & Price, LLP

459 Wyoming Avenue

Kingston, PA 18704

E-mail: smcdonough@dlplaw.com


Michael J. Crocenzi, Esq. (PA I.D. #66255)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: mcrocenzi@barley.com


Sarah L. Doyle, Esq. (PA I.D. #321149)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.


/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In Care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com