IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DION STORM HOLLAND              :
                                       : CIVIL NO.  4:25-CV-01323
         Plaintiff,           :
                                         :
vs.                                 : (JUDGE DARYL F. BLOOM)
                                       : (MAG. JUDGE CARLSON)
JERSEY SHORE AREA JOINT     :
WATER AUTHORITY, et al.      :
                                       :
        Defendants:       : (ELECTRONICALLY FILED)

**BRIEF OF DEFENDANTS JERSEY SHORE AREA JOINT WATER AUTHORITY AND ERIC S. JOHNSTON IN SUPPORT OF THEIR MOTION UNDER F.R.C.P. 12(b)(6) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................. i-iv

TABLE OF CITATIONS ................................................ v-xii

I.    PROCEDURAL HISTORY ................................... 1

II.   STATEMENT OF FACTS ................................... 2

      A.    ALLEGATA RELATED TO THE JUNE 23, 2025
            DISRUPTION IN SERVICE ........................ 3

      B.    ALLEGATA RELATED TO THE JSAJWA'S
            CONDUCT SUBSEQUENT TO THE JUNE 30, 2025
            ORDER OF COURT.................................. 5

III.  QUESTIONS PRESENTED .................................. 6

      A.    WHETHER HOLLAND'S CONSTITUTIONAL
            CLAIMS RELATED TO THE JUNE 23, 2025
            SHUT-OFF SHOULD BE DISMISSED BECAUSE
            HOLLAND HAD ACTUAL NOTICE OF THE SHUT-
            OFF AND WAS AWARE OF AND AVAILED
            HIMSELF OF THE POST-NOTICE PROCEDURE
            TO CONTEST THE SHUT-OFF? ................... 6

      B.    WHETHER THE CONSTITUTIONAL CLAIMS
            RELATED TO THE JSAJWA ACTIVITY AFTER
            THE JUNE 30, 2025 RESTORATION OF SERVICE
            MUST BE DISMISSED BECAUSE HOLLAND HAS
            NOT ALLEGED COGNIZABLE DEPRIVATION
            UNDER THE UNITED STATES CONSTITUTION? .... 6

i

C.     WHETHER HOLLAND FAILS TO STATE A CLAIM
FOR MUNICIPAL LIABILITY? .................................. 6

D.     WHETHER HOLLAND FAILS TO STATE A CLAIM
FOR RELIEF AS IT RELATES TO THE REMAINING
FEDERAL STATUTORY CLAIMS, PENNSYLVANIA
CONSTITUTIONAL CLAIMS AND PENNSYLVANIA
COMMON LAW CLAIMS? ........................................... 6

E.     WHETHER ERIC JOHNSTON IS ENTITLED TO
QUALIFIED IMMUNITY WITH RESPECT TO
HOLLAND'S CONSTITUTIONAL CLAIMS
BECAUSE HOLLAND CANNOT SHOW THAT
THE TERMINATION OF HIS WATER SERVICE
TRIGGERED BY NON-PAYMENT VIOLATED
A CLEARLY ESTABLISHED CONSTITUTIONAL
RIGHT? ............................................................. 7

IV.   LAW AND ARGUMENT ........................................... 7

THE LEGAL STANDARD ....................................... 7

A.     HOLLAND'S CONSTITUTIONAL CLAIMS RELATED
TO THE JUNE 23, 2025 SHUT-OFF SHOULD BE
DISMISSED BECAUSE HOLLAND HAD ACTUAL
NOTICE OF THE SHUT-OFF AND WAS AWARE OF
AND AVAILED HIMSELF TO THE POST-NOTICE
PROCEDURE TO CONTEST THE SHUT-OFF............. 9

1.    There Is No Violation of Holland's Procedural
Due Process Rights................................................ 9

2.    Holland Fails to State A Claim for a Fourteenth Amendment Equal Protection Violation.............. 14

3.    Holland Has Not Suffered a Taking Under The Fifth Amendment By Virtue of the Disruption Of His Service on June 23, 2005.......................... 17

B.    THE CONSTITUTIONAL CLAIMS RELATED TO THE JSAJWA ACTIVITY AFTER THE JUNE30, 2025 RESTORATION OF SERVICE MUST BE DISMISSED BECAUSE HOLLAND HAS NOT ALLEGED A COGNIZABLE DEPRIVATION UNDER THE UNITED STATES CONSTITUTION.............................. 21

C.    HOLLAND FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY................................................ 23

D.    HOLLAND FAILS TO STATE A CLAIM FOR RELIEF AS IT RELATES TO THE REMAINING FEDERAL STATUTORY CLAIMS, PENNSYLVANIA CONSTITUTIONAL CLAIMS AND PENNSYLVANIA COMMON LAW CLAIMS............................................... 25

1.    Holland's Claims Under the Rehabilitation Act and ADA Fail As a Matter of Law......................... 25

2.    Holland Fails To State A Claim Under The Pennsylvania Constitution ..................................... 27

3.    Holland Fails To State A Claim For Civil Conspiracy Under 42 U.S.C. §1985....................... 28

4.    Holland's Claim of Fraudulent Misrepresentation Against Johnston and JSAJWA Fails As A Matter Of Law...................................................................... 30

iii

        a)    The Fraud Claim Against JSAJWA
                 Is Barred By the Political Subdivision
                 Tort Claims Act............................................   30

        b)    Holland Fails To State A Claim Against
                 Johnston for Fraudulent Misrepresentation.   31

    5.    Holland Fails To State A Claim For Unjust
        Enrichment And Recission...................................   32

    6.    Holland Fails To State A Claim Under The
        Unfair Trade Practices Act....................................   34

    7.    Holland Fails To State A Claim For Intentional
        Infliction Of Emotional Distress Against
        Johnston and JSAJWA............................................   34

    8.    Holland's Claim For Breach of Fiduciary
        Duty Fails As A Matter Of Law..............................   36

   E.    ERIC JOHNSTON IS ENTITLED TO QUALIFIED
       IMMUNITY WITH RESPECT TO HOLLAND'S
       CONSTITUTIONAL CLAIMS BECAUSE HOLLAND
       CANNOT SHOW THAT THE TERMINATION OF
       HIS WATER SERVICE TRIGGERED BY NON-
       PAYMENT VIOLATED A CLEARLY
       ESTABLISHED CONSTITUTIONAL RIGHT.............   40

V.    CONCLUSION ........................................................   46

CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(b)(2) ..............   48

CERTIFICATE OF SERVICE ...........................................................   49

iv

# TABLE OF CITATIONS

## CASES

Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).......................... 10

Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1089) ...................... 15

Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 2008 WL3852256 (E.D. Pa. 2008) ................................................................. 39

Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)......................................................................... 41, 42

Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir. 1987) .......... 23

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ...................................... 7

Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ...................................................................... 43, 45, 46

Augustin, 897 F.3d at 152 .................................................................. 20

Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ............................. 22

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ...................... 7, 8

Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) ................. 43

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) .... 8

Butler v. Upper Merion Township, 765 F.Supp.3d 441, 451 (E.D. Pa. 2025) ...................................................................................... 24, 25

Carswell v. Borough of Homestead, 381 F.3d 235, 242
(3d Cir. 2004) ..................................................................... 46

City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91,
109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ............................ 25

City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259
(3d Cir. 1998).................................................................... 3

Cnty of Sacramento v. Lewis, 523 U.S. 833, 845 n.7,
118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) .......................... 22

Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120,
112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ............................ 22, 28

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212
(3d Cir. 2013) ..................................................................... 8

Daniels v. Williams, 474 U.S. 327, 341, 106 S.Ct. 662,
88 L.Ed. 2d 662 (1986) ....................................................... 11

Dempsey v. Bucknell Univ., 834 F.3d 457, 468 n. 6 (3d Cir. 2016) .. 42

District of Columbia v. Wesby, 583 U.S. 48, 138 S.Ct. 577, 589,
199 L.Ed.2d 453 (2018) ...................................................... 41

Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990)........ 23

Doe v. Cnty. of Ctr. Pa, 242 F.3d 437 (3d Cir. 2001) ...................... 40

Donahue v. Borough of Collingdale, 714 F.Supp.3d 504, 516
(E.D. Pa. 2024) ................................................................... 24

El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768
(E.D. Pa. 2007) ................................................................... 14

vi

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) ...........  29

Gen. Refractories Co. v. Liberty Mut. Ins. Co., 199 U.S. Dist.
LEXIS 18932, 1999 WL 1134530 (E.D. Pa. 1999)............................  39

Gordon v. City of Phila., No. 07-5039, 2009 U.S. Dist. LEXIS
77009, 2009 WL 2710247, at *3 (E.D. Pa. 2009) .............................  12

Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945,
2009 WL 5033966 (E.D. Pa. 2009)......................................................  39

Hickman v. Borough, 2017 WL 1197806, at *11
(D.N.J. Mar. 31, 2017) ........................................................................  41

Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006)...............  16

Hopson v. Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992)............  23

Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998)..........................  35, 36

In re American Continental/Lincoln Savings and Loan Securities
Litigation, 102 F.3d 1524, 1537 (9th Cir. 1996)...................................  2

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426
(3d Cir. 1997) .......................................................................................  8

In re Trs. Of Conneaut Lake Park, Inc., 855 F.3d 519,
526 (3d Cir. 2017) ................................................................................  19

James v. New Jersey State Police, 957 F.3d 165, 169 (3d Cir. 2020) ..  41, 42, 43

Jones v. City of Philadelphia, 890 A.2d 1188, 1213
(Pa. Commw. Ct.2006) .........................................................................27

Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708,
164 L.Ed 2d 415 (2006)........................................................ 11

Keenheel v. Com., Pennsylvania Sec. Comm'n, 579 A.2d 1358, 1361
(Pa. Cmwlth. 1990) .............................................................. 33

Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470,
497, 107 S. Ct. 1232, 94 L.Ed.2d 472 (1987)........................ 21

K.S.S. v. Montgomery Cty. Bd. Of Comm'rs., 871 F. Supp. 2d 389,
397-98 (E.D. Pa. 2012).......................................................... 11

Lackner v. Glosser, 892 A.2d 21,34 (Pa. Super. 2006)....................... 32

Leonard v. Owen J. Roberts Sch. Dist., No. 08-Cv-2016,
2009 U.S. Dist. LEXIS 51468, 2009 WL 603160, at *4
(E.D. Pa. Mar. 5, 2029) ......................................................... 11

Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 237, 125 S.Ct. 2074,
161 L.Ed.2d 876 (2005) ........................................................ 19

Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct. 2886,
120 L.Ed.2d 798 (1992) ........................................................ 18

Madar, 2021 U.S. Dist. LEXIS 100128, 2021 WL 2156362, at 8*...... 12

Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092,
89 L.Ed.2d 271 (1986) .................................................... 42, 46

Mann v. Palmerton Area School District, 872 F.3d 165
(3d Cir. 2017)....................................................................... 24

Maple Props., Inc. v. Twp. of Upper Providence,
151 F. App'x 174, 177 (3d Cir. 2005) ................................... 11

viii

Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ...................... 8

McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)................. 43

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658,
665-83, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).................................... 24

Mulholland v. Gov't of Cty. Of Berks, No. 10-CV-5616, 2012 U.S.
Dist. LEXIS 43521, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29,
2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013) ........................................... 10

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314,
70 S.Ct. 652, 94 L.Ed. 865 (1950)......................................................... 12

Murr v. Wisconsin, 582 U.S. 383, 137 S.Ct. 1933, 1942,
198 L.Ed.2d 497 (2017) ........................................................................ 17, 19

Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d Cir. 2022) ..... 18, 19, 20

Olarte v. Cywinski, No. 3:12-CV-632, 2012 U.S. Dist. LEXIS
121812, 2012 WL 3757649, at *5 (M.D. Pa. Aug. 28, 2012)............. 12, 13

One Three Five, Inc. v. City of Pittsburgh, 951 F. Supp. 2d 788,
809 (W.D. Pa. 2013) ............................................................................... 28

Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448,
150 L.Ed.2d 592 (2001) ........................................................................ 18

Parsons Steel, Inc. V. First Alabama Bank, 474 U.S. 518,
88 L.Ed 2d 877, 106 S.Ct. 768 (1986) ................................................. 10

Penn Central Transporation Co. v. City of New York, 438 U.S. 104,
124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ......................................... 19

Pension Benefit Guar. Corp. v. White Consol. Indus.,
998 F.2d 1192, 1196 (3d Cir. 1993) .................................................... 3

Perano v. Twp. of Tilden, 423 F. App'x. 234, 237 (3d Cir. 2011) ..... 13

Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ......... 7, 16

Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7
(3d Cir. 2002).................................................................................. 7

Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.,
442 F. App'x 681, 687 (3d Cir. 2011) .................................................. 27

Puente v. Navy Fed. Credit Union, 2025 U.S. Dist. LEXIS 20229,
2025 WL 408677 (E.D. Pa. 2025) ........................................................ 39

Reese v. Pook & Pook, LLC, 158 F.Supp.3d 271, 298
(E.D. Pa. 2016) ................................................................................. 37

Revell v. Port. Auth. Of N.Y. & N.J., 598 F.3d 128, 139
(3d Cir. 2010) .................................................................................. 12

Rogin v. Bensalem Township, 616 F.2d 680, 690 (3d Cir. 1980) ...... 20

Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999) .................... 40

Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007) ........................... 3

Santini v. Fuentes, 795 F.3d 410, 418 (3d Cir. 2015) ........................ 42

Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014) ................................ 2

Sioux City Bridge Co. V. Dakota County, 260 U.S. 441,
43 S.Ct. 190, 67 L.Ed. 340 (1923) ..................................................... 15

Snyder v. Crusader Servicing Corp., 231 A.3d 20, 31
(Pa. Super. 2020) ................................................................ 37

Spieth v. Bucks Cnty. Hous. Auth., 594 F. Supp. 2d 584, 591
(E.D. Pa. 2009) ................................................................... 26

Strathie v. Dep't of Transp., 716 F.2d 227, 229 (3d Cir. 1983)............ 26

Studli v. Children & Youth Families Central Reg'l Office,
346 F.App'x 804, 813 (3d Cir. 2009) .................................... 10

Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) ...................... 22

Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).... 24

Thomas v. Seaman, 451 Pa. 347, 350-51, 304 A.2d 134, 137 (1973). 32

Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 358
(E.D. Pa. 2007)................................................................... 11

United States v. One Toshiba Color Television, 213 F.3d 147, 155
(3d Cir. 2000)..................................................................... 29

United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825,
828–29 (1983) .................................................................... 22

United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000) ........... 15, 16, 17

Village. Of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct.
1073, 145 L.Ed. 2d 1060 (2000) ........................................ 41, 43

Wesby, 138 S.Ct. At 589)...................................................... 41, 43

White v. Pauly, 580 U.S. 73, 137 S.Ct. 548, 550,
196 L.Ed.2d 463 (2017) ...................................................... 42, 43

Yenchi v. Ameriprise Fin., Inc., 639 Pa. 618, 161 A.3d 811,
819-21 (Pa. 2017) ................................................................. 39

Ziglar v. Abbasi, 582 U.S. 120, 137 S.Ct. 1843, 1866,
198 L.Ed.2d 290 (2017) ...................................................... 42

**STATUES**

28 U.S.C. §1738............................................................... 10

42 U.S.C. §1983............................................................... 22

42 Pa.C.S.A. §8542 ......................................................... 30, 31

42 Pa.C.S. §8550.............................................................. 31

53 P.S. §3102.502(b)........................................................ 10, 44

Unfair Trad Practices and Consumer Protection Law,
73 P.S. §201-1, et seq ...................................................... 34

**OTHER AUTHORITIES**

U.S. Const. Amend. V ...................................................... 18

U.S. Const. Amend. XIV, §1............................................. 15

I.    PROCEDURAL HISTORY

This action was originally filed in the Court of Common Pleas of Lycoming County on June 27, 2025 by Writ of Summons together with an Emergency Motion for Injunctive Relief.  A hearing was held to address that Emergency Motion on June 30, 2025.  In the Emergency Motion, Plaintiff Dion Storm Holland ("Holland") alleged that the Jersey Shore Area Joint Water Authority ("JSAJWA") acted unlawfully in discontinuing water service to his property for the non-payment of water service.  In an Order of June 30, 2025[1], the Court held that one of the statutory notice requirements preceding a water shut-off had not been met and directed that service be restored.  At the conclusion of the hearing, the service was restored.

On July 10, 2025, a Motion for Contempt was filed by Holland against JSAJWA and newly named Defendant Tiadaghton Municipal Sewer Authority ("TMSA").  Subsequent to that filing, the case was removed to this Court on July 21, 2025 (Doc. 1).

The operative pleading in this case is the First Amendedt Complaint ("FAC", Doc. 10), which was filed on August 1, 2025.  On August 14, 2025,

---

[1]  The Order of Judge William P. Carlucci, dated June 30, 2025, is appended to Holland's First Amended Complaint ("FAC"; Doc. 10) as Exhibit "T".

JSAJWA filed a motion to dismiss the FAC along with a motion for enlargement of time to file its supporting brief.  By Order dated August 21, 2025 (Doc. 28), this Court granted JSAJWA's motion making its supporting brief due on September 11, 2025.

This brief is filed in support of JSAJWA's motion to dismiss Holland's FAC in its entirety.

