## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DION STORM HOLLAND, | : | |
| | : | |
| Plaintiff, | : | **Civil Action No**. 4:25-CV-01323 |
| | : | |
| | : | **The Honorable Keli M. Neary** |
| v. | : | **(JUDGE)** |
| | : | **(MAG. JUDGE CARLSON)** |
| JERSEY SHORE AREA JOINT | : | |
| WATER AUTHORITY, | : | |
| | : | **PLAINTIFF'S  BRIEF IN** |
| and | : | **OPPOSITION TO DEFENDANTS'** |
| | : | **MOTION TO DISMISS** |
| TIADAGHTON VALLEY | : | **AMENDED COMPLAINT** |
| MUNICIPAL AUTHORITY, | : | |
| ERIC S. JOHNSTON, JOHN | : | |
| DOE 1-5 in their individual | : | |
| capacities, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## (DOCS. 18 & 49)

## TABLE OF CONTENTS

I. INTRODUCTION
…………………………………………………………………… 5

II. LEGAL STANDARD ……………………………………………… 6

III. ARGUMENT …………………………………………………… 7

   A. Procedural Due Process / Notice Failures ……………………………… 7

   B. Equal Protection ……………………………………………… 10-13

   C. Takings Clause …………………………………………………... 13-16

   D. Post–June 30 Retaliation ……………………………………...16-19

   E. Monell Liability …………………………………………………...20-23

   F. ADA & Rehabilitation Act ………………………………………23-26

   G. Qualified Immunity ……………………………………………26-32

IV. CONSTITUTIONAL VIOLATIONS (1A → 14A) ……………..……... 33-38

V. STATUTORY & COMMERCIAL LAW STRIKE ……………….....38-42

VI. FEE SCHEDULE & COMMERCIAL LIABILITY ………………….42-44

VII. FIDUCIARY DUTY & PUBLIC TRUST ………………………...44-47

VIII. CONCLUSION & PRAYER FOR RELIEF ………………………47-50

## TABLE OF CITATIONS AND AUTHORITIES

**Cases**

*Alexander v. Choate,* 469 U.S. 287 (1985) …………………………3, 24, 29, 32

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ………………………………… 3, 6

*Bailey v. Alabama,* 219 U.S. 219 (1911) ………………………3, 12, 28, 36

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ……………………… 3, 6

*City of Canton v. Harris,* 489 U.S. 378 (1989) ………………….…3, 22, 32

*Cnty. of Sacramento v. Lewis,* 523 U.S. 833 (1998) …………3, 10, 15, 19, 28, 37

*Conley v. Gibson,* 355 U.S. 41 (1957) …………………………………… 3, 6

*Florida v. Jardines,* 569 U.S. 1 (2013) ……………………………3, 9, 27, 34

*Friends of the Earth v. Laidlaw Envtl. Servs.,* 528 U.S. 167 (2000) …….. 3, 18

*Haines v. Kerner,* 404 U.S. 519 (1972) ……………………….…………..3, 38

*Hartman v. Moore,* 547 U.S. 250 (2006) ……………………………3, 18, 32

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982) ……………………… 9

*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992)..3, 14, 16, 28, 34

*Malley v. Briggs,* 475 U.S. 335 (1986) …………………………………..… 3, 29

*Mathews v. Eldridge,* 424 U.S. 319 (1976) ………………………………… 3, 8, 28

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978) … 3, 8, 27, 31, 36

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ……………… 2, 3, 20, 22, 23

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) ……. 3, 8, 31

*Owen v. City of Independence,* 445 U.S. 622 (1980) ……………… 3, 23, 27, 32

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) …………………….. 3, 21, 32

*Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) …………… 3, 6

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ……………………………………4, 6

**Soldal v. Cook County, 506 U.S. 56 (1992)** ……………………………….. **4, 19, 34**

**Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000)** …………**4, 12, 17, 27, 32, 34**

**Tennessee v. Lane, 541 U.S. 509 (2004)** ………………………… **4, 24, 29, 32**

**United States v. Jones, 565 U.S. 400 (2012)** …………………….. **4, 9, 18, 27, 34**

**Village of Willowbrook v. Olech, 528 U.S. 562 (2000)** ……………………**4, 10**
**West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624 (1943)** …. **4, 9, 27, 31, 34**

**Wooley v. Maynard, 430 U.S. 705 (1977)** ……………………………………**4, 34**
**Yick Wo v. Hopkins, 118 U.S. 356 (1886)** …………………………………..**4, 11, 36**

**Statutes**

**15 U.S.C. § 1666 (Fair Credit Billing Act)** ……………………………………**4, 7, 39**

**29 U.S.C. § 794 (§ 504 Rehabilitation Act)** ……..**2, 4, 5, 7, 23, 24, 29, 32, 48, 49**

**42 U.S.C. § 12132 (ADA Title II)** …………………….. **2, 4, 23, 26, 29, 32, 41, 48**

**42 U.S.C. § 1983 (Civil Rights Act)** …………………………………… **passim**

**42 U.S.C. § 1988 (Costs & fees in civil rights actions)** ………………… **4, 50**

**53 P.S. § 3102.502(b)(2) (PA shutoff procedures)** …………………….**4, 7, 21, 41**

**13 Pa.C.S. § 9-210 (UCC – demand for accounting)** …………………. **4, 40, 43**

**18 U.S.C. § 241 (Conspiracy against rights)** ………………….…. **4, 19, 30**

**18 U.S.C. § 242 (Deprivation of rights under color of law)** ………….. **4, 19, 30**

# I. INTRODUCTION

Defendants' sixty-two–page motion to dismiss attempts to repackage systemic constitutional, statutory, and fiduciary violations as a mere "billing dispute." That framing is false. The record demonstrates a coordinated campaign of retaliation, coercion, and deprivation of rights, carried out by officials acting under color of law and in direct defiance of established precedent.

Plaintiff is a disabled Marine Corps veteran who filed billing-error affidavits, invoked statutory protections under TILA, FCBA, and UCC § 9-210, and submitted a physician-certified medical hardship certificate. In response, Defendants ignored every safeguard, posted defective notices without mailing, rejected the medical certificate as "not good enough," dispatched utility workers and police to Plaintiff's home, threatened to tow his son's vehicle, and defied a court injunction restoring service.

These are not isolated mistakes. They implicate a broad range of constitutional guarantees: freedom of speech and association, security of property, due process, equal protection, jury trial, freedom from peonage, and protections against cruel and unusual punishment. They also implicate statutory protections under the ADA, Rehabilitation Act, TILA, FCBA, and UCC, as well as fiduciary duties imposed by Article I, § 27 of the Pennsylvania Constitution. Indeed, Defendants' conduct

mirrors the very prohibitions Congress criminalized under 18 U.S.C. §§ 241 and 242.

