**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DION STORM HOLLAND | |
| Plaintiff, | |
| v. | Civil Action No. 4:25-cv-01323-DFB |
| JERSEY SHORE AREA JOINT WATER AUTHORITY | The Honorable Daryl F. Bloom |
| and | Electronically Filed |
| TIADAGHTON VALLEY MUNICIPAL AUTHORITY, ERIC JOHNSTON, JOHN DOE 1-5 in their individual capacities, | |
| Defendants. | |

## DEFENDANT TVMA'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

BARLEY SNYDER

Michael J. Crocenzi, Esquire (#66255)
mcrocenzi@barley.com
Sarah L. Doyle, Esquire (#321149)
sdoyle@barley.com
100 East Market Street
York, PA 17401
Telephone (717) 846-8888
*Counsel for Tiadaghton Valley Municipal Authority*

Date: September 19, 2025

**ARGUMENT**

I.  **PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW DUE TO THE FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

1. 42 U.S.C. § 1983 Claims

*A. Procedural Due Process*

Plaintiff's procedural due process claim does not set forth a policy or custom of Defendant TVMA that caused his alleged injuries. Plaintiff continues to fail to identify any such policy or custom in his Brief in Opposition. Regardless of his allegations that he possesses a protected property interest, that he was not mailed notice of termination, or that his medical documentation was not considered, his claim fails as a matter of law without identification of an unconstitutional policy or custom of TVMA. As such, Count I should be dismissed.

Further, Plaintiff states that the Municipal Authorities Act states in mandatory language, "In no case shall the water supply be shut off until the claim has been judicially determined." This is a misstatement of the law. The *Water Services* Act states, "If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of the claim and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been

1

judicially determined." 53 P.S. § 3102.502(b). Plaintiff never produced an affidavit during the first ten-day notice period that indicated a just defense, and that included affirmation under oath that the statement was not executed for purposes of delay. This was noted by the Court in its June 30, 2025 Order. *See*, Exhibit T to the Amended Complaint (Doc. 10-1). It is not disputed that after the June 30, 2025 hearing, Plaintiff's water service was restored, and that the shutoff process was re-initiated in accordance with 53 P.S. § 3102.502. After Plaintiff produced a statement indicating his defense to non-payment and that the statement was not for purposes of delay on July 1, 2025, *see*, Exhibit P to Amended Complaint (Doc. 10-1), Defendant JSAJWA ceased termination efforts. Plaintiff continues to receive water and sewer service. Plaintiff attempts to deceive the Court in his recounting of events by making it sound like Defendants were prohibited by the June 30, 2025 Court Order from reinitiating the shutoff process. In doing so, he misstates the law and the Court Order, and utilizes averments not contained in his Amended Complaint.

This is just one example of Plaintiff's misstatement of his Amended Complaint. Plaintiff, on numerous occasions, asserts facts that occurred after the filing of his Amended Complaint in his Brief in Opposition. In one such instance, he alludes to an August 11, 2025 email (sent after he filed his Amended Complaint) to counsel indicating that there is no contract that obligates him to make payments to Defendants. Plaintiff accuses counsel of violating their duty of candor to the court

in his Brief in Opposition, stating that there is a "false non-payment narrative." Yet, Plaintiff admits that he has not paid for water he has used as shown on his Exhibit M to the Amended Complaint (Doc. 10-1). He even attaches a copy of Defendant JSAJWA's invoice as Exhibit S to his Amended Complaint (Doc. 10-1), showing current charges through July 9, 2025 and the unpaid balance as of that date. The Municipal Authorities Act authorizes municipal authorities such as Defendants to "fix, alter, charge and collect rates and other charges…". 53 Pa. C.S.A. §5607.[1] Contrary to Plaintiff's assertions, Defendants do not need to enter into contracts with ratepayers; the exclusivity of rate setting and collection lies unilaterally with municipal authorities. If Plaintiff wants water and sewer service, then he is subject to the rates set by Defendants. It is not a violation of due process to deprive service to a property where unpaid services have been rendered, and where the resident does not contend that the bills were unpaid. *Ransom v. Marrazzo*, 848 F.2d 398, 410-411 (3d Cir. 1988). Defendant TVMA asserts that Plaintiff cannot overcome the holding in *Ransom*.

---

[1]    (d) Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers: … (9) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties…" 53 Pa. C.S.A. § 5607.

