# Exhibit A

patreasury.gov



**PATREASURY.GOV**



## Contract 71391 Details

| Agency Name | Contract Number |
|---|---|
| • Pennsylvania Infrastructure Investment Authority | 71391 |

| Amount | Execution Date |
|---|---|
| $17,863,320.00 | 11/20/2012 |

| End Date | Contract Parties |
|---|---|
| 10/01/2040 | • Tiadaghton Valley Municipal A |

**Subject Matter**

Transaction documents for a wastewater project.

**Contract File(s)**

**Contract File**

1. 216460_FINALIZED Guaranty Agreement - Nippe Twp.pdf

2. 216460_FINALIZED Funding Agreement.pdf

3. 216460_FINALIZED Guaranty Agreement - Jerse Boro.pdf

4. 216460_FINALIZED Debt Obligation - conformed

5. 216460_FINALIZED Guaranty Agreement - Porte

**Related Document Summaries**

If multiple links are displayed, click individually on each link

 

Number:71391 (Contract)

Funding Recipient and steps shall be taken as deemed necessary to correct any deficiencies. If after six (6) months following such fiscal year end, Net Revenues for such six (6) month period are not at least equal to one-half of the Coverage Requirements then due, Funding Recipient shall immediately employ or cause to be employed a Financial Consultant to analyze the deficiency and recommend by the then current fiscal year-end a revised schedule of rates, fees and charges, which Funding Recipient immediately shall implement and enforce or cause to be implemented and enforced to the extent authorized by the PUC, if required, and otherwise permitted by the law. If, at the end of the fiscal year next succeeding such Financial Consultant's recommendation, Net Revenues are still not sufficient to meet the Coverage Requirements, Funding Recipient shall immediately transfer or cause to be transferred management of the System Revenues to a Financial Consultant, subject to the rights of existing lienholders as set forth in the List of Liens, attached hereto as Exhibit B, and such future superior lienholders as may be approved by the Authority pursuant to the Subsection entitled "Additional Debt; Refinancing" in Section D of this Agreement, until there has been a period of twelve (12) consecutive months during which the Net Revenues satisfy the Coverage Requirements; and provided, however, that if the Financial Consultant or the Authority determines that the failure to meet the Coverage Requirements is caused primarily by factors outside the control of management, the Financial Consultant shall not assume management.

## 29. AUTOMATIC CLEARING HOUSE PROCEDURES

The Funding Recipient hereby unconditionally agrees and consents to participate and follow any automatic clearing house procedures implemented, or to be implemented, by the Authority in order to facilitate disbursements of the Project Funding, monitor the Funding Recipient's expenditures of Project Funding disbursements or facilitate the collection of Project Funding repayments. The Funding Recipient will provide any necessary information or written consent requested by the Authority upon receiving written notification that the Authority is implementing new or revised automatic clearing house procedures.

## 30. TAX STATUS OF DEBT OBLIGATION

The Debt Obligation shall not be reported as a tax-exempt obligation under the information reporting requirements of Section 149(e) of the Internal Revenue Code of 1986, as amended.

## 31. FEDERAL REQUIREMENTS

The Funding Recipient shall comply with the following federal requirements:

a. Federal State Revolving Loan Requirements

Subchapter VI of the Federal Water Pollution Control Act, 33 U.S.C. §1381 et seq., as amended.

b. Discrimination

(i) Pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the requirement not to discriminate on the basis or race, color or national origin in any activity funded through this Agreement.

(ii) Pursuant to the Age Discrimination Act, 42 U.S.C. § 6101 et seq., the requirement not to

discriminate on the basis of age in any activity funded through this Agreement.

  (iii) Pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the

requirement not to discriminate on the basis of disability in any activity funded through this

Agreement.

  (iv) Pursuant to Section 13 of the Federal Water Pollution Control Act Amendments of 1972, Oct. 18,

1972, P.L. 92-500, § 13, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681

et seq., as amended, the requirement not to discriminate on the basis of sex in any activity funded

through this Agreement.

