# IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DION STORM HOLLAND, | **Civil Action No**. 4:25-CV-01323-DFB |
| Plaintiff, | **The Honorable Keli M. Neary**<br>**Magistrate Judge Carlson** |
| v. | **SECOND AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |
| JERSEY SHORE AREA JOINT WATER AUTHORITY, TIADAGHTON VALLEY MUNICIPAL AUTHORITY, ERIC JOHNSTON, TIMOTHY CONFAIR | |
| JOHN DOE 1-5 in their individual capacities, | |
| Defendants. | |

## I.  PRELIMINARY STATEMENT

1. This is a civil rights action arising from Defendants' unlawful termination of Plaintiff's water and sewage service, taken under color of state law, despite a documented medical emergency, an active billing dispute, and a court order prohibiting shutoff without proper notice. Plaintiff is a permanently and totally disabled veteran whose household requires continuous water service for health and sanitation.

2. In June 2025, Defendants two municipal authorities and their managerial agents shut off Plaintiff's water and sewage service without mailing the statutorily required notice, refused to honor a valid medical certification, and conditioned restoration on in-person signing or full payment of a disputed balance. After a state court ordered immediate restoration and barred further shutoffs, Defendants retaliated by issuing a new defective termination notice and coordinating enforcement actions with law enforcement.

3. These actions were taken pursuant to Defendants' policies, practices, and failure to train employees on mandatory shut-off protections, disability accommodations, and court-ordered restraints, resulting in violations of Plaintiff's rights under the United States Constitution, federal disability law, and Pennsylvania law.

## II. JURISDICTION & VENUE

2. This action arises under 42 U.S.C. § 1983 (deprivation of rights under color of state law); the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131– 34); Section 504 of the Rehabilitation Act (29 U.S.C. § 794); 42 U.S.C. § 1985 (conspiracy against rights); and the constitutions and laws of the Commonwealth of Pennsylvania.

3.  Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343; supplemental

jurisdiction under 28 U.S.C. § 1367.

4.  Venue lies under 28 U.S.C. § 1391(b) because all events occurred in Lycoming

County, PA.

## III. PARTIES

5.  Plaintiff Dion Storm Holland is a permanently and totally disabled U.S. Marine

Corps veteran he served in Operation Enduring Freedom and relies on

continuous at-home water service for basic medical care and household needs.

He is domiciled at 566 High Street, Jersey Shore, Pennsylvania, and is

competent to bring this action.

6.  Jersey Shore Area Joint Water Authority (JSAJWA) is a municipal authority

under 53 Pa.C.S. § 5601 et seq., operating water/sewage services at 1111 Bardo

Avenue, Jersey Shore, PA. "Commercial enterprise"

7.  Tiadaghton Valley Municipal Authority (TVMA) is a municipal authority under

53 Pa.C.S. § 5601 et seq., operating water/sewer services at 290 Rice Road,

Jersey Shore, PA. "Commercial enterprise"

8.  Defendant Eric Johnston is sued individually as JSAJWA Manager, upon

information and belief, and employee, agent, or contractor of JERSEY SHORE

AREA JOINT WATER AUTHORITY and TIADAGHTON VALLEY

3

MUNICIPAL AUTHORTIY who personally participated in directed, or carried out the shut-off, attempted shut-off, trespass, and enforcement actions described herein, acting under color of state law.

9. Defendant Timothy Confair is sued individually, upon information and belief, and employee, agent, or contractor of JERSEY SHORE AREA JOINT WATER AUTHORITY and TIADAGHTON VALLEY MUNICIPAL AUTHORTIY who personally participated in directed, or carried out the shut-off, attempted shut-off, trespass, and enforcement actions described herein, acting under color of state law. Defendant Confair is liable for his own actions irrespective of any municipal policy, custom, or directive.

10. John Does 1–5 are unnamed agents, supervisors, or decisionmakers whose roles will be revealed in discovery.

## IV. FACTUAL ALLEGATIONS

(Each paragraph admitted or denied under Fed. R. Civ. P. 8(b).)

11. Plaintiff's household, including minor children and animals, requires continuous water and sewage service for health and sanitation.

12. Less than one year prior to June 23, Plaintiff was hospitalized for three days with potentially fatal rhabdomyolysis, during which he required continuous IV fluids, demonstrating the life-sustaining necessity of uninterrupted at-home water service.

13. No Prior Notice: On June 11, 2025, Defendants posted a door-hanger threatening shut-off by June 20. They never mailed the ten-day notice required under 53 P.S. § 3102.502(b)(1)–(2) or JSAJWA Rule X.1. (Ex. T)

14. No Valid Contract or Application: JSAJWA's own Rule II.A requires "[a] written application **two weeks prior**" to service. Plaintiff never submitted or signed any such application, and JSAJWA never produced one. Because no signed application existed, no enforceable contract for service could ever arise under the Authority's Rules.

15. Defendants may contend that a document titled "Contract for Succession on Services" executed at the time of a real-estate closing constituted a valid service contract. Plaintiff expressly alleges that this document was an administrative succession form used solely to maintain continuity of service during a property transfer, did not constitute a written application for service under JSAJWA Rule II.A, and did not waive Defendants' independent statutory and regulatory

obligations governing notice, medical certification, shut-off procedures, or due process.

16. Even if construed as evidencing assent to pay for water usage, the succession document did not authorize Defendants to terminate service absent strict compliance with Pennsylvania statutes, the Authority's own Rules & Regulations, court orders, or disability-accommodation laws, nor did it permit unilateral shutoff in the face of a valid medical certification and pending billing dispute.

