IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION STORM HOLLAND | : |
| | : CIVIL NO.  4:25-CV-01323 |
| Plaintiff, | : |
| | : |
| vs. | : (JUDGE KELI M. NEARY) |
| | : |
| JERSEY SHORE AREA JOINT | : (MAG. JUDGE CARLSON) |
| WATER AUTHORITY, et al. | : |
| | : |
| Defendants: | : (ELECTRONICALLY FILED) |

**BRIEF OF DEFENDANTS JERSEY SHORE AREA JOINT WATER
AUTHORITY, ERIC S. JOHNSTON AND TIMOTHY CONFAIR IN
SUPPORT OF THEIR MOTION UNDER F.R.C.P. 12(b)(6) TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................... i-iv

TABLE OF CITATIONS .................................................... v-x

I.    PROCEDURAL HISTORY .................................................... 1

II.    STATEMENT OF FACTS .................................................... 2

    A.    ALLEGATA RELATED TO THE JUNE 23, 2025
    DISRUPTION IN SERVICE ........................................ 3

    B.    ALLEGATA RELATED TO THE JSAJWA'S
    CONDUCT SUBSEQUENT TO THE JUNE 30, 2025
    ORDER OF COURT.................................................... 4

III.    QUESTIONS PRESENTED .................................................... 6

    A.    WHETHER HOLLAND'S CONSTITUTIONAL
    CLAIMS RELATED TO THE JUNE 23, 2025
    SHUT-OFF SHOULD BE DISMISSED BECAUSE
    HOLLAND HAD ACTUAL NOTICE OF THE SHUT-
    OFF AND WAS AWARE OF AND AVAILED
    HIMSELF OF THE POST-NOTICE PROCEDURE
    TO CONTEST THE SHUT-OFF? .................................. 6

    B.    WHETHER THE CONSTITUTIONAL CLAIMS
    RELATED TO THE JSAJWA ACTIVITY AFTER
    THE JUNE 30, 2025 RESTORATION OF SERVICE
    MUST BE DISMISSED BECAUSE HOLLAND HAS
    NOT ALLEGED COGNIZABLE DEPRIVATION
    UNDER THE UNITED STATES CONSTITUTION? .... 6

i

C.      WHETHER HOLLAND FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY? ...................................... 6

D.      WHETHER HOLLAND FAILS TO STATE A CLAIM FOR RELIEF AS IT RELATES TO THE REMAINING FEDERAL STATUTORY CLAIMS, PENNSYLVANIA CONSTITUTIONAL CLAIMS AND PENNSYLVANIA COMMON LAW CLAIMS? ............................................ 7

E.      WHETHER ERIC JOHNSTON AND TIMOTHY CONFAIR ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO HOLLAND'S CONSTITUTIONAL CLAIMS BECAUSE HOLLAND CANNOT SHOW THAT THE TERMINATION OF HIS WATER SERVICE TRIGGERED BY NON-PAYMENT VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT?......................................... 7

IV.    LAW AND ARGUMENT ........................................... 7

A.      HOLLAND'S CONSTITUTIONAL CLAIMS RELATED TO THE JUNE 23, 2025 SHUT-OFF SHOULD BE DISMISSED BECAUSE HOLLAND HAD ACTUAL NOTICE OF THE SHUT-OFF AND WAS AWARE OF AND AVAILED HIMSELF TO THE POST-NOTICE PROCEDURE TO CONTEST THE SHUT-OFF............. 7

    1.    There Is No Violation of Holland's Procedural Due Process Rights................................................. 8

    2.    Holland Fails to State A Claim for a Fourteenth Amendment Equal Protection Violation.............. 12

    3.    Holland Has Not Suffered a Taking Under The Fifth Amendment By Virtue of the Disruption Of His Service on June 23, 2005......................... 15

B.    THE CONSTITUTIONAL CLAIMS RELATED TO
THE JSAJWA ACTIVITY AFTER THE JUNE 30, 2025
RESTORATION OF SERVICE MUST BE DISMISSED
BECAUSE HOLLAND HAS NOT ALLEGED A
COGNIZABLE DEPRIVATION UNDER THE
UNITED STATES CONSTITUTION............................    18

C.    HOLLAND FAILS TO STATE A CLAIM FOR
MUNICIPAL LIABILITY..............................................    21

D.    HOLLAND FAILS TO STATE A CLAIM FOR
RELIEF AS IT RELATES TO THE REMAINING
FEDERAL STATUTORY CLAIMS, PENNSYLVANIA
CONSTITUTIONAL CLAIMS AND PENNSYLVANIA
COMMON LAW CLAIMS..............................................    22

1.    Holland's Claims Under the Rehabilitation Act
and ADA Fail As a Matter of Law........................    22

2.    Holland Fails To State A Claim Under The
Pennsylvania Constitution ....................................    24

3.    Holland Fails To State A Claim For Civil
Conspiracy Under 42 U.S.C. §1985......................    25

4.    Holland's Claim of Fraudulent Misrepresentation
Against Johnston, Confair and JSAJWA Fails
As A Matter Of Law...............................................    26

a)    The Fraud Claim Against JSAJWA
Is Barred By the Political Subdivision
Tort Claims Act...........................................    27

b)    Holland Fails To State A Claim Against
Johnston and Confair for Fraudulent
Misrepresentation.....................................    28

iii

5.    Holland Fails To State A Claim For Unjust
Enrichment And Recision...................................    29

6.    Holland Fails To State A Claim Under The
Unfair Trade Practices Act.....................................    30

7.    Holland Fails To State A Claim For Intentional
Infliction Of Emotional Distress Against
Johnston, Confair and JSAJWA.............................    31

8.    Holland's Claim For Breach of Fiduciary
Duty Fails As A Matter Of Law..............................    33

E.    ERIC JOHNSTON AND TIMOTHY CONFAIR ARE
IS ENTITLED TO QUALIFIED IMMUNITY WITH
RESPECT TO HOLLAND'S CONSTITUTIONAL
CLAIMS BECAUSE HOLLAND CANNOT SHOW
THAT THE TERMINATION OF HIS WATER SERVICE
TRIGGERED BY NON-PAYMENT VIOLATED A
CLEARLY ESTABLISHED CONSTITUTIONAL
RIGHT...........................................................................    35

V.    CONCLUSION ......................................................................    39


CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(b)(2)


CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

## CASES

Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)......................... 8

Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,
488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1089) ...................... 13

Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 2008
WL3852256 (E.D. Pa. 2008) ................................................ 34

Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034,
97 L.Ed.2d 523 (1987)..................................................... 35

Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir. 1987) .......... 19, 20

Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074,
179 L.Ed.2d 1149 (2011) .................................................. 36, 38

Augustin v. City of Philadelphia, 897 F.3d 142 at 152 ....................... 17

Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ............................ 19

Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) ................. 36

Butler v. Upper Merion Township, 765 F.Supp.3d 441, 451
(E.D. Pa. 2025) .......................................................... 21

Carswell v. Borough of Homestead, 381 F.3d 235, 242
(3d Cir. 2004) .......................................................... 39

City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91,
109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) .......................... 21

City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259
(3d Cir. 1998)........................................................................ 3

Cnty of Sacramento v. Lewis, 523 U.S. 833, 845 n.7,
118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ........................................ 19

Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120,
112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ............................................ 19

Daniels v. Williams, 474 U.S. 327, 341, 106 S.Ct. 662,
88 L.Ed. 2d 662 (1986) ........................................................ 9

Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990)........ 20

Doe v. Cnty. of Ctr. Pa, 242 F.3d 437 (3d Cir. 2001) ....................... 35

El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768
(E.D. Pa. 2007) .................................................................... 11

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) ........... 25

Gen. Refractories Co. v. Liberty Mut. Ins. Co., 199 U.S. Dist.
LEXIS 18932, 1999 WL 1134530 (E.D. Pa. 1999)............................ 34

Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945,
2009 WL 5033966 (E.D. Pa. 2009)........................................... 34

Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006)................ 14

Hopson v. Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992)............. 20

Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998).......................... 31

In re American Continental/Lincoln Savings and Loan Securities
Litigation, 102 F.3d 1524, 1537 (9th Cir. 1996).................................... 3

*In re* Trs. Of Conneaut Lake Park, Inc., 855 F.3d 519,
526 (3d Cir. 2017) ................................................................. 16

James v. New Jersey State Police, 957 F.3d 165, 169 (3d Cir. 2020) .. 36

Jones v. City of Philadelphia, 890 A.2d 1188, 1213
(Pa. Commw. Ct.2006) ........................................................ 24

Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708,
164 L.Ed 2d 415 (2006)........................................................ 10

Keenheel v. Com., Pennsylvania Sec. Comm'n, 579 A.2d 1358, 1361
(Pa. Cmwlth. 1990) ............................................................. 29

Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470,
497, 107 S. Ct. 1232, 94 L.Ed.2d 472 (1987)...................................... 18

K.S.S. v. Montgomery Cty. Bd. Of Comm'rs., 871 F. Supp. 2d 389,
397-98 (E.D. Pa. 2012)........................................................... 9

Lackner v. Glosser, 892 A.2d 21,34 (Pa. Super. 2006)...................... 29

Leonard v. Owen J. Roberts Sch. Dist., No. 08-Cv-2016,
2009 U.S. Dist. LEXIS 51468, 2009 WL 603160, at *4
(E.D. Pa. Mar. 5, 2029) ........................................................ 9

Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 237, 125 S.Ct. 2074,
161 L.Ed.2d 876 (2005) ........................................................ 16

Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct. 2886,
120 L.Ed.2d 798 (1992) ........................................................ 15

Madar, 2021 U.S. Dist. LEXIS 100128, 2021 WL 2156362, at 8*...... 10

Mann v. Palmerton Area School District, 872 F.3d 165
(3d Cir. 2017)..................................................................... 21

vii

Maple Props., Inc. v. Twp. of Upper Providence,
151 F. App'x 174, 177 (3d Cir. 2005) .................................................. 9

Mulholland v. Gov't of Cty. Of Berks, No. 10-CV-5616, 2012 U.S.
Dist. LEXIS 43521, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29,
2012), aff'd, 706 F.3d 227 (3d Cir. 2013) ............................................ 9

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314,
70 S.Ct. 652, 94 L.Ed. 865 (1950).......................................................... 10

Municipal Authority of the Borough of West View v. PUC,
41 A.3d 929 (Pa. Cmwlth. Ct. 2012) .................................................. 11

Murr v. Wisconsin, 582 U.S. 383, 137 S.Ct. 1933, 1942,
198 L.Ed.2d 497 (2017) ........................................................................ 15

Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d Cir. 2022) ..... 15, 16, 17

Parsons Steel, Inc. V. First Alabama Bank, 474 U.S. 518,
88 L.Ed 2d 877, 106 S.Ct. 768 (1986) .................................................. 8

Penn Central Transporation Co. v. City of New York, 438 U.S. 104,
124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ......................................... 16

Pension Benefit Guar. Corp. v. White Consol. Indus.,
998 F.2d 1192, 1196 (3d Cir. 1993) .................................................... 3

Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.,
442 F. App'x 681, 687 (3d Cir. 2011) .................................................. 24

Puente v. Navy Fed. Credit Union, 2025 U.S. Dist. LEXIS 20229,
2025 WL 408677 (E.D. Pa. 2025) ........................................................ 34

Reese v. Pook & Pook, LLC, 158 F.Supp.3d 271, 298
(E.D. Pa. 2016) ...................................................................................... 33

Rogin v. Bensalem Township, 616 F.2d 680, 690 (3d Cir. 1980) ...... 17

Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999) .................... 35

Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007) ........................... 3

Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014) ................................ 3

Sioux City Bridge Co. V. Dakota County, 260 U.S. 441,
43 S.Ct. 190, 67 L.Ed. 340 (1923) ....................................... 13

Snyder v. Crusader Servicing Corp., 231 A.3d 20, 31
(Pa. Super. 2020) ................................................ 32

Spieth v. Bucks Cnty. Hous. Auth., 594 F. Supp. 2d 584, 591
(E.D. Pa. 2009) ...................................................... 22

Strathie v. Dep't of Transp., 716 F.2d 227, 229 (3d Cir. 1983)............ 22

Studli v. Children & Youth Families Central Reg'l Office,
346 F.App'x 804, 813 (3d Cir. 2009) ................................... 9

Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) .................... 19

Thomas v. Seaman, 451 Pa. 347, 350-51, 304 A.2d 134, 137 (1973). 28

Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 358
(E.D. Pa. 2007)...................................................... 28

United States v. One Toshiba Color Television, 213 F.3d 147, 155
(3d Cir. 2000)....................................................... 10

United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825,
828–29 (1983) ...................................................... 25

United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000) ........... 19

Village. Of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct.
1073, 145 L.Ed. 2d 1060 (2000) ........................................................ 13, 14

Wesby, 138 S.Ct. At 589)....................................................................... 36

Yenchi v. Ameriprise Fin., Inc., 639 Pa. 618, 161 A.3d 811,
819-21 (Pa. 2017) ................................................................................. 33, 34

Ziglar v. Abbasi, 582 U.S. 120, 137 S.Ct. 1843, 1866,
198 L.Ed.2d 290 (2017) ....................................................................... 36

**STATUES**

28 U.S.C. §1738................................................................................... 8

42 U.S.C. §1983................................................................................... 19, 20, 24

42 Pa.C.S.A. §8542 ............................................................................. 26, 27

42 U.S.C. §§12131-12134, Americans with Disabilities Act 1990..... 22, 23

42 Pa.C.S. §8550................................................................................. 27, 28

53 P.S. §3102.502(b)............................................................................ 38

Unfair Trade Practices and Consumer Protection Law,
73 P.S. §201-1, et seq ......................................................................... 31, 37

**OTHER AUTHORITIES**

U.S. Const. Amend. V ......................................................................... 15

U.S. Const. Amend. XIV, §1................................................................ 13

## I.    PROCEDURAL HISTORY

This action was originally filed in the Court of Common Pleas of Lycoming County on June 27, 2025 by Writ of Summons together with an Emergency Motion for Injunctive Relief.  A hearing was held to address that Emergency Motion on June 30, 2025.  In the Emergency Motion, Plaintiff Dion Storm Holland ("Holland") alleged that the Jersey Shore Area Joint Water Authority ("JSAJWA") acted unlawfully in discontinuing water service to his property for the non-payment of water service.  In an Order of June 30, 2025[1], the Court held that one of the statutory notice requirements preceding a water shut-off had not been met and directed that service be restored.  At the conclusion of the hearing, the service was restored.

On July 10, 2025, a Motion for Contempt was filed by Holland against JSAJWA and newly named Defendant Tiadaghton Municipal Sewer Authority ("TMSA").  Subsequent to that filing, the case was removed to this Court on July 21, 2025 (Doc. 1).  On August 1, 2025, Plaintiff filed his First Amended Complaint ("FAC", Doc. 10).  On August 4, 2025, Plaintiff filed a Request for Issuance of Summons against newly added Defendants Eric Johnston and John Doe Defendants 1-5 (Doc. 13).  Summons were issued on August 6, 2025 and

---

[1] The Order of Judge William P. Carlucci, dated June 30, 2025, is appended to this brief as Exhibit "A", and to Holland's SAC (Doc. 72) as Exhibit "T".

undersigned counsel entered his appearance on behalf of Defendant Johnston on August 14, 2025 (Doc. 17). Defendants JSAJWA and Johnston on August 14, 2025, and TVMSA on August 15, 2025, filed motions to dismiss the FAC. The parties filed their respective briefs to these motions to dismiss.

