# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DION STORM HOLLAND, | : | |
| Plaintiff, | : | Civil Action No. 4:25-CV-01323 |
| | : | |
| v. | : | The Honorable Keli M. Neary |
| | : | (JUDGE) |
| JERSEY SHORE AREA | : | (MAG. JUDGE CARLSON) |
| JOINT WATER | : | |
| AUTHORITY, | : | RESPONSE IN OPPOSITION TO |
| TIADAGHTON VALLEY | : | DEFENDANTS' JSAJWA MOTION |
| MUNICIPAL AUTHORITY, | : | TO DISMISS THE SECOND AMENDED |
| ERIC S. JOHNSTON, | : | COMPLAINT |
| TIMOTHY CONFAIR, JOHN | | |
| DOE 1-5 in their individual | : | |
| capacities, | : | |
| Defendants. | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO JERSEY SHORE AREA JOINT WATER AUTHORITY DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Respectfully submitted,

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com

1

## **TABLE OF CONTENTS**

I. Procedural History and Posture ............................................. 7

II. Response to Defendants' Statement of Facts ............................... 7-8

II. A. June 23 disruption in service ......................................... 8

II. B. Post–June 30 conduct .................................................. 9

III. Defendants' "Questions Presented" Improperly Assume Disputed Facts

and Over-Narrow the Rights at Issue ......................................... 9-12

IV. Law and Argument ......................................................... 12

A. Count I — Procedural Due Process ......................................... 12

B. Count II — Plaintiff Plausibly States an Equal Protection Claim ......... 16-19

C. Count V — Plaintiff's Takings Claim Should Not Be Dismissed at the

Pleading Stage ............................................................. 19-22

D. The Constitutional Claims Related to Post–June 30 Conduct

Should Not Be Dismissed .................................................... 22-24

E. Plaintiff Plausibly States a Municipal Liability / Failure-to-Train

Claim ...................................................................... 24-27

F. Count III — Plaintiff Plausibly States Claims Under Title II of the ADA

and, at Minimum, Plausibly Pleads or Should Be Granted Leave to Clarify

the Rehabilitation Act Theory ................................................ 28-31

G. Count VI — Pennsylvania Constitution: Defendants Attack a Claim

Plaintiff Did Not Actually Plead ............................................ 31-32

H. Count VII — Plaintiff Plausibly States a § 1985 Conspiracy Claim ....... 32-34

I. Count VIII — Fraudulent Misrepresentation ............................... 34-38

The Fraud Claim Against JSAJWA Should Not Be Dismissed With

Prejudice .................................................................. 34-36

Plaintiff Plausibly States a Fraudulent Misrepresentation Claim Against

Johnston and Confair ....................................................... 36-38

J. Count IX — Plaintiff Plausibly States Claims for Unjust Enrichment and

Alternative Rescission ...................................................... 38-40

K. Count X — Plaintiff Plausibly States a UTPCPL Claim, or at Minimum

Should Be Granted Leave to Reframe It ....................................... 40-42

L. Count XI — Plaintiff Plausibly States an Intentional Infliction of

Emotional Distress Claim ................................................... 42-44

M. Count XII — Plaintiff Adequately Pleads a Fiduciary-Duty Theory, or at

Minimum Should Be Granted Leave to Reframe It ............................. 44-46

N. Johnston and Confair Are Not Entitled to Qualified Immunity, and

JSAJWA Cannot Invoke It at All ............................................. 46-50

V. Conclusion ............................................................. 50-51

## TABLE OF AUTHORITIES

Cases

DeVlieger v. City of Warren, No. 1:24-cv-159

(W.D. Pa. July 11, 2025) ...................................................... 13

Eichenlaub v. Twp. of Indiana, 385 F.3d 274 (3d Cir. 2004) .................. 18

El Malik v. City of Philadelphia, No. CIV. A. 06-1708,

2007 WL 984455 (E.D. Pa. Mar. 26, 2007) .................................... 15

Hope v. Pelzer, 536 U.S. 730 (2002) ......................................... 47

Johnson v. Jones, 515 U.S. 304 (1995) ....................................... 49

Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992) ......................... 21

Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978)..12, 13, 48, 50

Meyer v. Cmty. Coll. of Beaver Cnty., 93 A.3d 806 (Pa. 2014) ............... 40

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) ..............11, 25, 26, 27

Murr v. Wisconsin, 582 U.S. 383 (2017) ...................................... 21

Nekrilov v. City of Jersey City, 45 F.4th 662 (3d Cir. 2022) ............... 21

Owen v. City of Independence, 445 U.S. 622 (1980) .......................... 46

Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104 (1978) ......... 19, 21

Reese v. Pook & Pook, LLC, 158 F. Supp. 3d 271 (E.D. Pa. 2016) ......... 45, 46

Yenchi v. Ameriprise Fin., Inc., 161 A.3d 811 (Pa. 2017) ............... 45, 46

Statutes

42 U.S.C. § 1983 ......................................... 22, 23, 31, 32, 46

42 U.S.C. § 1985 ......................................... 32, 33

Regulations

28 C.F.R. § 35.130 ....................................... 30

Rules

Fed. R. Civ. P. 12(b)(6) ................................ 12

Fed. R. Civ. P. 9(b) .................................... 38

Constitutional Provisions

U.S. Const. amend. I .................................... 23–24

U.S. Const. amend. XIV ................................. 12, 31–32

## I. Procedural History and Posture

Defendants' procedural timeline is largely undisputed, but it is notable for what Defendants concede and how Defendants frame the dispute. Defendants characterize Plaintiff's state-court emergency filing as challenging a discontinuation of water service "for the non-payment of water service," yet the operative pleading alleges more than a billing dispute, including statutory notice defects, medical-hardship protections, refusal to restore upon notice, and post-restoration enforcement conduct. Defendants also acknowledge that in the June 30, 2025 Order, the state court held that a statutory notice requirement preceding shutoff had not been met and directed restoration, which occurred at the conclusion of the hearing. That concession is material because Defendants later attempt to reframe the same events as constitutionally adequate as a matter of law.

Defendants' procedural narrative also foreshadows the central defect in their motion: they seek to use the June 30 state proceeding as a springboard for dismissal of Plaintiff's federal claims at the Rule 12 stage. Whatever weight may ultimately be given to the existence of the state proceedings, they do not authorize this Court to accept Defendants' characterization of disputed facts or to convert a pleading-stage motion into a merits determination.

## II. Response to Defendants' Statement of Facts

Defendants' "Statement of Facts" is argumentative and incomplete. Defendants ask the Court to divide the case into two isolated "events" and assert that the SAC, its exhibits, and Judge Carlucci's order "dictate the dismissal of the SAC in its entirety." That framing is not a neutral statement of facts; it is Defendants' merits argument. At Rule 12, the Court must evaluate whether the SAC plausibly states claims when its allegations are accepted as true, not whether Defendants' preferred segmentation makes dismissal easier.

