**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DION STORM HOLLAND,** | : | **Civil No. 4:25-CV-1323** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Neary)** |
| **v.** | : | |
| | : | |
| **JERSEY SHORE AREA JOINT** | : | |
| **WATER AUTHORITY, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

## I. Factual Background

This case, which comes before us for consideration of two motions to dismiss the *pro se* plaintiff's second amended complaint, (Docs. 74, 76), involves a host of federal and state constitutional, common law and statutory claims which arise out of what is alleged to have been a seven-day termination of water service at the home of the plaintiff.

The operative pleading in this case, which guides our consideration of these motions to dismiss, is the plaintiff's second amended complaint. (Doc. 72). Liberally construed this complaint alleges that the plaintiff "is a permanently and totally disabled U.S. Marine Corps veteran he served in Operation Enduring Freedom and relies on continuous at-home water service for basic medical care and household

needs." (Id. ¶ 5). Specifically, Holland avers that: "Less than one year prior to June 23, Plaintiff was hospitalized for three days with potentially fatal rhabdomyolysis, during which he required continuous IV fluids, demonstrating the life-sustaining necessity of uninterrupted at-home water service." (Id. ¶ 12). Holland also alleges that he suffered from a traumatic brain injury and PTSD. (Doc. 10-1 Ex. B). The institutional defendants are the Jersey Shore Area Joint Water Authority (JSAJWA) and Tiadaghton Valley Municipal Authority (TVMA), and the named individual defendants, Eric Johnston and Timothy Confair are water authority officers and employees. (Id. ¶¶ 6-10).

This case involves a dispute regarding payment for Holland's water service, and raises a series of legal claims concerning the manner in which the defendants are alleged to have briefly terminated that service for this disabled former Marine. According to Holland's complaint, on June 11, 2025, Defendants posted a door-hanger threatening shut-off of his water by June 20. (Id. ¶ 13). Holland asserts that this notice was legally insufficient under state law since the defendants never mailed the ten-day notice required under 53 P.S. § 3102.502(b)(1)–(2). (Id.)

Despite receiving what is alleged to have been inadequate and improper notice, Holland states that he engaged in multiple pre-deprivation efforts to avoid the termination of his water and sewage service. According to Holland, on June 11,

Plaintiff emailed JSAJWA disputing this shut-off notice, but his initial response was deemed insufficient. Notably, Holland's communications to the defendants, which have previously been attached as exhibits to his complaint, do not appear to dispute the fact of an outstanding water bill; rather, Holland's complaints seem to relate to the amount of those bills. (Doc. 10-1, Ex. B-D). On June 20, 2025, Holland then obtained what he described as a valid medical certificate under 52 Pa. Code §§ 56.113, 56.115 and 66 Pa.C.S. § 1406(f). Holland hand-delivered this medical certificate on June 23, 2025, to Defendant Eric Johnston and Defendant Timothy Confair as they arrived to cut off his water and sewage service but to no avail. (Id. ¶¶ 19-20). The defendants terminated his service and:

> From June 23–30, 2025, Plaintiff's household endured a continuous water and sewage outage causing severe sanitation issues, medical risks, and psychological distress. On July 3, Plaintiff's dog was taken to the vet for lethargy; over six days her pyometra worsened, requiring lifesaving emergency surgery from July 9–11 to remove a 10 lb uterus, costing $6,316.87.

(Id. ¶ 18).

According to Holland, on June 23, he immediately asked defendant Eric Johnston to verify the certificate with his physician, Dr. Burke,[1] but Johnston refused

---

[1] We note that this certificate, which is attached as an exhibit to Holland's complaint, is a cursory document which provides no description of any alleged disabilities on the plaintiff's part beyond asserting that he suffered from an unspecified lifetime disability. (Doc. 10-1 Ex. G).

to restore service unless Plaintiff appeared in person to sign a new agreement or paid the full balance. (Id. ¶ 22).

With his water service halted, Holland proceeded to state court on June 27, 2025, filing a Complaint and Motion for Emergency Injunction in Lycoming County Court of Common Pleas, seeking immediate restoration and enforcement of his medical-emergency protections. On June 30, 2025, the court held a hearing on Holland's motion. During this hearing, the defendants presented evidence of unpaid water and sewer bills owed by Holland, but the plaintiff responded that he had never received these bills. (Id. ¶ ¶ 24-26).

At the conclusion of this hearing, the court ordered restoration of Holland's water service within 24 hours. The state court's ruling in this case was exceedingly narrow. The court found that Holland had received actual notice of the proposed termination of his water service and had lodged legally insufficient objections to that water service cut off. However, observing that state law appeared to require both posted notice at Holland's home and mailed notice, the court found that the defendants had not fully complied with mail notice requirements of state law before cutting off this service. The judge's order restored water service but did not deny the water authority the right in the future to terminate service for continued non-payment.

Rather, it barred further utility shut offs without proper ten-day notice as required by state law. (Doc. 10-1 Ex. T).

Holland's water service was restored that day before he arrived home from the state injunction hearing. Further, it appears that he has enjoyed uninterrupted water service since that time, although Holland alleges that he was served with an additional, and in his view retaliatory, shutoff notice upon returning home the hearing before he could even get out of his suit. Holland also avers that on July 9, 2025, Defendants again dispatched field workers and police, threatening to tow Plaintiff's vehicle without a valid warrant or court and, on July 13, 2025, a TVMA official began "following" him on social media. (Id. ¶¶ 25-28).