## II.    STATEMENT OF FACTS

JSAJWA maintains that the most efficient way to address Mr. Holland's claims is to evaluate the conduct of the Authority in the interruption of Holland's water service which occurred on June 23, 2025 (Doc. 10 at ¶14) as one event and the conduct of the Authority after his water service was restored at the conclusion of the hearing on June 30, 2025, which was conducted in the Court of Common Pleas of Lycoming County before Judge William P. Carlucci.  Analysis of the allegata of Holland's FAC, together with the Exhibits appended to it, along with Judge Carlucci's Order[2] in which he explains the rationale for his ruling, dictate

---

[2] It is well-established that courts are permitted to consider matters of which they may take judicial notice at the 12(b)(6) motion stage, including records and reports of administrative bodies and publically available records and transcripts from judicial proceedings and related or underlying cases which have a direct relation to the matters at issue.  *In re* American Continental/Lincoln Savings and Loan Securities Litigation, 102 F.3d 1524, 1537 (9th Cir. 1996).

It is well-settled in this Circuit that matters of public record may be considered without converting a motion to dismiss into one for summary judgment.  Schmidt v. Skolas, 770 F.3d

the dismissal of the FAC in its entirety.

## A.    ALLEGATA RELATED TO THE JUNE 23, 2025 DISRUPTION IN SERVICE

There is no dispute that Mr. Holland had a past due balance for his water service at the time that the JSAJWA discontinued his service on June 23, 2025 (See, generally Doc. 10).  Holland maintains that he took issue with the amount of his past due bill (Doc. 10 at ¶15a).  Moreover, and critical to the analysis of Holland's constitutional claims, Holland acknowledges in Exhibits A-D of the FAC (Doc. 10), that he had been placed on actual notice of the discontinuation of his service.  After the interruption of his service Mr. Holland instituted suit in the Court of Common Pleas of Lycoming County by Writ of Summons together with an Emergency Motion for Injunctive Relief on June 27, 2025 (Doc. 10 at ¶19).[3]  On June 30, 2025, a hearing was held in which Judge William P. Carlucci made the

_____

241 (3d Cir. 2014). Official court dockets and information contained in court files are matters of public record of which the court can take judicial notice. *See* City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). [I]n considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007).  The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[3] The docket entries reflecting the activity in the Lycoming County court action, Dion Storm Holland v. Jersey Shore Area Joint Water Authority, CV-2025-00952, are appended to this brief as Exhibit "A".

following findings, of which this Court may take judicial notice:

## ORDER

      **AND NOW**, this 30th day of June, 2025, after hearing on Plaintiff's Emergency Motion for Preliminary Injunctive Relief filed on June 27th, 2025, the Court finds by clear and convincing evidence that the Defendant posted a termination notice introduced into evidence as Defendant's Exhibit 2 more than ten (10) days prior to the termination of water service. The Court further finds by clear and convincing evidence that the Defendant failed to mail the same notice to "the person liable for payment of the rentals and charges and the owner of the property or property manager".

      The written documents introduced as Plaintiff's Exhibits A through L consisting of 22 pages do not satisfy the statute with regard to the claim of a just defense because those documents do not indicate that the Plaintiff ever delivered a written statement under oath or affirmation and those documents do not include a statement that "the statement was not executed for the purpose of delay." Therefore, the Plaintiff has not established that the Plaintiff was served notice of a bona fide dispute consistent with the terms of the statute. However, the Court notes that the statute provides that "in no case shall the water supply to premises be shut off until ten days after a written notice of intention to do so has been posted at the main entrance and mailed to the person liable for payment of the rentals and charges and the owner of the property or property manager."

      Defendant concedes that Defendant never mailed Defendant's Exhibit 2 to anyone. Thus, the termination notice was never mailed to anyone as required by the statute. For that reason, Plaintiff's Emergency Motion

for Preliminary Injunctive Relief is granted in part.

> Defendant is directed, within twenty-four (24)
> hours of the filing of this Order to restore water service
> to 566 High Street, Jersey Shore, Pennsylvania.  That
> water service may be terminated after ten (10) days after
> mailing and posting of a new termination notice, unless
> Plaintiff provides a written notice in the form required by
> the statute.

(Doc. 10 at Ex. T.).  Mr. Holland acknowledges that "service was restored that day

before arriving home from the injunction hearing" (Doc. 10 at ¶20).

## B.    ALLEGATA RELATED TO THE JSAJWA'S CONDUCT SUBSEQUENT TO THE JUNE 30, 2025 ORDER OF COURT.

Holland alleges that he was handed in person a second "Ten Day Notice of

Shut-off" on the same day as the aforementioned court hearing and that he

received by both regular and certified mail the same notice on July 1, 2025 (Doc.

10 at ¶22).  Holland interpreted this activity as conduct being undertaken as

incident to a "second shut-off attempt" of his service (Doc. 10 at ¶22).  It is

undisputed that after the restoration of his service on June 30, 2025, there has been

no subsequent interruption of Mr. Holland's service notwithstanding his failure to

submit to a payment plan or make payment on any portion of his outstanding

arrears.

This is the undisputed factual predicate which is material to the disposition

of JSAJWA's motion to dismiss the FAC pursuant to F.R.C.P. 12(b)(6).

**III.    STATEMENT OF THE QUESTIONS PRESENTED**

    **A.    WHETHER HOLLAND'S CONSTITUTIONAL CLAIMS RELATED TO THE JUNE 23, 2025 SHUT-OFF SHOULD BE DISMISSED BECAUSE HOLLAND HAD ACTUAL NOTICE OF THE SHUT-OFF AND WAS AWARE OF AND AVAILED HIMSELF OF THE POST-NOTICE PROCEDURE TO CONTEST THE SHUT-OFF?**

    (Suggested Answer: In the Affirmative)

    **B.    WHETHER THE CONSTITUTIONAL CLAIMS RELATED TO THE JSAJWA ACTIVITY AFTER THE JUNE 30, 2025 RESTORATION OF SERVICE MUST BE DISMISSED BECAUSE HOLLAND HAS NOT ALLEGED COGNIZABLE DEPRIVATION UNDER THE UNITED STATES CONSTITUTION?**

    (Suggested Answer: In the Affirmative)

    **C.    WHETHER HOLLAND FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY?**

    (Suggested Answer: In the Affirmative)

    **D.    WHETHER HOLLAND FAILS TO STATE A CLAIM FOR RELIEF AS IT RELATES TO THE REMAINING FEDERAL STATUTORY CLAIMS, PENNSYLVANIA CONSTITUTIONAL CLAIMS AND PENNSYLVANIA COMMON LAW CLAIMS?**

    (Suggested Answer: In the Affirmative)

**E.    WHETHER ERIC JOHNSTON IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO HOLLAND'S CONSTITUTIONAL CLAIMS BECAUSE HOLLAND CANNOT SHOW THAT THE TERMINATION OF HIS WATER SERVICE TRIGGERED BY NON-PAYMENT VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT?**

(Suggested Answer: In the Affirmative)

## IV.    LAW AND ARGUMENT

### THE LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level ..." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In order to determine the sufficiency of a complaint under

*Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff
> must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> Finally, where there are well-pleaded factual allegations,
> a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for
> relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013) (quoting

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not

consider matters extraneous to the pleadings.  However, an exception to the

general rule is that a 'document integral to or explicitly relied upon in the

complaint' may be considered ...." *In re* Burlington Coat Factory Sec. Litig., 114

F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).  Thus, a court may consider "the

complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the complainant's claims are based upon

these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). In this

case, Mr. Holland has appended a number of exhibits to the FAC identified by

JSAJWA, such as Judge Carlucci's June 30, 2025 Order which forms the basis of

his allegations of wrongdoing by JSAJWA and Eric Johnston.  As such, the Court

may rely upon these documents to form its analysis.

**A. HOLLAND'S CONSTITUTIONAL CLAIMS RELATED TO THE JUNE 23, 2025 SHUT-OFF SHOULD BE DISMISSED BECAUSE HOLLAND HAD ACTUAL NOTICE OF THE SHUT-OFF AND WAS AWARE OF AND AVAILED HIMSELF TO THE POST-NOTICE PROCEDURE TO CONTEST THE SHUT-OFF.**

Holland's FAC asserts constitutional violations under the Fourteenth Amendment with respect to the Equal Protection and Procedural Due Process clauses as well as violations of the First, Fourth and Fifth Amendments. As it relates to the actual disruption of his water service from June 23, 2025 to June 30, 2025, these claims fail.

**1. There Is No Violation of Holland's Procedural Due Process Rights.**

Several admissions in Holland's FAC dictate dismissal of the procedural due process claim associated with the June 23, 2025 shut-off.