At this stage, the Court's task is not to weigh facts or resolve disputes. It is to determine whether Plaintiff's well-pleaded allegations, taken as true, plausibly state claims for relief. They do—under multiple constitutional amendments, federal statutes, commercial principles, and fiduciary duties. Defendants' motion should therefore be denied in its entirety.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive dismissal, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in his favor. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Dismissal is disfavored where allegations, if proven, would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45–46 (1957). At this stage, the question is not whether Plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Here, Plaintiff has alleged detailed facts supporting violations of the First, Fourth, Fifth, Seventh, Eighth, Ninth, Thirteenth, and Fourteenth Amendments, as well as violations of the ADA, Rehabilitation Act, TILA, FCBA, UCC, and fiduciary duties under Pennsylvania law. Each allegation is supported by precedent. At the pleading stage, that is more than sufficient to defeat dismissal.

## III. ARGUMENT

### A. Procedural Due Process / Notice Failures

Defendants open their brief by claiming that Plaintiff "had notice" of termination and therefore suffered no due process violation. (Doc. 49). This assertion collapses under both the factual record and binding precedent.

1. The Record Proves No Lawful Notice Was Given.

On June 11, 2025, Defendants taped a defective shutoff notice to Plaintiff's door. It was never mailed, as required by Rule X of Defendants' own regulations and by 53 P.S. § 3102.502(b)(2), which expressly provides that "[t]he water supply shall not be shut off until the claim has been judicially determined." Plaintiff immediately disputed the bill in writing, served affidavits of billing error under 15 U.S.C. § 1666 and 12 C.F.R. § 226.13, and provided a physician-certified medical hardship certificate. Defendants ignored all of these filings and proceeded toward

termination anyway. Judge Carlucci's June 30, 2025 injunction restored service precisely because Defendants' notice procedures were defective and unlawful.

## 2. Due Process Requires More Than a Door Posting.

The Fourteenth Amendment requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314–15 (1950). A piece of paper taped to a door is not reasonably calculated to ensure notice. The Supreme Court has held that utility customers possess a constitutionally protected property interest in continued service and cannot be terminated without adequate notice and hearing. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11–12 (1978). A door posting, without mailing, without response to billing disputes, and without recognition of medical hardship, fails as a matter of law.

## 3. No Post-Deprivation Excuse Applies.

Defendants attempt to excuse their actions by arguing Plaintiff had "actual knowledge" of the posting. But due process is not satisfied by happenstance awareness. It requires procedures that ensure fairness before deprivation. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Where pre-deprivation process was entirely feasible, reliance on after-the-fact awareness is inadequate. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982).

4. Additional Constitutional Violations Intertwined with Due Process.

This deprivation was not isolated to procedural defects. It implicated multiple

constitutional safeguards simultaneously:

**First Amendment** – Compelled Association and Retaliation.

 Plaintiff never knowingly or voluntarily contracted with Defendants. Conditioning

access to water, an essential necessity of life, on coerced financial performance

unsupported by a valid contract is compelled association and coerced speech. West

Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943). Worse, the

termination proceeded after Plaintiff filed affidavits and grievances, constituting

retaliation for protected activity.


**Fourth Amendment** – Warrantless Trespass.

 Shutoff required physical intrusion onto Plaintiff's property to access the curb

valve. That act was a trespass into the curtilage of the home, effectuating a seizure

of an essential necessity, without warrant or lawful process. See United States v.

Jones, 565 U.S. 400, 404–05 (2012); Florida v. Jardines, 569 U.S. 1, 7 (2013).


**Fourteenth Amendment** – Substantive Due Process.

 Depriving a disabled veteran's household of water, despite medical certification,

billing disputes, and unrebutted affidavits, shocks the conscience. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

5. **Due Process** Violation Alone Warrants Denial of Dismissal.

At this stage, Plaintiff need not prove damages. He need only allege a protected property interest, deprivation, and lack of due process. **Craft controls** this case. Plaintiff alleged exactly that, in detail. Defendants' attempt to reframe a defective door posting as "adequate notice" cannot survive Rule 12(b)(6).

### III.B. Equal Protection

Defendants next argue that Plaintiff's Equal Protection claim fails because he identified no comparators and did not comply with Defendants' "medical emergency" procedures. (Doc. 49). This argument is contrary to both the pleadings and controlling precedent.

1. A "Class of One" Claim Does Not Require Named Comparators at the Pleading Stage.

**The Equal Protection Clause** protects individuals against arbitrary government action, even where no protected class is involved. In Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), the Court recognized a "class of one" claim where a municipality singled out a homeowner for irrational treatment. Plaintiff

has alleged exactly that: Defendants ignored statutory billing safeguards, disregarded a physician-certified medical hardship certificate, and targeted him with retaliation and intimidation. That is more than sufficient to state a "class of one" claim.

At the Rule 12(b)(6) stage, Plaintiff is not required to produce affidavits of comparators or discovery-level proof. He need only allege that he was intentionally treated differently from others without a rational basis. Discovery will reveal the comparators that Defendants insist upon. See Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009).

2. Defendants' Selective Enforcement Mirrors Discrimination Condemned by the Supreme Court.

In Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886), the Court struck down a licensing scheme that was neutral on its face but applied in a discriminatory manner. The same principle applies here. While Defendants accept medical certificates for some households, they rejected Plaintiff's outright—declaring it "not good enough" and demanding disclosure of private medical conditions. Arbitrary enforcement of procedural hurdles against one individual while honoring them for others is the very essence of unequal treatment condemned in Yick Wo.

3. Additional Constitutional Hooks Strengthen the Equal Protection Claim.

**First Amendment** – Retaliation.

Plaintiff's selective treatment was not random. It followed his exercise of protected rights: filing billing error affidavits, invoking statutory protections, and asserting constitutional claims. The escalation of police-backed threats and dismissal of his hardship certificate directly after these protected activities constitutes retaliation. Retaliation for exercising First Amendment rights is itself actionable under § 1983. Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).

**Thirteenth Amendment** – Peonage.

Defendants' discriminatory refusal to honor Plaintiff's certificate was calculated to compel him to "perform" financially, under threat of deprivation. That constitutes a form of peonage. In Bailey v. Alabama, 219 U.S. 219, 241 (1911), the Court invalidated statutes designed to coerce labor or financial performance under threat of penalty. Conditioning water access on coerced payments, unsupported by lawful contract, is indistinguishable from financial peonage.

4. **Procedural Excuses Cannot Mask Discrimination**.

Defendants argue Plaintiff "failed to comply" with their preferred format for medical certificates. This is pretext. Plaintiff's certificate was signed by a licensed physician and personally delivered during the shutoff attempt. Refusing to honor it

while demanding disclosure of Plaintiff's private medical condition demonstrates discriminatory intent. Procedural nitpicking cannot shield unequal enforcement from constitutional scrutiny.

5. **Equal Protection** Violation Alone Warrants Denial of Dismissal.