*B. Equal Protection*

Plaintiff again failed to plead a policy or custom of TVMA's that led to his alleged disparate treatment. Plaintiff focuses on the actions of Defendant Johnston, indicating that he did not apply Defendant JSAJWA's rules equally to him. This is exactly what the U.S. Supreme Court in *Monell* guards municipalities against, "…a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (S. Ct. 1978). As such, even if Defendant Johnston (an employee of Defendant JSAJWA, not TVMA), or any other employees of Defendants, took the actions alleged in the Amended Complaint, and even if Plaintiff could produce names of customers that were treated differently, Plaintiff would still be without a proper cause of action as a matter of law.

*C. Monell Failure to Train*

At Count XIII, Plaintiff claims that there was a failure to train employees, and that is what led to his constitutional deprivations. Assuming *arguendo* Plaintiff can establish enough facts to support his claim that constitutional violations occurred, Plaintiff still cannot succeed in his 42 U.S.C. § 1983 claims against TVMA even under a failure to train theory. First, he cannot show a pattern of violations. *Connick v. Thompson*, 563 U.S. at 62 (S. Ct. 2011). As such, he must proceed on the basis

4

that a single incident evidences deliberate indifference sufficient to establish *Monell* liability. *Thomas v. Cumberland County*, 749 F.3d at 223–24 (3d. Cir. 2014) (quoting *Brown*, 520 U.S. at 409). However, again, because he has failed to pay his bills, he cannot do so. Even if employees of the Defendants violated due process, equal protection, or other federal rights because of a failure to train, Plaintiff cannot show the injury would have been avoided if employees were trained properly. He still would have been subjected to termination of water services because he was delinquent on his bills. As such, Plaintiff's § 1983 claims should be dismissed.

### 2. Rehabilitation Act and Americans With Disabilities Act Claims

Despite Plaintiff's contention in his Brief in Opposition, he has not alleged that any of the Defendants receive federal funds. He has not alleged that Defendants are "tethered to federal programs through infrastructure grants, water quality projects, and state-administered allocations funded by Washington," as he claims in his Brief in Opposition. Rather, in his Amended Complaint, he cites to cases that don't exist and fails to set forth the requisite averments. As such, his Rehabilitation Act claim should be dismissed.

Further, Defendant failed to plead that his disability was the reason for his water shutoff. Defendant admits that he only produced medical documentation after receiving the termination notice. He then proceeds to aver that despite producing documentation purporting to show a disability, Defendants shut off his water and

5

failed to make accommodations under their policies so that he can continue to enjoy free water service. See, Amended Complaint, ¶ 59-60 (Doc. 10). This is not the same as averring that he was excluded from participation in water service because he is disabled. In fact, he cannot aver that he was excluded because of his disability, as he admits that the notice of termination was delivered *prior* to putting Defendants on notice of his alleged disability. See Amended Complaint, ¶ 12 and Exhibit B (Doc. 10 and 10-1). In other words, they were going to terminate his service before they knew that Plaintiff was claiming he is disabled. As such, the decision to terminate could not have been based on any alleged disability.

Plaintiff raises the issue of retaliation under the Rehabilitation Act and ADA for the first time in his Brief in Opposition. Assuming this Court can read a retaliation claim into Plaintiff's claims at Count III, it should likewise be dismissed. Again, Plaintiff contorts the timing of the averments in his Amended Complaint. Plaintiff wants this Court to think that Defendants were taking actions against Plaintiff in violation of the June 30, 2025 Court Order when they were not. Plaintiff argues that Defendants improperly posted a 10-day shut off notice in retaliation for producing "billing disputes, medical certificates, and later sworn affidavits…". However, Plaintiff ignores that the June 30, 2025 Court Order specifically provides that Defendants may re-issue the shut off notices in compliance with 53 P.S. § 3102.502. *See,* Amended Complaint, Exhibit T (Doc. 10-1). This notice was reissued

on June 30, 2025, after the hearing. See Amended Complaint, ¶ 20-21 (Doc. 10). Plaintiff further asserts coercion and intimidation from the police were used by Defendants in retaliation for asserting his disability rights. However, Plaintiff again fails to connect the reissuance of the shutoff notice and Defendants' "use of police" as a means to prevent him from exercising his rights. This does not meet the standard for pleading retaliation under the ADA or the Rehabilitation Act.