  (v) Pursuant to Executive Order 11246, dated September 24, 1965, as amended by Executive Order

11375, dated October 13, 1967, and as supplemented by U.S. Department of Labor regulations set forth

at 41 C.F.R. Ch. 60, the requirement to provide an equal opportunity for employment in all Project

Contracts and subcontracts funded through this Agreement.

  (vi) Pursuant to Executive Order 12898, dated February 11, 1994, the requirement not to fund any

action through this Agreement that will have disproportionately high and adverse effects on minority

or low-income populations.

c. Federal Single Audit Requirements

Single Audit Act Amendments of 1996, as amended, 31 U.S.C. §§ 7501-7507.

d. Recycled Materials

The requirement to use recovered materials to the maximum extent possible in Project Plans for the

procurement of items designated pursuant to Section 6002 of the Resource Conservation and Recovery

Act, 42 U.S.C. § 6962, and its implementing regulations set forth in 40 C.F.R. Part 247,

provided that use of recovered materials does not jeopardize the intended end use of the item.

e. Real Property Acquisition

When acquiring Real Property, the Project Funding shall be used only for the following:

  (i) To the extent the Project involves a publicly owned treatment works, real property or interests

therein that are an integral part of the treatment process (including land used for the storage of

treated wastewater in land treatment systems prior to land application) or used for ultimate disposal

of residues resulting from such treatment and determined by the Authority to be eligible costs; and

  (ii) Costs associated with compliance with Section 305 of the Uniform Relocation Assistance and

Real Property Acquisition Act of 1970, 42 U.S.C. § 4655, provided that such costs are otherwise

eligible.

f. Lobbying

The restrictions on lobbying set forth in 31 U.S.C. § 1352 and 40 C.F.

R. Part 34, which prohibit the use of federal funds to pay any person for influencing or attempting

to influence an officer or employee of any agency or a member, officer or employee of Congress in

connection with any federal action.

g. Drug-Free Workplace

The provisions in 40 C.F.R. Part 32, Subpart F, Drug-Free Workplace Requirements.

h. Public Notification

When issuing statements, press releases and other documents describing this Project, an acknowledgement that federal funds (i.e., Clean Water State Revolving Funds) are being used to finance the Project.

i. Reporting Requirements

All reporting requests and requests for information or materials related to this Project which may be required by the Authority in order to comply with its reporting requirements under the Federal Funding Accountability and Transparency Act.

## 32. CONTINUING EDUCATION

To the extent that the Project involves operation of a water supply, wastewater or sewer system, the operators of the system shall participate during the term of the Funding Documents in continuing education programs developed by the Pennsylvania Department of Environmental Protection.

## 33. RECORDING OR FILING OF FUNDING DOCUMENTS

The Funding Documents, where applicable, shall be recorded or filed by the Funding Recipient in the appropriate public office and evidence of the filing shall be provided to the Authority.

## 34. DAVIS-BACON ACT WAGE RATES

The Funding Recipient shall comply and cause its Contractors to comply with the requirement that all laborers and mechanics employed by Contractors shall be paid wages at rates not less than those prevailing on projects of a character similar in the locality as determined by the United State Secretary of Labor in accordance with Title 40, Chapter 31, Subchapter IV of the United States Code for all construction activities performed after October 30, 2009.

## 35. NUTRIENT/ENVIRONMENTAL CREDITS

The nutrient credits, or any other marketable environmental credits, (if any) generated as a result of this subsidized funding, as well as any proceeds derived from the subsequent sale of the same, shall be the property of the Authority to the extent of the value of the subsidy associated with credit generating project components. Thus a grant, principal forgiveness offer or subsidized interest rate loan shall afford the Authority ownership in the credits and proceeds derived therefrom in an amount equal to the grant, principal forgiveness or the present value of the interest rate subsidy provided, to the extent such funds were used to finance credit generating project components, including a proportionate share of indirect costs. A preliminary estimate of the value of the subsidy has been calculated and included in the Project Management Plan attached hereto as Exhibit E. Once final project costs are determined, the final value of the subsidy will be calculated by the Authority at the time of project closeout. Funding Recipient shall take all steps necessary to certify, verify or register any nutrient credits or other credits generated as a result of the Project Funding that are owned by the Authority and for which the Authority requests such steps to be taken on the part of the Funding Recipient. The Authority will reimburse reasonable costs (as

in connection with the Project for at least five (5) years after final approval of the Project by DEP. For this paragraph, records shall mean all plans, specifications, invoices, vouchers and other documents executed in connection with the construction of this Project.