17. At all relevant times, Defendants Jersey Shore Area Joint water Authority and Tiadaghton Valley Municipal authority failed to adequately train, supervise, or discipline their managers, agents, and field personnel including Defendants Eric Johnston, Timothy Confair, and Does 1-5 regarding mandatory shut-off procedures, statutory notice requirements, medical-certificate protections, and disability accommodation laws. As a result of these training and supervision deficiencies, Defendants' personnel routinely misunderstood, ignored, or deliberately disregarded controlling law and court orders, directly resulting in the unlawful termination and subsequent attempted termination of Plaintiff's essential water and sewage service.

18. Seven-Day Outage & Harms: From June 23–30, 2025, Plaintiff's household endured a continuous water and sewage outage causing severe sanitation issues, medical risks, and psychological distress. On July 3, Plaintiff's dog was taken to the vet for lethargy; over six days her pyometra worsened, requiring lifesaving emergency surgery from July 9–11 to remove a 10 lb uterus, costing $6,316.87. (Exs. N–N1,N2)

19. Billing Dispute & Forensic-Audit Demand:

    a. On June 11, Plaintiff emailed JSAJWA Janet@jerseyshorewater.com- the only address listed on JSAJWA website the following a "Affidavit of Billing-Error And Demand for Forensic audit & Notice of Medical-Emergency Conditional Acceptance Disputing all charges," unsworn and omitting "not for purpose of delay," which Defendants deemed "insufficient." (Exs. B, C, D)

    b. On July 2, Plaintiff served—via certified mail—a single packet containing:

1. A sworn Notice of Correction & Reassertion of Billing Dispute, Corrected Billing Error Affidavit (bearing "not for purpose of delay") under TILA, the Fair Credit Billing Act, UCC 3-501 & 3-603, and RICO, expressly reserving rights under UCC 1-308; (Ex. P)

2. A sworn Affidavit of Truth Regarding Medical Certification and Billing Misconduct. (Ex. P)

3. A Notice of Fault and Opportunity to Cure; and

4. The Notice of Commercial Liability (Schedule of Fees and Damages) (Exs. P, L).

     c. Defendants never rebutted that packet within ten days yet proceeded to attempt shut off service for a second time.

20. Medical Certificate: On June 20, 2025, Plaintiff obtained a valid medical certificate under 52 Pa. Code §§ 56.113, 56.115 and 66 Pa.C.S. § 1406(f). He hand-delivered it on June 23 at the precise moment Defendant Eric Johnston and a unidentified field worker arrived (Now known as Defendant Timothy Confair), Defendant Eric Johnston asked Plaintiff if he was:

"on Dialysis or something?" Plaintiff Refused to provide private medical information, Defendant Johnston commented "Oh yeah that's HIPAA right"? Indicating he knew he shouldn't be asking those questions. (Ex. G).

21. June 23 Shut Off: At approx. 11:33 AM on June 23, Defendant Eric Johnston acting in his individual capacity, and an unidentified field worker (Now known as Defendant Timothy Confair) in his individual capacity, personally trespassed and shut off both water and sewage service. (Ex. J)

22. Conditional Restoration Demand: Immediately after the shut-off, Plaintiff asked defendant Eric Johnston to verify the certificate with Dr. Burke. Johnston

responded he would "verify"— "as if" he doubted its authenticity—but refused to restore service unless Plaintiff appeared in person to sign a new agreement or paid the full balance. (Ex. J)

23.  Just Two days after the shutoff, Defendants caused local police officers to appear at plaintiff's residence. The officers advised Plaintiff that continued contact with the authority regarding his dispute could "turn criminal" and instructed him not to contact the Authority further unless it was solely to make payment on the alleged balance. This police involvement occurred while Plaintiff was actively preparing court filings and had the effect of chilling Plaintiff's exercise of his rights to petition, access the courts, and challenge the shutoff.


24. State-Court Filing & Emergency Injunction Motion: On June 27, 2025, Plaintiff filed his Complaint and Motion for Emergency Injunction in Lycoming County Court of Common Pleas (Docket No. CV25-00952), seeking immediate restoration and enforcement of his medical-emergency protections.

25. Emergency Hearing & Restoration: On June 30, 2025, the Court held an emergency hearing; Defendants introduced a purportedly mailed bill—never received Defendants (Ex. 1).  The Court ordered restoration within 24 hours and

barred further shut offs without proper ten-day notice; service was restored that day before arriving home from the injunction hearing. (Ex. T)

26. Upon Returning Home from the June 30th hearing defendants immediately retaliated by handing plaintiff another 10-day shutoff upon returning home from court before he could even get out his suit. (Ex. U)

27. Second Shut-Off Attempt: Despite the injunction, on July 9, 2025, Defendants again dispatched field workers and police, threatening to tow Plaintiff's vehicle without a valid warrant or court order—Captain Cody Smith later confirmed no warrant or court order existed. (Ex. Q)

28. Surveillance & Intimidation: On July 13, 2025, TVMA Principal Cheryl Brungard began "following" Plaintiff on social media. (Ex. R)

29. Inter-Agency Coordination: Upon information and belief, JSAJWA, TVMA, Manager Johnston, Timothy Confair and Does 1–5 communicated with the Borough of Jersey Shore and the Lycoming County Regional Police Department regarding Plaintiff's account, shut-off orders, and enforcement actions— communications essential to establish Defendants' coordination in effectuating unconstitutional shut-off attempts designed to circumvent.

30. On July 21, 2025, Defendant Tiadaghton Valley Municipal Authority ("TVMA") timely filed a Notice of Removal in this matter, removing Plaintiff's state-court

action (Lycoming County Docket No. CV25-00952) to this Court under 28 U.S.C. § 1441 et seq.