On September 2, 2025, Plaintiff filed a Notice with the Court identifying Timothy Confair as one of the John Doe Defendants (Doc. 34). On January 7, 2026, this Honorable Court issued an Order (Doc. 69) that Plaintiff should move to amend his complaint and name Mr. Confair as a Defendant. On January 14, 2026, Plaintiff did file a Motion to Amend his Complaint (Doc. 70) and on January 21, 2026, this Honorable Court issued an Order granting Plaintiff's Motion and Plaintiff's Second Amended Complaint (Doc. 72) (hereinafter, "SAC") became the operative pleading in this matter.

On February 4, 2026, Moving JSAJWA Defendants[2] filed a Motion to Dismiss Plaintiff's SAC. This brief is filed in support of said Motion to Dismiss the SAC in its entirety.

## II.    STATEMENT OF FACTS

JSAJWA maintains that the most efficient way to address Mr. Holland's claims is to evaluate the conduct of the Authority in the interruption of Holland's water service which occurred on June 23, 2025 (Doc. 72 at ¶18) as one event and

---

[2] JSAJWA Defendants collectively refers to Defendants JSAJWA, Johnston and Confair.

the conduct of the Authority after his water service was restored at the conclusion of the hearing on June 30, 2025, which was conducted in the Court of Common Pleas of Lycoming County before Judge William P. Carlucci as a second event. Analysis of the allegata of Holland's SAC, together with the Exhibits appended to it, along with Judge Carlucci's Order[3] in which he explains the rationale for his ruling, dictate the dismissal of the SAC in its entirety.

### A.    ALLEGATA RELATED TO THE JUNE 23, 2025 DISRUPTION IN SERVICE

There is no dispute that Mr. Holland had a past due balance for his water service at the time that the JSAJWA discontinued his service on June 23, 2025 (See, generally Doc. 72).  Holland maintains that he took issue with the amount of his past due bill (Doc. 72 at ¶19a).  Moreover, and critical to the analysis of

---

[3] It is well-established that courts are permitted to consider matters of which they may take judicial notice at the 12(b)(6) motion stage, including records and reports of administrative bodies and publically available records and transcripts from judicial proceedings and related or underlying cases which have a direct relation to the matters at issue.  *In re* American Continental/Lincoln Savings and Loan Securities Litigation, 102 F.3d 1524, 1537 (9th Cir. 1996).

It is well-settled in this Circuit that matters of public record may be considered without converting a motion to dismiss into one for summary judgment.  Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014). Official court dockets and information contained in court files are matters of public record of which the court can take judicial notice.  *See* City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). [I]n considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record.  *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007).  The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Holland's constitutional claims, Holland acknowledges in Exhibits A-D of the SAC (Doc. 72), that he had been placed on actual notice of the discontinuation of his service. After the interruption of his service Mr. Holland instituted suit in the Court of Common Pleas of Lycoming County by Writ of Summons together with an Emergency Motion for Injunctive Relief on June 27, 2025 (Doc. 72 at ¶24). On June 30, 2025, a hearing was held in which Judge William P. Carlucci issued an order indicating proper notice was not provided to Mr. Holland and that his service was to be restored within 24 hours (Exhibit "A"). Mr. Holland acknowledges that "service was restored that day before arriving home from the injunction hearing" (Doc. 72 at ¶25).

### B. ALLEGATA RELATED TO THE JSAJWA'S CONDUCT SUBSEQUENT TO THE JUNE 30, 2025 ORDER OF COURT.

Holland alleges that he was handed in person a second "Ten Day Notice of Shut-off" on the same day as the aforementioned court hearing and that he received by both regular and certified mail the same notice on July 1, 2025 (Doc. 72 at ¶¶21-22). Holland interpreted this activity as conduct being undertaken as incident to a "second shut-off attempt" of his service (Doc. 72 at ¶¶21-22). It is undisputed that after the restoration of his service on June 30, 2025, there has been no subsequent interruption of Mr. Holland's service notwithstanding his failure to submit to a payment plan or make payment on any portion of his outstanding

4

arrears.

The great majority of Plaintiff's SAC remains the same from its prior iteration (the AC) with the following exceptions:

- the addition of Timothy Confair as a defendant;

- Defendants Johnston and Confair being sued individually and as employees of JSAJWA and Johnston as the Manager of JSAJWA;

- Paragraphs 15-16 in which plaintiff alleges that the "Contract for Succession on Services" executed at the time of the real estate closing does not constitute a valid service contract;

- Paragraph 17, alleging a Monell type claim for failure to adequately train, supervise or discipline their managers, and agents regarding mandatory shut-off procedures, statutory notice requirements, medical-certificate protections and disability accommodations all of which resulted in the unlawful termination of Plaintiff's water and sewage services;

- Paragraph 23, alleging that the appearance of local police officers at his home at the request of Defendants while Plaintiff was preparing court filings hampered his right to petition/access the courts;

- Paragraph 43, alleging Defendants' failure to provide lawful protest procedures as required by 52 Pa. Code Sections 56.114-115;

- Paragraph 95e, that Defendants Johnston and Confair acting as final policy makers for JSAJWA made misrepresentation through oral statements, written notices, billing records and communications to plaintiff and law enforcement;

- Paragraph 97, that plaintiff relied on those misrepresentations by refraining from immediate emergency court intervention;

- Paragraph 98, that as a result of this conduct, plaintiff suffered economic damages including veterinary expenses and emotional

distress, anxiety, and physical harm, including an exacerbation of his service connected disabilities; and

•    Paragraph 109, that Defendants' deceptive conduct was undertaken in bad faith and willfully proceeded to terminate his essential water and sewage services and knew that this would cause severe and emotional distress to Plaintiff (Paragraph 117).

These are Holland's allegations which are material to the disposition of JSAJWA's motion to dismiss the SAC pursuant to F.R.C.P. 12(b)(6).

## III.    STATEMENT OF THE QUESTIONS PRESENTED

**A.    WHETHER HOLLAND'S CONSTITUTIONAL CLAIMS RELATED TO THE JUNE 23, 2025 SHUT-OFF SHOULD BE DISMISSED BECAUSE HOLLAND HAD ACTUAL NOTICE OF THE SHUT-OFF AND WAS AWARE OF AND AVAILED HIMSELF OF THE POST-NOTICE PROCEDURE TO CONTEST THE SHUT-OFF?**

(Suggested Answer: In the Affirmative)

**B.    WHETHER THE CONSTITUTIONAL CLAIMS RELATED TO THE JSAJWA ACTIVITY AFTER THE JUNE 30, 2025 RESTORATION OF SERVICE MUST BE DISMISSED BECAUSE HOLLAND HAS NOT ALLEGED COGNIZABLE DEPRIVATION UNDER THE UNITED STATES CONSTITUTION?**

(Suggested Answer: In the Affirmative)

**C.    WHETHER HOLLAND FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY?**

(Suggested Answer: In the Affirmative)

D.      **WHETHER HOLLAND FAILS TO STATE A CLAIM
        FOR RELIEF AS IT RELATES TO THE REMAINING
        FEDERAL STATUTORY CLAIMS, PENNSYLVANIA
        CONSTITUTIONAL CLAIMS AND PENNSYLVANIA
        COMMON LAW CLAIMS?**

        (Suggested Answer: In the Affirmative)

E.      **WHETHER ERIC JOHNSTON AND TIMOTHY
        CONFAIR ARE ENTITLED TO QUALIFIED
        IMMUNITY WITH RESPECT TO HOLLAND'S
        CONSTITUTIONAL CLAIMS BECAUSE
        HOLLAND CANNOT SHOW THAT THE
        TERMINATION OF HIS WATER SERVICE
        TRIGGERED BY NON-PAYMENT VIOLATED
        A CLEARLY ESTABLISHED CONSTITUTIONAL
        RIGHT?**

        (Suggested Answer: In the Affirmative)

## IV.   LAW AND ARGUMENT

A.      **HOLLAND'S CONSTITUTIONAL CLAIMS RELATED
        TO THE JUNE 23, 2025 SHUT-OFF SHOULD BE
        DISMISSED BECAUSE HOLLAND HAD ACTUAL
        NOTICE OF THE SHUT-OFF AND WAS AWARE OF
        AND AVAILED HIMSELF TO THE POST-NOTICE
        PROCEDURE TO CONTEST THE SHUT-OFF.**

Holland's SAC asserts constitutional violations under the Fourteenth

Amendment with respect to the Equal Protection and Procedural Due Process

clauses as well as violations of the First, Fourth and Fifth Amendments.  As it

relates to the actual disruption of his water service from June 23, 2025 to June 30,

2025, these claims fail.