Defendants' reliance on judicial-notice and public-record authorities does not permit the Court to adopt Defendants' characterization of contested facts or to treat a preliminary state-court order as dispositive of Plaintiff's federal constitutional and statutory claims. At most, those authorities permit the Court to consider the existence of public records and judicial filings; they do not authorize the Court to resolve factual disputes in Defendants' favor at the pleading stage.

## II. A. June 23 disruption in service

Defendants reduce the June 23 shutoff to three propositions: past due balance, actual notice, and restoration after the hearing. That framing omits the pleaded defects and protections that make the SAC plausible. Defendants themselves acknowledge that Judge Carlucci found proper notice was not provided and ordered restoration within 24 hours. Thus, even on Defendants' own account, the

June 23 shutoff was not preceded by full compliance with required procedures. Defendants cannot simultaneously concede a notice defect warranting restoration and argue that "actual notice" defeats Plaintiff's claims as a matter of law at Rule 12.

## II. B. Post–June 30 conduct

Defendants' own factual summary confirms that the SAC alleges more than a hypothetical future shutoff. Defendants acknowledge allegations that Plaintiff was handed a second ten-day notice the same day as the restoration hearing, that local police appeared at Defendants' request while Plaintiff was preparing court filings, that Plaintiff alleges failures in training and supervision regarding shutoff procedures and disability protections, and that Plaintiff alleges reliance, damages, and bad-faith conduct by Johnston and Confair. Defendants' assertion that there was no later interruption of service does not dispose of these pleaded allegations. At the pleading stage, those allegations support a plausible theory of coercive post-restoration enforcement and related constitutional and statutory injury.

## III. Defendants' "Questions Presented" Improperly Assume Disputed Facts and Over-Narrow the Rights at Issue

Defendants' "Questions Presented" are not neutral statements of the issues before the Court. Instead, they embed Defendants preferred factual narrative—especially "actual notice," "non-payment," and the absence of any cognizable post-restoration injury—directly into the questions themselves and then supply a "Suggested Answer: In the Affirmative" for each.

That is not the Rule 12 posture. At this stage, the Court must evaluate whether the SAC plausibly states claims when Plaintiff's allegations are accepted as true and reasonable inferences are drawn in Plaintiff's favor.

Defendants' first question asks whether all constitutional claims related to the June 23 shutoff should be dismissed because Plaintiff had "actual notice" and "availed himself" of post-notice procedures.

That framing assumes the very issue in dispute: whether the process provided was constitutionally adequate and lawfully administered. It also ignores Defendants' own concession elsewhere in the brief that the June 30 state-court order required restoration because a statutory notice requirement had not been met.

Defendants' second question asks whether all constitutional claims related to JSAJWA's activity after June 30 must be dismissed because Plaintiff has not alleged a "cognizable deprivation."

But that framing silently defines "deprivation" as only a second completed shutoff and ignores the SAC's allegations—summarized by Defendants themselves—of police-related interference, petition/access-to-courts harm, misrepresentations, reliance, and related damages arising from post-restoration conduct.

Defendants' third and fourth questions similarly assume their own merits conclusions. They ask whether Plaintiff fails to state a Monell claim and whether Plaintiff fails to state any of the remaining federal statutory, Pennsylvania constitutional, or Pennsylvania common-law claims, but those formulations simply collapse disputed facts and distinct pleading standards into broad dismissal labels.

Claim-by-claim analysis is required; dismissal by grouping is not.

Finally, Defendants' qualified-immunity question is framed around whether Johnston and Confair are immune because Plaintiff "cannot show that the termination of his water service triggered by non-payment violated a clearly established constitutional right."

That question bakes in Defendants' disputed characterization of the case as a simple non-payment shutoff and artificially narrows the right at issue. Plaintiff alleges far more: defective notice, medical-hardship protections, refusal to restore

after notice, and coercive post-restoration conduct. Qualified immunity cannot be granted on the pleadings based on Defendants' preferred version of contested facts.

For those reasons, Defendants' "Questions Presented" should be recognized for what they are: argumentative restatements of Defendants' merits position, not neutral Rule 12 issues. Because Defendants' "Questions Presented" embed disputed facts and over-narrow the rights at issue, the Court should reject Defendants' suggested answers and evaluate each claim under the SAC's allegations and the Rule 12(b)(6) standard.

## IV. Law and Argument

### A. Count I — Procedural Due Process

Count I plausibly alleges a violation of the Fourteenth Amendment's Due Process Clause. The protected interest is Plaintiff's continued access to essential water service, and the constitutional question is whether Defendants deprived Plaintiff of that interest without constitutionally adequate pre-deprivation notice and a meaningful opportunity to present his objections to officials empowered to correct error. See *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1 (1978).

JSAJWA's procedural due process argument fails because it conflates "actual notice" with constitutionally adequate process and asks the Court to resolve

disputed facts in Defendants' favor at Rule 12. Defendants argue that Plaintiff's June 11 response to the posted notice proves both notice and an adequate opportunity to protect his interests, and they further argue that the June 30 state-court proceeding defeats Count I. But the SAC alleges that Plaintiff's June 11 and July 2 disputes were ignored, that no proper mailed ten-day notice was provided before the June 23 shutoff, and that lawful protest procedures were not afforded before termination—that is, Plaintiff was denied any meaningful pre-deprivation opportunity to present his billing, hardship, and related objections before the shutoff occurred. Defendants also acknowledge that Judge Carlucci ordered restoration because a statutory notice requirement had not been met.

That is not a pleading-stage defense. The relevant constitutional question is not simply whether Plaintiff was aware that termination might occur, but whether Defendants provided constitutionally adequate procedures before doing so. See *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978). A recent federal decision in Pennsylvania likewise denied a motion to dismiss a utility-related procedural due process claim where the plaintiff alleged that, despite timely invoking the procedures described in the termination notice, the promised pre-deprivation hearing was denied and service was terminated anyway. *DeVlieger v. City of Warren*, No. 1:24-cv-159 (W.D. Pa. July 11, 2025). The same principle

applies here: awareness of threatened termination does not cure the failure to provide the process that was due.

Defendants' own cited authority also undercuts their position. In the paragraph immediately preceding their merits argument, Defendants acknowledge that due process focuses on the procedures used to effect notice, not a pure "actual notice" standard. Yet they immediately pivot and argue that, because Plaintiff saw the posting and responded on June 11, no due process violation occurred. That does not follow. Count I is not based merely on lack of subjective awareness; it is based on the alleged absence of required mailed notice, the lack of meaningful protest procedures, and Defendants' disregard of Plaintiff's billing and hardship objections before termination.

Nor does Plaintiff's June 11 response help Defendants. JSAJWA argues that Plaintiff's detailed June 11 notice shows he was "apprised of what steps should be taken to protect his interests," but the SAC alleges the opposite practical result: Plaintiff attempted to invoke available protections, Defendants deemed his June 11 submission "insufficient," never rebutted the July 2 packet, and proceeded toward shutoff anyway. Plaintiff's attempt to use process does not prove Defendants provided constitutionally adequate process; it plausibly shows Plaintiff tried to invoke it and Defendants ignored him.