Thus, Holland's second amended complaint reveals that the plaintiff received actual advance notice of the proposed termination of his water and sewer services, albeit in a fashion which did not meet all of the technical requirements set by state statutes. Holland then unsuccessfully exercised his right to seek pre-deprivation relief before successfully seeking, and obtaining, post-deprivation relief.

On the basis of these averments, Holland's second amended complaint advances thirteen distinct claims grounded in the United States Constitution, federal statutes, the Pennsylvania Constitution, state statutes and state common law. (Id. Counts I-XIII). Specifically, Holland alleges that the actions of the defendants denied

him due process; constituted an unlawful taking of property under the Fifth Amendment; were an illegal search and seizure under the Fourth Amendment; rose to the level of a civil conspiracy to violate Holland's rights under 42 U.S.C. §1985; reflected an unconstitutional municipal custom or practice giving rise to institutional liability; breached rights guaranteed to Holland by the Pennsylvania Constitution; constituted violations of Pennsylvania's Unfair Trade Practice and Consumer Protection Law; and rose to the level of tortious fraud, unjust enrichment, intentional infliction of emotional distress, and breach of fiduciary duty in violation of the common law of Pennsylvania. (Id.) Holland's second amended complaint seeks declaratory, injunctive and equitable relief, along with nominal, compensatory and punitive damages. (Id.)

With Holland's claims framed in this fashion, the defendants have moved to dismiss this multi-faceted complaint. (Docs. 74, 76). These motions are fully briefed and are, therefore, ripe for resolution. For the reasons set forth below, it is recommended that these motions be GRANTED in part and DENIED in part as follows: First, the motion to dismiss Holland's ADA claim should be GRANTED, in part, and DENIED in part as follows: The motion should be GRANTED with respect to the individual defendants but DENIED as to the institutional defendants. Second,

Holland's Rehabilitation Act claim should be DISMISSED without prejudice. All other claims should be DISMISSED with prejudice.

## II. Discussion

### A. Motion to Dismiss—Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the

Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s]

that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the sufficiency of the plaintiff's claims. In conducting this assessment, we note that the parties have starkly contrasting views regarding what these well-pleaded facts reveal. According to the defendants, this case is nothing more than a garden variety billing dispute. In contrast, Holland insists that the well-pleaded facts disclose a pervasive and systematic pattern

of constitutional infractions by a host of actors. With our judgment confined to the well-pleaded facts set forth in the plaintiff's second amended complaint, as discussed below we find that neither of the characterizations fully capture what the facts allege.

### B. Holland's Federal Statutory Claims

Count III of Holland's second amended complaint brings claims under two federal statutes designed to protect the disabled from discrimination, the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). These two statutes share a number of common elements.

> In order to state a claim under the ADA, an individual must show that "(1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.' " Haberle v. Troxell, 885 F.3d 170, 178–79 (3d Cir. 2018) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). Similarly, "[t]o state a claim under § 504 [of the Rehabilitation Act], a plaintiff must demonstrate that: (1) [ ]he is a qualified individual with a disability; (2) [ ]he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) [ ]he was discriminated against based on h[is] disability. See 29 U.S.C. § 794(a)." Calloway v. Boro of Glassboro Dep't of Police, 89 F.Supp.2d 543, 551 (D.N.J. 2000). Thus, whether cast as an ADA claim or a Rehabilitation Act violation, the gist of a complaint is some act of discrimination against the disabled due to a disability.

Best v. Merakey USA, No. 3:19-CV-1124, 2020 WL 12740398, at *6 (M.D. Pa. Aug. 31, 2020).

These two statutes set differing, but exacting, standards for sustaining

disability discrimination claims. "[U]nder the RA, the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation." Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 291 n.25 (3d Cir. 2019) (citing CG v. Pa. Dep't of Educ., 734 F.3d 229, 236 n.11 (3d Cir. 2013)). Moreover, the scope of liability under these two statutes is narrowly circumscribed and is limited to institutional defendants; "there simply is no individual liability for damages under Title II of the ADA or Section 504 of the RA." Brown v. Clemens, No. 3:22-CV-01067, 2025 WL 2422615, at *7 (M.D. Pa. Aug. 21, 2025) (collecting cases).

In this case, liberally construing Holland's *pro se* pleadings as we must, we understand that the gravamen of his complaint is that he suffered from specific disabilities, traumatic brain injury and PTSD, which he brought to the attention of the water authorities after receiving a shut-off notice. According to Holland, knowing that he experienced these disabilities, the defendants nonetheless terminated his water and sewage service in a discriminatory fashion. Given these well-pleaded facts, we have grave doubts regarding whether Holland can ultimately sustain either of these statutory claims by showing the type of causation demanded by these statutes. Showing a discriminatory causal link in this case will be challenging for Holland given the allegations that he was in default on his payment obligations and the fact that it appears that the defendants resolved to terminate his water service before they

were notified of his alleged disability. In particular, his Rehabilitation Act claim, which requires proof that discriminatory animus was the sole cause of his injuries, seems highly problematic. Moreover, we are not alone in harboring these concerns that ADA and RA claims may not be viable in this factual setting where the defendants' actions are premised upon their belief that there has been a non-payment of water service bills. See TOM E. HINKLEY, Plaintiff, v. GERALD K. JOHNSON, et al., Defendants. Additional Party Names: Anthony R. Martineau, City of W. Jordan, Jason W. Hardin, Jenifer E. Decker, John P. Hinkley, Justin D. Heideman, L. Offs. of Anthony R. Martineau, L. Offs. of Ray G. Martineau, Lorelei Naegle, Ray G. Martineau, Sara E. Bouley, No. 2:26-CV-471, 2026 WL 2210960, at *4 (D. Utah July 31, 2026) (dismissing *pro se* ADA claim arising in the context of termination of water service). Nonetheless, acting out of an abundance of caution, and mindful of the fact that questions of intent and motive often require factual development beyond the pleadings, we believe that these questions concerning the viability of this aspect of Holland's statutory claims should await a more fulsome record.