- Holland acknowledges he was aware of a posted door hanger placed more than ten days prior to shut-off of his water service advising him that it would occur (Doc. 10 at ¶12);

- Holland availed himself to the procedure (albeit unsuccessfully) put in place to avoid the shut-off (Doc. 10 at ¶15a);

- Holland acknowledged that Judge Carlucci determined that his submission to the Authority on June 11, 2025, was not effective to suspend the interruption of his service because he did not satisfy the

9

statutory requirements of the Pennsylvania Water Services Act.[4]

These factual admissions and the June 30, 2025 Court proceeding operate to defeat Holland's procedural due process claims. "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).  To establish a prima facie case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate.  *See* Studli v. Children & Youth Families Central Reg'l Office, 346 F.App'x 804, 813 (3d Cir. 2009); Mulholland v. Gov't of Cty. Of Berks, No. 10-CV-5616, 2012 U.S. Dist. LEXIS 43521, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013).  Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures

---

[4] 53 P.S. §3102.502(b).  This Court can and should consider Judge Carlucci's June 30, 2025 ruling dispositive as it relates to his determination that Holland's notice to the Authority was not effective to suspend the disruption in service.  The Full Faith and Credit Act requires federal courts to give state judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken."  28 U.S.C. §1738.  As the Supreme Court stated in Parsons Steel, Inc. V. First Alabama Bank, 474 U.S. 518, 88 L.Ed 2d 877, 106 S.Ct. 768 (1986), a federal court generally must give deference to a state court judgment, granting "the same preclusive effect to a state court judgment as another court of that State would give."  *Id*. at 523.

as fundamentally unfair." *See* <u>Leonard v. Owen J. Roberts Sch. Dist.,</u> No. 08-CV-2016, 2009 U.S. Dist. LEXIS 51468, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2029) (citing <u>Daniels v. Williams</u>, 474 U.S. 327, 341, 106 S.Ct. 662, 88 L.Ed. 2d 662 (1986) (Stevens, J., concurring)).  In other words, "the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." <u>K.S.S. v. Montgomery Cty. Bd. Of Comm'rs.,</u> 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012).  "The process that is 'due' in a given situation necessarily differs based on the particular circumstances." <u>Maple Props., Inc. v. Twp. of Upper Providence,</u> 151 F. App'x 174, 177 (3d Cir. 2005) (citations omitted).

The Eastern District recently explained:

> In the context of property deprivations, the United States Supreme Court "has never employed an actual notice standard in its jurisprudence.  Rather, its focus has always been on the procedures in place to effect notice." <u>United States v. One Toshiba Color Television</u>, 213 F.3d 147, 155 (3d Cir. 2000).  Thus, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." <u>Jones v. Flowers</u>, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed 2d 415 (2006).  It mandates only that notice be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections."

11

        <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S.
306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also*
<u>Flowers</u>, 547 U.S. at 220 (holding that notice is
"constitutionally sufficient if it was reasonably
calculated to reach the intended recipient when sent.")
The Supreme Court has explained that if, for example,
notice by certified mail is returned unclaimed, the
municipality must "take additional reasonable steps to
attempt to provide notice to the property owners before
selling his property, if it is practicable to do so."
<u>Flowers</u>, 547 U.S. at 225.  The Court recognized that
such steps could include resending the notice by regular
mail, addressing otherwise undeliverable mail to
occupant, or posting notice on the front door.  <u>Flowers</u>,
547 U.S. at 236-37.

<u>Madar</u>, 2021 U.S. Dist. LEXIS 100128, 2021 WL 2156362, at 8*.

        Due process requires: (1) the government provided notice to the property

owner reasonably calculated to apprise interested parties of the pendency of the

action; and (2) afford them an opportunity to present their objections.  <u>Gordon v.

City of Phila.</u>, No. 07-5039, 2009 U.S. Dist. LEXIS 77009, 2009 WL 2710247, at

*3 (E.D. Pa. 2009) (citing <u>Flowers</u>, 547 U.S. at 220).  "A plaintiff cannot prevail

on a Fourteenth Amendment procedural due process claim if the state has an

adequate post-deprivation procedure or remedy available."  <u>Olarte v. Cywinski</u>,

No. 3:12-CV-632, 2012 U.S. Dist. LEXIS 121812, 2012 WL 3757649, at *5

(M.D. Pa. Aug. 28, 2012) (citing <u>Revell v. Port. Auth. Of N.Y. & N.J.</u>, 598 F.3d

128, 139 (3d Cir. 2010)).  An adequate procedural due process remedy is when a

state provides "reasonable remedies to rectify a legal error by a local

administrative body." Olarte, 2012 U.S. Dist. LEXIS 121812, 2012 WL 3757649,

at *5 (quoting Perano v. Twp. of Tilden, 423 F. App'x. 234, 237 (3d Cir. 2011)).

The case law cited above establishes that the application of procedural due

process concepts to a particular set of facts require a common sense approach to

ensuring that a property deprivation does not occur without notice to the person

suffering the deprivation. Here, immediately upon becoming aware of the ten day

notice posting at his home on June 11, 2025, Mr. Holland authored a detailed

notice to the JSAJWA setting forth his own "legal notices" and set of demands to

the Authority including a demand for a forensic audit and the termination of any

further efforts to either terminate his service or attempt to collect the delinquent

balance on his account (Doc. 10 at Ex. B). While Mr. Holland was not satisfied

with the Authority's response to this demand, his conduct clearly demonstrates

that he was on notice of the Authority's activity and apprised of what steps should

be taken to protect his interests.

On these undisputed facts, the water service interruption running from June

23, 2025 to June 30, 2025 did not violate Holland's procedural due process rights.[5]

_____

[5] JSAJWA acknowledges that Judge Carlucci ordered the restoration of Holland's
service because, while the property was posted and it was undisputed that Holland had notice of
the impending shut-off, the Authority failed to comply with also mailing notice to Holland. This

### 2.    Holland Fails to State A Claim for a Fourteenth Amendment Equal Protection Violation.

Holland alleges that he was treated differently because "[d]efendants honored shut-off disputes and medical accommodations for other customers but intentionally refused to honor Plaintiff's valid medical certificate ...." (Doc. 10 at ¶51). In support of this argument, Holland relies upon the termination notice (Doc. 10, Ex. A) which provides:

MEDICAL EMERGENCY NOTICE

If you, or anyone presently and normally living in your home is seriously ill, we will restore your water service during such illness provided you:

(a)    Have a physician certify by phone or in writing that such illness exists and that it may be aggravated if your service is not restored; and

(b)    Make some equitable arrangements to pay the company your past due and current bills for service.

(c)    Contact us by calling the telephone number listed below.

---

fact, however, does not operate to defeat the procedural due process claim. *See*, El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768 (E.D. Pa. 2007):

Most significantly, Plaintiffs admit they had **actual notice** of the pending demolitions when they visited the properties in March 2005 and saw the markings on the buildings. Those markings actually alerted them to the existence of a problem with their properties sufficient for them to contact the City. They were then told of the pending demolitions and advised of the action they could take – filing a court injunction – to stop the City from proceeding. Rather than pursuing their judicial remedies, they did nothing other than send a letter. As the Plaintiff had **actual notice** prior to the demolitions, they have no **procedural due process claim** based on inadequate notice procedures. [emphasis in the original].

El Malik, *supra.*

14

Jersey Shore Area Joint Water Authority          Tiadaghton Municipal Sewer Authority
Office: 1111 Bardo Avenue, Jersey Shore, PA 17740 P.O. Box 5039, 290 Rice Road
Telephone: (570) 398-1443                          Telephone: (570) 398-2366

This notification provides that the certifying physician confirm the existence of an illness <u>and</u> that some arrangements be made to deal with past due balances. Here, Mr. Holland has been transparent in his FAC and accompanying exhibits that he had no intention of arranging any type of payment plan in order to avoid a shut-off.  As such, he did not satisfy the plain language of the Medical Emergency Notice.

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, §1.  Holland's Equal Protection argument in this case advances what is called a "class of one" claim, an assertion that the plaintiff has been treated differently than all others in some invidious fashion.  In this regard, "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>Village. Of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 2d 1060 (2000) (citing <u>Sioux City Bridge Co. V. Dakota County</u>, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); <u>Allegheny</u>

15

Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633,

102 L.Ed.2d 688 (1089)).  However, the legal standard to be applied when

examining such a claim in the context of a land use dispute is an exacting one, and

has been defined by the Third Circuit in the following terms:

> The Supreme Court has held that a "class of one" can
> attack intentionally different treatment if it is "irrational
> and wholly arbitrary."  Village of Willowbrook v. Olech,
> 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060
> (2000) (internal citations omitted) (per curiam) .... The
> "irrational and wholly arbitrary" standard is doubtless
> difficult for a plaintiff to meet in a zoning dispute, id. at
> 565-66, 120 S.Ct. 1073, 1074 (Breyer, J., concurring),
> and we do not view an equal protection claim as a device
> to dilute the stringent requirements needed to show a
> substantive due process violation.

Eichenlaub, 385 F.3d at 296-87.