At this stage, Plaintiff need only plausibly allege intentional, arbitrary, and discriminatory treatment. He has done so in detail. The Fourteenth Amendment does not permit local authorities to ignore medical hardship, reject statutory safeguards, and retaliate against one individual while honoring protections for others. Defendants' motion to dismiss this claim must be denied.

### III.C. Takings Clause

Defendants argue that Plaintiff cannot state a Takings Clause claim because there was "no physical appropriation" and no compensable deprivation. That argument misstates both the facts and the law.

1. Deprivation of Water Renders a Home Uninhabitable.

Water service is not an optional utility; it is an essential necessity of life and a condition of habitability. When Defendants shut off Plaintiff's water, his home was rendered uninhabitable. That action destroyed its functional use and economic value, even if temporarily.

The Supreme Court has held that government action that deprives property of all economically viable use constitutes a taking. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1030 (1992). Here, by stripping Plaintiff's home of its most basic function—**running water**—Defendants imposed the equivalent of a regulatory taking.

Even if deprivation is not total or permanent, courts apply the Penn Central framework: (1) the economic impact on the property owner; (2) the extent of interference with investment-backed expectations; and (3) the character of the government action. Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). Each factor supports Plaintiff:

1. Economic Impact: Plaintiff's home lost basic habitability and functionality.

2. Interference with Expectations: Plaintiff reasonably expected water service absent a lawful contract and judicial determination.

3. Character of Action: The deprivation was arbitrary, retaliatory, and executed without due process.


2. Additional Constitutional Hooks Intertwined with the Takings Violation.

**Fifth Amendment** – Takings Clause Proper.

 Defendants' acts deprived Plaintiff of property and habitability without just

compensation. The deprivation was not incidental or regulatory—it was intentional and punitive.

**Seventh Amendment** – Right to Jury Trial.

 The Takings Clause inherently involves valuation disputes. The Seventh Amendment guarantees Plaintiff the right to a jury determination where the value in controversy exceeds twenty dollars. By asserting that no compensable harm exists and asking this Court to dismiss outright, Defendants attempt to usurp Plaintiff's jury right. Plaintiff is entitled to present the economic impact of water deprivation to a jury.


**Fourteenth Amendment – Substantive Due Process**.

Stripping a disabled veteran's home of water, in retaliation for asserting rights and in defiance of a physician-certified medical hardship, shocks the conscience. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

3. Temporary Deprivation of Essential Necessities Still Triggers Constitutional Scrutiny.

Defendants suggest that because service was eventually restored, no constitutional violation occurred. That argument ignores settled law. In Fuentes v. Shevin, 407 U.S. 67, 81 (1972), the Court held that even temporary deprivations of property without due process are unconstitutional. Here, the deprivation was not incidental

or unavoidable—it was deliberate, retaliatory, and executed despite unrebutted affidavits and statutory protections. The Constitution does not permit officials to weaponize temporary deprivations of essential services against citizens.

4. The Takings Claim Stands Independently.

Even if Plaintiff had no viable claims under other amendments, the Fifth and Seventh Amendment claims combined with Lucas, Penn Central, and Fuentes are sufficient to survive dismissal. At the pleading stage, Plaintiff need only allege deprivation of property and lack of compensation. He has done so in detail. Dismissal is improper.

## III.D. Post–June 30 Retaliation

Defendants argue that Plaintiff cannot state a retaliation claim because water service was restored following Judge Carlucci's June 30, 2025 injunction. (Doc. 49). This misstates both the facts and the law.

1. Retaliation and Police Involvement Spanned Before and After the Injunction.

The retaliation campaign began before the injunction and continued afterward. On June 25, 2025, Defendants dispatched police to Plaintiff's home after he served affidavits, invoked billing-error protections, and asserted his rights under state and federal law. This was not neutral "assistance." It was targeted intimidation designed to chill Plaintiff's exercise of protected activity.

16

The pattern intensified after the injunction. On July 9, 2025, utility workers again appeared at Plaintiff's home accompanied by Captain Cody Smith and other officers of the Lycoming County Regional Police Department. Plaintiff lawfully blocked access to the curb valve with his son's vehicle to prevent further tampering. Rather than respecting the injunction, police threatened to tow the vehicle and escalate the matter into a criminal case unless Plaintiff complied. This was not routine enforcement. It was coercive retaliation designed to circumvent the injunction and reassert unlawful control.

2. Johnston and Confair Personally Directed Retaliatory Acts.

Manager Eric Johnston and agent Timothy Confair were not distant supervisors. They were physically present on-site, overseeing the shutoff attempts themselves, dismissing Plaintiff's medical certificate as "not good enough," and coordinating with police. Their personal participation confirms this was official Authority policy, not rogue behavior.

3. Retaliation and Threats Are Independently Actionable.

The restoration of water does not erase these acts. Retaliation against a citizen for exercising constitutional rights is independently actionable under § 1983. Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000). Dispatching police to a disabled veteran's home, threatening seizure of his family's vehicle, and disregarding a

court injunction would chill a person of ordinary firmness from continuing to assert their rights. That is textbook First Amendment retaliation.

4. Ongoing Threats Are Capable of Repetition Yet Evading Review.

The doctrine of "capable of repetition yet evading review" squarely applies. Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189–92 (2000). Plaintiff endured two separate police-backed intrusions within two weeks — one before the injunction, one after — each escalating in intensity. The threat of recurrence remains real and imminent, especially given Defendants' demonstrated willingness to circumvent court orders.

5. **Additional Constitutional Hooks Intertwined with Retaliation**.


**First Amendment** – Retaliation for Petitioning and Speech.

Defendants' escalation occurred immediately after Plaintiff filed affidavits, notices, and court petitions. Government action designed to punish or chill petitioning activity violates the First Amendment. Hartman v. Moore, 547 U.S. 250, 256 (2006).

**Fourth Amendment** – Unlawful Intrusion and Seizure Threat.

Police and utility workers entered Plaintiff's property and threatened to seize his son's vehicle. This constituted both a trespass into the curtilage of the home and a threatened seizure of private property. See United States v. Jones, 565 U.S. 400,

404–05 (2012); Soldal v. Cook County, 506 U.S. 56, 61–62 (1992).

**Fourteenth Amendment** – Substantive Due Process.

Dispatching police under color of law to circumvent a binding injunction and intimidate a disabled veteran shocks the conscience. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

6. **Conduct Mirrors Criminal Civil Rights Violations**.

These coordinated actions mirror the elements of 18 U.S.C. § 241 (conspiracy against rights) and 18 U.S.C. § 242 (deprivation of rights under color of law). Johnston, Confair, utility workers, and police acted in concert to threaten, intimidate, and coerce Plaintiff into abandoning his rights. By conspiring to enforce unlawful shutoffs and personally rejecting medical protections, they engaged in the very conduct § 241 prohibits. By willfully subjecting Plaintiff to deprivation of rights under color of law, they engaged in the conduct § 242 criminalizes.