### 3. Fourth Amendment Claim

Plaintiff argues that the entry into the curtilage of his property to access the shutoff valve was an unconstitutional search. However, there were no criminal proceedings or investigations being undertaken by the Defendants. As such, entry on the Plaintiff's property to access the shutoff valve is not a "search" for purposes of the Fourth Amendment. *Frates v. City of Great Falls*, 568 F. Supp. 1330, 1334–35 (D. Mont. 1983)(holding that a municipal employee's entry onto the property of plaintiff for purposes of terminating water services was not a search because there was no criminal or non-criminal investigation occurring), *aff'd in part, remanded in part*, 732 F.2d 163 (9th Cir. 1984)(cited by the Sixth Circuit in *Cadle v. City of Newton Falls, Ohio*, 961 F.2d 1576 (6th Cir. 1992)). "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." *Marshall v. United States*, 422 F.2d 185, 189

7

(5th Cir. 1970). Counsel could not find similar holdings in the Third Circuit; however, the plain meaning of the word "search" implies a probing inquest, of which there was none here. *See also, United States v. Jones*, in which the United States Supreme Court explains that, "[t]respass alone does not qualify, but there must be conjoined with that … an attempt to find something or to obtain information." *United States v. Jones*, 565 U.S. 400, 408, (S. Ct. 2012).

Here, Plaintiff has not alleged that Defendants looked for or found anything. They merely accessed the shut off valve to terminate service, like in *Frates*. This falls far short of a "search" under the Fourth Amendment.

Plaintiff asserts that the termination of his water service was analogous to padlocking his home or seizing its heating system in the winter. This is not analogous, as this Court's sister courts have made clear. He attempts to deflect from the holdings in *Gagliardi* and *Martinez* that found that utility services are not personal effects for the purposes of the Fourth Amendment. It doesn't matter whether he paid his bill or not; termination of water and sewer service does not constitute a seizure under the Fourth Amendment. Therefore, his Fourth Amendment claim should be dismissed.

4. <u>Fifth Amendment Taking</u>

Plaintiff again attempts to misconstrue the Water Services Act in his Brief in Opposition. He indicates that the law forbids termination until the underlying claim

is judicially determined. That could be true if Plaintiff produced proper documentation to dispute the termination, which he did not. See, Exhibit T to Amended Complaint (Doc. 10-1). Further, he claims he had a "statutory right" to withhold payment, but provides no citation for the same. Finally, Plaintiff now argues that no "valid bill of exchange" or "lawful tender" had been presented, and all obligations were contested, and so therefore his water should not have been shut off. However, he attaches as Exhibit S to his Amended Complaint Defendants' invoice through July 9, 2025, showing amounts owed (Doc. 10-1). He did not dispute that amounts were owed to Defendants. He merely disputes how much, noting a discrepancy between the amount on the invoice (or "bill of exchange") and the amount on the notice of termination. As such, his Fifth Amendment claim should be dismissed.

### 5. State Constitutional Claims

Plaintiff has already set forth federal constitutional claims, seeking enforcement through 42 U.S.C. § 1983. While there is overlap between some state constitutional rights alleged in the Amended Complaint and federal constitutional rights, Plaintiff has already made those claims by alleging federal violations of due process, equal protection, the Fourth Amendment, and the Fifth Amendment. As such, there is no reason to impute federal violations into his Pennsylvania constitutional claims; he has already set forth alleged federal violations. Plaintiff

admits in his Brief in Opposition that his state law claims pursuant to the Pennsylvania Constitution are the for the same deprivations he asserts under federal law: "Defendants cannot cloak themselves in 'no private right of action' *while simultaneously being sued under §1983 for the same deprivation*." (Doc. 43)(emphasis added).

He also argues that his state constitutional claims seek a different remedy than his federal law claims, in that he requests declaratory and equitable relief. However, that is not what he pled in his Amended Complaint. Plaintiff states, "[the state] constitutional violations were committed under color of state law and are actionable under 42 U.S.C. §1983 and 42 U.S.C. § 1988." (Doc. 10, ¶ 82). This is false, as stated in Defendant TVMA's Brief in Support. (Doc. 33). As such, Count VI should be dismissed.

### 6. §1985 Civil Conspiracy Claim

Plaintiff makes allegations that individuals coordinated efforts to shut his water off, and this coordination satisfies the requirements to set forth a conspiracy to deprive him of equal protection under the law or of equal privileges or immunities under the law. However, Plaintiff fails to establish that termination of water service after failure to pay for the water service is a deprivation of equal protection or equal privileges or immunities. As such, Count VII should be dismissed.