## H. LIMITATION OF LIABILITY

### 1. AUTHORITY'S LIABILITY TO FUNDING RECIPIENT

The Funding Recipient has selected or caused to be selected the Contractors, Engineer and all others providing services or materials to or for implementation of the Project. The Authority has not had and shall not have any responsibility whatsoever for their selection or for the quality of their materials or workmanship, it being understood and agreed that the Authority's sole function is that of a lender and the only consideration passing from the Authority to the Funding Recipient is the financial assistance provided in accordance with and subject to the terms of this Agreement. Neither the Funding Recipient nor any other person shall have any right to rely on any procedures required by the Authority herein, such procedures being solely for the protection of the Authority.

### 2. AUTHORITY'S LIABILITY TO THIRD PARTIES

The rights and benefits of this Agreement shall not inure to the benefit of any third party except as provided in Paragraph K.4 (Successors and Assigns) of this Agreement. Notwithstanding anything to the contrary contained in this Agreement or in any of the other Funding Documents or any conduct or course of conduct by the Funding Recipient or the Authority or their respective affiliates, agents or employees, neither this Agreement nor any Funding Documents shall be construed as creating any rights, claims or causes of action against the Authority in favor of any subrecipient, Contractors, Engineer or any other persons providing services or materials to or for the implementation of the Project or their respective creditors or any other person or entity other than the Funding Recipient.

## I. INDEMNITY

The Funding Recipient, for itself and all those claiming under or through it, agrees to protect, indemnify, defend and hold harmless the Authority, its officers and employees, and any operator or consultant retained by the Authority to implement the Project, from and against any and all liability, expense, or damage of any kind or nature and from any suits, claims or demands, including reasonable legal fees and expenses, arising out of this Agreement or in connection therewith including, but without limitation, any disputes arising between the Funding Recipient, Contractors, Engineer, Guarantor(s), if applicable, or any subcontractors, materialmen or suppliers that provided services or materials for the Project, or on account of any act, or omission to act, or negligence of the Authority. This obligation specifically survives the completion of the Project and the repayment of the Project Funding.

## J. DEFAULTS

48 of 77        FA41054021108-CS  November 29, 2012 11:0

## 1. EVENTS OF DEFAULT

a. The occurrence of any of the following events shall constitute an Event of Default hereunder, provided that the default has not been cured within thirty (30) days after notice of its occurrence. The Authority may extend the period to cure such default at its sole discretion.   Events in subsections (ii)-(ix) shall constitute an Event of Default only if it materially impairs the Project Collateral, the Funding Recipient's ability to satisfy its obligations under the Funding Documents or the Funding Recipient's ability to complete the Project by the Completion Date, or would otherwise have impacted the Authority's initial decision to fund the Project.

(i)    Failure to pay any installment of principal or interest under the Project Funding when and where the same is due and payable;

(ii)    Failure by the Funding Recipient to observe or perform any of the covenants or agreements required to be observed or performed under this Agreement or under any of the other Funding Documents;

(iii)    Work or implementation of the Project is discontinued for twenty (20) consecutive working days for any reason whatsoever, except for the following:  (A) a delay which is caused by conditions beyond the reasonable control of the Funding Recipient, including, but not limited to, Acts of God, natural disasters, wars, riots or other major upheavals, (B) as otherwise set forth in the Project Management Plan, or (C) as otherwise approved by the Authority in writing;

(iv)    A default occurs under any of the Project Contracts or the Engineer's Agreement, which the Authority in its sole discretion deems to be substantial default, and any resulting right or remedy has not been exercised in a manner acceptable to the Authority;

(v)    The Project is materially damaged or destroyed by fire or other casualty for which the cost of restoration is not fully insured;

(vi)    Any requirements of a governmental or quasi-governmental authority having jurisdiction of the Project is not met within thirty (30) days after notice of such requirement has been given;