31. On July 22, 2025, Plaintiff—apparently unaware that the state court had lost jurisdiction upon removal—filed a "Notice of Default Judgment" in the Lycoming County docket.  Under 28 U.S.C. § 1446(d), that filing was null and void: once a properly timed Notice of Removal is filed, "the State court shall proceed no further unless and until the case is remanded."

32. On July 31, 2025, both Defendants moved in this Court (a) to strike Plaintiff's void state-court "Notice of Default Judgment" and (b) to vacate any scheduling orders in the removed case.  (TVMA motion), with (JSAJWA motion).

33. On the same day, counsel for Defendants also sent Plaintiff a letter, via regular mail and email, enclosing their Notice of Appearance, Motion to Vacate Scheduling Order, and Motion to Strike Default. That letter confirms Defendants' awareness of—and coordination over—these parallel filings.

34. Training Deficiency: JSAJWA/TVMA failed to train or supervise managers including Eric Johnston, Timothy Confair, and Does 1-5 on Shut-off procedures, notice requirements, and medical-certificate laws.

35. On July 31, 2025, counsel for Defendant Jersey Shore Area Joint Water Authority filed a praecipe for entry of appearance in the Lycoming County Court of Common Pleas matter (Docket No. 2025-CV-00952). That praecipe confirms Defendants' continued involvement in—and monitoring of—the state-court docket even after removal.

36. On the same date, Sean P. McDonough, Esq., served that praecipe on Plaintiff (via first-class mail) and on co-defense counsel (via electronic filing), as certified in the accompanying Certificate of Service.

## V. VIOLATIONS OF STATUTORY, REGULATORY, AND MUNICIPAL RULES

37. Application Requirement (Rule II.A): Service "requires a written application two weeks prior"; none was ever submitted or approved. Without any signed application, Defendants had no contract under which to terminate service or demand payment. (Ex. F-1.)

38. Statute of Frauds & Contract Formation (13 Pa. C.S. § 2201; UCC 2-201):

Under Pennsylvania's Commercial Code, any contract for the sale of goods for \$500 or more must be in writing and signed by the party to be charged.  Here, JSAJWA treats water service and reconnection fees as part of its "commercial enterprise" and the disputed charges exceed \$500, yet Defendants have produced no signed application or writing evidencing Plaintiff's assent.  Their attempt to enforce those fees therefore violates 13 Pa. C.S. § 2201 (UCC 2-201) and is void ab initio.

39. Mailing Requirement (Rule VII.G): "Bills shall be sent to the address provided by the Customer"; June bills never arrived, and the first paper bill was not received until July 12, 2025—after the ten-day notice period.  (Ex. F-2.)

40. Due-Date & Dispute Procedure (Rule VII.B & Rule VII.F):

a.  Rule VII.B requires that "all charges shall be due and payable not later than twenty-five (25) days after presentation"; Defendants applied late-payment penalties without ever presenting a timely bill. (Ex. F-2)

b.  Rule VII.F provides that "Any customer who upon receipt of a bill has reason to doubt its accuracy shall bring or mail the bill within ten

(10) days to the Authority Office for investigation"; Plaintiff's June 11 and July 2 disputes went entirely unacknowledged and uninvestigated. (Ex. F-2.)

41. Ten-Day Notice (Rule X.1 & 53 P.S. § 3102.502(b)(1)–(2)): Requires written notice mailed and posted at the premises ten days before termination; no such notice was provided before June 23, 2025.  (Ex. F-2.)

42. Post-Hearing Notice Defect (Rule X.1): On June 30, 2025, a field worker handed Plaintiff a ten-day notice immediately after the hearing; it was never posted or mailed prior to any action.  (Ex. U.)

43. Protest-Procedure Requirement (52 Pa. Code §§ 56.114–.115):  Pennsylvania law requires that termination notices for water and sewer service provide clear protest instructions and afford the customer no less than ten (10) days to dispute the proposed termination prior to shut-off. Defendants failed to provide Plaintiff with any lawful protest procedure, dispute instructions, or opportunity to contest the alleged charges before terminating essential water and sewer service, in direct violation of  (52 Pa. Code §§ 56.114–.115). and Plaintiff's right to due process. (Exs. A, H.)

44. Signed-Authority Requirement (Rule XIII.H): Any deviation from Authority rules must be in writing and signed by authorized officials; no such deviations exist.  (Ex. F-3.)

## VI. CLAIMS FOR RELIEF

**(All Counts incorporate ¶¶ 11–44 above.)**

### Count I – Procedural Due Process (14th Am.; 42 U.S.C. § 1983)

45.  Plaintiff incorporates ¶¶ 11–44 above.

46.  The Fourteenth Amendment prohibits any state actor from depriving "any person of life, liberty, or property, without due process of law."

47.  Under Pennsylvania law, a residential water-service customer has a protected property interest in uninterrupted service and may only be terminated after:

a.  Ten (10) days' written notice mailed and posted (§ 53 P.S. § 3102.502(b); JSAJWA Rule X.1),

b.  A description of the procedure for protesting termination (52 Pa. Code § 56.114), and

c.  An opportunity to present objections to a designated official (52 Pa. Code § 56.115(a)).

48.  Defendants, acting under color of state law, provided no proper ten-day notice or protest procedures before the June 23 shut-off (¶ 12), and refused to restore service within 24 hours of Plaintiff hand-delivering his valid medical certificate, in violation of § 56.115(b).