1.    **There Is No Violation of Holland's Procedural Due Process Rights.**

Several admissions in Holland's SAC dictate dismissal of the procedural

due process claim associated with the June 23, 2025 shut-off.

- Holland acknowledges he was aware of a posted door hanger placed more than ten days prior to shut-off of his water service advising him that it would occur (Doc. 72 at ¶13);

- Holland availed himself to the procedure (albeit unsuccessfully) put in place to avoid the shut-off (Doc. 72 at ¶19a);

- Holland acknowledged that Judge Carlucci determined that his submission to the Authority on June 11, 2025, was not effective to suspend the interruption of his service because he did not satisfy the statutory requirements of the Pennsylvania Water Services Act.[4]

These factual admissions and the June 30, 2025 Court proceeding operate to

defeat Holland's procedural due process claims. "At the core of procedural due

process jurisprudence is the right to advance notice of significant deprivations of

liberty or property and to a meaningful opportunity to be heard." Abbott v.

Latshaw, 164 F.3d 141, 146 (3d Cir. 1998). To establish a prima facie case of a

procedural due process violation, a plaintiff must show: (1) there has been a

---

[4] 53 P.S. §3102.502(b). This Court can and should consider Judge Carlucci's June 30, 2025 ruling dispositive as it relates to his determination that Holland's notice to the Authority was not effective to suspend the disruption in service. The Full Faith and Credit Act requires federal courts to give state judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. §1738. As the Supreme Court stated in Parsons Steel, Inc. V. First Alabama Bank, 474 U.S. 518, 88 L.Ed 2d 877, 106 S.Ct. 768 (1986), a federal court generally must give deference to a state court judgment, granting "the same preclusive effect to a state court judgment as another court of that State would give." Id. at 523.

deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See* Studli v. Children & Youth Families Central Reg'l Office, 346 F.App'x 804, 813 (3d Cir. 2009); Mulholland v. Gov't of Cty. Of Berks, No. 10-CV-5616, 2012 U.S. Dist. LEXIS 43521, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013).  Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *See* Leonard v. Owen J. Roberts Sch. Dist., No. 08-CV-2016, 2009 U.S. Dist. LEXIS 51468, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2029) (citing Daniels v. Williams, 474 U.S. 327, 341, 106 S.Ct. 662, 88 L.Ed. 2d 662 (1986) (Stevens, J., concurring)).  In other words, "the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." K.S.S. v. Montgomery Cty. Bd. Of Comm'rs., 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012).  "The process that is 'due' in a given situation necessarily differs based on the particular circumstances." Maple Props., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 177 (3d Cir. 2005) (citations omitted).

The Eastern District recently explained:

In the context of property deprivations, the United States

9

Supreme Court "has never employed an actual notice standard in its jurisprudence.  Rather, its focus has always been on the procedures in place to effect notice." United States v. One Toshiba Color Television, 213 F.3d 147, 155 (3d Cir. 2000).  Thus, "[d]ue process does not require that a property owner receive actual notice before the government may take his property."  Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed 2d 415 (2006).  It mandates only that notice be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also* Flowers, 547 U.S. at 220 (holding that notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent.") The Supreme Court has explained that if, for example, notice by certified mail is returned unclaimed, the municipality must "take additional reasonable steps to attempt to provide notice to the property owners before selling his property, if it is practicable to do so." Flowers, 547 U.S. at 225.  The Court recognized that such steps could include resending the notice by regular mail, addressing otherwise undeliverable mail to occupant, or posting notice on the front door.  Flowers, 547 U.S. at 236-37.

Madar, 2021 U.S. Dist. LEXIS 100128, 2021 WL 2156362, at 8*.

The case law cited above establishes that the application of procedural due process concepts to a particular set of facts require a common sense approach to ensuring that a property deprivation does not occur without notice to the person suffering the deprivation.  Here, immediately upon becoming aware of the ten day notice posting at his home on June 11, 2025, Mr. Holland authored a detailed

10

notice to the JSAJWA setting forth his own "legal notices" and a set of demands to the Authority including a demand for a forensic audit and the termination of any further efforts to either terminate his service or attempt to collect the delinquent balance on his account (Doc. 72 at Ex. B).  While Mr. Holland was not satisfied with the Authority's response to this demand, his conduct clearly demonstrates that he was on notice of the Authority's activity and apprised of what steps should be taken to protect his interests.

On these undisputed facts, the water service interruption running from June 23, 2025 to June 30, 2025, did not violate Holland's procedural due process rights.[5] [6]

---

[5]  JSAJWA acknowledges that Judge Carlucci ordered the restoration of Holland's service because, while the property was posted and it was undisputed that Holland had notice of the impending shut-off, the Authority failed to comply with also mailing notice to Holland.  This fact, however, does not operate to defeat the procedural due process claim.  *See*, El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768 (E.D. Pa. 2007):

> Most significantly, Plaintiffs admit they had **actual notice** of the pending demolitions when they visited the properties in March 2005 and saw the markings on the buildings.  Those markings actually alerted them to the existence of a problem with their properties sufficient for them to contact the City.  They were then told of the pending demolitions and advised of the action they could take – filing a court injunction – to stop the City from proceeding.  Rather than pursuing their judicial remedies, they did nothing other than send a letter.  As the Plaintiff had **actual notice** prior to the demolitions, they have no **procedural due process claim** based on inadequate notice procedures. [emphasis in the original].

El Malik, *supra.*

[6]  Holland also invokes 2 Pa. Code §56.114, his reliance is misplaced.  This provision governs utilities under the jurisdiction of the PUC.  The PUC lacks regulatory control over services provided by municipal water authorities.  Municipal Authority of the Borough of West View v. PUC, 41 A.3d 929 (Pa. Cmwlth Ct. 2012).

### 2.    Holland Fails to State A Claim for a Fourteenth Amendment Equal Protection Violation.

Holland alleges that he was treated differently because "[d]efendants honored shut-off disputes and medical accommodations for other customers but intentionally refused to honor Plaintiff's valid medical certificate ...." (Doc. 72 at ¶52).  In support of this argument, Holland relies upon the termination notice (Doc. 72, Ex. A) which provides:

MEDICAL EMERGENCY NOTICE

If you, or anyone presently and normally living in your home is seriously ill, we will restore your water service during such illness provided you:

(a)    Have a physician certify by phone or in writing that such illness exists and that it may be aggravated if your service is not restored; and

(b)    Make some equitable arrangements to pay the company your past due and current bills for service.

(c)    Contact us by calling the telephone number listed below.

| | |
|---|---|
| Jersey Shore Area Joint Water Authority | Tiadaghton Municipal Sewer Authority |
| Office: 1111 Bardo Avenue, Jersey Shore, PA 17740 | P.O. Box 5039, 290 Rice Road |
| Telephone: (570) 398-1443 | Telephone: (570) 398-2366 |

This notification provides that the certifying physician confirm the existence of an illness and that some arrangements be made to deal with past due balances. Here, Mr. Holland has been transparent in his SAC and accompanying exhibits that he had no intention of arranging any type of payment plan in order to avoid a shut-off.  As such, he did not satisfy the plain language of the Medical Emergency Notice.