The SAC also pleads more than notice defects. It alleges Plaintiff obtained a valid medical certificate on June 20, hand-delivered it on June 23, and that Johnston nonetheless refused restoration absent full payment or execution of a new agreement. It further alleges the court ordered restoration within 24 hours and barred further shutoffs without proper ten-day notice. Those allegations go directly to the adequacy and administration of the shutoff and restoration process and cannot be dismissed by relabeling the case "non-payment."

Defendants' reliance on *El Malik* is misplaced. As Defendants summarize it, that case involved plaintiffs who had actual notice, were advised to seek an injunction, and then did little more than send a letter. Here, by contrast, Plaintiff alleges he objected, demanded investigation, invoked statutory and medical protections, obtained a medical hardship certificate, and sought emergency judicial relief, yet still suffered termination and refusal to restore absent conditions. That is not a basis for dismissal at Rule 12.

Finally, JSAJWA's attempt to use judicial notice and full-faith-and-credit concepts to make the June 30 state proceeding "dispositive" overreaches at the pleading stage. Defendants seek far more than notice of the existence of the order; they seek adoption of their characterization of what that proceeding decided and what supposedly means for Plaintiff's federal constitutional claims. But Defendants

themselves concede the June 30 order required restoration because the statutory notice process was defective. That concession alone defeats any argument that the state proceeding conclusively established the constitutional adequacy of Defendants' process as a matter of law.

Accordingly, Count I plausibly states a procedural due process claim and should not be dismissed. If the Court concludes any aspect of Count I requires greater specificity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

## B. Count II — Plaintiff Plausibly States an Equal Protection Claim

JSAJWA's Equal Protection argument fails because it tries to turn merits disputes into pleading defects. Defendants argue Count II fails because Plaintiff allegedly did not comply with the Medical Emergency Notice ("MEN") and failed to identify a single similarly situated customer whose service was not turned off.

But Rule 12 does not permit dismissal simply because Defendants offer their own view of MEN compliance or demand discovery-level comparator proof at the pleading stage.

The SAC expressly pleads the elements of an Equal Protection claim. It alleges Plaintiff is a permanently disabled, homebound U.S. veteran and a qualified

individual with a disability. It further alleges Defendants honored shut-off disputes and medical accommodations for other customers but intentionally ignored and refused to honor Plaintiff's valid medical certificate, instead demanding full payment or in-person agreement signing as a condition of service. The SAC then alleges that no such conditions were imposed on other customers and that this disparate treatment lacked any rational basis and was motivated by invidious animus toward disabled individuals. Those allegations are not conclusions alone; they are direct factual averments supporting differential treatment, intent, and irrationality.

Defendants' first attack—that Plaintiff "did not satisfy the plain language of the Medical Emergency Notice" because he allegedly had "no intention of arranging any type of payment plan"—does not defeat Count II.

Whether Plaintiff effectively invoked the medical-emergency protections, whether Defendants selectively enforced those conditions, and whether Defendants used supposed payment-arrangement language as a pretext for different treatment are disputed factual questions. At Rule 12, the Court must accept Plaintiff's allegation that Defendants intentionally refused to honor his valid medical certificate while honoring shut-off disputes and accommodations for others. Defendants cannot win dismissal by simply asserting their own interpretation of the MEN.

17

Defendants' second attack—that Plaintiff failed to name "even a single customer" in identical circumstances—also overreaches.

A complaint need not identify comparator customers by name to cross the plausibility threshold where the relevant shutoff records, accommodation histories, and discretionary enforcement data are in Defendants' possession. Plaintiff has alleged the substance of differential treatment: other customers' shut-off disputes and medical accommodations were honored, but Plaintiff's were not. That is enough to state a plausible Equal Protection claim and entitle Plaintiff to discovery.

Defendants also try to heighten the standard by citing land-use "class of one" authority, including *Eichenlaub*, and by arguing that payment enforcement can never be "irrational and wholly arbitrary."

That framing is misplaced. This is not a zoning dispute. It is a utility shutoff case involving alleged notice defects, ignored disputes, medical hardship protections, and disability-related differential treatment. Plaintiff is not alleging merely that Defendants wanted payment; he alleges Defendants used the shutoff process and medical-emergency procedures differently against him after he disputed the bill and invoked protections. On those allegations, Defendants' asserted "expectation for some payment" does not foreclose irrational or arbitrary enforcement as a matter of law.

Defendants' repeated "non-payment" framing likewise ignores the SAC's billing-dispute allegations. The SAC alleges June bills never arrived, that the first paper bill was not received until July 12, 2025, and that Plaintiff's June 11 and July 2 disputes were unacknowledged and uninvestigated. On those allegations, Defendants cannot simply label Plaintiff a non-payer and use that label to defeat the plausibility of intentional differential treatment after Plaintiff exercised his rights to dispute the charges and invoke medical protections.

Accordingly, Count II is plausibly pleaded. At minimum, if the Court concludes additional comparator detail is required, the proper remedy is leave to amend after limited discovery, not dismissal with prejudice.

## C. Count V — Plaintiff's Takings Claim Should Not Be Dismissed at the Pleading Stage

JSAJWA's Takings argument fails because it rewrites the SAC into a pure "refusal to pay for water" case and then asks the Court to resolve a fact-intensive constitutional claim on a Rule 12 motion. Defendants argue there was no per se taking because JSAJWA "has not physically taken Holland's property" and has not deprived him of all economically viable use, and they further argue there can be no partial/regulatory taking under *Penn Central* because the Authority was merely enforcing a universally applicable fee schedule in the public interest.

19

But the SAC pleads more than ordinary fee enforcement. Count V expressly alleges that by terminating essential service without compensation, Defendants effected an uncompensated taking of Plaintiff's property interest; that the termination of essential water and sewage service constituted both a per se physical taking and a regulatory taking; and that the seven-day deprivation constituted a temporary physical invasion compensable under the Takings Clause.

Plaintiff's theory is tied to the actual deprivation of essential service and the physical interruption of access to that service, not merely to the existence of unpaid charges.

Defendants' argument also depends on contested factual premises. They repeatedly assert that Plaintiff "concedes" he refused to pay and that the Authority "treated him as it treats any other property owner who refuses to pay for the services."

But the SAC alleges billing presentment failures, ignored disputes, conflicting or unsupported charges, lack of proper mailed notice, and refusal to honor medical-hardship protections before and after shutoff. Those allegations matter because they undermine Defendants' attempt to characterize the challenged action as ordinary, neutral fee enforcement. On Plaintiff's allegations, the shutoff and related conditions were not simply the predictable consequence of an undisputed delinquency.

At a minimum, Defendants' *Penn Central* discussion itself demonstrates why dismissal is premature. They invoke factors such as economic impact, interference with investment-backed expectations, and the character of the government action.

Those are fact-intensive inquiries ordinarily requiring a developed record, not categorical dismissal based on Defendants' characterization of the conduct as non-compensable regulation. Defendants' insistence that there was "no diminution in the property's value" and no burden beyond that borne by "other water users" is a merits position, not a pleading-stage determination.