However, aside from this question of intent, some of these statutory claims fail on other grounds. First, to the extent that Holland is attempting to use the ADA and RA to assert individual liability claims, the amended complaint fails since neither of these statutes provides for individual liability. Therefore, Holland may only pursue

institutional liability claims. In addition, an essential element of a Rehabilitation Act claim is an allegation that the plaintiff was denied the benefits of a program or activity of a public entity which receives federal funds. In its current form, Holland's complaint does not appear to allege well-pleaded facts which would satisfy this jurisdictional element. Therefore, it is recommended that the RA claim be dismissed as to all defendants, but without prejudice to Holland endeavoring to amend his complaint to state a jurisdictional basis for a claim against the institutional defendants. It is further recommended that the ADA claim be dismissed as to the individual defendants, but further consideration of the legal sufficiency of this claim be deferred pending further factual development of the record.

### C. Holland's Federal Constitutional Claims[2]

Holland's complaint also brings a series of claims under the general civil rights statute, 42 U.S.C. § 1983, asserting a wide array of federal constitutional violations alleging that the actions of the defendants violated his right to due process and equal

[2] In his motions papers, Holland also appears to allege that he is asserting a First Amendment retaliation claim in his second amended complaint, but we disagree. Holland's second amended complaint does not specifically state a First Amendment claim. In any event, the matters he alleges are retaliatory were either authorized by the state court, which said that the defendants could curtail Holland's water service provided they gave him the form of advance notice prescribed by state law, or were *de minimis*, like the direction to move his truck or the fact that a water authority employee followed him on social media. Therefore, this unpled claim would likely fail on its merits.

protection, and constituted an unlawful search in violation of the Fourth Amendment and an improper taking of property without compensation in violation of the Fifth Amendment. In assessing these constitutional claims as they relate to the individual and institutional defendants, we engage in a two-step analysis. First, we must determine whether Holland has asserted well-pleaded facts which would support and colorable constitutional claim. Once we cross this hurdle, with respect to the individual defendants we must determine whether that constitutional rights was so clearly established that the individuals are not shielded by qualified immunity. Likewise, with respect to the institutional defendants, there is a second stage to our constitutional analysis: We must ascertain whether the alleged infraction was a product of some institutional policy, practice, custom, giving rise to organizational culpability.

Applying this two-step analysis to the instant case, we find that all of Holland's federal constitutional claims fail as a matter of law for the reasons set forth below.

**1. <u>Equal Protection</u>**

In Count II of the second amended complaint, Holland asserts an equal protection claim in the nature of a class-of-one claim. The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The

plaintiff's equal protection argument in this case advances what is called a "class of one" claim—an assertion that the plaintiff was treated differently than all others in some invidious fashion. On this score, "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000) (citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S. Ct. 633, 102 L.Ed.2d 688 (1989)). Thus, in order to sustain a "class of one" equal protection claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) *there was no rational basis for the difference in treatment*." Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) (emphasis added).

In our view, the well-pleaded facts set forth by Holland do not meet the demanding legal benchmarks for a viable class-of-one equal protection claim. At bottom, this case involves allegations that the defendants improperly terminated Holland's water service based upon their understanding that he had failed to pay his bills. Notably lacking from the complaint are well-pleaded allegations showing that

the actions taken by the defendants in Holland's case differed materially from the approach taken by the defendants when dealing with other delinquent utility customers. Further, it cannot be said that curtailing service to a customer who has defaulted on payments is a course of action which lacks any rational basis. In the absence of further well-pleaded facts this equal protection claim fails.

### 2. Fourth Amendment

In Count IV of this second amended complaint Holland avers that the defendants violated his rights under the Fourth Amendment to the United States Constitution on June 23, 2025, when they entered his property to shut off his water service. In our view, this claim fails because it misconstrues the reach of the Fourth Amendment in the context of public utility service.

To be sure, the Fourth Amendment prohibits unreasonable searches and seizures. However, as the text of this constitutional guarantee implies, the question of reasonableness is the lynchpin of any Fourth Amendment analysis. On this score, courts have frequently found that a utility employee's entry upon the property of a customer for the sole purpose of shutting off water service, when that shut-off is unaccompanied by any other potential criminal penalty, is constitutionally reasonable conduct which does not violate the Fourth Amendment. See e.g., Gray v. Detroit Land Bank Auth., No. 2:25-CV-11434, 2026 WL 1455426, at *2 (E.D. Mich. Feb. 2,

2026); Cadle v. City of Newton Falls, Ohio, 961 F.2d 1576 (6th Cir. 1992); Frates v. City of Great Falls, 568 F. Supp. 1330, 1335 (D. Mont. 1983), aff'd in part, remanded in part, 732 F.2d 163 (9th Cir. 1984); Hodge v. Stout, 377 F. Supp. 131, 135 (E.D. Tenn. 1974). As our sister court has observed when denying a similar Fourth Amendment claim: "Access to utility service cannot reasonably be construed as a 'personal effect' which is protected by the Fourth Amendment." Gagliardi v. Clark, No. CIV A 06-20, 2006 WL 2847409, at *14 (W.D. Pa. Sept. 28, 2006). Therefore, the limited intrusion upon the plaintiff's curtilage for the sole purpose of cutting off water service for non-payment does not rise to the level of an unreasonable search or seizure condemned by the Fourth Amendment.