In order to sustain a "class of one" equal protection claim: "a plaintiff must

allege that (1) the defendant treated him differently from others similarly situated,

(2) the defendant did so intentionally, and (3) there was no rational basis for the

different in treatment.  Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006).

So, to state a claim for 'class of one' equal protection, a plaintiff must at a

minimum allege that he was intentionally treated differently from other similarly

situated by the defendant and that there was no rational basis for such treatment."

Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

16

Here, Holland has failed to plausibly meet the exacting standard of articulating an equal protection violation because 1) he did not comply with the terms of the MEN; and 2) he has failed to identify even a single customer whose service was not turned off in circumstances such as his own.

Finally, and most importantly, notwithstanding Mr. Holland's demands to the contrary, the JSAJWA is entitled to a reasonable expectation for some payment in exchange for the provision of water service. Under these circumstances, the enforcement of payment obligations can hardly be attacked as constituting "irrational and wholly arbitrary" governmental conduct. *See*, <u>Village of Willowbrook</u>, *supra*, 528 U.S. at 564.

Accordingly, the Equal Protection Claim fails as a matter of law.

> ### 3.    Holland Has Not Suffered a Taking Under The Fifth Amendment By Virtue of the Disruption Of His Service on June 23, 2005

In Count V of the FAC, Holland alleges that the termination of his water service constituted a "per se physical taking" and a "regulatory taking" (Doc. 10 at ¶72).

The Takings Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, provides that private property cannot be taken for public use without compensation. <u>Murr v. Wisconsin</u>, 582 U.S. 383, 137

S.Ct. 1933, 1942, 198 L.Ed.2d 497 (2017) (citing U.S. Const. Amend. V). The

Takings Clause not only applies to government's physical appropriation of private

property for public use, but also to government regulation that deprives the owner

of the economically beneficial or productive use of his property. *Id*. at 1942-43

(citing Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d

592 (2001)). A *per se* regulatory taking occurs when a regulation renders the

property "essentially idle." Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d

Cir. 2022) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct.

2886, 120 L.Ed.2d 798 (1992)).

Holland argues that the JSAJWA's interruption in water service constitutes

an improper taking. Yet, he concedes that he has refused to pay any portion of his

delinquent bills or enter a payment plan until he is provided a forensic audit. He

admits that he stopped paying his water bills because he contends he owes less.

After he stopped paying, the Authority turned the services off.

There has been no *per se* taking. The JSAJWA has not physically taken

Holland's property and has not deprived him of all economically viable uses of the

property.

A partial regulatory taking may occur even when the owner is not deprived

of all economically beneficial use. If he asserts that he has been improperly

18

deprived of a legally cognizable property interest by government action, he may make a claim for a partial taking.  Nekrilov, 45 F.4th at 669 ("A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest.")(citing In re Trs. Of Conneaut Lake Park, Inc., 855 F.3d 519, 526 (3d Cir. 2017)).  A less than total deprivation limiting the property's use may amount to a compensable taking under the test established in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).  The Penn Central factors are: (1) the economic impact of the regulation on the value of the property; (2) the extent to which the regulation has interfered with distinct investment backed expectations; and (3) the character of the government action.  Nekrilov, 45 F.4th at 672 (quoting Murr, 137 S.Ct. At 1943).

This analysis begins with the character of the government action - disconnecting service and charging fees.  When considering this factor, courts determine if the government action is closer to a compensable "classic taking," id. at 677 (citing Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 237, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), or to "some public program adjusting the benefits and burdens of economic life to promote the common good," id. (citing Penn Cent. Transp. Co., 428 U.S. at 124).

19

The Authority's enforcement of its fee schedule is non-compensable government action that advances the public interest.  The government has a legitimate interest in collecting debts to stabilize municipal finances, and the public has a strong interest in a viable water distribution.  *See* Augustin, 897 F.3d at 152 (discussing government interest in collecting municipal lien debts and public interest in provision of gas utilities).  Courts typically uphold government regulations that "appl[y] generally to a broad class of properties."  Nekrilov, 45 F.4th at 677 (quoting Rogin v. Bensalem Township, 616 F.2d 680, 690 (3d Cir. 1980)).   The water rates and charges set by the Authority are universally imposed on consumers throughout its service area.  The Authority has not demanded Holland pay charges any different than others in the service area pay.  The Authority's termination policies do not restrict or burden Holland any more than they do other water uses.

The government action here is akin to non-compensable government regulation that regulates economic life to promote the common good.  The reason he has no water services is not because the Authority singled him out.  It treated him as it treats any other property owner who refuses to pay for the services.  Allowing him to avoid paying for services would shift the cost of maintaining water service to other property owners.

In considering the economic impact factor, the Court must "compare the value that has been taken from the property with the value that remains in the property." Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 497, 107 S. Ct. 1232, 94 L.Ed.2d 472 (1987). The disconnection of services and charging fees do not amount to a taking. There has been no diminution in the property's value.

Because the JSAJWA was exercising its legitimate interest in providing the regulating service and because payment for water service was reasonably expected, there was no diminished investment-backed expectation supporting a finding of a taking. Therefore, because there has been no taking, the JSAJWA is entitled to dismissal on Holland's Fifth Amendment Claim.[6]

## B. THE CONSTITUTIONAL CLAIMS RELATED TO THE JSAJWA ACTIVITY AFTER THE JUNE 30, 2025 RESTORATION OF SERVICE MUST BE DISMISSED BECAUSE HOLLAND HAS NOT ALLEGED A COGNIZABLE DEPRIVATION UNDER THE UNITED STATES CONSTITUTION.

Holland readily concedes that by the time he returned home from the June 30, 2025 hearing, his water service had been restored and there has been no interruption in service since (Doc. 10). His allegations related to post June 30,

_____

[6] In the introduction to the FAC, Holland asserts rights under the First Amendment as well. However, he does not articulate any First Amendment claim in the body of the FAC.

2025 JSAJWA conduct are grounded in his suspicion that certain activity was

undertaken in anticipation of a future shut-off.  This suspicion on Holland's part

does not support any of the constitutional claims going forward under 42 U.S.C.

§1983.  Liability under §1983 requires injury, *see* Suppan v. Dadonna, 203 F.3d

228, 235 (3d Cir. 2000) ("Section 1983 is a tort statute.  A tort statute requires

injury."  (Quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). Here,

Holland does not claim that his service has been interrupted since June 30, 2025.

Therefore, any activity by the JSAJWA without more– cannot constitute the basis

of a constitutional violation.

Simply stated, an attempted violation of Holland's constitutional rights is

not remediable under §1983, as no actual deprivation of his federally protected

rights has occurred since the restoration of his service.  *See* Collins v. City of

Harker Heights, Tex., 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)

("Section 1983 provides a remedy against 'any person' who, under color of state

law, deprives another of rights protected by the Constitution")(citing 42 U.S.C.

§1983); *cf.* Cnty of Sacramento v. Lewis, 523 U.S. 833, 845 n.7, 118 S.Ct. 1708,

140 L.Ed.2d 1043 (1998) (attempted seizures of person are beyond scope of the

Fourth Amendment); United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000)

("[I]f the police make a show of authority and the suspect does not submit, there is

no seizure.); *see also*, *e.g.*, <u>Andree v. Ashland Cnty.</u>, 818 F.2d 1306, 1311 (7th Cir. 1987) ("[T]he mere *attempt* to deprive a person of his [constitutional] rights is not, under ususal circumstances, actionable under section 1983) (emphasis in the original).  It may be that Holland thinks that the JSAJWA staff should be liable because they planned, wanted or conspired to deprive him of water service.  If so, §1983 does not provide a remedy.  A §1983 claim is viable only if there has been an actual deprivation of a constitutional right.  <u>Andree</u>, 818 F.2d 1306, 1311 (7th Cir. 1987); *see also* <u>Dixon v. City of Lawton</u>, 898 F.2d 1443, 1449 (10th Cir. 1990).  Accordingly, as Holland did not suffer an interruption in service after June 30, 2025, he was not deprived of his any constitutional right.

Holland also asserts that he was threatened with the towing of his vehicle (Doc. 10 at ¶22).  While he does not specify the exact nature of the threats, mere verbal threats do not provide the basis for a viable §1983 claim.  *See* <u>Hopson v. Frederickson</u>, 961 F.2d 1374, 1378 (8th Cir. 1992).

For these reasons, all of Holland's allegations related to activity after the restoration of his water service fail to state a claim under 42 U.S.C. §1983.

### C.    HOLLAND FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY.

At the outset, JSAJWA maintains that there can be no municipal liability

because Holland has not asserted a facially plausible underlying constitutional violation.  Mann v. Palmerton Area School District, 872 F.3d 165 (3d Cir. 2017). In the event this Court holds to the contrary, the municipal liability claim should still be dismissed.