While Plaintiff does not assert independent causes of action under §§ 241 and 242, these statutes underscore the gravity of Defendants' misconduct. Congress has declared that conspiracies to **intimidate** citizens and **willful** deprivations of rights are not merely civil wrongs but **federal crimes**. Defendants' actions track those prohibitions with **precision**.

7. **Retaliation Claims Must Proceed**.

At this stage, Plaintiff has more than plausibly alleged retaliatory conduct: two police-backed intrusions, threats of property seizure, direct involvement of policymakers, and willful defiance of a court order. Each act independently supports a First Amendment retaliation claim, and together they establish a coordinated campaign of intimidation that no Rule 12(b)(6) motion can erase.

## III.E. Monell Liability

Defendants argue that Plaintiff has failed to allege an official policy or custom sufficient to impose municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). (Doc. 49). This argument ignores both the pleadings and binding precedent.

1. Johnston and Confair's Direct Participation Establishes Policy.

Eric Johnston, the Authority's Manager, and Timothy Confair, an agent acting with him, were not peripheral employees. They were physically present on-site during the shutoff confrontation. They personally dismissed Plaintiff's physician-certified medical hardship certificate as "not good enough," coordinated the shut off, and oversaw the attempted termination. Johnston and Confair's acts were not rogue or unofficial—they were the acts of final policymakers.

The Supreme Court has made clear that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). By personally participating in and directing the deprivation, Johnston and Confair created binding policy attributable to the Authority itself.

2. The Unlawful Practices Are Customary and Repeated.

Even if Johnston and Confair's presence alone were not sufficient, Plaintiff has alleged a series of practices that collectively establish custom:

1. Posting defective termination notices on doors without mailing, in violation of Rule X and 53 P.S. § 3102.502(b)(2).

2. Ignoring billing error affidavits and failing to perform required forensic accountings under TILA, FCBA, and UCC.

3. Rejecting physician-certified medical hardship protections outright while demanding disclosure of private medical conditions.

4. Sending police officers with utility workers to intimidate Plaintiff on June 25th and again on July 9th.

5. Threatening to tow Plaintiff's son's vehicle from his own property to force compliance.

6.  Personally appearing on-site (Johnston and Confair) to do these actions.

Such repeated acts demonstrate a pattern of unconstitutional practices that qualify as municipal custom. See City of Canton v. Harris, 489 U.S. 378, 390 (1989).

3. Monell Liability Extends to All Constitutional Violations Alleged.

Because Johnston and Confair acted as final policymakers, their decisions bind the Authority across every violation alleged:

**First Amendment:** Compelled association with a municipal monopoly; retaliation for affidavits and court filings.

**Fourth Amendment**: Warrantless entry onto property and threats to seize Plaintiff's vehicle.

**Fifth Amendment**: Taking of habitability without just compensation.

**Seventh Amendment**: Denial of jury trial on valuation of deprivation.

**Thirteenth Amendment**: Compelled financial performance under threat of deprivation.

**Fourteenth Amendment**: Selective enforcement, denial of due process, and conscience-shocking conduct.

4. **Immunity Arguments Do Not Apply.**

Defendants cannot hide behind sovereign immunity or qualified immunity. The Jersey Shore Area Joint Water Authority is not an "arm of the state" entitled to Eleventh Amendment protection under the Fitchik factors. Bolden v. SEPTA, 953 F.2d 807, 816–22 (3d Cir. 1991) (en banc). Nor can municipalities invoke qualified immunity. Owen v. City of Independence, 445 U.S. 622, 650 (1980). Johnston and Confair's deliberate acts strip them of personal immunity as well.

5. At Minimum, Plaintiff Has Plausibly Alleged a Monell Claim.

At this stage, Plaintiff need only plausibly allege that the challenged conduct was taken pursuant to official policy, established custom, or the decision of a final policymaker. Plaintiff has alleged all three, with specificity. That is more than sufficient to defeat dismissal.

### III.F. ADA & Rehabilitation Act

Defendants argue that Plaintiff fails to state claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA"). (Doc. 49). Their position ignores both Plaintiff's allegations and binding precedent.

1. Plaintiff Alleged All Three Elements of an ADA Title II Claim.

To state a Title II claim, a plaintiff must allege: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities; and (3) such exclusion, denial of

benefits, or discrimination was by reason of his disability. Tennessee v. Lane, 541 U.S. 509, 517 (2004).

Plaintiff alleged each element. He is a disabled veteran with a physician-certified medical hardship, making him a qualified individual under the statute. Defendants operate a public entity—the Authority—that provides water service. Defendants denied Plaintiff meaningful access to that service by rejecting his medical certificate outright and terminating service despite statutory protections. And Defendants' rejection was precisely "by reason of" disability: they dismissed Plaintiff's medical certification as "not good enough" while honoring such certificates for others, and demanded disclosure of private medical details not required by law.

2. The Rehabilitation Act Claim Is Plausible at the Pleading Stage.

The RA applies similar elements but requires that the program receive federal funding. Plaintiff alleged, and public records confirm, that Defendants receive federal and state funds, grants, and subsidies in support of their operations. Denial of water access to a disabled veteran despite medical certification constitutes exclusion "solely by reason of disability," squarely within § 504's protections. See Alexander v. Choate, 469 U.S. 287, 301 (1985).

3. Rejection of Plaintiff's Medical Certificate Constitutes Denial of Meaningful Access.

Defendants did not merely make a technical error. They rejected Plaintiff's medical hardship certificate outright, demanding unnecessary disclosure of his private medical condition and declaring the certification "not good enough." That denial deprived Plaintiff of the benefit of continued water service during medical hardship. Title II and § 504 guarantee not just formal access but "meaningful access." Choate, 469 U.S. at 301. Denying water service to a disabled veteran despite a physician's certification is the very definition of denying meaningful access.

4. Additional Constitutional Hooks Reinforce ADA/RA Violations.

**First Amendment** – Retaliation.

Defendants' rejection of Plaintiff's certificate came after his exercise of protected rights—filing affidavits, disputes, and petitions. Retaliating against a disabled individual for asserting rights compounds the ADA/RA violation.

**Fourteenth Amendment** – Equal Protection.

By honoring hardship certifications for other households but rejecting Plaintiff's without basis, Defendants engaged in discriminatory enforcement. This selective denial is actionable under Equal Protection as well as **ADA/RA**.

**Eighth Amendment** – Cruel and Unusual Punishment.

Cutting off essential water to a disabled veteran, despite medical

certification, is not just discriminatory but punitive in effect. The Eighth

Amendment prohibits government action that inflicts unnecessary suffering.

Denying water in the face of a known medical hardship is precisely such

conduct.