10

7. Plaintiff's Tort Claims

Plaintiff makes claims for fraud, breach of fiduciary duty, intentional infliction of emotional distress. All of these claims are barred by the immunities afforded under Political Subdivision Tort Claims Act. 42 Pa.C.S.A. § 8541. Plaintiff cites to "Lindy v. City of Philadelphia" to support his argument, however, this case citation is fabricated. In fact, the opposite of Plaintiff's assertion is true: the Political Subdivision Tort Claims Act specifically immunizes local governments from the intentional torts of its employees. *Kessler v. Monsour*, 865 F. Supp. 234, 241 (M.D. Pa. 1994). The Act even specifically states that fraud is not actionable. 42 Pa.C.S.A. § 8542(a)(2). As such, even if Plaintiff could set forth coherent tort claims against Defendants, they must still be dismissed for legal insufficiency.

8. Plaintiff's Unjust Enrichment Claim and Claim for Rescission

Plaintiff argues that the shut off and reconnection fees and veterinary bills are owed to him as damages; however, he fails entirely to establish that TVMA was "enriched" in any way. Further, Plaintiff agrees that he cannot return the services he received, meaning he cannot place Defendants in the position that they were prior to any contract. In fact, Plaintiff argues that there was no contract to begin with. As such, Plaintiff cannot establish an unjust enrichment claim or a right to recission.

9. Plaintiff's Unfair Trade Practices and Consumer Protection Law
(UTPCL) Claim

Plaintiff may wish that the law were different, but arguing that it should be different does not make it so. Pennsylvania's Supreme Court squarely addressed the issue of whether the UTPCL applies to political subdivisions and their agencies. It found that the term "person" as it pertains to who may be sued under the UTPCL does not include political subdivisions or their agencies, stating, "…at the time of the UTPCPL's adoption, the common law provided both a doctrine of sovereign immunity, as well as a derivative interpretive presumption against depriving the state of sovereign rights or property, both of which arguably extended to political subdivision agencies. Given the extant ubiquity of these doctrines, we find it unlikely that the legislature would depart from them…" *Meyer v. Cmty. Coll. of Beaver Cnty.*, 93 A.3d 806, 814 (Pa. 2014). Further, the Court held, "the legislature enacted the UTPCPL to account for the fundamental inequality between buyer and seller, and to protect consumers from exploitative merchants." *Id*. "… we discern, no evidence to suggest that, in enacting the UTPCPL, the General Assembly was concerned with and, thus, sought to eliminate unfair trade practices in the public sphere." *Id*. at 577-578.

The Court goes on to explain:

> "the consequences of adopting an interpretation of 'person' to include political subdivision agencies strongly suggest to us that the General Assembly did not intend

their inclusion. First, in the context of public enforcement actions, the UTPCPL provides that the Attorney General or a District Attorney may obtain, 'on behalf of the Commonwealth,' civil penalties in varying amounts, up to $5,000 per violation. Likewise, in the context of private actions, plaintiffs may recover treble damages in an amount up to three times the amount of their actual damages, as well as costs and attorney fees. These damages, although designed, in part, for other more remedial purposes, do contain a deterrent, punitive element. Although the legislature certainly has the authority to impose punitive sanctions and damages upon its political subdivisions, the proceeds of which would go to its own treasury, we are of the opinion that it would not take such an uncharted course without making a clearer statement, particularly given our longstanding precedent that governmental agencies are ordinarily immune from common-law punitive damages."

*Id*. at 814-815. (internal quotations and citations omitted).

As such, the law is clear that the UTPCPL does not apply to political subdivisions or their agencies, like Defendant TVMA in this case, and the claim should be dismissed.

10. Injunctive and Declaratory Relief

Plaintiff continues to insist that Defendants' reissuance of the ten-day notice of shut off was "retaliatory" and "in defiance" of the court's June 30, 2025 Order, and that is why a permanent injunction is needed. Yet, Plaintiff cannot establish that any conduct of Defendants was retaliatory or in defiance of a court order. Judge Carlucci's order specifically states, "[t]hat water service may be terminated after ten (10) days after mailing and posting of a new termination notice, unless Plaintiff

13

provides a written notice in the form required by the statute." After Plaintiff's water service was restored, Defendants mailed and posted a new termination notice. This was not retaliation or a violation of the court's order; it was directly *in accordance with* the court's order. As Plaintiff cannot establish a risk of ongoing harm, given that his water service was restored and has not been terminated again since his provision of a new affidavit of just defense with the required language, an injunction is an improper remedy.