(vii)    Any permit or approval necessary for implementation of the Project is revoked;

(viii)    Funding Recipient fails to complete construction of the Project by the Completion Date for any reason whatsoever, except when such failure to complete the Project is caused by conditions beyond the reasonable control of the Funding Recipient, including, but not limited to, Acts of God, natural disasters, wars, riots or other major upheavals; or

(ix)    If the Project Collateral includes a lien on the System Revenues, or a guaranty secured by a lien on the revenues of a guarantor, as set forth in the Project Specific Terms, attached hereto as Exhibit A, and a rate is not established in a timely manner to generate revenues pledged as Project Collateral, which are sufficient to amortize the Project Funding, pay all of the Funding Recipient's indebtedness secured by such revenues and fund the operation and maintenance of the Project.

b.    The occurrence of any of the following events shall constitute an Event of Default

hereunder immediately upon the occurrence of such event. Events in this subsection shall constitute an Event of Default only if it materially impairs the Project Collateral, the Funding Recipient's ability to satisfy its obligations under the Funding Documents or the Funding Recipient's ability to complete the Project by the Completion Date, or would otherwise have impacted the Authority's initial decision to fund the Project.

(i)    A representation or warranty made by the Funding Recipient to the Authority pursuant to this Agreement or under any of the Funding Documents is untrue in any material respect, as of the date made;

(ii)    Any event of default occurs under any of the documents evidencing Other Funding, subject to all applicable notice and cure periods;

(iii)    The Funding Recipient applies for or consents to the appointment of a receiver, trustee, liquidator, or conservator of itself or any of its property; admits in writing its inability to pay its debts as they mature; makes a general assignment for the benefit of creditors; is adjudicated as bankrupt or insolvent; files a voluntary petition in bankruptcy; files a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute; files an answer admitting the material allegations of a petition filed against it in any proceeding under any such law; or takes any other action for the purpose of effecting any of the foregoing; or

(iv)    Any order, judgment or decree is entered by any court of competent jurisdiction, approving a petition seeking reorganization of the Funding Recipient or all or a substantial part of the assets of the Funding Recipient or appointing a receiver, sequestrator, trustee or liquidator of the Funding Recipient or any of its property, and such order, judgment or decree continues unstayed and in effect for any period of sixty (60) days.

## 2. RIGHTS AND REMEDIES

a. Availability

Upon the occurrence of any Event of Default hereunder, in addition to any other rights or remedies available to it hereunder or under any other Funding Documents or at law or in equity, the Authority may exercise any or all of the following rights and remedies, as it deems necessary or appropriate:

(i) Declare the outstanding principal balance of the Project Funding, together with all accrued and unpaid interest thereon and all other sums due hereunder or under any of the other Funding Documents, to be immediately due and payable in full;

(ii) Cease making any further disbursements hereunder;

(iii) Subject to the rights of existing lienholders, as disclosed to the Authority in the List of Liens, attached hereto as Exhibit B, enter the Project and take possession thereof, or retain or appoint an operator or consultant to take possession thereof, together with all materials, supplies, tools, equipment and construction facilities and appliances located thereon. The Authority may proceed either in its own name or in the name of the Funding Recipient, as the attorney-in-fact

IN WITNESS WHEREOF, the Funding Recipient and the Authority have executed this Funding Agreement effective on the date first above written.

PENNSYLVANIA INFRASTRUCTURE
INVESTMENT AUTHORITY

Paul K. Marchetti
Executive Director

Tiadaghton Valley Municipal Authority

Cheryl A Brungard                                    CB.
Authorized Signatory

                                                     D.K.
ATTEST

(SEAL)



IN WITNESS WHEREOF, the Funding Recipient and the Guarantor have executed this
Guaranty Agreement effective on the date first above written.

ATTEST:                                    JERSEY SHORE BOROUGH

_____                  _Marguerite Dyroff_ – Council President
                                           Authorized Signatory

(SEAL)


ATTEST:                                    TIADAGHTON VALLEY
                                           MUNICIPAL AUTHORITY

_____                  _Cheryl A Bruengard_
                                           Authorized Signatory

(SEAL)