49.  By terminating service without the statutorily mandated notice, protest procedures, or a hearing, and by ignoring Plaintiff's medical-certificate accommodation, Defendants deprived Plaintiff of his property without due process

46. This deprivation caused substantial harm—seven days without essential water, medical risk, veterinary and household expenses, and severe emotional distress.

47. These acts give rise to liability under 42 U.S.C. § 1983.

Count II – Equal Protection (14th Am.; 42 U.S.C. § 1983)

48. Plaintiff incorporates ¶¶ 11–47 above.

49. The Equal Protection Clause forbids states from denying "the equal protection of the laws" to any person.

50. To plead an Equal Protection claim, a plaintiff must allege:

    a.  He is a member of a protected class;

    b.  He was treated differently from similarly situated individuals; and

    c.  The differential treatment was intentional and lacked any rational basis (in a non-suspect class) or was motivated by an invidious purpose (in a suspect or quasisuspect class).  (**City of Cleburne v. Cleburne Living Ctr.**, 473 U.S. 432, 439–40 (1985)).

51. Plaintiff, a permanently disabled, homebound U.S. veteran, is a qualified individual with a disability under both the ADA and the Rehabilitation Act.

52. Defendants honored shut-off disputes and medical accommodations for other customers but intentionally ignored and refused to honor Plaintiff's valid medical certificate (¶¶ 15–18), demanding full payment or in-person agreement signing as a condition of service.

53. This disparate treatment of a disabled, homebound veteran—when no such conditions were imposed on other customers—lacked any rational basis and was motivated by invidious animus toward disabled individuals.

54. As a direct result, Plaintiff suffered loss of service, emotional distress, and economic harm.

## Count III – Rehabilitation Act § 504 & ADA Title II

55. Plaintiff incorporates ¶¶ 11–54 above.

56. Title II of the ADA (42 U.S.C. §§ 12131–34) and Section 504 of the

Rehabilitation Act (29 U.S.C. § 794(a)) prohibit public entities and recipients of

federal funds from discriminating against qualified individuals on the basis of

disability and require reasonable modifications to avoid discrimination.

57. To state a claim under section 504 of the Rehabilitation Act, Plaintiff alleges that:

    a. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act;

    b. Plaintiff is otherwise qualified to participate in and receive the Defendants' water and sewer services;

    c. Plaintiff was excluded from participation in, denied the benefits of, or otherwise discriminated against in Defendants' services by reason of his disability; and

    d. Defendants are recipients of federal financial assistance, including but not limited to federally funded or federally assisted programs and infrastructure.

58. To state a claim under Title II of the ADA, Plaintiff alleges that:

    a. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2);

    b.  Plaintiff was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in Defendants' water and sewer services, programs, or activities for which Defendants are a public entity is responsible; and

    c.  Such exclusion, denial, or discrimination was by reason of Plaintiff's disability.

(**Gaynor v. City of Wilson**, 501 F.3d 165, 174 (4th Cir. 2007)).

59. Plaintiff is a qualified individual with a documented medical condition requiring uninterrupted water service.

60. Defendants refused to make the reasonable modification of honoring his medical certificate—restoring service immediately upon receipt—despite knowledge of his disability and the medical need (¶¶ 15–18).  They instead threatened additional shutoffs and imposed unlawful fees.

61. These failures to accommodate or modify policies denied Plaintiff the benefits of continuous water and sewage service on the basis of his disability, in violation of § 504 and Title II.

62. As a direct result, Plaintiff suffered physical, emotional, and economic harm.


## Count IV – Fourth Amendment (42 U.S.C. § 1983)

63. Plaintiff incorporates ¶¶ 11–62 above.

19

64. The Fourth Amendment protects individuals from unreasonable searches and seizures of "persons, houses, papers, and effects," and requires a warrant supported by probable cause absent a recognized exception.

65. A warrantless intrusion onto private property to obtain information or effect a seizure is unreasonable per se unless justified by consent or exigent circumstances. (**Florida v. Jardines**, 569 U.S. 1, 7–11 (2013)).

66. On June 23, 2025, at approximately 11:33 AM, Defendants Eric Johnston— acting as a state actor—and a JSJWA/TVMA field worker Defendant Timothy Confair entered Plaintiff's private front yard without consent, exigency, or any warrant, for the purpose of shutting off essential water and sewage service (¶ 17,18).

67. This entry and the subsequent shut-off constituted a physical intrusion to obtain information or effect a seizure of property—namely, the water and sewage service lines—within the curtilage of Plaintiff's home.

68. No recognized Fourth Amendment exception applied: Plaintiff had not abandoned his property, no emergency justified warrantless entry (particularly after Plaintiff hand-delivered his medical certificate), and no statutory authority overrode the constitutional requirement.

69. As a direct and proximate result of this unreasonable search and seizure, Plaintiff suffered the deprivation of essential services, anxiety, and severe emotional distress.

70. Defendants are therefore liable under 42 U.S.C. § 1983 for violating Plaintiff's Fourth Amendment rights.

### Count V – Fifth Amendment Takings (42 U.S.C. § 1983)

71. Plaintiff incorporates ¶¶ 11–70 above

72. By terminating essential service without compensation, Defendants effected an uncompensated taking of Plaintiff's property interest, violating the Fifth Amendment's Takings Clause (Loretto v. Teleprompter Manhattan CATV, 458 U.S. 419).

73. The Fifth Amendment's Takings Clause prohibits the taking of private property for public use without just compensation.

74. By terminating essential water and sewage service, Defendants effected a per se physical taking, requiring just compensation (*Loretto v. Teleprompter Manhattan CATV*, 458 U.S. 419 (1982)), and a regulatory taking that went "too far" under the Penn Central multi-factor test (*Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)).