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. Holland's Equal Protection argument in this case advances what is called a "class of one" claim, an assertion that the plaintiff has been treated differently than all others in some invidious fashion. In this regard, "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village. Of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 2d 1060 (2000) (citing Sioux City Bridge Co. V. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1089)). However, the legal standard to be applied when examining such a claim in the context of a land use dispute is an exacting one, and has been defined by the Third Circuit in the following terms:

> The Supreme Court has held that a "class of one" can attack intentionally different treatment if it is "irrational and wholly arbitrary." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (internal citations omitted) (per curiam) .... The "irrational and wholly arbitrary" standard is doubtless difficult for a plaintiff to meet in a zoning dispute, id. at 565-66, 120 S.Ct. 1073, 1074 (Breyer, J., concurring), and we do not view an equal protection claim as a device

13

to dilute the stringent requirements needed to show a
substantive due process violation.

Eichenlaub, 385 F.3d at 296-87.

In order to sustain a "class of one" equal protection claim: "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the different in treatment. Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006).

Here, Holland has failed to plausibly meet the exacting standard of articulating an equal protection violation because 1) he did not comply with the terms of the MEN; and 2) he has failed to identify even a single customer whose service was not turned off in circumstances such as his own.

Finally, and most importantly, notwithstanding Mr. Holland's demands to the contrary, the JSAJWA is entitled to a reasonable expectation for some payment in exchange for the provision of water service. Under these circumstances, the enforcement of payment obligations can hardly be attacked as constituting "irrational and wholly arbitrary" governmental conduct. See, Village of Willowbrook, supra, 528 U.S. at 564.

Accordingly, the Equal Protection Claim fails as a matter of law.

### 3. Holland Has Not Suffered a Taking Under The Fifth Amendment By Virtue of the Disruption Of His Service on June 23, 2005

In Count V of the SAC, Holland alleges that the termination of his water service constituted a "per se physical taking" and a "regulatory taking" (Doc. 72 at ¶74).

The Takings Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, provides that private property cannot be taken for public use without compensation.  Murr v. Wisconsin, 582 U.S. 383, 137 S.Ct. 1933, 1942, 198 L.Ed.2d 497 (2017) (citing U.S. Const. Amend. V).  A *per se* regulatory taking occurs when a regulation renders the property "essentially idle."  Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d Cir. 2022) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)).

Holland argues that the JSAJWA's interruption in water service constitutes an improper taking.  Yet, he concedes that he has refused to pay any portion of his delinquent bills or enter a payment plan until he is provided a forensic audit.  He admits that he stopped paying his water bills because he contends he owes less. After he stopped paying, the Authority turned the services off.

There has been no *per se* taking.  The JSAJWA has not physically taken Holland's property and has not deprived him of all economically viable uses of the property.

A partial regulatory taking may occur even when the owner is not deprived of all economically beneficial use.  If he asserts that he has been improperly deprived of a legally cognizable property interest by government action, he may make a claim for a partial taking.  Nekrilov, 45 F.4th at 669 ("A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest.")(citing In re Trs. Of Conneaut Lake Park, Inc., 855 F.3d 519, 526 (3d Cir. 2017)).  A less than total deprivation limiting the property's use may amount to a compensable taking under the test established in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).  The *Penn Central* factors are: (1) the economic impact of the regulation on the value of the property; (2) the extent to which the regulation has interfered with distinct investment backed expectations; and (3) the character of the government action.  Nekrilov, 45 F.4th at 672 (quoting Murr, 137 S.Ct. At 1943).

This analysis begins with the character of the government action - disconnecting service and charging fees.  When considering this factor, courts determine if the government action is closer to a compensable "classic taking," *id*. at 677 (citing Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 237, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), or to "some public program adjusting the benefits and burdens of economic life to promote the common good," *id*. (citing Penn Cent.

Transp. Co., 428 U.S. at 124).

The Authority's enforcement of its fee schedule is non-compensable government action that advances the public interest.  The government has a legitimate interest in collecting debts to stabilize municipal finances, and the public has a strong interest in a viable water distribution.  *See* Augustin v. City of Philadelphia, 897 F.3d 142 at 152 (discussing government interest in collecting municipal lien debts and public interest in provision of gas utilities).  Courts typically uphold government regulations that "appl[y] generally to a broad class of properties."  Nekrilov, 45 F.4th at 677 (quoting Rogin v. Bensalem Township, 616 F.2d 680, 690 (3d Cir. 1980)).  The water rates and charges set by the Authority are universally imposed on consumers throughout its service area.  The Authority has not demanded Holland pay charges any different than others in the service area pay.  The Authority's termination policies do not restrict or burden Holland any more than they do other water users.

The government action here is akin to non-compensable government regulation that regulates economic life to promote the common good.  The reason he has no water services is not because the Authority singled him out.  It treated him as it treats any other property owner who refuses to pay for the services.  Allowing him to avoid paying for services would shift the cost of maintaining water service to other property owners.

17

In considering the economic impact factor, the Court must "compare the value that has been taken from the property with the value that remains in the property." Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 497, 107 S. Ct. 1232, 94 L.Ed.2d 472 (1987). The disconnection of services and charging fees do not amount to a taking. There has been no diminution in the property's value.

Because the JSAJWA was exercising its legitimate interest in providing the regulating service and because payment for water service was reasonably expected, there was no diminished investment-backed expectation supporting a finding of a taking. Therefore, because there has been no taking, the JSAJWA is entitled to dismissal on Holland's Fifth Amendment Claim.[7]

### B. THE CONSTITUTIONAL CLAIMS RELATED TO THE JSAJWA ACTIVITY AFTER THE JUNE 30, 2025 RESTORATION OF SERVICE MUST BE DISMISSED BECAUSE HOLLAND HAS NOT ALLEGED A COGNIZABLE DEPRIVATION UNDER THE UNITED STATES CONSTITUTION.

Holland readily concedes that by the time he returned home from the June 30, 2025 hearing, his water service had been restored and there has been no interruption in service since (Doc. 72). His allegations related to post June 30, 2025 JSAJWA conduct are grounded in his suspicion that certain activity was

---

[7] In the introduction to the SAC, Holland asserts rights under the First Amendment as well. However, he does not articulate any First Amendment claim in the body of the SAC.

undertaken in anticipation of a future shut-off.  This suspicion on Holland's part

does not support any of the constitutional claims going forward under 42 U.S.C.

§1983.  Liability under §1983 requires injury, *see* Suppan v. Dadonna, 203 F.3d

228, 235 (3d Cir. 2000) ("Section 1983 is a tort statute.  A tort statute requires

injury."  (Quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).  Here,

Holland does not claim that his service has been interrupted since June 30, 2025.

Therefore, any activity by the JSAJWA without more– cannot constitute the basis

of a constitutional violation.

Simply stated, an attempted violation of Holland's constitutional rights is

not remediable under §1983, as no actual deprivation of his federally protected

rights has occurred since the restoration of his service.  *See* Collins v. City of

Harker Heights, Tex., 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)

("Section 1983 provides a remedy against 'any person' who, under color of state

law, deprives another of rights protected by the Constitution")(citing 42 U.S.C.

§1983); *cf.* Cnty of Sacramento v. Lewis, 523 U.S. 833, 845 n.7, 118 S.Ct. 1708,

140 L.Ed.2d 1043 (1998) (attempted seizures of person are beyond scope of the

Fourth Amendment); United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000)

("[I]f the police make a show of authority and the suspect does not submit, there is

no seizure.); *see also*, *e.g.*, Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir.

1987) ("[T]he mere *attempt* to deprive a person of his [constitutional] rights is not,

19

under usual circumstances, actionable under section 1983) (emphasis in the

original).  It may be that Holland thinks that the JSAJWA staff should be liable

because they planned, wanted or conspired to deprive him of water service.  If so,

§1983 does not provide a remedy.  A §1983 claim is viable only if there has been

an actual deprivation of a constitutional right.  Andree, 818 F.2d 1306, 1311 (7th

Cir. 1987); *see also* Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir.

1990).  Accordingly, as Holland did not suffer an interruption in service after June

30, 2025, he was not deprived of any constitutional right.