Nor does JSAJWA defeat the claim by citing *Nekrilov*, *Murr*, and *Lucas* and arguing there was no total deprivation.

Plaintiff's SAC pleads both a per se/physical theory and an alternative regulatory/temporary taking theory. Even if the Court concludes Plaintiff's per se framing ultimately may not prevail, the existence of alternative takings theories is not a basis to dismiss Count V with prejudice at Rule 12, particularly where the deprivation of essential water and sewage service is alleged to have lasted **seven days** and to have followed alleged notice and process defects.

Accordingly, Count V should not be dismissed at this stage. At minimum, if the Court concludes the Takings Clause theory requires further refinement as to the

nature of the property interest or the governing takings framework, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

## D. The Constitutional Claims Related to Post–June 30 Conduct Should Not Be Dismissed

JSAJWA's post–June 30 argument fails because it defines "cognizable deprivation" far too narrowly and asks the Court to ignore the SAC's actual post-restoration allegations. Defendants argue that because service was restored by the time Plaintiff returned home from the June 30 hearing and because there has been no subsequent interruption of service, any later conduct is merely "suspicion" of a future shutoff and therefore not actionable under § 1983. That framing is not faithful to the SAC.

The SAC pleads concrete post-restoration conduct, not just fear of a hypothetical future shutoff. It alleges that two days after the original shutoff Defendants caused police officers to appear at Plaintiff's domicile and warn him that continued contact about the dispute could "turn criminal," instructing him not to contact the Authority except to make payment, while Plaintiff was preparing court filings. It further alleges that at the June 30 hearing Defendants introduced a purportedly mailed bill Plaintiff never received, that the court ordered restoration and barred further shutoffs without proper ten-day notice, and that immediately upon

Plaintiff's return home Defendants handed him another ten-day shutoff notice. The SAC then alleges a second shutoff attempt on July 9, 2025, with field workers and police dispatched and threats to tow Plaintiff's vehicle despite no warrant or court order. Those are pleaded acts, not bare suspicions.

Defendants' assertion that an "attempted" constitutional violation is never actionable under § 1983 oversimplifies the SAC and the law. Plaintiff is not suing because Defendants merely "planned" to do something in the abstract. He alleges police-assisted pressure, petition-chilling instructions, retaliatory issuance of a second shutoff notice immediately after judicial intervention, and a later police-backed access/towing confrontation. Those alleged harms are concrete enough at the pleading stage to support federal constitutional theories, including interference with petition/access-to-courts and coercive post-restoration enforcement. JSAJWA's authorities about purely attempted seizures or abstract future harms do not resolve these pleaded facts in Defendants' favor on a motion to dismiss.

Their "mere verbal threats" argument also fails because the SAC alleges more than stray words. Defendants themselves reduce paragraph 27 to a towing threat, but the SAC places that allegation in the larger context of a renewed shutoff-related confrontation involving field workers, police presence, and the absence of any warrant or court order. At Rule 12, the Court must read those allegations in

context, not isolate a single phrase and dismiss the surrounding course of conduct as legally irrelevant.

JSAJWA also notes in a footnote that Plaintiff references the First Amendment in the introduction to the SAC but does not separately caption a standalone First Amendment count in the body. That observation does not justify dismissal of all post–June 30 constitutional allegations. The SAC expressly alleges that police involvement chilled Plaintiff's exercise of his rights to petition, access the courts, and challenge the shutoff. At minimum, if the Court concludes those allegations should have been pled as a more expressly labeled First Amendment retaliation or access-to-courts theory, the proper remedy is leave to amend, not dismissal with prejudice.

Accordingly, Defendants' post–June 30 section should be denied. The SAC alleges a plausible course of coercive and retaliatory post-restoration conduct tied to the same dispute and to Plaintiff's exercise of legal rights. At minimum, those allegations present factual and legal disputes that cannot be resolved on the pleadings.

**E. Plaintiff Plausibly States a Municipal Liability / Failure-to-Train Claim**

JSAJWA's Monell attack fails because it rests on the same flawed premise that all underlying constitutional claims fail. Defendants first argue there can be no municipal liability because Plaintiff has not pleaded a plausible underlying constitutional violation. But for the reasons set forth above, the SAC plausibly alleges due process, equal protection, and other constitutional injuries arising from defective notice, ignored billing disputes, refusal to honor medical-hardship protections, refusal to restore service upon notice, and coercive post-restoration conduct. Because the underlying constitutional claims survive Rule 12, JSAJWA's threshold Monell argument fails as well.

JSAJWA's alternative argument—that the SAC identifies no policy, custom, or moving force—misstates the pleading. Defendants say Plaintiff "points only to his own dissatisfaction with the decisions associated with his account" and has not articulated "a single other instance wherein other customers had their service terminated unlawfully." But Monell liability is not limited to pleading a pattern of identical prior incidents; a failure-to-train theory may itself constitute municipal liability where the need for training is obvious and the constitutional consequences of failing to provide it are highly predictable. Plaintiff's SAC pleads exactly that. It alleges JSAJWA and TVMA failed to adequately train, supervise, or discipline their managers, agents, and field personnel—including Johnston, Confair, and Does 1–5—regarding mandatory shut-off procedures, statutory notice

requirements, medical-certificate protections, and disability-accommodation laws, and that those deficiencies directly resulted in the unlawful termination and attempted re-termination of essential water and sewage service.

Plaintiff's Count XIII pleads the same point even more directly. It alleges that Defendants maintained a policy, custom, or practice of failing to train employees on mandatory shut-off protections and disability accommodations despite an obvious and foreseeable risk of constitutional injury to medically vulnerable and disabled customers; that this failure reflected deliberate indifference; and that JSAJWA failed to train or supervise Johnston, Confair, and others regarding notice requirements, medical-certificate accommodations, respect for court orders, constitutional rights, ADA obligations, Rehabilitation Act obligations, and the Authority's own Rules and Regulations. Those are not bare labels. They are specific Monell allegations tied to identified subject matter, identified personnel, identified risks, and identified resulting harms.

The factual allegations in the SAC also support plausibility. You allege there was no proper mailed ten-day notice before the June 23 shutoff; that your June 11 and July 2 disputes were ignored; that a valid medical certificate was hand-delivered and not honored; that restoration was refused absent payment or signing; and that immediately after the June 30 hearing Defendants issued a second ten-day notice

and later engaged in police-related post-restoration conduct. JSAJWA's own factual summary acknowledges that Paragraph 17 of the SAC adds a Monell/failure-to-train allegation about mandatory shut-off procedures, statutory notice requirements, medical-certificate protections, and disability accommodations. Those allegations plausibly support an inference that the challenged conduct was not an isolated clerical mishap, but the product of inadequate training, supervision, and procedural indifference.

Defendants' insistence that Plaintiff identify a separate prior customer incident before discovery is also too demanding for Rule 12. The relevant training materials, prior incidents, enforcement histories, and accommodation practices are largely within JSAJWA's possession. Plaintiff has pleaded enough to put JSAJWA on notice of the Monell theory and the specific areas in which training and supervision were allegedly deficient. That is sufficient at this stage.