**3. Fifth Amendment Takings Claim**

In Count V of his second amended complaint Holland alleges that the one-week termination of his water service based upon an alleged non-payment of his water bill constituted an unlawful taking of his property in violation of the Takings Clause to the Fifth Amendment.

We disagree.

The Fifth Amendment's Takings Clause states that: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. On this score, a case from our sister court, Tulio v. Lansdale Borough, is instructive and

persuasive. 660 F. Supp. 3d 368, 379 (E.D. Pa. 2023), aff'd sub nom. Tulio v. Borough, No. 23-1644, 2023 WL 8711822 (3d Cir. Dec. 18, 2023). In Tulio the court was presented with a Fifth Amendment takings claim advanced by a plaintiff who—like Holland—had his water service terminated for non-payment. On these facts, the court observed:

> The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property cannot be taken for public use without compensation. Murr v. Wisconsin, 582 U.S. 383, 137 S. Ct. 1933, 1942, 98 L.Ed.2d 497 (2017) (citing U.S. Const. amend. V.). The Takings Clause not only applies to the government's physical appropriation of private property for public use, but also to government regulation that deprives the owner of the economically beneficial or productive use of his property. Id. at 1942-43 (citing Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)). A *per se* regulatory taking occurs when a regulation renders the property "essentially idle." Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d Cir. 2022) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992))

Id. at 379. However, the court found that the termination of water services for non-payment of bills simply is not the type of taking embraced by the Fifth Amendment, noting that: "There has been no *per se* taking." Id. Like Tulio, in this case nothing in Holland's pleadings suggests that the defendants took physical possession of his property or denied Holland the use of this property. Therefore, a *per se* taking claim fails.

Further, like the Tulio court, we find that the defendants were "exercising

[their] legitimate interest in providing and regulating utilities and because payment for utility service was reasonably expected," when they curtailed service briefly for non-payment. Such legitimate action simply does not rise to the level of a partial regulatory taking prohibited by the Fifth Amendment. Id. at 381. Therefore, this Fifth Amendment Takings claim also fails as a matter of law and should be dismissed.

**4. Fifth Amendment Procedural Due Process**

Count I of Holland's second amended complaint brings a procedural due process claim against the defendants asserting that he was denied proper notice and an opportunity to be heard prior to the termination of his water service. This allegation presents a somewhat closer case since it appears that the defendants failed to comply with one aspect of the notice required by state law in that they failed to mail a termination notice to Holland in addition to posting such a notice on his property. However, the well-pleaded facts in Holland's complaint also reveal that he: (1) had actual, timely notice of this proposed water service termination; (2) utilized pre-deprivation processes to challenge this proposed action; and (3) successfully pursued post-deprivation legal avenues to restore his water service.

It is well settled that public utility customers are entitled to some measure of due process before their access to water is curtailed. As the Third Circuit has observed:

> It is well-settled that the expectation of utility service rises to the level, articulated in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and Perry v. Sinderman, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), of a "legitimate claim of entitlement" encompassed in the category of property interests protected by the Due Process Clause. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). Accord, Koger v. Guarino, 412 F.Supp. 1375, 1386 (E.D.Pa.), aff'd without opinion, 549 F.2d 795 (3d Cir.1977) (holding that "a water user has a 'legitimate claim of entitlement' to continued water service which is a property interest to which the Due Process Clause of the Fourteenth Amendment applies.") As a constitutionally cognizable state law property interest, the interest in receiving water service is subject to the tri-partite balancing analysis of 1) the property interest, 2) the risk of erroneous deprivation, and 3) the government's interest, articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for a determination of what procedural safeguards are due. See Memphis Light, 436 U.S. at 17–19, 98 S.Ct. at 1564–65 (applying the Eldridge balancing approach to find that "some administrative procedure for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding" of utility services); Koger, 412 F.Supp. at 1386–89 (determining, on application of the Eldridge test to Philadelphia's denial of water service policy, that due process requires notice and opportunity for a hearing prior to water service termination).

Ransom v. Marrazzo, 848 F.2d 398, 409 (3d Cir. 1988). In this setting, it has been held that due process is satisfied when the utility customer receives: (1) "notice reasonably calculated to apprise [him] of the availability of an administrative procedure to consider the[] complaint of erroneous billing," and the customer is (2) "afford[ed] . . . an opportunity to present their complaint to a designated employee empowered to review disputed bills and rectify error," prior to termination of service.

Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 22, 98 S. Ct. 1554, 1567, 56 L. Ed. 2d 30 (1978).

According to Holland's complaint that is precisely what happened here. Holland recites that he received actual notice of this proposed water service termination on June 11, 2025, when that notice was posted at his home. The posted notice, which Holland has submitted as an exhibit, (Doc. 10-1 Ex. A), described for Holland the procedure he should follow to contest any service interruption. Moreover, Holland states that he availed himself of this process, providing written objections to water service termination, albeit in a form the state court found insufficient, on June 11, 2025. (Doc. 10-1 Ex, B). Further, once Holland's water and sewer service was cut off on June 3, 2025, he exercised his due process right to post-deprivation relief in state court and secured the resumption of water service on June 30, 2025.