Generally, a municipality cannot be held vicariously liable under a theory of *respondeat superior* for employees' actions under §1983.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 665-83, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  However, municipalities can be liable when they maintain a "policy or custom" that violates constitutional rights.  Donahue v. Borough of Collingdale, 714 F.Supp.3d 504, 516 (E.D. Pa. 2024) (citing Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014)).  A city can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under §1983."  Butler v. Upper Merion Township, 765 F.Supp.3d 441, 451 (E.D. Pa. 2025) (quoting Monell, 436 U.S. at 594).

To establish *Monell* liability, a plaintiff must allege that: "(1) he possessed a constitutional right of which he was deprived; (2) the municipality being sued had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiffs

constitutional right; and (4) the policy was the 'moving force behind the

constitutional violation.'" <u>Butler</u>, 765 F.Supp3d at 451 (quoting <u>City of Canton,

Ohio v. Harris</u>, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Holland's FAC fails to identify any municipal policy or the moving force behind

the alleged constitutional violation.  While Holland alleges that JSAJWA failed to

follow various state regulatory protections, he points only to his own

dissatisfaction with the decisions associated with his account.  Holland has not

articulated a single other instance wherein other customers had their service

terminated unlawfully.  As such, the *Monell* claim fails.

> **D.    HOLLAND FAILS TO STATE A CLAIM FOR
>         RELIEF AS IT RELATES TO THE REMAINING
>         FEDERAL STATUTORY CLAIMS, PENNSYLVANIA
>         CONSTITUTIONAL CLAIMS AND PENNSYLVANIA
>         COMMON LAW CLAIMS.**

> **1.    Holland's Claims Under the Rehabilitation Act and
>         ADA Fail As a Matter of Law.[7]**

"No otherwise qualified handicapped individual ... shall, solely by reason of

his handicap, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal

---

[7] Johnston and JSAJWA wish to note that with respect to this section of their brief, they rely liberally and gratefully on the arguments advanced by TVMA in its brief in support of TVMA's Motion to Dismiss (Doc. 33).

financial assistance...." <u>Strathie v. Dep't of Transp.</u>, 716 F.2d 227, 229 (3d Cir. 1983). "In order to make out a case under section 504 of the Rehabilitation Act, a plaintiff must prove (1) that he is a "handicapped individual" under the Act, (2) that he is "otherwise qualified" for the position sought, (3) that he was excluded from the position sought solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Id*. Plaintiff has failed to set forth any facts establishing that Defendants received federal financial assistance. As such, Plaintiff's Rehabilitation Act claim should be dismissed.

Further, "...under Title II of the ADA a plaintiff must establish that 1) he or she has a disability; 2) he or she is otherwise qualified; and 3) he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." <u>Spieth v. Bucks Cnty. Hous. Auth.</u>, 594 F. Supp. 2d 584, 591 (E.D. Pa. 2009). Here, Plaintiff does not allege that his water shut off was a result "solely because of [his] disability." *Id*.  Instead, he indicates that his water was shut off despite being disabled. *See*, Amended Complaint, ¶ 59-60. This distinction is important because it indicates that the Defendants did not act with discriminatory intent.

As such, Plaintiff claims pursuant to the Rehabilitation Act and Title II of the ADA should be dismissed.

26

### 2.    Holland Fails To State A Claim Under The Pennsylvania Constitution.

Plaintiff avers that Defendants' actions deprived him of his rights under Article I of the Constitution of the Commonwealth of Pennsylvania. However, no private right of action exists under Article I of the Pennsylvania Constitution, unlike the right of action provided by federal law at 42 U.S.C. § 1983. Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011)(citing Jones v. City of Philadelphia, 890 A.2d 1188, 1213 (Pa. Commw. Ct.2006).

"There is no state statute similar to § 1983, that … provides for a general right to sue for a constitutional violation." Jones, 890 A.2d 1188, 1213. While Article I provides rights, there must be an underlying cause of action available to a claimant in order to seek the remedies afforded by Article I.

"No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter Sch., 442 F. App'x 681, 687. Plaintiff claims that violations of Pennsylvania's Constitution afford a right of action pursuant to 42 U.S.C.A. § 1983. However, this is incorrect.

"Although [§1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119 (S. Ct. 1992). "[§ 1983] is a statute designed to protect federal rights and may not be used by litigants as a vehicle to enforce provisions of the Pennsylvania Constitution." One Three Five, Inc. v. City of Pittsburgh, 951 F. Supp. 2d 788, 809 (W.D. Pa. 2013).

As such, Plaintiff's claims under the Constitution of the Commonwealth of Pennsylvania fail as legally insufficient and should be dismissed

### 3. Holland Fails To State A Claim For Civil Conspiracy Under 42 U.S.C. §1985.

Plaintiff claims that the Defendants conspired with law enforcement to chill Plaintiff's right to petition and access the courts in violation of 42 U.S.C. § 1985.

Section 1985(3) "creates no rights." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979). Rather, "[i]t is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Id*.

28

In other words, it "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting § 1985(3)).

To state a claim under § 1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber, 440 F.3d at 134 (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983)).

Here, Plaintiff sets forth no facts that support his assertion that he was prevented from the free exercise of his rights to due process, to petition the court, or equal protection. To the contrary, Plaintiff was able to immediately access the court, as he filed his Complaint within five days of his water being shut off and was granted a preliminary injunction within three days of filing his Complaint. He also baldly asserts that he was targeted for being a disabled veteran, but offers no facts to support this statement.

As such, Plaintiff's claims of conspiracy pursuant to §1985 should be dismissed for legal insufficiency.

> **4.    Holland's Claim of Fraudulent Misrepresentation Against Johnston and JSAJWA Fails As A Matter Of Law.**

> **a)    The Fraud Claim Against JSAJWA Is Barred By the Political Subdivision Tort Claims Act.**

Pennsylvania provides statutory exceptions to government immunity in tort suits.  Specifically, 42 Pa.C.S.A. §8542 states that a "local agency shall be liable for damages on account of injury to persons or property within the limits of" Subchapter C, Chapter 85, Title 42 if <u>both</u> of two conditions specified in section 8542(a) are satisfied, <u>and</u> if the injury occurs as a result of the act that fits within one of eight statutorily created categories of exceptions to governmental immunity, which categories are described in section 8542(b).  Defendant City is a "local agency", *See* 42 Pa. C.S.A. §8501.

Holland's fraudulent misrepresentation claim against JSAJWA in County VIII cannot escape government immunity through one of the eight statutory waivers of governmental immunity created by 42 Pa.C.S.A. §8542.  Specifically, the second of the two mandatory conditions established by section 8542(a) is that the injury upon which the claim is based must have been "caused by the negligent

acts of the local agency or an employee thereof acting within the scope of his office or duties...." 42 Pa.C.S.A.§8542(a)(2).

Section 8542(a)(2) expressly provides that "negligent acts" does not include "acts or conduct which constitutes ... actual fraud." *Id*. Accordingly, Holland's claim of fraudulent misrepresentation in County VIII against JSAJWA is barred by governmental immunity.

### b)    Holland Fails To State A Claim Against Johnston for Fraudulent Misrepresentation.

As for Johnston, his immunity is governed by Sections 8545-8550 of the Act.  Employees of a local agency are generally afforded immunity from suit to the same extent as the agency itself when the plaintiff's injury was "caused by acts of the employee which are within the scope of his office or duties... ." *See* 42 Pa.C.S. §8545.  Section 8550 provides an exception to this general grant of immunity where the act constitutes "a crime, actual fraud, actual malice or willful misconduct."  42 Pa.C.S. §8550.  Or, in other words, "an employee is immune from personal liability for negligence, but generally will remain liable for his or her intentional torts."  Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 358 (E.D. Pa. 2007).  Accord 42 Pa.C.S. §§8545-50.

31

To establish a claim for fraud, a plaintiff must show (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker to induce the recipient thereby; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the misrepresentation. Thomas v. Seaman, 451 Pa. 347, 350-51, 304 A.2d 134, 137 (1973). Nothing in the FAC points to evidence which would establish a fraudulent misrepresentation by Johnston upon which Holland relied to his detriment. Simply stated, the allegata of the FAC do not satisfy the elements of the cause of action. Johnston posted a notice based upon the Authority's calculation of what was owed on the account. Holland responded to the enforcement action by instituting suit in the Court of Common Pleas of Lycoming County. He clearly did not rely on the alleged misrepresentations to his detriment; rather, he exercised his lawful right to challenge it. As a result, this claim fails.

### 5. Holland Fails To State A Claim For Unjust Enrichment And Recission.

"The elements of unjust enrichment are 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Lackner v. Glosser,

892 A.2d 21,34 (Pa. Super. 2006).

Municipal Authorities are permitted by law to establish reasonable rules and regulations. 53 Pa.C.S.A. § 5607(d)(17). The rules and regulations of JSAJWA are lawfully adopted rules and regulations of the JSAJWA,which Plaintiff concedes and relies upon in his allegations that the rules were violated. *See*, Amended Complaint, ¶ 32, 34-36, 39, and Exhibit F.