5. Dismissal at This Stage Is Improper.

At the Rule 12(b)(6) stage, Plaintiff need only plausibly allege denial of benefits by

reason of disability. He has done so in detail. Whether Defendants' rejection was

intentional, reckless, or the product of systemic indifference is a question for

discovery, not dismissal. Plaintiff's ADA and RA claims must proceed.

**III.G. Qualified Immunity**

Defendants argue that Johnston and Confair are entitled to qualified immunity.

That argument is untenable. Qualified immunity shields officials only when the

rights allegedly violated were not "clearly established" at the time of the conduct.

Here, every right Plaintiff invokes has been settled law for decades.

1. Municipal Entities Cannot Claim Qualified Immunity.

As a threshold matter, municipal entities themselves—the Jersey Shore Area Joint

Water Authority and Tiadaghton Municipal Authority—cannot invoke qualified

immunity. The Supreme Court has held that municipalities and local authorities are

fully liable under § 1983 for constitutional violations committed pursuant to policy

or custom. Owen v. City of Independence, 445 U.S. 622, 650 (1980). Defendants'

attempt to shield the Authority with immunity is categorically barred.

2. The Rights Violated Were Clearly Established.

**Procedural Due Process**: Since Memphis Light, Gas & Water Div. v. Craft, 436

U.S. 1, 11–12 (1978), it has been clearly established that utility customers possess

a protected property interest in continued service and cannot be terminated without

proper notice and opportunity to be heard.

**First Amendment**: Since West Virginia State Bd. of Educ. v. Barnette, 319 U.S.

624 (1943), it has been clearly established that compelled speech and compelled

association violate the First Amendment. Since Suppan v. Dadonna, 203 F.3d 228,

235 (3d Cir. 2000), it has been clearly established that retaliation for protected

petitioning and speech is actionable.

**Fourth Amendment**: Since United States v. Jones, 565 U.S. 400, 404–05 (2012),

and Florida v. Jardines, 569 U.S. 1, 7 (2013), it has been clearly established that

warrantless trespasses onto curtilage for investigatory or enforcement purposes

constitute Fourth Amendment violations.

**Fifth Amendment Takings**: Since Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1030 (1992), it has been clearly established that government actions that deprive property of its essential use constitute takings requiring just compensation.

**Seventh Amendment Jury Right**: Since the founding, it has been clearly established that the Seventh Amendment preserves the right to jury trial in civil cases exceeding twenty dollars. Defendants' attempt to extinguish jury determination of damages at the pleading stage directly violates this bedrock guarantee.

**Thirteenth Amendment**: Since Bailey v. Alabama, 219 U.S. 219, 241 (1911), it has been clearly established that compelling performance under threat of penalty constitutes unconstitutional peonage. Conditioning water access on coerced financial performance unsupported by contract violates this principle.

**Fourteenth Amendment**: Since Mathews v. Eldridge, 424 U.S. 319, 335 (1976), and Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998), it has been clearly established that arbitrary government deprivations without meaningful process, particularly where they shock the conscience, violate due process.

ADA & Rehabilitation Act: Since Tennessee v. Lane, 541 U.S. 509, 517 (2004), and Alexander v. Choate, 469 U.S. 287, 301 (1985), it has been clearly established that disabled individuals cannot be denied meaningful access to public services by reason of disability.

3. **A Reasonable Official Could Not Believe This Conduct Was Lawful**.

No reasonable official could believe it lawful to:

Cut off water service without mailed notice, hearing, or judicial determination;

Reject a physician-certified medical hardship certificate outright;

Send armed police to a litigant's home to intimidate him into abandoning his rights;

Threaten to tow his family's vehicle from private property;

Dismiss affidavits and billing disputes mandated by federal law; or

Conspire to circumvent a court's injunction.

Qualified immunity does not protect officials who act with such deliberate indifference to clearly established rights. Malley v. Briggs, 475 U.S. 335, 341 (1986).

4. The Pattern of Conduct Removes Any Doubt.

Even if an isolated mistake could be excused, the pattern here—door posting, rejection of medical certification, unrebutted affidavits, police visits on June 25 and July 9, towing threats, and Johnston's and Confair's personal involvement— establishes willful misconduct. Qualified immunity does not extend to officials who repeatedly violate constitutional commands.

5. Congress Has Declared This Conduct Criminal.

Beyond civil precedent, Congress has long codified that willful deprivations of rights under color of law are federal crimes. 18 U.S.C. § 242 makes it a crime for any official acting under color of law to willfully subject a person to deprivation of constitutional rights. 18 U.S.C. § 241 criminalizes conspiracies to threaten, oppress, or intimidate individuals in the exercise of rights.

Defendants' conduct fits these statutes precisely: Johnston and Confair, acting in concert with police, conspired to intimidate Plaintiff into surrendering his rights (§ 241), and willfully deprived him of rights secured by the Constitution (§ 242). If conduct is so egregious that Congress has defined it as criminal, no reasonable official could believe it is "arguably lawful" for purposes of qualified immunity.

6. Qualified Immunity Defense Must Be Rejected.

Because all of Plaintiff's rights were clearly established, because municipal entities cannot claim qualified immunity, because Johnston and Confair acted willfully and

as final policymakers, and because their conduct mirrors criminal prohibitions

codified by Congress, the qualified immunity defense collapses as a matter of law.

Defendants' reliance on qualified immunity is misplaced. The doctrine shields only

those officials who make reasonable mistakes in unsettled areas of law. It does not

apply where, as here, constitutional rights were clearly established and deliberately

disregarded.

First, the Supreme Court has long held that utility shutoffs implicate due process.

Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978), confirmed that

customers have a constitutionally protected interest in continued utility service, and

that deprivation without adequate notice and opportunity to be heard violates the

Fourteenth Amendment. This principle was reinforced decades earlier in Mullane

v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), and Logan v.

Zimmerman Brush Co., 455 U.S. 422 (1982), which make clear that mailed notice

and fair process are required before a deprivation of property. Johnston and Confair

admitted they failed to provide mailed notice prior to the June 23 shutoff. No

reasonable official could conclude that trespassing on private property and shutting

off essential water without mailed notice comported with due process.

Second, retaliation for exercising constitutional rights has been "clearly

established" for generations. The Supreme Court in West Virginia State Bd. of

Educ. v. Barnette, 319 U.S. 624 (1943), forbade compelled speech and association.

31

The Third Circuit has repeatedly held that retaliation for protected petitioning violates the First Amendment. Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000); Hartman v. Moore, 547 U.S. 250 (2006). Plaintiff's affidavits, billing-error notices, and medical hardship petitions are quintessentially protected activities. Dispatching police on June 25 and July 9, 2025, in direct response to those filings is not a "reasonable mistake," it is **deliberate retaliation**.

Third, denying a physician-certified medical accommodation likewise violated rights that were **clearly established**. Under Alexander v. Choate, 469 U.S. 287 (1985), and Tennessee v. Lane, 541 U.S. 509 (2004), disabled individuals are entitled to meaningful access to public services, including utilities. Johnston's rejection of Plaintiff's medical certificate as "not good enough" placed Defendants squarely within the ambit of the ADA and § 504 of the Rehabilitation Act.