Further, Plaintiff argues that the alleged conduct is ongoing. However, Defendants are not currently terminating his water service. All of the conduct alleged (ignoring Rule X, disregarding the Water Services Act, and retaliating against a claim of medical hardship) happened on dates certain in the past, as outlined in his Amended Complaint. As such, declaratory relief is inappropriate.

## 11. Punitive Damages

In Plaintiff's Brief in Opposition, he cites to cases holding that municipal officials may be subject to punitive damages under some circumstances. However, Defendant TVMA is not a municipal official, it is a municipal entity established by the Municipal Authorities Act. The Supreme Court in *City of Newport* explains that it is not fair to the taxpayers (or in this case, ratepayers) to award punitive damages against a municipal entity for an official's wrongful actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 (S. Ct. 1981). The municipal entity, as a separate

legal entity, cannot be responsible for the malice of its officers. *Id*. at 262-263. As such, Defendant TVMA is not using *City of Newport* as a shield; the principles set forth in *City of Newport* of separating the entity from its employee's intentional malicious actions and avoiding penalizing the public, which is the source of funds of the entity, *id*. at 267, are grounded in decades of both federal and state law. This includes Pennsylvania law, which prohibits an award of punitive damages against municipal entities for the same reasons. *Bensalem Twp. v. Press*, 501 A.2d 331, 338 (Pa. Cmwlth. 1985). As such, Plaintiff's claims for punitive damages against TVMA should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed for failure to state a claim.

Respectfully submitted,

BARLEY SNYDER

By:    */s/ Sarah L. Doyle*
Michael J. Crocenzi, Esquire (#66255)
mcrocenzi@barley.com
Sarah L. Doyle, Esquire (#321149)
sdoyle@barley.com
100 East Market Street
York, PA  17401
Telephone (717) 846-8888
*Counsel for Tiadaghton Valley Municipal Authority*

Date:  September 19, 2025

## CERTIFICATE OF SERVICE

I certify that on this 19th day of September, 2025, the foregoing Reply Brief was electronically filed and available for downloading from the ECF system and, pursuant to Fed. R.C.P. 5(b)(2)(D), such electronic filing constitutes service of the foregoing document on the following parties who have consented to electronic service:

Dion Storm Holland
566 High Street
Jersey Shore, PA  17740
*Pro Se Plaintiff*


Sean P. McDonough, Esquire
Dougherty Leventhal & Price, LLP
459 Wyoming Avenue
Kingston, PA  18704
*Counsel for Defendant Jersey Shore*
*Area Joint Water Authority and Defendant Eric Johnston*


Respectfully submitted,

BARLEY SNYDER

By:     */s/ Sarah L. Doyle*
        Michael J. Crocenzi, Esquire (#66255)
        mcrocenzi@barley.com
        Sarah L. Doyle, Esquire (#321149)
        sdoyle@barley.com
        100 East Market Street
        York, PA  17401
        Telephone (717) 846-8888
        *Counsel for Tiadaghton Valley Municipal*
        *Authority*

Date:  September 19, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DION STORM HOLLAND | |
| Plaintiff, | |
| v. | Civil Action No. 4:25-cv-01323-DFB |
| JERSEY SHORE AREA JOINT WATER AUTHORITY | The Honorable Daryl F. Bloom |
| and | Electronically Filed |
| TIADAGHTON VALLEY MUNICIPAL AUTHORITY, ERIC JOHNSTON, JOHN DOE 1-5 in their individual capacities, | |
| Defendants. | |

## CERTIFICATE OF WORD COUNT

I, Sarah L. Doyle, Esquire, hereby certify that the word count function for this document indicates that the document contains 3,580 words – not counting the cover sheet, word count certification, and certificate of service.

Respectfully submitted,

BARLEY SNYDER

By:      */s/ Sarah L. Doyle*
Michael J. Crocenzi, Esquire (#66255)
mcrocenzi@barley.com
Sarah L. Doyle, Esquire (#321149)
sdoyle@barley.com
100 East Market Street
York, PA  17401
Telephone (717) 846-8888
*Counsel for Tiadaghton Valley Municipal Authority*

Date: September 19, 2025