75. The seven-day deprivation also constituted a temporary physical invasion, compensable under the Takings Clause (*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987)), and the deprivation of water—a fundamental personal property right—falls squarely within personal-property protections (*Horne v. Department of Agriculture*, 576 U.S. 351 (2015)).

76. Defendants have refused to pay any compensation, entitling Plaintiff to just compensation under the Fifth Amendment.

### Count VI – Pennsylvania Constitutional Provisions as Sources of Federally Protected Rights (42 U.S.C. § 1983- Declaratory and injunctive Relief; Incorporated Through the Fourteenth Amendment)

77. Plaintiff incorporates by reference ¶¶ 11–76 of this complaint as if fully set forth herein.

78. Plaintiff alleges that the provisions of Pennsylvania Constitution's Declaration of Rights define, inform, and give substantive content to the **property and liberty interests** protected against deprivation by the **Fourth Amendment to the United States Constitution**, and are therefore actionable through **42. U.S.C. § 1983.**

**79. Article I, § I** of the Pennsylvania Constitution recognizes life, liberty, and the pursuit of happiness as inherent rights. Defendants' willful termination of

Plaintiffs water and sewer service during a physician-certified medical emergency deprived Plaintiff of a **fundamental property and liberty interest**, the contours of which are protected by the **Fourteenth Amendment's Due Process Clause.**

80. **Art. I § V** establishes that government is instituted for the common benefit, protection, and security of the people. Defendants' Actions- terminating essential services in defiance of statutory safeguards and a documented medical hardship- demonstrate **arbitrary government action** lacking a rational basis, actionable under the **Equal Protection and Due Process Clauses of the Fourteenth Amendment.**

81. **Art. I § X** (Protection from Unreasonable Seizure): Art. I § X protects against unreasonable searches and seizures and informs the scope of **Fourteenth Amendment protections.** Defendants' warrantless physical intrusion onto Plaintiffs curtilage to effectuate a water shutoff constituted and **unreasonable seizure of an essential property interest**, actionable under **42. U.S.C. § 1983.**

82. **Art. I § XI** (Right to Be Heard): Art. I § XI guarantees the right to be heard and access to legal remedies. Defendants' failure to provide the statutorily required mailed notice, opportunity to contest the bill, or any meaningful pre-

deprivation hearing deprived Plaintiff of **procedural due process** under the **Fourteenth Amendment**.

83. **Art. I § XVI** (Assembly & Petition): Art. I § XVI protects the right to petition government for redress of grievances. Defendants' escalation to police intimidation following Plaintiff's filing of affidavits, grievances, and court petitions constitutes **retaliation for protected activity**, actionable under the **First Amendment and 42 U.S.C. § 1983**

84. **Art. I § XXVI** (Environmental Rights): Art. I § XXVI recognizes the people's right to pure water and a healthful environment. Defendants' denial of access to clean water during a medical hardship further evidences the **fundamental nature of the property interest at stake**, reinforcing Plaintiff's **Due Process and Takings Clause claims** under the **Fifth and Fourteenth Amendments**.

85. Plaintiff does **NOT** assert independent causes of action for damages directly under the Pennsylvania Constitution. Rather, the Pennsylvania Constitutional provisions cited in this Count define and inform the **property, liberty, and dignity interests** protected against deprivation by the **Fourteenth Amendment to the United States Constitution,** and are pleaded as authoritative sources of law supporting Plaintiff's claims for **Declaratory and injunctive relief** and for relief under **42 U.S.C. §§ 1983 and 1988**.

24

86. To the extent Defendants contend that the Pennsylvania Constitutiion is
irrelevant to Plaintiff's federal claims, Plaiintiff alleges that Defendants'
conduct violated **clearly established constitutional norms**, supporting
liability, declaratory relief, injuctive relief, and attorney's fees under **42 U.S.C.
§ 1988.**

### Count VII – Civil Conspiracy (42 U.S.C. § 1985)

87. Plaintiff incorporates ¶¶ 11–86 above

88. Defendants conspired with law enforcement multiple times to
intimidate Plaintiff and chill his rights.

89. Defendants JSAJWA, TVMA, Eric Johnston, Timothy Confair and Does 1–5
entered into an agreement to deprive Plaintiff of his civil rights under color of
state law by:

    a. Ordering or directing Lycoming County Regional Police officers to
threaten and intimidate Plaintiff on June 25 and July 9, 2025, for the
purpose of chilling his right to petition and to equal protection; and

    b. Enlisting police to enforce unlawful shut-off and reconnection fees
despite the Court's injunction of June 30, 2025.

90. Defendants acted with the specific intent to prevent and did prevent Plaintiff
from the free exercise and equal protection of the laws, including his rights to

due process and to petition the government, because of and motivated by Plaintiff's status as a disabled veteran, a class historically subject to differential treatment and retaliation when asserting statutory and constitutional protections.

91. These acts taken in furtherance of a shared plan and mutual understanding between Defendants and law enforcement- constituted overt acts in furtherance of the conspiracy and caused Plaintiff to suffer fear, anxiety and impairment of his access to the courts essential public services, in violation of 42 U.S.C. § 1985(3) (see **Griffin v. Breckenridge**, 403 U.S. 88, 102–04 (1971)).