Holland also asserts that he was threatened with the towing of his vehicle

(Doc. 72 at ¶27).  While he does not specify the exact nature of the threats, mere

verbal threats do not provide the basis for a viable §1983 claim.  *See* Hopson v.

Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992).

For these reasons, all of Holland's allegations related to activity after the

restoration of his water service fail to state a claim under 42 U.S.C. §1983.

### C.    HOLLAND FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY.

At the outset, JSAJWA maintains that there can be no municipal liability

because Holland has not asserted a facially plausible underlying constitutional

violation.  Mann v. Palmerton Area School District, 872 F.3d 165 (3d Cir. 2017).

In the event this Court holds to the contrary, the municipal liability claim should

still be dismissed.

To establish *Monell* liability, a plaintiff must allege that: "(1) he possessed a constitutional right of which he was deprived; (2) the municipality being sued had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiffs constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" Butler v. Upper Merion Twp, 765 F.Supp3d at 451 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).  Holland's SAC fails to identify any municipal policy or the moving force behind the alleged constitutional violation.  While Holland alleges that JSAJWA failed to follow various state regulatory protections, he points only to his own dissatisfaction with the decisions associated with his account.  Holland has not articulated a single other instance wherein other customers had their service terminated unlawfully.  As such, the *Monell* claim fails.

### D.    HOLLAND FAILS TO STATE A CLAIM FOR RELIEF AS IT RELATES TO THE REMAINING FEDERAL STATUTORY CLAIMS, PENNSYLVANIA CONSTITUTIONAL CLAIMS AND PENNSYLVANIA COMMON LAW CLAIMS.[8]

#### 1.    Holland's Claims Under the Rehabilitation Act and

---

[8]Johnston, Confair and JSAJWA wish to note that with respect to this section of their brief, they rely liberally and gratefully on the arguments advanced by TVMSA in its brief in support of TVMSA's Motion to Dismiss the SAC (Doc. 79).

**ADA Fail As a Matter of Law.**

"No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." Strathie v. Dep't of Transp., 716 F.2d 227, 229 (3d Cir. 1983). "In order to make out a case under section 504 of the Rehabilitation Act[9], a plaintiff must prove (1) that he is a "handicapped individual" under the Act, (2) that he is "otherwise qualified" for the position sought, (3) that he was excluded from the position sought solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Id*. Plaintiff has failed to set forth any facts establishing that Defendants received federal financial assistance. As such, Plaintiff's Rehabilitation Act claim should be dismissed.

"Under Title II of the ADA[10] a plaintiff must establish that 1) he or she has a disability; 2) he or she is otherwise qualified; and 3) he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." Spieth v. Bucks Cnty. Hous. Auth., 594 F. Supp. 2d 584, 591 (E.D. Pa. 2009). Here, Plaintiff does not allege that his water shut off was a result "solely because of [his]

---

[9] 29 U.S.C. §794, Rehabilitation Act of 1973.

[10] 42 U.S.C. §§12131-12134, Americans With Disabilities Act of 1990.

disability." *Id.* Instead, he indicates that his water was shut off despite being disabled. *See*, SAC, ¶ 60-61. This distinction is important because it indicates that the Defendants did not act with discriminatory intent.

JSAJWA concedes that the provision of water services fits within the broad definition of a public entity program under Title II of the ADA, 42 U.S.C. §12132. Counsel's research,[11] has failed to identify a single case within the Third Circuit's three district courts or the Court of Appeals wherein the ADA was invoked to challenge a water shut-off for non-payment. Defendants submit this is the case because Holland was not denied water service; the SAC establishes that water service was initially interrupted because of non-payment. To the extent that Holland is asserting that he was discriminated against because the JSAJWA failed to honor his medical emergency notification (MEN), this Court may take judicial notice of the fact that the state trial court order of June 30, 2025, held categorically that Holland failed to effectively invoke the protections of that procedure (Exhibit A to this brief). Holland's allegations, taken as a whole, d not move his SAC to the "plausibility" threshold that would warrant allowing his Title II ADA claim to proceed.

---

[11] Counsel represents to this Court that in his research on this point he utilized the AI assisted search tool of Westlaw Edge and also performed a traditional search on the Westlaw Edge platform employing a variety of search terms and phrases.

### 2. Holland Fails To State A Claim Under The Pennsylvania Constitution.

Plaintiff avers that Defendants' actions deprived him of his rights under Article I of the Constitution of the Commonwealth of Pennsylvania. However, no private right of action exists under Article I of the Pennsylvania Constitution, unlike the right of action provided by federal law at 42 U.S.C. § 1983. Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011)(citing Jones v. City of Philadelphia, 890 A.2d 1188, 1213 (Pa. Commw. Ct.2006).

"There is no state statute similar to § 1983, that … provides for a general right to sue for a constitutional violation." Jones, 890 A.2d 1188, 1213. While Article I provides rights, there must be an underlying cause of action available to a claimant in order to seek the remedies afforded by Article I.

"No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter Sch., 442 F. App'x 681, 687. Plaintiff claims that violations of Pennsylvania's Constitution afford a right of action pursuant to 42 U.S.C.A. § 1983. However, this is incorrect.

As such, Plaintiff's claims under the Constitution of the Commonwealth of Pennsylvania fail as legally insufficient and should be dismissed

### 3.    Holland Fails To State A Claim For Civil Conspiracy Under 42 U.S.C. §1985.

Plaintiff claims that the Defendants conspired with law enforcement to chill Plaintiff's right to petition and access the courts in violation of 42 U.S.C. § 1985.

Section 1985(3) "creates no rights." <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 376 (1979). Rather, "[i]t is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." <i>Id</i>.

In other words, it "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" <u>Farber v. City of Paterson</u>, 440 F.3d 131, 134 (3d Cir. 2006) (quoting § 1985(3)).

To state a claim under § 1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." <u>Farber</u>, 440 F.3d at 134 (quoting <u>United Bhd. of</u>

Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983)).

Here, Plaintiff sets forth no facts that support his assertion that he was prevented from the free exercise of his rights to due process, to petition the court, or equal protection. To the contrary, Plaintiff was able to immediately access the court, as he filed his Complaint within five days of his water being shut off and was granted a preliminary injunction within three days of filing his Complaint. He also baldly asserts that he was targeted for being a disabled veteran, but offers no facts to support this statement.

As such, Plaintiff's claims of conspiracy pursuant to §1985 should be dismissed for legal insufficiency.

> **4.    Holland's Claim of Fraudulent Misrepresentation Against Johnston and JSAJWA Fails As A Matter Of Law.**
>
> **a)    The Fraud Claim Against JSAJWA Is Barred By the Political Subdivision Tort Claims Act.**

Pennsylvania provides statutory exceptions to government immunity in tort suits.  Specifically, 42 Pa.C.S.A. §8542 states that a "local agency shall be liable for damages on account of injury to persons or property within the limits of" Subchapter C, Chapter 85, Title 42 if both of two conditions specified in section 8542(a) are satisfied, and if the injury occurs as a result of the act that fits within one of eight statutorily created categories of exceptions to governmental

immunity, which categories are described in section 8542(b).  Defendant City is a

"local agency", *See* 42 Pa. C.S.A. §8501.

Holland's fraudulent misrepresentation claim against JSAJWA in County

VIII cannot escape government immunity through one of the eight statutory

waivers of governmental immunity created by 42 Pa.C.S.A. §8542.  Specifically,

the second of the two mandatory conditions established by section 8542(a) is that

the injury upon which the claim is based must have been "caused by the negligent

acts of the local agency or an employee thereof acting within the scope of his

office or duties...." 42 Pa.C.S.A.§8542(a)(2).

Section 8542(a)(2) expressly provides that "negligent acts" does not include

"acts or conduct which constitutes ... actual fraud." *Id*. Accordingly, Holland's

claim of fraudulent misrepresentation in County VIII against JSAJWA is barred by

governmental immunity.