Accordingly, Plaintiff has plausibly stated a Monell/failure-to-train claim. If the Court concludes greater specificity is required as to whether the theory is best characterized as policy, custom, ratification, or failure to train/supervise, the proper remedy is leave to amend, not dismissal with prejudice.

**F. Count III — Plaintiff Plausibly States Claims Under Title II of the ADA and, at Minimum, Plausibly Pleads or Should Be Granted Leave to Clarify the Rehabilitation Act Theory**

JSAJWA's attack on Count III fails because it reduces Plaintiff's disability-based claims to a simple "non-payment" story and asks the Court to ignore the SAC's actual accommodation and denial-of-benefits allegations. Defendants argue the Rehabilitation Act claim fails because Plaintiff "has failed to set forth any facts establishing that Defendants received federal financial assistance," and they argue the ADA claim fails because Plaintiff allegedly pleads only that his water was shut off "despite" being disabled rather than "because of" disability. Defendants also concede that the provision of water service fits within the broad definition of a public-entity program under Title II.

That framing is too narrow. The SAC expressly pleads Count III as a **reasonable-modification / denial-of-benefits** claim. It alleges that Title II of the ADA and Section 504 of the Rehabilitation Act prohibit public entities and recipients of federal funds from discriminating against qualified individuals on the basis of disability and require reasonable modifications to avoid discrimination. It then alleges Plaintiff is disabled, otherwise qualified to receive Defendants' water and

sewer services, and that Defendants denied him the benefits of those services and discriminated against him by reason of his disability.

More specifically, the SAC alleges that Plaintiff is a qualified individual with a documented medical condition requiring uninterrupted water service; that Defendants refused the reasonable modification of honoring his medical certificate and restoring service immediately upon receipt despite knowledge of his disability and medical need; and that those failures denied Plaintiff the benefits of continuous water and sewage service on the basis of his disability. Those are not merely conclusory labels. They are direct allegations of disability, qualification, requested accommodation/modification, refusal, and resulting harm. JSAJWA's reliance on the phrase "solely because of" also overstates the pleading burden for Title II in the way Defendants use it here. Their argument assumes the only viable ADA theory would be an allegation that Defendants shut off water service for the purpose of targeting disabled persons as such. But Plaintiff's Count III is not limited to discriminatory animus; it is also framed as failure to reasonably modify policy and administration of an essential public service in light of known disability-related needs. Defendants' own brief concedes water service is a covered public program. At Rule 12, the SAC's allegations that Defendants knew of the disability, received the medical certificate, and refused restoration or modification are enough to state a plausible Title II claim. Defendants' "non-payment" refrain does not change that

result. The SAC does not merely allege unpaid arrears; it alleges billing presentment failures, ignored disputes, defective notice, and refusal to honor medical-hardship protections. Defendants therefore cannot defeat Count III by simply re-labeling the dispute as a routine collection matter and asking the Court to accept that characterization over Plaintiff's pleaded allegations.

As to the Rehabilitation Act, the SAC expressly alleges that Defendants are recipients of federal financial assistance, including federally funded or federally assisted programs and infrastructure. That allegation is not pulled from thin air. Public utility funding records identified in this action reflect federal-disability-compliance obligations and, on the related TVMA side of the utility system, federal Clean Water State Revolving Fund project funding. See, e.g., public funding records showing ADA Title II / 28 C.F.R. § 35.130 obligations attached to utility funding agreements and related project activities. At minimum, those public records reinforce that Plaintiff's federal-funding theory is plausible enough to warrant discovery into the scope of federal assistance, the relevant "program or activity," and how those funding structures relate to Defendants' administration of water and sewer services. And if the Court concludes the Rehabilitation Act allegations require more detailed pleading as to the precise federal-funding stream applicable to JSAJWA, the proper remedy is leave to amend, not dismissal with prejudice.

Defendants' final point—that counsel could not find a Third Circuit case in which the ADA was invoked to challenge a water shut-off for non-payment—also does not warrant dismissal.

The absence of a factually identical case does not make the pleaded claim implausible. Plaintiff alleges denial of benefits and failure to accommodate in a covered public utility program after presentation of disability-related medical documentation. That is enough to proceed past Rule 12.

Accordingly, Count III should not be dismissed. At a minimum, the Title II claim plainly survives, and any perceived deficiency in the Rehabilitation Act funding allegations should be addressed through leave to amend or limited discovery rather than dismissal with prejudice.

## G. Count VI — Pennsylvania Constitution: Defendants Attack a Claim Plaintiff Did Not Actually Plead

JSAJWA's Pennsylvania Constitution argument misses the way Count VI is actually framed in the SAC. Defendants argue no private right of action exists for damages directly under Article I of the Pennsylvania Constitution and say Plaintiff is improperly trying to use § 1983 to create one. But the SAC expressly says the opposite. Count VI states that Plaintiff **does not assert independent causes of**

**action for damages directly under the Pennsylvania Constitution**; instead, the cited Pennsylvania constitutional provisions are pleaded as sources that define and inform the property, liberty, dignity, petition, and environmental interests protected through the Fourteenth Amendment and actionable via § 1983, while also supporting declaratory and injunctive relief.

That distinction matters. Count VI does not depend on persuading the Court to recognize a free-standing damages action under the Pennsylvania Constitution. Rather, it uses Pennsylvania constitutional provisions to illuminate the contours of the federally protected interests at issue: life, liberty, pursuit of happiness, unreasonable seizure, right to be heard, petition, and environmental rights tied to access to clean water. Defendants' authorities about the absence of a stand-alone damages remedy therefore do not dispose of Count VI as pleaded.

At minimum, if the Court concludes Count VI should be construed more narrowly as a source-of-rights / declaratory-relief count rather than a separate substantive count, the proper course is to construe it accordingly or permit amendment, not dismiss it with prejudice based on a theory the SAC expressly disclaims.

## H. Count VII — Plaintiff Plausibly States a § 1985 Conspiracy Claim

JSAJWA's § 1985 argument also overstates the pleading burden and understates the SAC's factual allegations. Defendants correctly note that § 1985 is remedial and requires a conspiracy, discriminatory purpose, an act in furtherance, and resulting injury, but then assert Plaintiff pleads "no facts" to support interference with petition, due process, or equal protection, and they point out that Plaintiff reached court quickly. That argument does not fairly address the SAC.

Count VII pleads that Defendants conspired with law enforcement multiple times to intimidate Plaintiff and chill his rights; that JSAJWA, TVMA, Johnston, Confair, and Does 1–5 agreed to direct police officers to threaten and intimidate Plaintiff on June 25 and July 9, 2025; that police were enlisted to enforce unlawful shutoff and reconnection fees despite the June 30 injunction; that Defendants acted with the specific intent to interfere with Plaintiff's due process, petition, and equal-protection rights; and that those acts caused fear, anxiety, and impairment of access to courts and essential services. Those are factual allegations, not empty labels.