Notwithstanding these immutable facts recited by Holland in his second amended complaint, the plaintiff insists that his due process rights were violated because the defendants did not also provide him with a second form of notice through the mail, as called for by state law. In light of the fact that Holland undeniably received actual, and timely, advance notice of the planned termination of his water service, this claim fails. This due process claim, advanced by a plaintiff who had

actual notice of the proposed termination of his water service and actively sought both pre- and post-deprivation relief after receiving this notice, is unavailing since:

> If an individual did not receive *procedurally* adequate notice but was notified *in fact* that the government intended to deprive the individual of property or a liberty interest, no claim under procedural due process will lie. United Student Aid Funds, Inc. v. Espino*sa*, 559 U.S. 260, 272, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (finding that actual notice of an action "more than satisfied [the plaintiff's] due process rights"); Shoemaker, 795 F.3d at 563 (recognizing that a procedural due process claim will fail when notice would not have affected whether the plaintiff could defend the claim adequately); United States v. McGovney, 270 Fed. App'x 386, 387 (6th Cir. 2008) (rejecting a procedural due process claim, noting that the plaintiff had received actual notice); United States v. Land Contract Vendee's Interest, 94 F.3d 645 (Table), at *3 (6th Cir. 1996) (denying a procedural due process challenge where the plaintiff had two instances of actual notice).

Krueger v. City of Eastpointe, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020), aff'd sub nom. Shandor v. City of Eastpointe, Michigan, No. 20-1385, 2021 WL 4775190 (6th Cir. Oct. 13, 2021). Therefore, notwithstanding what may have been a technical misstep under state law in terms of duplicative notices, Holland's averments that he received actual, timely notice, coupled with the statements that he actively employed pre- and post-deprivation avenues of relief defeat this due process claim.

### 5. Qualified Immunity

But in any event, even if we determined that the plaintiff had stated a colorable constitutional claim, we believe that the individual defendants would still be entitled to qualified immunity from damages. The doctrine of qualified immunity protects

government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna,

577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. (quoting Al-Kidd, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right."). To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)).

In this case, as we have discussed, there is no controlling Supreme Court decision, circuit precedent, or otherwise robust legal consensus which suggests that the brief termination of Holland's water service, after the plaintiff received actual notice and was given the opportunity to lodge pre-deprivation objections, violated

clearly established law. Quite the contrary, with respect to many of Holland's constitutional claims, there is a rising tide of case law which rejects those claims. Consequently, courts which have considered constitutional claims in this factual context where the plaintiff received actual notice of a proposed utility cut off and was afforded some pre-deprivation consideration, have often held that individual defendants are entitled to qualified immunity from damages. See e.g., Southside Tr. v. Town of Fuquay-Varina, 69 F. App'x 136, 138 (4th Cir. 2003); Cadle v. City of Newton Falls, Ohio, 961 F.2d 1576 (6th Cir. 1992); Manza v. Newhard, 915 F. Supp. 2d 638, 650 (S.D.N.Y. 2013).

So it is here. Since the rights at issue in this case were not clearly established in the factual setting outlined by Holland in his complaint, the individual defendants are entitled to qualified immunity from damages.

**6. Institutional Liability**

Holland's institutional liability constitutional tort claims also founder on insurmountable legal obstacles. In this case, Holland seeks to sue institutional defendants on a failure to train theory as a result of a single episode in which he received actual notice of proposed governmental action, albeit in a form which did not include two types of notice as called for under state law.

Holland faces an exacting burden of pleading and proof in order to sustain such

a claim. Agency liability cannot rest upon mere allegations of *respondeat superior*. Instead, case law has defined for us a unique species of institutional civil rights liability, a form of liability which is judged by precise legal benchmarks. Specifically:

> In Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Monell"), the Supreme Court held that a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from a municipality's policy, custom, or practice. Id. at 695, 98 S.Ct. 2018. Accordingly, a Monell claim seeks to impose municipal liability for a constitutional injury that was causally connected to a municipal policy, custom, or practice. See id.; see also Carreno v. City of Newark, 834 F.Supp.2d 217, 231 (D.N.J.2011).
>
> "Under Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir.2007). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. (quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018). It is essential to a Monell claim that there be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order to establish municipal liability. City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
>
> Guided by these threshold principles, the Third Circuit Court of Appeals has explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"
>
>> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an

> implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003) (internal quotation marks and citations omitted). Subsequently, the appeals court provided further guidance regarding the ways in which a government policy or custom may be established:

> We have also observed that a government policy or custom can be established in two ways. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990). The plaintiffs may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued an official statement of policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The plaintiffs may establish that a course of conduct constitutes a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" that they operate as law. Monell, 436 U.S. at 690, 98 S.Ct. 2018. In either instance, the plaintiffs have the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom. *Andrews,* 895 F.2d at 1480. We have also held that, at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability. San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.1994).

> Jiminez, 503 F.3d at 250. In cases where a plaintiff is predicating a Monell claim on an alleged failure to train officers or other employees, the Third Circuit has further explained:
>
>> a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997).
>
> Montgomery v. De Simone, 159 F.3d 120, 126–27 (3d Cir.1998). It is "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." Harris, 489 U.S. at 389, 109 S.Ct. 1197. Thus, where Monell claims are based upon an alleged failure to train officers, the municipality's training program must be so inadequate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [of the current training] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390, 109 S.Ct. 1197.

Hunter v. Prisbe, 984 F. Supp. 2d 345, 353–55 (M.D. Pa. 2013).

In addition to these general guiding principles which govern institutional civil rights liability, other special considerations apply in a case such as this which arises out of single incident like the water service termination in Holland's case. Single

incident institutional liability claims are particularly demanding in terms of their pleading and proof.

> Thus, while it is sometimes possible "to establish deliberate indifference based on a single incident[,] this showing is available in a very narrow range of circumstances." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-850, 2014 WL 981557, at *9 (E.D. Pa. Mar. 13, 2014). "To find deliberate indifference from a single-incident violation," the risk of injury must be a "highly predictable consequence" of the municipality's failure to train and supervise its employees. Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64). Thus, "[l]iability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.' " Id. at 223-24 (quoting Bryan Cnty., 520 U.S. at 409).