The rules permit the Authority to charge penalties and fees associated with water shutoff. *(See*, FAC Ex. F). As such, it is not "unconscionable" for JSAJWA to charge and ultimately retain these fees for water shutoff and reconnection. Had Plaintiff paid his bill in a timely manner, the fees would not have been incurred.

With regard to his claim for veterinary bills, Plaintiff does not establish that the Defendants received some benefit in exchange for his payment of those fees. As such, Plaintiff's claim for unjust enrichment should be dismissed.

Further, "[t]he purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract." <u>Keenheel v. Com., Pennsylvania Sec. Comm'n</u>, 579 A.2d 1358, 1361 (Pa. Cmwlth. 1990). "One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract." *Id*. It would be impossible for Plaintiff to return the water and sewer

33

services he received. As such, recission is not a proper remedy and should be dismissed.

### 6. Holland Fails To State A Claim Under The Unfair Trade Practices Act.

Holland claims that Defendants violated the UTPCL[8] by engaging in deceptive practices. However, the UTPCL does not apply to political subdivision agencies such as JSAJWA. Meyer v. Cmty. Coll. of Beaver Cnty., 93 A.3d 806, 815 (Pa. 2014).

Therefore, Holland's claims under the UTPCL and demand for treble damages and attorney's fees are legally insufficient and should be dismissed.

### 7. Holland Fails To State A Claim For Intentional Infliction Of Emotional Distress Against Johnston and JSAJWA.

JSAJWA is immune from tort claims such as a claim of Intentional Infliction of Emotional Distress (IIED) pursuant to the Political Subdivision Tort Claims Act. 42 Pa.C.S.A. § 8541. There is no exception to the Political Subdivision Tort Claims Act that applies to this claim. However, even if an exception existed, "[t]o prove intentional infliction of emotional distress, Holland must set forth facts so extreme and outrageous that the conduct described must 'go

---

[8] Unfair Trad Practices and Consumer Protection Law, 73 P.S. §201-1, et seq.

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998).

"Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id*.

Here, Plaintiff generically asserts that Defendants shut off water and sewer service "during a medical emergency," "enlisting police officers to intimidate Plaintiff under threat of arrest or towing," "conditioning restoration on an in-person signing or full payment despite a court injunction," and "continuing to bill and threaten further shut-offs in knowing violation of state law and judicial order." *See*, Amended Complaint.

Preliminarily, Defendants' rules for service reasonably require payment of bills in exchange for water and sewer service. This is not outrageous or extreme. As such, conditioning restoration of service on full payment does not rise to the level of intentional infliction of emotional distress.

Further, the Court Order dated June 30, 2025 (FAC at Ext T) indicates that Plaintiff failed to produce evidence that his claim of a just defense for non-payment was not sufficient to serve as a bona fide dispute consistent with 53 Pa.C.S. § 3102.502. In fact, the Order states that water service may be discontinued if the statutory process is followed by Defendants. As such, Holland's claim that continued threats of shutoff were in violation of state law and court order is meritless.

Additionally, Plaintiff provides no detail regarding what the medical emergency was, or why shutting off water and sewer was conduct was "beyond all possible bounds of decency." He further fails to provide any context for his interactions with the police officers, other than they "intimidated" him. This falls far short of the conduct contemplated by the Pennsylvania Supreme Court in Hoy, particularly considering that Plaintiff admits he owes payment for water services and was aware that non-payment could result in water shut-off.

As such, Holland's claim for IIED should be dismissed for legal insufficiency.

### 8.    Holland's Claim For Breach of Fiduciary Duty Fails As A Matter Of Law.

Plaintiff claims that the Defendants breached their fiduciary duty to

Plaintiff.

"To prevail on [a] breach of fiduciary duty claims, [Plaintiff is] required to prove the following elements: the existence of a fiduciary relationship between Plaintiff and [Defendants], that [Defendant] negligently or intentionally failed to act in good faith and solely for [Plaintiff]'s benefit, and that [Plaintiff] suffered an injury caused by [Defendants'] breach of ... fiduciary duty." Snyder v. Crusader Servicing Corp., 231 A.3d 20, 31 (Pa. Super. 2020).

For the reasons outlined in preceding arguments, Holland's claim on this Count against JSAJWA is barred by the Political Subdivision Tort Claims Act.

Holland also fails to state a claim for breach of a fiduciary duty against Johnston. In order to allege a breach of fiduciary duty, Holland must assert that a "fiduciary or confidential relationship existed between themselves and [d]efendants." Reese v. Pook & Pook, LLC, 158 F.Supp.3d 271, 298 (E.D. Pa. 2016) (internal citations omitted). After a plaintiff adequately pleads that such a relationship exists, a plaintiff must show that (1) the defendants negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which they are employed; (2) plaintiffs suffered injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries. *Id.* "Although no precise formula has been devised to

37

ascertain the existence of a confidential relationship, it has been said that such a

relationship exists whenever one occupies toward another such a position of

advisor or counselor as reasonably to inspire confidence that he will act in good

faith for the other's interest." *Id*. (internal citations omitted).

While there is no test for determining whether fiduciary duty exists, the

Pennsylvania Supreme Court has laid out the following contours:

> A fiduciary duty is the highest duty implied by law.  A
> fiduciary duty requires a party to act with the utmost
> good faith in furthering and advancing the other person's
> interests .... This highest duty will be imposed only
> where the attendant conditions make it certain that a
> fiduciary relationship exists.
>
> In some types of relationships, a fiduciary duty exits as a
> matter of law.  Principal and agent, trustee and *cestui que*
> trust, attorney and client, guardian and ward, and
> partners are recognized examples .... Where no fiduciary
> duty exists as a matter of law, Pennsylvania courts have
> nevertheless long recognized the existence of
> confidential relationships in circumstances where equity
> compels that we do so.  Our courts have found fiduciary
> duties in circumstances where the relative position of the
> parties is such that the one has the power and means to
> take advantage of, or exercise undue influence over, the
> other.  The circumstances in which confidential
> relationships have been recognized are fact specific and
> cannot be reduced to a particular set of facts or
> circumstances.  We have explained that a confidential
> relationship appears when the circumstances make it
> certain the parties do not deal on equal terms, but, on the
> one side there is an overmastering influence, or, on the

other, weakness, dependence or trust, justifiably reposed.

Yenchi v. Ameriprise Fin., Inc., 639 Pa. 618, 161 A.3d 811, 819-21 (Pa. 2017).

The Pennsylvania Supreme Court did not recognize the existence of a therapist-patient or even doctor-patient relationship as evidence of a fiduciary relationship. The Court in Yenchi specifically uses the word "deal" to contextualize the fiduciary relationship. *Id*. Breach of fiduciary duty claims usually arise within the context of a business transaction, where a duty is created through a financial relationship, the benefit of which is some sort of exchange of management or monies or services related to business or personal affairs management. *See, e.g.*, Puente v. Navy Fed. Credit Union, 2025 U.S. Dist. LEXIS 20229, 2025 WL 408677 (E.D. Pa. 2025); Gen. Refractories Co. v. Liberty Mut. Ins. Co., 199 U.S. Dist. LEXIS 18932, 1999 WL 1134530 (E.D. Pa. 1999); Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 2008 WL3852256 (E.D. Pa. 2008); Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945, 2009 WL 5033966 (E.D. Pa. 2009).

Johnston's counsel is unable to locate a case where a fiduciary or confidential relationship, for breach of fiduciary duty purposes, existed between paties similar to those in the present case.  Considering the guidance of the Supreme Court, the cases in this Circuit regarding fiduciary duty, and the lack of

other cases indicating otherwise, the Court should find that there is no fiduciary duty or confidential duty within the context of a Breach of Fiduciary claim that exists in the present case. Holland's claim for breach of fiduciary duty should be dismissed.

  **E. ERIC JOHNSTON IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO HOLLAND'S CONSTITUTIONAL CLAIMS BECAUSE HOLLAND CANNOT SHOW THAT THE TERMINATION OF HIS WATER SERVICE TRIGGERED BY NON-PAYMENT VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.**

  Johnston is entitled to qualified immunity for his actions leading up to the June 23, 2025 shut-off as well as all of Holland's allegations relating to Johnston's post June 30, 2025 conduct.

  The Third Circuit has articulated a three-part framework to assess whether a municipal official is entitled to qualified immunity.  First, a plaintiff must allege a violation of a statutory or constitutional right.  Second, the right at issue must have been clearly established at the time of the alleged misconduct.  And third, a reasonable official in the defendant's position would have understood that the challenged conduct violated that right. Doe v. Cnty. of Ctr. Pa, 242 F.3d 437 (3d Cir. 2001) (citing Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999)).  The latter two prongs demand an "objective legal reasonableness" inquiry of an

official's action, assessed considering legal rules that were "clearly established" at the time the officials took the action. *Id*. (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  Throughout the inquiry, the officials' subjective intent is irrelevant.  <u>Anderson</u>, 483 U.S. 635 at 639.