Fourth, municipalities and municipal authorities cannot invoke qualified immunity at all. Owen v. City of Independence, 445 U.S. 622, 650 (1980). When policymaking officials such as Johnston and Confair themselves direct the unlawful action, the Authority itself is liable. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); City of Canton v. Harris, 489 U.S. 378, 390 (1989). Defendants lean on Anderson v. Creighton, 483 U.S. 635 (1987), and District of Columbia v. Wesby, 583 U.S. 48 (2018), to argue the law must "squarely govern" the facts. But Craft and its progeny already squarely govern utility shutoffs.

Retaliation cases squarely govern 1A violations. ADA/RA precedents squarely govern denial of accommodations. And even under Wesby, deliberate defiance of long-settled due process and disability protections cannot be deemed "objectively reasonable."

In short, this is not a close case where reasonable officials were left to guess at constitutional boundaries. The rights at issue—due process notice, equal protection, freedom from retaliation, and disability accommodation—were clearly established long before 2025. Johnston and Confair acted in bad faith, not by mistake. Qualified immunity therefore offers no protection.


## IV. CONSTITUTIONAL VIOLATIONS

Defendants' conduct does not implicate one isolated constitutional guarantee. It is a wholesale assault on multiple rights, each of which has been long recognized as clearly established. Taken together, these violations reveal a coordinated pattern of oppression that the Constitution cannot tolerate.


**First Amendment** – Compelled Association, Retaliation, and Free Exercise of Conscience.

Plaintiff never knowingly or voluntarily contracted with the Authority. By conditioning access to the essential necessity of water on coerced financial

performance, Defendants compelled Plaintiff's association with a municipal

monopoly. That is compelled association and coerced speech. See West Virginia

State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943); Wooley v. Maynard, 430 U.S.

705 (1977). Worse, Defendants escalated police-backed intimidation immediately

after Plaintiff filed affidavits and petitions, punishing him for protected activity.

Retaliation for exercising the right to petition the courts violates the First

Amendment. Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).


**Fourth Amendment** – Warrantless Trespass and Threatened Seizures.

Defendants entered Plaintiff's property without warrant or consent to shut off the

curb valve, a trespass into the curtilage of the home. United States v. Jones, 565

U.S. 400, 404–05 (2012); Florida v. Jardines, 569 U.S. 1, 7 (2013). On July 9,

2025, police threatened to tow Plaintiff's son's vehicle unless he yielded to an

unlawful shutoff, constituting a threatened seizure of private property. Soldal v.

Cook County, 506 U.S. 56, 61–62 (1992). These actions fall squarely within

**Fourth Amendment prohibitions.**


**Fifth Amendment** – Takings Without Just Compensation.

The deprivation of water rendered Plaintiff's home uninhabitable and destroyed its

functional use. That is a compensable taking under the Fifth Amendment. Lucas v.

South Carolina Coastal Council, 505 U.S. 1003, 1030 (1992). Defendants neither

offered nor provided compensation. Instead, they inflicted the deprivation

punitively, contrary to the Takings Clause.


**Seventh Amendment** – Denial of Jury Trial on Value.

The Seventh Amendment preserves the right to a jury determination in civil cases

exceeding twenty dollars. By asserting that the deprivation of water caused no

compensable harm and urging dismissal at the pleading stage, Defendants seek to

extinguish Plaintiff's jury right. Valuation of damages caused by constitutional

deprivations is for a jury, not municipal officials or their counsel.


**Eighth Amendment** – Cruel and Unusual Punishment.

Though not raised in Plaintiff's Amended Complaint, the facts also implicate the

Eighth Amendment. Depriving a disabled veteran of water service despite a

physician-certified hardship is punitive in nature and inflicts unnecessary suffering.

The Eighth Amendment forbids government action that imposes cruel and unusual

punishment, particularly when alternative remedies exist.


**Ninth Amendment** – Retained Rights of the People.

The Ninth Amendment makes clear that the enumeration of certain rights shall not be construed to deny others retained by the people. Among those retained rights are the natural rights to life, health, and access to water as a basic necessity. Defendants' effort to convert this retained right into a privilege conditioned on coerced performance violates the spirit and letter of the Ninth Amendment.

**Thirteenth Amendment** – Peonage and Involuntary Servitude.

By conditioning Plaintiff's access to water on coerced financial performance unsupported by contract, Defendants subjected him to financial peonage. The Supreme Court has long held that coercing performance under threat of penalty violates the Thirteenth Amendment. Bailey v. Alabama, 219 U.S. 219, 241 (1911). A system in which a citizen must submit to unlawful billing demands or face loss of water is a system of involuntary servitude.

**Fourteenth Amendment** – Equal Protection and Due Process.

Defendants denied Plaintiff equal protection by rejecting his physician-certified medical hardship certificate while honoring others. Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886). They deprived him of procedural due process by failing to mail notice or respond to billing disputes. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11–12 (1978). They deprived him of substantive due process by

deploying police to intimidate him and by shocking the conscience with arbitrary, retaliatory enforcement. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

**Collective Constitutional Injury**.

When government action simultaneously violates multiple amendments, it demonstrates systemic abuse of power. Here, Defendants compelled association (1A), trespassed and threatened seizure (4A), deprived habitability without compensation (5A), denied jury determination (7A), inflicted cruel punishment (8A), trampled retained rights (9A), imposed peonage (13A), and stripped due process and equal protection (14A). This is not isolated misconduct—it is a coordinated attack on constitutional governance.

**Criminal Overlay** – 18 U.S.C. §§ 241 and 242.

Congress has declared that conspiracies to threaten or intimidate individuals in the exercise of rights (§ 241) and willful deprivations of rights under color of law (§ 242) are federal crimes. Johnston, Confair, and utility workers, acting with police, conspired to intimidate Plaintiff into abandoning his rights by threats of shutoff and towing (§ 241). They willfully deprived him of constitutional protections by

rejecting his medical certificate, trespassing onto his property, and retaliating for his petitions (§ 242).

While Plaintiff proceeds civilly under § 1983, the criminal statutes underscore the gravity of Defendants' actions. To dismiss these claims as trivial would trivialize conduct that Congress has declared felonious. **The Constitution** does not permit courts to turn a blind eye to **systemic violations** that track the federal criminal code.

Plaintiff emphasizes that these constitutional protections are not "new" claims invented in briefing, but natural extensions of the factual allegations already pled. Pro se pleadings are construed liberally. Haines v. Kerner, 404 U.S. 519 (1972). Plaintiff alleged specific facts — including lack of mailed notice, rejection of medical certification, dispatch of police, trespass on private property, and retaliation for petitioning — that implicate rights under the **First, Fourth, Fifth, Seventh, Thirteenth, and Fourteenth Amendments**. To the extent the Court determines any claim must be more specifically enumerated, Plaintiff respectfully requests leave to amend under Fed. R. Civ. P. 15(a)(2), which directs courts to "freely give leave when justice so requires."