92. As a direct result of this **conspiracy,** Plaintiff has **incurred emotional distress,** legal fees, and other **damages** for which Defendants are **jointly and severally liable, entitling Plaintiff to compensatory relief and equitable relief as appropriate.**

## **Count VIII – Fraudulent Misrepresentation (Common Law)**

93. Plaintiff incorporates ¶¶ 11–92 above.

94. Under Pennsylvania law, to prevail on a claim for **fraudulent misrepresentation** a plaintiff must prove:

   a.  A representation;

   b.  Material to the transaction;

c.  Made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

d.  With the intent to induce the plaintiff to act;

e.  Justifiable reliance by the plaintiff; and

f.  Resulting damages to the plaintiff.  **(Allegheny Energy Supply Co. v. Wolf Run Mining Co.**, 860 A.2d 1286, 1293 (Pa. Super. 2004)).

95. Defendants made the following materially false representations with knowledge of their falsity or reckless disregard for the truth:

a.  That required shut-off notices had been mailed and posted when none were (¶ 13);

b.  That Plaintiff owed a valid balance and that his medical certificate did not stay termination (¶¶ 15–18);

c.  That no credits or prepayments existed on his account, despite internal records to the contrary (¶ 14); and

d.  That they had a valid, written, wet-ink contract or signature authorizing shutoff fees, when no such contract existed (¶¶ 14–26).

e.  These misrepresentations were made by Defendants Eric Johnston and Timothy Confair, acting as final policymakers for JSAJWA and TVMA, through oral statements, written notices, billing records, and communications to Plaintiff and to law enforcement, including statements made on or about June 11th June 20th-25th, and July 9th, 2025,

and in connection with Defendants' threatened and attempted shut-off actions.

96. Defendants intended Plaintiff to rely on these representations to coerce payment of disputed amounts and to refrain from judicial relief until after shut-off.

97. Plaintiff justifiably relied on Defendants' misrepresentations and omissions by refraining from immediate emergency court intervention reasonably believing statutory notice requirements had been satisfied, that his physician-certified medical hardship protection had been honored, and that Defendants were acting lawfully rather than in bad faith.

98. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered **economic damages**, including unlawful fees, emergency expenditures, and veterinary expenses of **$6,474.87**, as well as **severe emotional distress, anxiety, and physical harm**, including the **exacerbation of Plaintiff's service-connected disabilities**, all caused by the deprivation of essential water service during a documented medical hardship.

99. Defendants are liable for **common-law fraud** and must compensate Plaintiff for **all resulting damages**, including economic losses, emotional distress, and other compensable harms proven at trial.

## Count IX – Unjust Enrichment & Rescission

100.  Plaintiff incorporates ¶¶ 11–99 above

101.  Equity and Pennsylvania law require disgorgement of void shut off and reconnection fees and restitution of \$6,474.87 in veterinary expenses

102.  Under Pennsylvania law, a defendant is liable for unjust enrichment when:

    a.  It has received a benefit from the plaintiff;

    b.  It has accepted and retained that benefit; and

    c.  Equity and good conscience require restitution because the benefit was conferred under mistake, undue influence, or the performance of an illegal act.  (**Gristede's Foods, Inc. v. Unkechauge Nation**, 532 F. Supp. 2d 439, 460 (E.D. Pa. 2007)). This claim is pleaded **in the alternative** and applies **to the extent defendants contend that no enforceable written contract governs the disputed fees**.

103.  Here, Defendants received and retained:

    a.  Unlawful shut-off fees and reconnection fees charged to Plaintiff's account; and

    b.  Payments and credits taken or offset from Plaintiff's account **without proper notice, accounting, or contractual authorization**, including amounts applied toward unlawful shut-off and reconnection fees.

104. Defendants' retention of these fees was unjust because:

a.  The shut-offs were void for lack of the statutorily mandated ten-day notice and for violation of Plaintiff's medical-certificate rights.

b.  They ignored the Court's June 30, 2025, injunction; and

c.  Defendants failed to produce any valid, signed, written agreement or lawful authority authorizing the assessment or retention of such fees.

102.   Equity and good conscience require that Defendants disgorge all void shutoff and reconnection fees and restore Plaintiff's account balance, including veterinary expenses totaling $6,474.87.

103. As an alternative to disgorgement, Plaintiff seeks rescission of any purported agreement forming the basis for those fees and restitution of all amounts paid.

### Count X – Unfair Trade Practices (73 P.S. § 201-1 et seq.)

104. Plaintiff incorporates ¶¶ 11–103 above

105. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices" in the conduct of any trade or commerce.  (73 P.S. § 201-3). At all relevant times, Defendants acted in the conduct of trade or commerce by billing for utility services, assessing fees, collecting payments, and engaging in consumer transactions with Plaintiff.

106. To state a claim under the UTPCPL, a plaintiff must allege:

a. The defendant engaged in a deceptive or unfair practice.

b. The plaintiff justifiably relied on that practice; and

c. The plaintiff suffered an ascertainable loss as a result. **(Murphy v. Duquesne Univ. of the Holy Ghost,** 777 A.2d 418, 429 (Pa. 2001)).

107. Here, Defendants engaged in multiple deceptive or unfair practices, including:

d. Misrepresenting that proper notice had been mailed when no notice was ever sent (¶ 13);

e. Ignoring Plaintiff's timely billing-error disputes and medical-certificate accommodations (¶¶ 13–16);

f. Charging unlawful shut-off and reconnection fees in violation of state law and court order (¶¶ 16, 19); and

g. Attempting to coerce payment through threats of further shut-offs and police intimidation (¶¶ 19, 39).