> **b)     Holland Fails To State A Claim Against Johnston and Confair for Fraudulent Misrepresentation.**

As for Johnston, his immunity is governed by Sections 8545-8550 of the

Act.  Employees of a local agency are generally afforded immunity from suit to the

same extent as the agency itself when the plaintiff's injury was "caused by acts of

the employee which are within the scope of his office or duties... ." *See* 42 Pa.C.S.

§8545.  Section 8550 provides an exception to this general grant of immunity

where the act constitutes "a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. §8550. Or, in other words, "an employee is immune from personal liability for negligence, but generally will remain liable for his or her intentional torts." Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 358 (E.D. Pa. 2007). Accord 42 Pa.C.S. §§8545-50.

To establish a claim for fraud, a plaintiff must show (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker to induce the recipient thereby; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the misrepresentation. Thomas v. Seaman, 451 Pa. 347, 350-51, 304 A.2d 134, 137 (1973). Nothing in the SAC points to evidence which would establish a fraudulent misrepresentation by Johnston or Confair upon which Holland relied to his detriment. Simply stated, the allegata of the FAC do not satisfy the elements of the cause of action. Johnston and Confair posted a notice based upon the Authority's calculation of what was owed on the account. Holland responded to the enforcement action by instituting suit in the Court of Common Pleas of Lycoming County. He clearly did not rely on the alleged misrepresentations to his detriment; rather, he exercised his lawful right to challenge it. As a result, this claim fails.

### 5.    Holland Fails To State A Claim For Unjust Enrichment And Recision.

"The elements of unjust enrichment are 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Lackner v. Glosser, 892 A.2d 21,34 (Pa. Super. 2006).

Municipal Authorities are permitted by law to establish reasonable rules and regulations. 53 Pa.C.S.A. § 5607(d)(17). The rules and regulations of JSAJWA are lawfully adopted rules and regulations of the JSAJWA,which Plaintiff concedes and relies upon in his allegations that the rules were violated. *See*, SAC, ¶ 37, 39-41, 44, and Exhibit F.

The rules permit the Authority to charge penalties and fees associated with water shutoff. *(See*, SAC Ex. F). As such, it is not "unconscionable" for JSAJWA to charge and ultimately retain these fees for water shutoff and reconnection. Had Plaintiff paid his bill in a timely manner, the fees would not have been incurred.

With regard to his claim for veterinary bills, Plaintiff does not establish that the Defendants received some benefit in exchange for his payment of those fees. As such, Plaintiff's claim for unjust enrichment should be dismissed.

Further, "[t]he purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract." Keenheel v. Com., Pennsylvania Sec. Comm'n, 579 A.2d 1358,

29

1361 (Pa. Cmwlth. 1990). "One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract." *Id*. It would be impossible for Plaintiff to return the water and sewer services he received. As such, recision is not a proper remedy and should be dismissed.

### 6. Holland Fails To State A Claim Under The Unfair Trade Practices Act.

Holland claims that Defendants violated the UTPCL[12] by engaging in deceptive practices. However, the UTPCL does not apply to political subdivision agencies such as JSAJWA. Meyer v. Cmty. Coll. of Beaver Cnty., 93 A.3d 806, 815 (Pa. 2014).

Therefore, Holland's claims under the UTPCL and demand for treble damages and attorney's fees are legally insufficient and should be dismissed.

### 7. Holland Fails To State A Claim For Intentional Infliction Of Emotional Distress Against Johnston, Confair and JSAJWA.

JSAJWA is immune from tort claims such as a claim of Intentional Infliction of Emotional Distress (IIED) pursuant to the Political Subdivision Tort Claims Act. 42 Pa.C.S.A. § 8541. There is no exception to the Political Subdivision Tort Claims Act that applies to this claim. However, even if an

---

[12] Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq.

exception existed, "[t]o prove intentional infliction of emotional distress, Holland must set forth facts so extreme and outrageous that the conduct described must 'go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998).

Here, Holland generically asserts that Defendants shut off water and sewer service "during a medical emergency," "enlisting police officers to intimidate Plaintiff under threat of arrest or towing," "conditioning restoration on an in-person signing or full payment despite a court injunction," and "continuing to bill and threaten further shut-offs in knowing violation of state law and judicial order." See, Amended Complaint.

Preliminarily, Defendants' rules for service reasonably require payment of bills in exchange for water and sewer service. This is not outrageous or extreme. As such, conditioning restoration of service on full payment does not rise to the level of intentional infliction of emotional distress.

Further, the Court Order dated June 30, 2025 (SAC at Ext T) indicates that Plaintiff failed to produce evidence that his claim of a just defense for non-payment was not sufficient to serve as a bona fide dispute consistent with 53 Pa.C.S. § 3102.502. In fact, the Order states that water service may be discontinued if the statutory process is followed by Defendants. As such,

31

Holland's claim that continued threats of shutoff were in violation of state law and court order is meritless.

Additionally, Plaintiff provides no detail regarding what the medical emergency was, or why shutting off water and sewer was conduct was "beyond all possible bounds of decency." He further fails to provide any context for his interactions with the police officers, other than they "intimidated" him. This falls far short of the conduct contemplated by the Pennsylvania Supreme Court in <u>Hoy</u>, particularly considering that Plaintiff admits he owes payment for water services and was aware that non-payment could result in water shut-off.

As such, Holland's claim for IIED should be dismissed for legal insufficiency.

### 8.    Holland's Claim For Breach of Fiduciary Duty Fails As A Matter Of Law.

Plaintiff claims that the Defendants breached their fiduciary duty to Plaintiff.

"To prevail on [a] breach of fiduciary duty claims, [Plaintiff is] required to prove the following elements: the existence of a fiduciary relationship between Plaintiff and [Defendants], that [Defendant] negligently or intentionally failed to act in good faith and solely for [Plaintiff]'s benefit, and that [Plaintiff] suffered an injury caused by [Defendants'] breach of … fiduciary duty." <u>Snyder v. Crusader</u>

Servicing Corp., 231 A.3d 20, 31 (Pa. Super. 2020).

For the reasons outlined in preceding arguments, Holland's claim on this Count against JSAJWA is barred by the Political Subdivision Tort Claims Act.

Holland also fails to state a claim for breach of a fiduciary duty against Johnston and Confair. In order to allege a breach of fiduciary duty, Holland must assert that a "fiduciary or confidential relationship existed between themselves and [d]efendants." Reese v. Pook & Pook, LLC, 158 F.Supp.3d 271, 298 (E.D. Pa. 2016) (internal citations omitted). After a plaintiff adequately pleads that such a relationship exists, a plaintiff must show that (1) the defendants negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which they are employed; (2) plaintiffs suffered injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries. Id. "Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." Id. (internal citations omitted).

In the case of Yenchi v. Ameriprise Fin., Inc., 639 Pa. 618, 161 A.3d 811, 819-21 (Pa. 2017), the Pennsylvania Supreme Court did not recognize the existence of a therapist-patient or even doctor-patient relationship as evidence of a

fiduciary relationship. The Court in <u>Yenchi</u> specifically uses the word "deal" to contextualize the fiduciary relationship. *Id*. Breach of fiduciary duty claims usually arise within the context of a business transaction, where a duty is created through a financial relationship, the benefit of which is some sort of exchange of management or monies or services related to business or personal affairs management. *See, e.g.*, <u>Puente v. Navy Fed. Credit Union</u>, 2025 U.S. Dist. LEXIS 20229, 2025 WL 408677 (E.D. Pa. 2025); <u>Gen. Refractories Co. v. Liberty Mut. Ins. Co.</u>, 199 U.S. Dist. LEXIS 18932, 1999 WL 1134530 (E.D. Pa. 1999); <u>Alpart v. Gen. Land Partners, Inc.</u>, 574 F.Supp.2d 491, 2008 WL3852256 (E.D. Pa. 2008); <u>Health Robotics, LLC v. Bennett</u>, 2009 U.S. Dist. LEXIS 119945, 2009 WL 5033966 (E.D. Pa. 2009).