Defendants' point that Plaintiff was nevertheless able to file suit quickly does not defeat the claim at Rule 12. The fact that Plaintiff managed to reach court despite the alleged intimidation does not mean there was no attempt to chill or impair his exercise of rights. Plaintiff alleges police presence and warnings designed to pressure him, discourage communication, and interfere with his efforts to pursue

relief. Whether those efforts fully succeeded is not the pleading standard; the question is whether Plaintiff plausibly alleges a conspiracy and overt acts aimed at interfering with protected rights.

JSAJWA's final attack—that Plaintiff "baldly asserts" he was targeted as a disabled veteran—also ignores the SAC's actual wording. Count VII alleges Defendants acted because of and motivated by Plaintiff's status as a disabled veteran, a class Plaintiff alleges has been subject to differential treatment and retaliation when asserting statutory and constitutional protections. At minimum, those allegations, taken together with the pleaded police involvement, shutoff conduct, medical-hardship context, and asserted differential treatment, are sufficient to survive dismissal and proceed to discovery.

If the Court concludes Plaintiff should plead the discriminatory-purpose aspect of Count VII with greater factual specificity, the proper remedy is leave to amend, not dismissal with prejudice.

## I. Count VIII — Fraudulent Misrepresentation

## 1. The Fraud Claim Against JSAJWA Should Not Be Dismissed With Prejudice

JSAJWA argues the fraud claim against the Authority is barred by governmental immunity because the Political Subdivision Tort Claims Act does not waive immunity for "actual fraud." That may be a serious immunity obstacle as to damages against the local agency itself, but it does not justify using this sub-argument to erase the factual core of Count VIII or to dismiss the entire fraud theory with prejudice without addressing the individual defendants separately.

More importantly, the SAC does not plead a generic or speculative fraud claim. It specifically identifies the alleged misrepresentations: that required shut-off notices had been mailed and posted when they were not; that Plaintiff owed a valid balance and that the medical certificate did not stay termination; that no credits or prepayments existed despite internal records to the contrary; and that Defendants had a valid written contract authorizing shutoff fees when none existed. Those allegations matter even if the Court ultimately concludes that the agency itself is immune from a damages award on Count VIII.

Accordingly, if the Court agrees with JSAJWA that the PSTCA bars a damages claim for common-law fraud against the local agency itself, the proper course is to dismiss Count VIII against JSAJWA on immunity grounds only, while allowing the fraud theory to proceed against Johnston and Confair, or at minimum granting leave to amend if the Court believes Plaintiff should reframe the relief sought as to

the entity. Dismissal with prejudice of the factual fraud theory as a whole would be overbroad.

## 2. Plaintiff Plausibly States a Fraudulent Misrepresentation Claim Against Johnston and Confair

JSAJWA separately argues that "nothing in the SAC points to evidence" establishing a fraudulent misrepresentation by Johnston or Confair on which Plaintiff relied to his detriment. That argument misstates both the pleading standard and the SAC.

The SAC pleads the elements of fraud directly. It identifies specific misrepresentations, including representations about mailed and posted notices, the validity of the alleged balance, the effect of the medical certificate, the absence of credits or prepayments, and the existence of a valid written contract authorizing shutoff fees. It then specifically alleges that those misrepresentations were made by Eric Johnston and Timothy Confair, acting as final policymakers, through oral statements, written notices, billing records, and communications to Plaintiff and law enforcement, including statements around June 11, June 20–25, and July 9, 2025.

The SAC also pleads intent, reliance, and damages. It alleges Defendants intended

Plaintiff to rely on those misrepresentations to coerce payment of disputed amounts

and to refrain from immediate judicial relief until after shutoff. It alleges Plaintiff

justifiably relied by refraining from immediate emergency court intervention and

by reasonably believing statutory notice requirements had been satisfied, that his

physician-certified medical hardship protection had been honored, and that

Defendants were acting lawfully rather than in bad faith. And it alleges resulting

damages, including unlawful fees, emergency expenditures, veterinary expenses,

emotional distress, anxiety, and exacerbation of service-connected disabilities.

Defendants' argument that the SAC points to no "evidence" is itself the wrong

Rule 12 standard. Plaintiff need not prove fraud at the pleading stage; he must

allege it plausibly and with sufficient detail. The SAC does that. And Defendants'

apparent suggestion that Plaintiff's later access to court defeats reliance as a matter

of law is also wrong. The SAC does not allege Plaintiff never sought judicial relief;

it alleges he refrained from **immediate** emergency intervention in reliance on

Defendants' representations, and that he suffered harm during that interval.

At minimum, Count VIII plausibly states a fraud claim against Johnston and

Confair. If the Court concludes any statement, date, or reliance allegation requires

greater particularity under Rule 9(b), the proper remedy is leave to amend, not dismissal with prejudice.

## J. Count IX — Plaintiff Plausibly States Claims for Unjust Enrichment and Alternative Rescission

JSAJWA's unjust-enrichment/rescission argument fails because it assumes the very merits questions the SAC disputes. Defendants argue that JSAJWA's rules lawfully authorize shutoff and reconnection fees, that it is therefore not "unconscionable" to retain those fees, that Plaintiff's veterinary expenses cannot support unjust enrichment because Defendants did not receive that money, and that rescission is impossible because Plaintiff cannot "return" water and sewer services he received.

The SAC pleads Count IX more narrowly and more plausibly than Defendants acknowledge. Plaintiff expressly pleads unjust enrichment **in the alternative**, to the extent Defendants contend that no enforceable written contract governs the disputed fees. The SAC then alleges that Defendants received and retained unlawful shutoff and reconnection fees, as well as payments and credits taken or offset from Plaintiff's account without proper notice, accounting, or contractual authorization, including amounts applied toward unlawful shutoff and reconnection fees.

The SAC also pleads why retention of those benefits was unjust: the shutoffs were void for lack of the statutorily required ten-day notice and for violation of Plaintiff's medical-certificate rights; Defendants ignored the June 30, 2025 court order; and Defendants failed to produce any valid signed written agreement or lawful authority authorizing the assessment or retention of those fees. Those allegations are enough to state an unjust-enrichment claim at Rule 12. Defendants cannot defeat the claim by simply asserting that their rules "permit" the fees when the SAC specifically alleges the fees were imposed through void shutoffs, ignored medical protections, and in violation of court-ordered relief.

JSAJWA's veterinary-expense point also does not warrant dismissal of the entire count. The SAC's primary unjust-enrichment theory is that Defendants retained unlawful fees, charges, offsets, and account benefits. To the extent veterinary expenses are not themselves a "benefit" retained by Defendants, that goes to the proper measure of restitution or damages, not to whether the unjust-enrichment count as a whole fails. At most, it is a narrowing argument, not a pleading-stage knockout.

Defendants' rescission argument likewise overstates the issue. Plaintiff pleads rescission expressly **as an alternative** to disgorgement, directed at "any purported agreement forming the basis for those fees," together with restitution of amounts

paid. Plaintiff is not seeking to "return" consumed water in the abstract; he is challenging the purported contractual basis for the disputed shutoff/reconnection fees and seeking equitable unwinding of those charges if Defendants insist some agreement controls. Whether rescission is ultimately the appropriate remedy is not a basis to dismiss the entire alternative equitable theory at Rule 12.