Tucker v. Petruzzi, No. 3:17-CV-1848, 2018 WL 3623766, at *7 (M.D. Pa. June 27, 2018), report and recommendation adopted, No. 3:17-CV-1848, 2018 WL 3622772 (M.D. Pa. July 30, 2018).

Judged by these compelling pleadings standards, Holland's Monell agency liability claim fails. Fairly construed, that claim entails little more than the talismanic recital of the elements of agency liability, a form of pleading that will not do. In particular, Holland fails to explain how the risk of injury was a highly predictable consequence of the agencies' failure to train and supervise its employees. Nor has he alleged well-pleaded facts which would tend to show that the agencies' failure to train rose to the level of deliberate indifference to the risk of a constitutional infraction. Moreover, given that Holland received actual notice of this water service cut-off and

had the opportunity to lodge pre-deprivation objections, he simply cannot show the type of highly predictable risk of harm that is essential to a Monell institutional liability claim. Therefore, this claim fails and should be dismissed.

**7. 42 U.S.C. § 1985 Conspiracy**

Finally, in his second amended complaint, Holland endeavors to stitch together a claim that these events revealed a far-reaching conspiracy to transgress his civil rights in violation of 42 U.S.C. § 1985.

This claim also fails. 42 U.S.C. § 1985(3) provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ..., the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

The reach of § 1985(3) has also been carefully defined by the courts. As the United States Court of Appeals for the Third Circuit has observed, "in Griffin v. Breckenridge, 403 U.S. 88 (1971) . . ., the Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.' Id. at 102." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997). Thus:

> Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). In a line of cases ..., the Supreme Court has made clear what a plaintiff must allege to state a claim under § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29,(1983) (citing Griffin, 403 U.S. at 102–03).

Farber v. City of Paterson, 440 F.3d 131, 134 (3d. Cir. 2006). See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997). "[B]ecause § 1985(3) requires the 'intent to deprive of *equal* protection, or *equal* privileges and immunities,' a claimant must allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Farber, 440 F.3d at 135 (citations omitted, emphasis in original).

Holland's § 1985(3) claim fails in its current form since he simply alleges without sufficient factual detail that there was a conspiracy to violate his rights. To the extent that the plaintiff premises this conspiracy claim on 42 U.S.C. § 1985(3), the claim fails as a matter of law for several reasons. First, the second amended complaint is devoid of well-pleaded facts alleging some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, as

he is required to do under this statute. Farber, 440 F.3d at 135. Moreover, and more fundamentally, presently the complaint is devoid of any well-pleaded facts whatsoever which would support an inference of some conspiratorial agreement to violate his rights. This, too, is a fatal flaw since:

> [T]o maintain a civil conspiracy claim, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." Id. A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Whalley v. Blazick, No. 4:18-CV-1295, 2020 WL 1330683, at *6 (M.D. Pa. Mar. 23, 2020). Therefore, this second amended complaint simply fails to state a federal civil rights conspiracy claim and should be dismissed.

**D. Holland's State Law Claims**

Finally, many of Holland's state law claims arising out of this one-week interruption of his water and sewer service also fail as a matter of law. These specific claims are discussed separately below.

**1. The Pennsylvania Constitution Provides No Grounds for Damages Claims**

In Count VI of his second amended complaint, Holland brings claims against

the defendants which are expressly premised upon the Pennsylvania Constitution. While the complaint is replete with references to the state constitution, there is an enigmatic aspect to this count of the complaint since Holland eschews any direct reliance upon the state constitutional provisions he cites. Instead, Holland seems to suggest that these state constitutional provisions inform and define his federal constitutional due process rights. In our view, regardless of how this claim is cast, it fails as a matter of law.

We believe that this freestanding claim fails for two reasons. First, to the extent that Count VII of the second amended complaint simply provides an additional legal gloss for Holland's Count I federal due process claim, these allegations are subsumed by, and redundant of, Holland's general due process claim. Further, any direct reliance upon the Pennsylvania Constitution to support a claim from damages from these defendants runs afoul of an insurmountable legal obstacle: "The prevailing view in this circuit is that 'Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution.'" Hamilton v. Spriggle, 965 F. Supp. 2d 550, 577 (M.D. Pa. 2013) (quoting Gary v. Braddock Cemetery, 517 F.3d 195, 207 n. 4 (3d Cir.2008)).

**2. Holland's UTPCPL Claims Against the Municipal Defendants Fail**

In his second amended complaint, Holland also alleges that the billing

practices of the water and sewer authorities violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law, (UTPCPL), 73 P.S. § 201–9.2(a). This claim, however, admits of a simple answer. The Pennsylvania Supreme Court has held that the Pennsylvania legislature did not intend for the definition of "person" under the UTPCPL to include political subdivision agencies, like these water authorities. Meyer v. Cmty. Coll. of Beaver Cnty., 625 Pa. 563, 578, 93 A.3d 806, 815 (2014). In light of this definitive interpretation of the Pennsylvania statute by Pennsylvania's highest court, this claim fails and should be dismissed.

### 3. Holland's Claim of Intentional Infliction of Emotional Distress Fails

Holland also asserts a state common law claim of intentional infliction of emotional distress against these municipal defendants arising out of this brief interruption of water and sewer service, an interruption that arose in the context of a billing dispute. In our view, this claim fails for two reasons.