With regard to the first prong of the analysis, Johnston incorporates the arguments set forth in arguments A and B which explain why Holland has failed to articulate the existence of a constitutional violation and relies upon those arguments in support of the position that Holland's failure in this regard is dispositive on the question of Johnston's entitlement to qualified immunity.

In the event that this Court is not persuaded on that point, Johnston's entitlement to qualified immunity remains clear.

The second prong of the qualified immunity analysis asks whether "at the time of the state actor's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  <u>District of Columbia v. Wesby</u>, 583 U.S. 48, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018); <u>James v. New Jersey State Police</u>, 957 F.3d 165, 169 (3d Cir. 2020) (same) (quoting <u>Wesby</u>, 138 S.Ct. At 589).  The purpose of this inquiry is to account for "the reality that 'reasonable mistakes can be made as to the legal constraints on particular ... conduct.'" <u>Hickman v. Borough</u>, 2017 WL 1197806, at *11 (D.N.J.

41

Mar. 31, 2017) (quoting Santini v. Fuentes, 795 F.3d 410, 418 (3d Cir. 2015)).

This prong of the qualified immunity standard inverts the standard applicable at our current procedural stage by requiring that "there can be no liability on the party of the governmental employee unless 'no reasonable competent [official]' would conclude that probable cause existed." Dempsey v. Bucknell Univ., 834 F.3d 457, 468 n. 6 (3d Cir. 2016) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  This assessment involves "an 'objective (albeit fact-specific) question,' under which '[an officer']s subjective beliefs ... are irrelevant."  James v. N.J. State Police, 957 F.3d 165, 169 (3d Cir. 2020) (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987)).  The inquiry is undertaken from the perspective of a reasonable officer, and "only the facts that were knowable to the defendant officer" are taken into account. Idi. (quoting White v. Pauly, 580 U.S. 73, 137 S.Ct. 548, 550, 196 L.Ed.2d 463 (2017)) (citations omitted).

"[I]n most cases, a plaintiff must show that a right is clearly established because 'the violative nature of [the] particular conduct [was] clearly established.'"James, 957 F.3d at 169 (quoting Ziglar v. Abbasi, 582 U.S. 120, 137 S.Ct. 1843, 1866, 198 L.Ed.2d 290 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015))).  In other words, "'settled law' ...

42

must 'squarely govern []' the specific facts at issue." *Id*. (quoting Wesby, 138

S.Ct. At 590 and Kisela v. Hughes, – U.S. –, 138 S.Ct. 1148, 1152, 200 L.Ed.2d

449 (2018)). This standard can be satisfied by identifying a case where an officer

acting under similar circumstances was held to have violated the constitutional

provision at issue. James, 957 F.3d at 169-70 (quoting White v. Puly, 137 S.Ct.

548, 552 (2017).

In this setting "clearly established rights are derived either from binding

Supreme Court and Third Circuit precedent or from a 'robust consensus of cases

of persuasive authority in the Courts of Appeals.'" *Id*. (quoting Bland v. City of

Newark, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted)); *accord* Wesby, 138

S.Ct. At 589-90 ("To be clearly established, a legal principle must ... [be] dictated

by controlling authority or a robust consensus of cases of persuasive authority[.]").

A case directly on point is not required to show a right is clearly established, but

"existing precedent must have placed the statutory or constitutional question

beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179

L.Ed.2d 1149 (2011). In other words, "there must be sufficient precedent at the

time of the action, factually similar to the plaintiff's allegations, to put [the]

defendant on notice that his or her conduct is constitutionally prohibited."

McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).

43

Turning to the facts of this case, Johnston, as manager of JSAJWA, is responsible for ensuring that customers pay their bills and take appropriate action when delinquencies are not satisfied.  Admittedly, while a ten day notice was not mailed to Holland prior to June 23, he has readily acknowledged that he was aware of the situation by receiving the notification on his property and that he took steps to avoid the shut-off by providing a medical certification and demanding a forensic audit (Doc. 10 at Ex. A-D).  However, as has been noted, Judge Carlucci has made a merits determination[9] that Holland's notice did not satisfy the relevant provisions of the Water Services Act[10] and, accordingly, this Court should adopt that determination as it relates to the qualified immunity analysis.

Most importantly, even assuming that Johnston erred in disconnecting the service on June 23, 2025 the second prong of the qualified immunity analysis requires that Holland identify precedent that holds that a constitutional violation has occurred in a factually analogous scenario.

---

[9] June 30, 2025 Order (Doc. 10 at Ex. T).

[10] 53 P.S. §3102.502(b)(2) provides as follows:

> (2) If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of the claim and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been judicially determined.

Johnston submits that Holland will be unable to identify any U.S. Supreme Court cases that recognize under similar facts that someone engaging in suspending water or utility services for nonpayment  violates constitutional rights. Similarly, there does not exist a robust collection from our federal courts of appeal that would put Johnston on notice that this suspension in service would violate constitutional rights.

Holland will be unable to identify any Supreme Court case that recognizes under similar facts and circumstances that suspending services for non-payment of bills when the customer is disputing the charges violates constitutional rights. Similarly, he will not be able to identify a robust collection of cases from the federal courts of appeals that support such a proposition. Thus, Mr. Holland has failed to identify a robust consensus of precedent predicated on substantially similar facts and circumstances that gave every reasonable governmental official notice that proceeding with the shut-off would constitute a violation of his constitutional rights.

Finally, on these facts which are not in dispute, Johnston's conduct was objectively reasonable.

Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-

45

Kidd, 563 U.S. 731, 743, 131, S.Ct. 2074, 179 L.Ed.2d 1149 (2011).  And even where a clearly established constitutional right has been violated, if the official's mistake as to what the law requires was reasonable, then qualified immunity shields the officer from liability.  Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).  Applied in this manner, the doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ashcroft, 563 U.S. at 743, 131 S.Ct. 2074 (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092).  Here, assuming the previous deficiencies in Holland's case can somehow be overlooked, Holland has done nothing more than allege that Johnston made a reasonable mistake about the scope of the law as it related to the notice to which he was entitled under applicable law.  Consequently, Johnston is entitled to qualified immunity.

## V.    CONCLUSION

Based upon the foregoing, Plaintiff's First Amended Complaint should be dismissed in its entirety.

Respectfully submitted:

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

By:    s/Sean P. McDonough
        Sean P. McDonough, Esquire
        Attorney for Defendants Jersey Shore Area

46

Jt. Water Authority & Eric S. Johnston
PA ID# 47428
459 Wyoming Avenue
Kingston, PA 18704
Phone (570) 347-1011 or 570-288-1427
Fax (570) 347-7028 or 570-288-7099
smcdonough@dlplaw.com

## CERTIFICATE OF COMPLIANCE WITH
## L.R. 7.8(b)(2)[11]

I, Sean P. McDonough, Esquire, Attorney for Defendants Jersey Shore Area

Joint Water Authority and Eric Johnston, hereby certify that the foregoing brief

complies with Fed.R.Civ.P. 11 in that the brief does not exceed 13,000 words in

length.  The body of the brief, including footnotes, is 10,668 words in length.

Date: September 11, 2025                    S/Sean P. McDonough
                                            Sean P. McDonough, Esquire
                                            Attorney for Defendants Jersey Shore
                                            Area Jt. Water Authority and Eric
                                            Johnston

---

[11] On September 5, 2025, Moving Defendants filed a motion to file a brief in excess of 5,000 words.  On September 8, 2025, said motion was granted and Defendants are permitted to file a supporting not exceeding 10,000 words in length. On September 11, 2025, upon finalizing its brief, Moving Defendants filed a Second Motion for excess words.  That motion is pending before the court.

## CERTIFICATE OF SERVICE

I, SEAN P. McDONOUGH, ESQUIRE, hereby certify that on the 11th day of September, 2025, I served the foregoing Jersey Shore Defendants' Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint upon the persons indicated below as follows:

Via first class mail, postage prepaid and email transmission

Dion Storm Holland
566 High Street
Jersey Shore, PA 17740
subarudion@gmail.com
(Plaintiff- pro se)

Via electronic filing

Michael J. Crocenzi, Esquire
Sarah L. Doyle, Esquire
100 East Market Street
York, PA 17401
mcrocenzi@barley.com
sdoyle@barley.com
(Counsel for Defendant Tiadaghton Mun. Sewer Authority)

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

_____

SEAN P. McDONOUGH, ESQUIRE
Attorney for Defendants Jersey Shore Area Jt.
Water Authority and Eric S. Johnston

49