## V. STATUTORY & COMMERCIAL LAW STRIKE

Defendants attempt to frame this case as a "mere billing dispute." (Doc. 49). That framing ignores controlling federal statutes, Pennsylvania commercial law, and the unrebutted affidavits that form part of the record. Far from being a trivial billing quarrel, Defendants' conduct violates the Truth in Lending Act, the Fair Credit Billing Act, the Uniform Commercial Code, and the Federal Rules of Evidence.

1. Truth in Lending Act & Fair Credit Billing Act.

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and its implementing regulations, including the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, establish detailed procedures for resolving billing disputes. Upon receipt of a billing error notice, a creditor must acknowledge the dispute, investigate the claim, and provide verification or correction. Plaintiff submitted multiple Billing Error Affidavits identifying errors, demanding verification, and disputing Defendants' claims. Defendants never acknowledged or rebutted those affidavits.

Under the FCBA, failure to respond within sixty days results in the disputed amount being unenforceable. 15 U.S.C. § 1666(e). By ignoring Plaintiff's notices and continuing to enforce disputed amounts through shutoff threats, Defendants violated TILA and FCBA on their face.


2. Uniform Commercial Code – Demand for Proof of Claim.

Pennsylvania has adopted the Uniform Commercial Code at 13 Pa.C.S. Plaintiff invoked UCC § 9-210, which entitles a debtor to demand an accounting of obligations. Defendants never provided the accounting requested, never produced a valid signed contract, and never rebutted the sworn affidavits asserting lack of obligation.

Under commercial law, failure to respond to a proper demand creates an estoppel: the silence is taken as admission of the truth of the sworn claim. Defendants' failure to rebut means the record stands unrebutted that no lawful obligation exists.


3. Silence Constitutes Admission Under Federal Rule of Evidence 301.

Plaintiff's affidavits and fee schedule were notarized, served, and unrebutted.

Under the Federal Rules of Evidence, a presumption arises where a fact is established by sworn affidavit and remains unrebutted. FRE 301 places the burden of producing contrary evidence on the party against whom the presumption is directed.

Defendants' silence leaves Plaintiff's sworn affidavits and fee schedule standing as truth in commerce. At this stage, those unrebutted instruments must be accepted as true, and the burden shifts to Defendants. Their failure to rebut cannot be excused by a motion to dismiss.

4. Layered Violations Across Statutory Frameworks.

Defendants' violations are not limited to one statute or regulation. They simultaneously:

Violated TILA/FCBA by ignoring billing-error affidavits.

Violated UCC § 9-210 by refusing to provide accounting.

Violated Pennsylvania law (53 P.S. § 3102.502(b)(2)) by shutting off service without judicial determination.

Violated the ADA and RA by rejecting a physician-certified hardship certificate.

Violated federal fiduciary duties imposed by Article I, § 27 of the Pennsylvania Constitution.

Each statute alone is sufficient to survive dismissal. Together, they demonstrate a coordinated refusal to honor the statutory frameworks that protect consumers and ratepayers.

5. Statutory and Commercial Violations Reinforce Constitutional Claims.

Statutory and commercial protections were not enacted in a vacuum—they exist to enforce the very constitutional guarantees Defendants trampled. Billing error

protections enforce due process. UCC demands for accounting enforce fairness in

commerce. Rule 301 enforces the principle that silence cannot defeat sworn truth.

Defendants' refusal to comply with these statutory frameworks underscores that

this case is not about "late payment." It is about Defendants deliberately ignoring

laws designed to protect citizens, while using threats and police power to coerce

compliance. That is not a billing dispute—it is unlawful government conduct

cloaked in commercial language.


## VI. FEE SCHEDULE & COMMERCIAL LIABILITY

Defendants argue that Plaintiff's fee schedule is irrelevant and unenforceable.

(Doc. 49) That argument fails. Under commercial law and evidentiary rules, sworn

and unrebutted instruments stand as truth. Defendants' silence in the face of

Plaintiff's fee schedule and affidavits constitutes tacit agreement and commercial

liability

1. The Fee Schedule Was Properly Noticed and Served.

Plaintiff prepared and served a notarized Fee Schedule of Commercial Liability

alongside affidavits of billing error and notices of presentment. The documents

were served via certified mail, with proof of delivery. Each instrument clearly

stated that failure to rebut point-by-point within the allotted timeframe would

constitute agreement and acceptance. Defendants did not rebut, cure, or otherwise contest. **Their silence constitutes acquiescence in commerce.**

2. UCC Principles **Establish Silence as Assent.**

Under the Uniform Commercial Code, contracts and obligations may arise from conduct as well as express agreements. See 13 Pa.C.S. § 1201(b)(3). Silence in the face of a demand for accounting or notice of liability, especially when accompanied by continued enforcement attempts, constitutes acceptance. Defendants' failure to rebut Plaintiff's sworn notices leaves the record standing unrebutted that they agreed to the commercial terms set forth.

3**. Federal Rule of Evidence 301 Applies**.

Sworn affidavits, when unrebutted, create presumptions in civil cases. Under FRE 301, the burden of producing contrary evidence shifts to the opposing party. Plaintiff's fee schedule and affidavits are notarized, served, and unrebutted. The presumption therefore stands that Defendants agreed to the terms and are commercially liable. Their silence cannot erase the effect of sworn instruments.

4. Defendants' Own Conduct **Confirms Acceptance.**

After receiving Plaintiff's fee schedule and affidavits, Defendants did not reject them. Instead, they escalated enforcement: posting defective notices, ignoring

billing disputes, sending police, and threatening seizure of property. By proceeding without rebutting the instruments, Defendants confirmed acceptance by conduct. In commerce, conduct consistent with acceptance enforces contractual liability.


5. Fee Schedule Liability Is Cumulative, Not Alternative.

Plaintiff does not rely solely on the fee schedule. It stands alongside constitutional, statutory, and fiduciary claims. But its unrebutted status adds an additional layer of liability: commercial liability. Courts recognize that unrebutted affidavits, particularly when notarized and served with opportunity to cure, must be given effect. Defendants' refusal to rebut is not a defense—it is an admission.

6. Fee Schedule Reinforces Fiduciary Breach.

Defendants are trustees of a public resource under Article I, § 27 of the Pennsylvania Constitution. As fiduciaries, they are held to the highest standard of honesty and disclosure. Their silence in the face of sworn affidavits and notices is not just commercial acceptance—it is fiduciary breach. A trustee who refuses to account while continuing to enforce coercive measures is liable both in commerce and in equity.