108. These acts constitute deceptive conduct, false pretenses, misrepresentations, and unfair practices within the meaning of **73 P.S. § 201-2(4)(i), (v), (vii), and (xxi).**

109. Defendants' deceptive conduct was knowing, intentional, and undertaken in bad faith, and was not the result of mere negligence or mistake, but rather part of a systematic course of conduct designed to coerce payment, circumvent statutory protections, and disregard of Plaintiff's protected rights.

31

110. Defendants' conduct offends the public policy of the Commonwealth of Pennsylvania, which seeks to protect consumers-particularly medically vulnerable individuals from deceptive billing practices, unlawful shut-offs, and coercive collection tactics by entities engaged in essential public services.

111. Plaintiff justifiably relied on Defendants' representations that (i) required notices would be properly mailed, (ii) medical certifications would be honored, and (iii) Defendants would follow their own Rules and Regulations. In reasonable reliance on those representations, Plaintiff refrained from duplicative litigation and additional emergency filings until Defendants' misconduct forced him to file suit.

112. As a direct result of these unfair and deceptive practices, Plaintiff suffered an ascertainable loss in the form of void fees, veterinary expenses ($6,474.87), emotional distress, and attorneys' fees.

113. Under 73 P.S. § 201-9.2(a), Plaintiff is entitled to treble damages, attorneys' fees, and costs.

## **Count XI – Intentional Infliction of Emotional Distress**

114. Plaintiff incorporates ¶¶ 11–113 above.

115. To state a claim for IIED under Pennsylvania law, a plaintiff must allege:

a. the defendant's conduct was extreme and outrageous;

b. the defendant acted intentionally or recklessly;

c. the conduct caused emotional distress; and

d. the distress was severe. (*Hoy v. Angelone*, **720 A.2d 745, 754 (Pa. 1998)**).

116.  Here, Defendants' conduct was extreme and outrageous, including:

a. willfully shutting off essential water and sewage service during a medical

   emergency despite a valid medical certificate (¶¶ 15–18);

b. enlisting police officers to intimidate Plaintiff under threat of arrest or towing

(¶¶ 23);

c. conditioning restoration on in-person signing or full payment despite a court

   injunction (¶¶ 17–19); and

d. continuing to bill and threaten further shut-offs in knowing violation of state law

   and judicial order (¶¶ 18–25).

117.  Defendants had actual knowledge of Plaintiff's medical vulnerability and

   the severe risk of emotional and physical harm, as Plaintiff expressly notified

   defendants in writing through emails, billing-error disputes, and medical-

   certificate in person prior to shut-off. Despite this knowledge, Defendants

   willfully proceeded to terminate essential water and sewage services and

   enlisted police intimidation, conduct they knew was substantially certain to

   cause severe emotional distress and which was undertaken with reckless

   disregard for the consequences to Plaintiff's health and safety.

118.  Defendants acted intentionally or with reckless disregard for the probability
of causing emotional harm.

119.  As a direct result of these actions, Plaintiff suffered severe emotional
distress, including exacerbation of his service-connected conditions, Sleep
loss, anxiety, paranoia, and ongoing fear for his family's health and safety.

120.  Plaintiff's emotional distress was severe and debilitating, requiring medical
and psychological care.

121.  Defendants' outrageous conduct and reckless indifference entitle Plaintiff to
compensatory and punitive damages.

### Count XII – Breach of Fiduciary Duty (Common Law)

122.  Plaintiff incorporates ¶¶ 11–121 above.

123.  Under Pennsylvania law, a fiduciary relationship arises when one party
places trust and confidence in another who accepts that trust, as with utilities
holding and disbursing customer-funded trust assets. (***In re Estate of
Hoagland*, 749 A.2d 476, 480 (Pa. Super. 2000)).**

124.  JSAJWA, TVMA, Eric Johnston, Timothy Confair and Does 1–5 occupied a
fiduciary position by:

    a.  Collecting mandatory customer payments and holding them in trust for
provision of water and sewage services;

b. Obligating themselves to apply those funds only for lawful service and in accordance with statutory and regulatory mandates.

125. Defendants breached their fiduciary duties by:

a. Misrepresenting account balances and mailing practices, thereby diverting funds without proper accounting;

b. Refusing to conduct a forensic audit or produce account records upon demand;

c. Ignoring a valid medical certificate and court injunction, coercing Plaintiff into payment or agreement signing;

d. Charging and retaining unlawful shut-off and reconnection fees in violation of state law, Rules & Regulations, and judicial orders.

e. Defendants committed the foregoing breaches with actual knowledge of Plaintiff's medical vulnerability and the foreseeable risk of severe physical and emotional harm, as Plaintiff repeatedly notified Defendants in writing through billing-error disputes, emails, and medical certification prior to shut-off. Despite this knowledge, Defendants consciously disregarded their fiduciary obligations and proceeded with termination of essential services and coercive conduct, demonstrating deliberate indifference to Plaintiff's health, safety, and trust interests.

126.  Defendants' breaches involved misuse of entrusted funds and concealment of material accounting information, conduct that Pennsylvania courts recognize as classic fiduciary violations warranting disgorgement and equitable relief.

127.  Defendants acted with actual knowledge, conscious disregard, and bad faith in the performance of their fiduciary duties, having actual knowledge of Plaintiff's medical vulnerability and reliance interests, yet consciously disregarding those interests while exercising control over customer trust funds and essential services.

128.  As a direct and proximate result of these breaches, Plaintiff suffered financial losses, emotional distress, and loss of trust, entitling him to:

    a.  Disgorgement of all improperly collected fees;

    b.  Restitution of veterinary expenses ($6,474.87) and any additional trust fund misallocations.