Johnston's counsel is unable to locate a case where a fiduciary or confidential relationship, for breach of fiduciary duty purposes, existed between parties similar to those in the present case. Considering the guidance of the Supreme Court, the cases in this Circuit regarding fiduciary duty, and the lack of other cases indicating otherwise, the Court should find that there is no fiduciary duty or confidential duty within the context of a Breach of Fiduciary claim that exists in the present case. Holland's claim for breach of fiduciary duty should be dismissed.

## E. ERIC JOHNSTON AND TIMOTHY CONFAIR ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO HOLLAND'S CONSTITUTIONAL CLAIMS BECAUSE HOLLAND CANNOT SHOW THAT THE TERMINATION OF HIS WATER SERVICE TRIGGERED BY NON-PAYMENT VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

Johnston and Confair are entitled to qualified immunity for their actions leading up to the June 23, 2025 shut-off as well as all of Holland's allegations relating to their post June 30, 2025 conduct.

The Third Circuit has articulated a three-part framework to assess whether a municipal official is entitled to qualified immunity. First, a plaintiff must allege a violation of a statutory or constitutional right. Second, the right at issue must have been clearly established at the time of the alleged misconduct. And third, a reasonable official in the defendant's position would have understood that the challenged conduct violated that right. Doe v. Cnty. of Ctr. Pa, 242 F.3d 437 (3d Cir. 2001) (citing Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999)). The latter two prongs demand an "objective legal reasonableness" inquiry of an official's action, assessed considering legal rules that were "clearly established" at the time the officials took the action. *Id*. (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Throughout the inquiry, the officials' subjective intent is irrelevant. Anderson, 483 U.S. 635 at 639.

"[I]n most cases, a plaintiff must show that a right is clearly established because 'the violative nature of [the] particular conduct [was] clearly established.'" <u>James v. N.J. State Police</u>, 957 F.3d 165 at 169 (3d Cir. 2020) (quoting <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 137 S.Ct. 1843, 1866, 198 L.Ed.2d 290 (2017) (quoting <u>Mullenix v. Luna</u>, 577 U.S. 7, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015))). In other words, "'settled law' ... must 'squarely govern []' the specific facts at issue." *Id*. (quoting <u>Wesby</u>, 138 S.Ct. At 590 and <u>Kisela v. Hughes</u>, – U.S. –, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018)). This standard can be satisfied by identifying a case where an officer acting under similar circumstances was held to have violated the constitutional provision at issue. <u>James</u>, 957 F.3d at 169-70 (quoting <u>White v. Puly</u>, 137 S.Ct. 548, 552 (2017).

In this setting "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *Id*. (quoting <u>Bland v. City of Newark</u>, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted)); *accord* <u>Wesby</u>, 138 S.Ct. At 589-90 ("To be clearly established, a legal principle must ... [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]"). A case directly on point is not required to show a right is clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741, 131 S.Ct. 2074, 179

L.Ed.2d 1149 (2011).

Turning to the facts of this case, Johnston, as manager of JSAJWA, is responsible for ensuring that customers pay their bills and take appropriate action when delinquencies are not satisfied. Admittedly, while a ten day notice was not mailed to Holland prior to June 23, he has readily acknowledged that he was aware of the situation by receiving the notification on his property and that he took steps to avoid the shut-off by providing a medical certification and demanding a forensic audit (Doc. 72 at Ex. A-D). However, as has been noted, Judge Carlucci has made a merits determination (Exhibit "A") that Holland's notice did not satisfy the relevant provisions of the Water Services Act[13] and, accordingly, this Court should adopt that determination as it relates to the qualified immunity analysis.

Most importantly, even assuming that Johnston erred in disconnecting the service on June 23, 2025 the second prong of the qualified immunity analysis requires that Holland identify precedent that holds that a constitutional violation has occurred in a factually analogous scenario.

---

[13] 53 P.S. §3102.502(b)(2) provides as follows:

(2) If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of the claim and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been judicially determined.

Johnston and Confair submit that Holland will be unable to identify any U.S. Supreme Court cases that recognize under similar facts that someone engaging in suspending water or utility services for nonpayment violates constitutional rights. Similarly, there does not exist a robust collection from our federal courts of appeal that would put Johnston and Confair on notice that this suspension in service would violate constitutional rights.

Holland will be unable to identify any Supreme Court case that recognizes under similar facts and circumstances that suspending services for non-payment of bills when the customer is disputing the charges violates constitutional rights. Similarly, he will not be able to identify a robust collection of cases from the federal courts of appeals that support such a proposition. Thus, Mr. Holland has failed to identify a robust consensus of precedent predicated on substantially similar facts and circumstances that gave every reasonable governmental official notice that proceeding with the shut-off would constitute a violation of his constitutional rights.

Finally, on these facts which are not in dispute, Johnston and Confair's conduct was objectively reasonable.

Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743, 131, S.Ct. 2074, 179 L.Ed.2d 1149 (2011). And even

where a clearly established constitutional right has been violated, if the official's mistake as to what the law requires was reasonable, then qualified immunity shields the officer from liability. <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 242 (3d Cir. 2004). Applied in this manner, the doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft</u>, 563 U.S. at 743, 131 S.Ct. 2074 (quoting <u>Malley</u>, 475 U.S. at 341, 106 S.Ct. 1092). Here, assuming the previous deficiencies in Holland's case can somehow be overlooked, Holland has done nothing more than allege that Johnston and Confair made a reasonable mistake about the scope of the law as it related to the notice to which he was entitled under applicable law. Consequently, Johnston and Confair are entitled to qualified immunity.

## V.    CONCLUSION

Based upon the foregoing, Plaintiff's SAC should be dismissed in its entirety.

Respectfully submitted:

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

By:    <u>s/Sean P. McDonough</u>
Sean P. McDonough, Esquire
Attorney for Defendants Jersey Shore Area
Jt. Water Authority, Johnston & Confair
PA ID# 47428
459 Wyoming Avenue
Kingston, PA 18704

Phone (570) 347-1011 or 570-288-1427
Fax (570) 347-7028 or 570-288-7099
smcdonough@dlplaw.com

## CERTIFICATE OF COMPLIANCE WITH
## L.R. 7.8(b)(2)[14]

I, Sean P. McDonough, Esquire, Attorney for Defendants Jersey Shore Area

Joint Water Authority, Eric Johnston and Timothy Confair, hereby certify that the

foregoing brief complies with Fed.R.Civ.P. 11 in that the brief does not exceed 40

pages in length.

Date: March 4, 2026                          S/Sean P. McDonough_____
                                             Sean P. McDonough, Esquire
                                             Attorney for Defendants Jersey Shore
                                             Area Jt. Water Authority, Johnston &
                                             Confair

---

[14] On February 4, 2026, Moving Defendants filed a motion to file a brief in excess of 5,000 words.  On February 20, 2026, the Court issued an order allowing Defendants to file a brief no longer than 40 pages in length.

## CERTIFICATE OF SERVICE

I, SEAN P. McDONOUGH, ESQUIRE, hereby certify that on the 4th

day of March, 2026, I served the foregoing Jersey Shore Defendants' Brief in

Support of their Motion to Dismiss Plaintiff's Second Amended Complaint upon

the persons indicated below as follows:

Via first class mail, postage prepaid and email transmission

Dion Storm Holland
566 High Street
Jersey Shore, PA 17740
subarudion@gmail.com
(Plaintiff- pro se)

Via electronic filing

Michael J. Crocenzi, Esquire
Sarah L. Doyle, Esquire
100 East Market Street
York, PA 17401
mcrocenzi@barley.com
sdoyle@barley.com
(Counsel for Defendant Tiadaghton Mun. Sewer Authority)

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

_____

SEAN P. McDONOUGH, ESQUIRE
Attorney for Defendants Jersey Shore Area Jt.
Water Authority, Johnston & Confair