Accordingly, Count IX should not be dismissed. At minimum, if the Court concludes the alternative rescission remedy should be narrowed or that veterinary expenses are not recoverable under unjust enrichment, the proper course is partial narrowing or leave to amend—not dismissal with prejudice of Count IX in its entirety.

### K. Count X — Plaintiff Plausibly States a UTPCPL Claim, or at Minimum Should Be Granted Leave to Reframe It

JSAJWA argues Count X fails because the UTPCPL does not apply to "political subdivision agencies" and cites *Meyer*. That argument is serious, but it still does not justify erasing the underlying deceptive-conduct allegations or dismissing the count with prejudice at this stage.

The SAC pleads Count X specifically. It alleges Defendants acted in trade or commerce by billing for utility services, assessing fees, collecting payments, and

engaging in consumer transactions with Plaintiff. It further alleges deceptive and unfair conduct including misrepresenting that proper notice had been mailed when no notice was ever sent, ignoring timely billing-error disputes and medical-certificate accommodations, charging unlawful shutoff and reconnection fees in violation of state law and court order, and attempting to coerce payment through further shutoff threats and police intimidation.

Those are concrete deceptive-practice allegations, not labels. And they fit the broader theme already pleaded throughout the SAC: this was not merely "non-payment," but disputed billing, ignored disputes, defective notice, unlawful fees, and coercive collection conduct.

That said, if the Court agrees with JSAJWA that the UTPCPL does not reach JSAJWA as a municipal authority or political-subdivision agency, the proper course is to dismiss or narrow Count X on that legal ground only—not to use that argument to undermine the factual plausibility of Plaintiff's deceptive-conduct theory across the case. The SAC's allegations of misrepresentation, unfair fees, and coercive payment pressure remain relevant to Plaintiff's fraud, due process, equal protection, and bad-faith theories even if the Court limits the statutory UTPCPL vehicle.

At minimum, if the Court concludes Count X should not proceed as pleaded against JSAJWA itself, Plaintiff respectfully requests leave to amend to clarify whether the claim is asserted against non-immune individual actors, to refine the statutory basis, or to conform the count to the Court's ruling rather than suffer dismissal with prejudice.

## L. Count XI — Plaintiff Plausibly States an Intentional Infliction of Emotional Distress Claim

JSAJWA's IIED argument fails because it again rewrites the SAC as a routine "pay your bill" case and ignores the pleaded medical-emergency, police-intimidation, and post-order conduct. Defendants argue that requiring payment for service is not outrageous, that the June 30 order shows future shutoff threats were not unlawful if statutory process was followed, and that Plaintiff provides "no detail" about the medical emergency or police conduct. That characterization is not faithful to the SAC.

The SAC pleads Count XI with specific factual allegations of extreme and outrageous conduct. It alleges Defendants willfully shut off essential water and sewage service during a medical emergency despite a valid medical certificate; enlisted police officers to intimidate Plaintiff under threat of arrest or towing; conditioned restoration on in-person signing or full payment despite a court

injunction; and continued to bill and threaten further shutoffs in knowing violation of state law and judicial order. The SAC further alleges Defendants had actual knowledge of Plaintiff's medical vulnerability and the severe risk of emotional and physical harm because Plaintiff repeatedly notified them in writing through billing-error disputes, emails, and the medical certificate delivered in person prior to shutoff.

Those allegations are far more than "Defendants asked for payment." They plead a medically vulnerable plaintiff, essential utility service, alleged refusal to honor a valid medical certificate, alleged police-assisted intimidation, and alleged coercive conditions for restoration. Whether Defendants' conduct ultimately meets Pennsylvania's high IIED standard is a merits question, but the SAC plainly alleges conduct more substantial than the sterile "billing dispute" narrative Defendants offer. Rule 12 does not permit the Court to isolate one feature of the dispute (payment) and ignore the rest of the pleaded conduct.

Defendants' reliance on the June 30 order is also overstated. The fact that the order did not bar all future shutoff activity forever does not mean Plaintiff cannot plead outrageous conduct based on the way Defendants allegedly proceeded: ignoring medical-hardship protections, issuing immediate post-hearing shutoff notices, and involving police in a coercive manner. Plaintiff's IIED count is grounded in the

overall course of conduct, not in a single abstract theory that any future shutoff threat automatically violated the order.

Nor is it correct that Plaintiff pleads "no detail" about the medical emergency or police context. Count XI expressly incorporates the preceding paragraphs and identifies the medical-certificate allegations, the police intimidation allegations, the restoration conditioning allegations, and the continued billing/threat allegations. It also pleads severe emotional distress, including exacerbation of service-connected conditions, sleep loss, anxiety, paranoia, ongoing fear for family health and safety, and the need for medical and psychological care.

Accordingly, Count XI is plausibly pleaded. At minimum, if the Court concludes the factual allegations should be stated with greater specificity as to the police interaction or medical consequences, the proper remedy is leave to amend, not dismissal with prejudice.

## M. Count XII — Plaintiff Adequately Pleads a Fiduciary-Duty Theory, or at Minimum Should Be Granted Leave to Reframe It

JSAJWA's fiduciary-duty argument is narrower and more purely doctrinal. Defendants contend the claim against JSAJWA is barred by the PSTCA and argue Plaintiff fails to allege the kind of fiduciary or confidential relationship recognized

under Pennsylvania law as articulated in Reese and Yenchi. That argument is a serious one, but it still does not warrant blanket dismissal with prejudice.

The SAC does not plead an abstract or undefined fiduciary theory. Count XII alleges that a fiduciary relationship arose because Defendants collected mandatory customer payments and held them in trust for provision of water and sewage services, obligating themselves to apply those funds only for lawful service and in accordance with statutory and regulatory mandates. It further alleges specific breaches: misrepresenting account balances and mailing practices; refusing to conduct a forensic audit or produce account records upon demand; ignoring a valid medical certificate and court injunction; charging and retaining unlawful shutoff and reconnection fees; and misusing entrusted funds while concealing material accounting information.

Defendants are therefore not arguing that the SAC lacks breach, injury, or causation allegations. They are arguing primarily that Pennsylvania law may not recognize this utility-customer relationship as "fiduciary" in the Reese/Yenchi sense. That is why the appropriate response is narrow but firm: if the Court concludes the relationship alleged is insufficient as a matter of Pennsylvania common law to support a formal fiduciary-duty count, the proper remedy is leave to amend or reframe the theory, not dismissal with prejudice. The same factual

core remains relevant to unjust enrichment, fraud, due process, equal protection, and equitable relief even if the Court narrows the fiduciary label.

To the extent the Court agrees with JSAJWA that the PSTCA bars a common-law damages claim for breach of fiduciary duty against the local agency itself, Plaintiff respectfully requests that any dismissal be limited accordingly and without prejudice to amendment as to individual defendants or equitable theories. And to the extent the Court concludes Pennsylvania law requires a more particularized confidential-relationship showing under Reese/Yenchi, Plaintiff requests leave to amend rather than a merits foreclosure at the pleading stage.