First, the municipal agency defendants are immune from liability for this tort under Pennsylvania's Political Subdivision Tort Claims Act (herein "the Tort Claims Act"). On this score:

> The Tort Claims Act provides that "no local agency [i.e. municipality] shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person"—unless the conduct of the municipality or its employee fits into one of a few narrow categories enumerated in the Tort

> Claims Act. 42 Pa.C.S. §§ 8541–42. While the statute permits municipal liability for certain "negligent acts," such acts "shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. § 8542(a)(2).
>
> Courts have held that intentional torts constitute "willful misconduct" under the Act, for which a municipality cannot be held liable under the Tort Claims Act. See, e.g., Talley v. Trautman, No. Civ.A. 96–5190, 1997 WL 135705, at *6 (E.D.Pa. Mar.13, 1997); Agresta v. City of Philadelphia, 694 F.Supp. 117, 123 (E.D.Pa.1988). Courts have specifically found that municipalities are immune from claims of "intentional infliction of emotional distress." See Agresta, 694 F.Supp. at 123.

Lakits v. York, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003).

Therefore, the water authorities are cloaked in immunity from liability for intentional infliction of emotional distress. However, the immunity conferred upon municipal agencies does not automatically extend to their employees, who still may be held accountable for willful misconduct. See Kuzel v. Krause, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995). Therefore, it is necessary to separately assess the legal viability of this claim as to defendants Confair and Johnston.

With respect to the individual defendants, aside from these issues of municipal immunity, this claim fails on its merits. Intentional infliction of emotional distress is a highly exacting form of tort under state law. Under Pennsylvania Law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if

bodily harm to the other results from it, for such bodily harm." 10 Restatement (Second) of Torts § 46(1) (1965). It is difficult to make out a cognizable claim for intentional infliction of emotional distress, in no small part because "the conduct must be 'so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society.'" Regan v. Twp. of Lower Merion, 36 F.Supp.2d 245, 251 (E.D. Pa. 1999). Thus, with respect to claims for intentional infliction of emotional distress, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven." Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998). With regard to the level and severity of the conduct alleged, the Pennsylvania Superior Court has noted:

> "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Buczek v. First National Bank of Mifflintown, 366 Pa.Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."

Id. at 754 (quoting Restatement (Second) of Torts § 46, comment d; Daughen v. Fox, 372 Pa.Super. 405, 412, 539 A.2d 858, 861 (1988)). Applying these standards:

> Conduct that Pennsylvania courts have deemed sufficiently outrageous to constitute IIED includes: (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease.

Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 558 (M.D. Pa. 2008), aff'd, 350 F. App'x 770 (3d Cir. 2009) (citing Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745, 754 (1998)). We have also held that "blatantly abhorrent conduct" involving the sexual exploitation of others may be actionable as intentional infliction of emotional distress. Doe v. Schuylkill Cnty. Courthouse, No. 3:21-CV-477, 2022 WL 1463988, at *7 (M.D. Pa. May 6, 2022).

In the instant case, while this one-week interruption of water service was doubtless distressing, and it is alleged there were missteps by the defendants in the procedure they followed when cutting off service to Holland, it simply cannot be said that these actions, which arose in the context of a billing dispute, were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Therefore, this claim fails.

**4. Holland's Fraud and Breach of Fiduciary Duty Claims Against the Municipal Defendants are Barred**

The municipal immunity conferred by Pennsylvania's Political Subdivision

Tort Claims Act, 42 Pa.C.S. §§ 8541 *et seq*., also applies to Holland's fraud and breach of fiduciary duty claims leveled against these municipal authorities. Like Holland's intentional infliction of emotional distress claim, these allegations of fraud and breach of trust assert intentional torts. As such, it has been held that the Political Subdivision Tort Claims Act bars claims for damages against local public entities arising out of allegations of fraud or breach of fiduciary duty. See Southersby Dev. Corp. v. Twp. of S. Park, No. CIV.A. 14-1248, 2015 WL 1757767, at *11 (W.D. Pa. Apr. 17, 2015) (dismissing fraud and breach of fiduciary duty claims). Thus, to the extent Holland seeks monetary damages against the water authorities based upon claims of fraud or breach of fiduciary duty these claims should also be dismissed with prejudice.

**5. These Claims Also Fail as to the Individual Defendants**

Further, to the extent that Holland seeks to hold the individual defendants liable for fraud or breach of fiduciary duty, his individual liability claims encounter other legal obstacles. At the outset, Holland's fraud claims run afoul of the pleading standards demanded by Rule 9 of the Federal Rules of Civil Procedure. On this score:

> [W]hen a plaintiff is making allegations of fraud in a complaint, there are additional requisites which must be satisfied in order to state a claim. Rule 9 of the Federal Rules of Civil Procedure prescribes what must be pleaded to assert a claim of fraud in federal court and sets a heightened standard for pleading allegations of fraud. Under Rule 9: "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). In this regard, it is well-settled that:

> [T]he rules governing specificity of pleading fraud in federal court call for much greater clarity in pleading and proof to sustain such grave allegations. As the United States Court of Appeals for the Third Circuit has observed:
>
> > [A]llegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.*
>
> Lum v. Bank of America, 361 F.3d 217, 223–4 (3d Cir.2004) (citations omitted, emphasis added).
>
> Thus, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify '"the who, what, when, where, and how: the first paragraph of any newspaper story." ' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). 'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting

> precision and some measure of substantiation into their allegations of fraud.”’ In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir.2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied).” Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J.2008).

Angino v. Wells Fargo Bank, N.A., No. 1:15-CV-418, 2016 WL 787652, at *10 (M.D. Pa. Feb. 19, 2016), report and recommendation adopted, No. 1:15-CV-418, 2016 WL 759161 (M.D. Pa. Feb. 26, 2016), aff'd, 666 F. App'x 204 (3d Cir. 2016).