# VII. FIDUCIARY DUTY & PUBLIC TRUST

Defendants attempt to minimize Plaintiff's fiduciary duty claims, arguing that the Authority owes him no duties beyond ordinary utility billing. (Doc. 49). That argument disregards both the Pennsylvania Constitution and the nature of the Authority's role as trustee of a vital public resource.

1. Article I, § 27 of the Pennsylvania Constitution Imposes Trustee Obligations.

The Environmental Rights Amendment, Pa. Const. art. I, § 27, provides:

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people… As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

As a municipal authority charged with delivering water, Defendants act as trustees of that resource. Trustees are bound by the highest fiduciary standards: loyalty, honesty, disclosure, and care. Defendants' conduct—rejecting a medical certificate, ignoring billing disputes, shutting off water in retaliation, and sending police—violates every trustee duty.

2. Faithless Trustees Breach Both Law and Equity.

Defendants acted not as trustees safeguarding a shared resource, but as debt collectors weaponizing water for coercion. They ignored their fiduciary duty to conserve and maintain water for the benefit of all the people. By conditioning access to water on coerced financial performance absent a valid contract, Defendants turned a trust obligation into a commercial weapon. That is faithless trusteeship.

In trust law, a trustee who abuses power for private gain or retaliatory purposes commits breach of trust. Courts in Pennsylvania hold trustees accountable for any act that undermines the interests of the beneficiaries. Here, Plaintiff—as beneficiary of the public trust in water—was denied access to that resource by faithless conduct.

3. Fiduciary Breach Reinforces Constitutional and Statutory Violations.

The fiduciary duty breach is not independent of the constitutional violations—it magnifies them. When trustees of a public resource act in retaliation, they commit not only due process and equal protection violations but also betray the fiduciary standards imposed by Article I, § 27. When trustees ignore affidavits and fail to account, they commit not only statutory violations under TILA, FCBA, and UCC § 9-210 but also breach fiduciary trust duties to disclose and account.

4. Equity Demands Relief Against Faithless Trustees.

In equity, courts will not tolerate faithless trustees. Remedies for breach include removal, injunctions, restitution, and damages. Here, Defendants' repeated retaliation, misuse of police, and refusal to honor statutory and fiduciary duties warrant equitable relief: permanent injunction against further shutoffs or retaliation, accounting of all charges and funding, and damages for the harm caused by breach of fiduciary trust.

5. Fiduciary Liability Is Coextensive with Constitutional Liability.

Even if this Court were to construe Plaintiff's statutory and constitutional claims narrowly, Defendants remain liable as fiduciaries under the Pennsylvania Constitution. Article I, § 27 makes clear that water is not a commodity to be leveraged against citizens, but a resource to be safeguarded. Faithless trustees cannot hide behind billing codes or municipal charters. Equity and law alike demand accountability.

## VIII. CONCLUSION & PRAYER FOR RELIEF

Defendants' sixty-two–page motion to dismiss does not cure the fatal defects in their conduct. It ignores unrebutted affidavits, rewrites statutory mandates, and attempts to trivialize systemic constitutional violations as a mere "billing dispute." The record demonstrates otherwise:

Defendants deprived Plaintiff of water service without mailed notice, judicial determination, or meaningful opportunity to be heard, in violation of **due process**.

Defendants retaliated against Plaintiff for filing affidavits and petitions, dispatching police, threatening seizure of property, and dismissing a physician-certified medical hardship certificate, in violation of the **First and Fourteenth Amendments.**

Defendants trespassed on Plaintiff's property and threatened to seize his son's vehicle, in violation of the **Fourth Amendment**.

Defendants deprived Plaintiff's home of habitability without just compensation and attempted to deny jury determination of damages, in violation of the **Fifth and Seventh Amendments.**

Defendants subjected Plaintiff to financial peonage, coercing performance absent a lawful contract, in violation of the **Thirteenth Amendment**.

Defendants inflicted unnecessary suffering on a disabled veteran, in violation of the **Eighth Amendment**.

Defendants trampled retained natural rights, in violation of the **Ninth Amendment**.

Defendants rejected Plaintiff's disability protections, in violation of the **ADA and Rehabilitation Act.**

Defendants ignored billing-error affidavits and failed to provide accounting, in violation of **TILA, FCBA, and UCC § 9-210**.

Defendants breached their fiduciary obligations as trustees of a public resource under **Article I, § 27** of the **Pennsylvania Constitution**.

These violations are not isolated mistakes. They are a coordinated campaign of retaliation and coercion that tracks the very conduct Congress has criminalized under 18 U.S.C. §§ 241 and 242. While Plaintiff proceeds under § 1983 and statutory claims, the fact that this conduct also constitutes federal crimes underscores its gravity.

At the Rule 12(b)(6) stage, Plaintiff's allegations must be taken as true and construed in the light most favorable to him. So construed, they state claims under the Constitution, federal statutes, commercial law, and fiduciary principles. Dismissal is therefore improper.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. **DENY** Defendants' Motion to Dismiss in its entirety;

2. **DECLARE** that Defendants' conduct violated Plaintiff's rights under the United States Constitution, the Americans with Disabilities Act, the Rehabilitation Act, the Truth in Lending Act, the Fair Credit Billing Act, the Uniform Commercial Code, and the Pennsylvania Constitution;

3. **ISSUE INJUNCTIVE RELIEF** prohibiting Defendants from further retaliation, intimidation, or termination of water service without full compliance with statutory and constitutional safeguards;

4. **ORDER** a full forensic accounting of Plaintiff's account and Defendants' financial practices;

5. **AWARD DAMAGES** including compensatory damages for economic harm, emotional distress, and loss of habitability; punitive damages for willful, malicious, and retaliatory conduct; and commercial damages as set forth in Plaintiff's unrebutted fee schedule;

6. **AWARD COSTS AND FEES** under 42 U.S.C. § 1988 and other applicable statutes;

7. **GRANT A JURY TRIAL** on all triable issues; and

8. **AWARD ANY OTHER RELIEF** this Court deems just and proper.


Respectfully submitted,

/s/ Dion Storm Holland
Dion Storm Holland, Pro Se
In care of: 566 High Street
Jersey Shore, Pennsylvania 17740
(814) 574-9664 subarudion@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of September 2025, I caused a true and correct copy of the foregoing Reply Brief in Opposition of Defendant's (JSAJWA et.al) Brief in Opposition of Motion to Dismiss Amended Complaint (Doc. 49), & Proposed Order  to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(D), upon the following counsel of record:

Sean P. McDonough, Esq. (PA I.D. #47428)

Dougherty, Leventhal & Price, LLP

459 Wyoming Avenue

Kingston, PA 18704

E-mail: smcdonough@dlplaw.com


Michael J. Crocenzi, Esq. (PA I.D. #66255)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: mcrocenzi@barley.com


Sarah L. Doyle, Esq. (PA I.D. #321149)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.


/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In Care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com