## Count XIII – Municipal Liability for Failure to Train (42 U.S.C. § 1983)

129.  Plaintiff incorporates ¶¶ 11–128 above.

130.  Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality or municipal entity may be liable under

42 U.S.C. § 1983 when its official policy, practice, or custom causes a constitutional deprivation. Further, under **City of Canton v. Harris**, 489 U.S. 378, 388 (1989), a failure to train or supervise employees may, in itself, constitute municipal liability where that failure manifests deliberate indifference to the rights of persons with whom they interact.

131.  At all relevant times, Defendants maintained a policy, custom, or practice of failing to train employees on mandatory shut-off protections and disability accommodations, despite known, obvious and foreseeable risk of constitutional injury to customers, including medically vulnerable and disabled individuals such as Plaintiff.

132.  This failure to train Constitutes deliberate indifference because the need for training on shut-off protections, medical certificates, and disability accommodations was obvious, and the constitutional consequences of failing to provide such training were highly predictable and foreseeable.

133.  JSAJWA and TVMA failed to adequately train or supervise Manager Eric Johnston, Timothy Confair and Does 1–5 regarding:

   a.  Statutory and regulatory notice requirements for shut-off and termination procedures;

   b.  Medical-certificate accommodations under 52 Pa. Code §§ 56.113–.115 and 66 Pa.C.S. § 1406(f); and

c. Respect for court orders, constitutional rights—including the rights of persons with disabilities under the ADA (42 U.S.C. § 12132) and Rehabilitation Act (29 U.S.C. § 794(a))—and the Authority's own Rules & Regulations.

134.  This failure to train reflects a deliberate indifference to the constitutional and statutory rights of customers—particularly qualified individuals with disabilities such as Plaintiff, a permanently and totally disabled veteran—foreseeably resulting in the wrongful shut-off, refusal to restore service, and police intimidation.

135.  As a direct result of this policy of insufficient training and supervision, Plaintiff's <u>rights</u> were <u>violated</u>, and he <u>suffered damages</u>, for which JSAJWA TVMA are <u>liable</u> under § 1983.

## VII. PRAYER FOR RELIEF

136.  WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

**A. Declaratory Relief**

A declaration that Defendants' acts and omissions, taken under color of state law, violated Plaintiff's rights under:

the First and Fourteenth Amendments to the United States Constitution;

42 U.S.C. §§ 1983 and 1985 including conspiracy to interfere with civil rights;

the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.;

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and applicable

Pennsylvania statutory and constitutional law.

## B. Permanent Injunctive Relief

A permanent injunction enjoining Defendants, their officers, employees, agents,

contractors, and all persons acting in concert with them, from:

Terminating or threatening to terminate water or sewage service without strict

compliance with statutory notice requirements, medical-certificate protections, and

court orders;

Refusing to honor valid medical certifications or reasonable accommodations for

qualified individuals with disabilities;

Conditioning restoration of essential utility service on unlawful demands,

including payment of disputed balances, execution of documents, or unauthorized

fees;

Charging, enforcing, or attempting to collect shut-off or reconnection fees absent

lawful authority;

Using or enlisting law enforcement to intimidate, coerce, or retaliate against

individuals exercising protected rights or seeking judicial relief.

An order retaining jurisdiction to enforce compliance with any injunctive relief awarded.

## C. Equitable Relief

An order requiring Defendants to:

Conduct and disclose a full forensic accounting of Plaintiff's account, billing history, fees, and enforcement actions; and

Implement and enforce constitutionally compliant policies and training concerning medical emergencies, disability accommodations, notice requirements, and compliance with court-ordered restraints.

## D. Compensatory Damages

Compensatory damages in an amount to be proven at trial, including but not limited to:

economic losses;

improperly assessed or collected fees;

medical, psychological, and related health-care expenses;

out-of-pocket costs and household disruption;

emotional distress and loss of dignity arising from Defendants' unlawful conduct.

## E. Nominal Damages

Nominal damages for each violation of Plaintiff's constitutional and statutory rights.

## F. Punitive Damages

Punitive damages against the **individual Defendants**, in their **individual capacities**, in an amount sufficient to punish **willful**, **reckless**, or **callous disregard** of Plaintiff's federally protected rights and to deter similar misconduct.

## G. Statutory Enhancements

Treble damages, restitution, and all other relief authorized under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-9.2(a), where applicable.

## H. Disgorgement and Restitution

Disgorgement and restitution of all amounts improperly collected, wrongfully retained, or assessed in violation of law.

**I. Interest**

Pre-judgment and post-judgment interest on all monetary awards as permitted by law.

**J. Attorneys' Fees and Costs**

An award of reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, and any other applicable fee-shifting statute.

**K. Further Relief**

Such other and further legal or equitable relief as the Court deems just and proper.

**L. Jury Demand**

Plaintiff **demands** a trial by jury on all issues so triable.

## VIII. JURY DEMAND

137.   Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
/ s/ Dion Storm Holland
Dion Storm Holland, Pro Se

In Care of: 566 High Street, Jersey Shore,
Pennsylvania,17740
subarudion@gmail.com | (814) 574-9664
Dated: January 14th, 2026

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of January 2026, I caused a true and correct copy of the foregoing Second Amended Complaint to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(D), upon the following counsel of record:

Sean P. McDonough, Esq. (PA I.D. #47428)

Dougherty, Leventhal & Price, LLP

459 Wyoming Avenue

Kingston, PA 18704

E-mail: smcdonough@dlplaw.com


Michael J. Crocenzi, Esq. (PA I.D. #66255)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: mcrocenzi@barley.com


Sarah L. Doyle, Esq. (PA I.D. #321149)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In Care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com