## N. Johnston and Confair Are Not Entitled to Qualified Immunity, and JSAJWA Cannot Invoke It at All

Defendants' qualified-immunity argument fails for multiple, independent reasons. At the threshold, Defendants blur two different questions: whether JSAJWA, as a municipal/local entity, may invoke qualified immunity, and whether Johnston and Confair, as individual actors, may do so. That distinction matters. A municipality has no qualified immunity from suit under 42 U.S.C. § 1983. Owen v. City of Independence, 445 U.S. 622 (1980). Thus, to the extent Defendants' briefing uses qualified-immunity rhetoric to support dismissal of claims against JSAJWA itself, that argument fails at the threshold.

Defendants also attempt to frame this case far too narrowly. Their question presented is whether Plaintiff can show that "the termination of his water service triggered by non-payment" violated clearly established constitutional law. That is not an accurate statement of the SAC. Plaintiff does not allege a routine shutoff for undisputed nonpayment. The SAC alleges defective notice, ignored billing disputes, lack of timely bill presentment, hand-delivery of a valid medical hardship certificate, refusal to restore service upon notice, and coercive post-restoration conduct involving police presence and further shutoff-related pressure. Defendants cannot strip away those allegations, relabel the case "non-payment," and then insist the qualified-immunity question becomes simple.

The clearly-established-law analysis likewise does not help Defendants. They correctly note that clearly established rights derive from binding Supreme Court and Third Circuit precedent or, in some circumstances, a robust consensus of persuasive authority, and they even acknowledge that a case directly on point is not required. But then they contradict that standard by demanding a factually identical case involving suspension of utility services while charges are disputed. That is too rigid. The Supreme Court has rejected an overly mechanical "identical facts" requirement. Hope v. Pelzer, 536 U.S. 730 (2002).

More importantly, Supreme Court precedent already addresses the utility-shutoff context. In *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978), the Court held that municipal utility customers possess a protected property interest in continued utility service and that due process protections apply before termination where billing is disputed. Defendants are therefore wrong to suggest that no Supreme Court case gives fair warning in this setting. Plaintiff's case does not arise in a constitutional vacuum. Defendants' effort to characterize the law as unclear succeeds only if the Court accepts their stripped-down version of the facts and ignores the SAC's allegations of disputed billing, defective notice, medical-hardship protections, and refusal to restore. Defendants also overreach by asking this Court to "adopt" Judge Carlucci's June 30 ruling as part of the qualified-immunity analysis. But that same state-court proceeding resulted in restoration because a statutory notice requirement had not been met. Defendants cannot use that ruling as a merits shortcut while ignoring the aspect of it that confirms Plaintiff's core notice allegation. Judicial notice of the existence of a state-court order is one thing; converting it into a pleading-stage merits determination for qualified immunity is another. At minimum, Defendants' attempt to import that order into prong two of qualified immunity is inappropriate on a Rule 12 motion.

Their next problem is factual. Defendants assert that Johnston and Confair acted on facts "which are not in dispute." That premise is false. The SAC disputes whether

48

proper mailed notice was ever given, whether Plaintiff's billing disputes were meaningfully investigated, whether lawful protest procedures were provided, whether the medical certificate was honored, whether restoration should have occurred within 24 hours, and whether the post-restoration conduct was coercive and retaliatory. Qualified immunity is not a device for resolving those disputes in Defendants' favor at the pleading stage. And although *Johnson v. Jones*, 515 U.S. 304 (1995), arose in the appellate-jurisdiction context, it underscores the basic point that fact disputes are distinct from the purely legal qualified-immunity question.

Defendants finally say that, even if Johnston made an error, he and Confair at most made a "reasonable mistake" about the law.  But the SAC alleges far more than a technical mistake about a mailing rule. It alleges a broader course of conduct: ignored disputes, hand-delivery of a valid medical certificate, refusal to restore, police-related pressure, immediate reissuance of a ten-day notice after court intervention, and a later attempted second shutoff / access confrontation. On those allegations, Defendants are not entitled to have the Court repackage the case as a routine good-faith billing misunderstanding.

In short, JSAJWA cannot invoke qualified immunity at all, and Johnston and Confair are not entitled to dismissal on qualified-immunity grounds because

Defendants define the right too narrowly, overstate the "factually analogous case" requirement, misuse the June 30 state-court ruling, and rely on facts the SAC expressly disputes. Qualified immunity should therefore be denied at this stage, or at minimum deferred until a factual record is developed.

Defendants' immunity theory works only if the Court accepts three things that Rule 12 does not permit: first, that JSAJWA may piggyback on individual qualified immunity; second, that Memphis Light does not exist; and third, that Defendants' version of the facts is undisputed. None is true.

## V. Conclusion

For all of the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint should be denied in its entirety. Defendants' brief repeatedly asks the Court to do what Rule 12 does not permit: accept Defendants' version of disputed events, reduce a medically sensitive shutoff dispute to a simple "non-payment" narrative, treat post-restoration conduct as legally irrelevant, and convert a preliminary state-court restoration proceeding into a dispositive merits and immunity shortcut. But the SAC alleges defective notice, ignored billing disputes, refusal to honor a valid medical hardship certificate, refusal to restore service upon notice, coercive and police-related post-restoration conduct, disability-related

denial of protections, and municipal failures in training and supervision. Those allegations are sufficient to proceed beyond the pleading stage.

At minimum, Defendants are not entitled to dismissal where their arguments depend on disputed facts, overbroad legal characterizations, or premature merits determinations. That is especially true with respect to Defendants' repeated reliance on "actual notice," "non-payment," and "no subsequent interruption" as if those phrases alone dispose of Plaintiff's constitutional, statutory, and equitable claims. They do not.  In the alternative, if the Court concludes that any portion of the Second Amended Complaint requires greater factual or doctrinal specificity, Plaintiff respectfully requests leave to amend. Amendment would not be futile and would permit clarification of any issues the Court identifies, including comparator detail, Rehabilitation Act funding specificity, post–June 30 constitutional labeling, and any count-specific pleading detail the Court deems necessary. Any such relief would be more appropriate than dismissal with prejudice at the pleading stage.

Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss, or, in the alternative, grant Plaintiff leave to amend rather than dismiss any claim with prejudice.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of March 2026, I caused a true and correct copy of the foregoing Brief in Opposition to the JSAJWA Defendants' Motion to Dismiss the Second Amended Complaint to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(D), upon the following counsel of record:

Sean P. McDonough, Esq. (PA I.D. #47428)

Dougherty, Leventhal & Price, LLP

459 Wyoming Avenue

Kingston, PA 18704

E-mail: smcdonough@dlplaw.com


Michael J. Crocenzi, Esq. (PA I.D. #66255)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: mcrocenzi@barley.com


Sarah L. Doyle, Esq. (PA I.D. #321149)

Barley Snyder

100 East Market Street

York, PA 17401

E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In Care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com