Hamill v. Twin Cedars Senior Living, LLC, No. 3:20-CV-231, 2022 WL 16840356, at *7 (M.D. Pa. Aug. 5, 2022), report and recommendation adopted, No. 3:20-CV-00231, 2024 WL 1118977 (M.D. Pa. Mar. 14, 2024).

In this case, Holland’s allegations of fraud against Defendants Johnston and Confair fall well short of reciting the who, what, when, where, and how demanded by Rule 9. In particular, it is unclear if Defendant Confair made any representations whatsoever to Holland. In the absence of further well-pleaded facts, these vague fraud allegations are insufficient to state a claim upon which relief may be granted.

Nor has Holland alleged a breach of fiduciary duty claim against the water authority employees who shut off his water. On this score:

> Under Pennsylvania law, the elements of a breach-of-fiduciary-duty claim are: (1) the existence of a fiduciary relationship; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and, (3) that the plaintiff suffered an injury caused by the defendant's breach of its fiduciary duty.

Adair v. Cigna Corp. Servs., LLC, 818 F. Supp. 3d 641, 672 (E.D. Pa. 2026).

With respect to the first element of this claim, the existence of a fiduciary relationship, "What defines a confidential (or fiduciary) relationship 'cannot be reduced to a particular set of facts or circumstances.' But, at a minimum, the relationship must go beyond 'mere reliance on superior skill' or 'an arm's-length consumer transaction' *and instead reflect that one party has ceded decision-making control to the other.*" Adair v. Cigna Corp. Servs., LLC, 818 F. Supp. 3d 641, 672 (E.D. Pa. 2026) (citations omitted, emphasis added). Here, nothing in Holland's complaint suggests that he ceded any form of personal decision-making or autonomy to Defendants Johnston and Confair. Quite the contrary, Holland's pleadings and communications with the defendants actively and vehemently assert his personal rights and liberties. Accordingly, it cannot be said that a fiduciary relationship existed here since Holland did not cede any decision-making power to these water authority employees. Therefore, these individual defendants did not owe Holland some specific, personal fiduciary duty and this claim fails with respect to the individual named defendants.

**6. Holland's Unjust Enrichment Claim Should be Dismissed**

Holland's second amended complaint also asserts an unjust enrichment claim, but this state law equitable doctrine is ill-suited to the facts of the instant case for at

least two reasons. First, Holland's unjust enrichment claim ignores the fundamental attributes of the relationship between these parties. At bottom, the relationship between Holland, as a consumer, and the defendants, as providers of water services, is contractual in nature. The water authority provides a service for a fee, and Holland as consumer is obliged to pay the fee as a condition of continuing to receive the service. The essentially contractual quality of this relationship is significant and precludes an equitable unjust enrichment claim in this case since under Pennsylvania law, typically "unjust enrichment does not apply where an express contract exists between the parties." GAI Consultants, Inc. v. Homestead Borough, 120 A.3d 417, 423 (Pa. Commw. Ct. 2015) (citing Joyce v. Erie Insurance Exchange, 74 A.3d 157, 169 (Pa.Super.2013); Villoresi v. Femminella, 856 A.2d 78, 84 (Pa.Super.2004)).

More fundamentally, this claim fails because Holland's well-pleaded facts cannot be wedged into the elements of an unjust enrichment claim. On this score:

> Pennsylvania law states that unjust enrichment is an equitable doctrine applied only when the law implied a contract that requires the defendant to pay the value of the benefit conferred. Mitchell v. Moore, 1999 PA Super 77, 729 A.2d 1200, 1203–04 (1999) (citing Schenck v. K.E. David, Ltd., 446 Pa.Super. 94, 666 A.2d 327, 328 (1995)). The elements of an unjust enrichment claim are "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Id.

Broederdorf v. Bacheler, 129 F. Supp. 3d 182, 199 (E.D. Pa. 2015).

Here, Holland's well-pleaded facts simply do not match the elements of this equitable doctrine. First, Holland, as plaintiff, did not confer any benefit upon the defendants; rather, they provided a benefit—water and sewer service—to him. Second, the defendants did not inequitably accept some benefit from Holland. Quite the contrary, they provided a benefit to Holland which they allege he neglected to pay for. Further, the principal element of harm cited by Holland in this count of his complaint is the payment of veterinarian fees to a third party, but this expense cannot in any conceivable way be seen as a benefit that accrued to the water authorities. In sum, none of these elements of unjust enrichment are satisfied in this case. Since Holland's second amended complaint reveals on its face that the unjust enrichment doctrine is inapplicable here, this claim fails and should be dismissed.

**E. Final Considerations**

Finally, Holland seeks leave to further amend his second amended complaint. On this score, we recognize that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the plaintiff's complaint is flawed in ways which cannot be cured by any more artful

form of pleading. However, Holland has already filed three separate complaints in this case, but to little avail since most of his claims fail as a matter of law. Therefore, while we recommend that Holland's ADA claim proceed forward and Holland be given leave to attempt to amend his Rehabilitation Act claim to state a jurisdictional basis for that claim, in all other respects it is recommended that these claims be dismissed with prejudice.

## III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions to dismiss, (Docs. 74, 76), be GRANTED in part and DENIED in part as follows: First, the motion to dismiss Holland's ADA claim should be GRANTED, in part, and DENIED in part as follows: The motion should be GRANTED with respect to the individual defendants but DENIED as to the institutional defendants.

Holland's Rehabilitation Act claim should be DISMISSED without prejudice.

All other claims should be DISMISSED with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 16th day of September 2026.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge