**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DION STORM HOLLAND,<br>Plaintiff,<br><br>v.<br>JERSEY SHORE AREA JOINT WATER AUTHORITY, TIADAGHTON VALLEY MUNICIPAL AUTHORITY, ERIC S. JOHNSTON, TIMOTHY CONFAIR, JOHN DOE 1-5 in their individual capacities,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 4:25-CV-01323<br><br>The Honorable Keli M. Neary<br>(JUDGE)<br>(MAG. JUDGE CARLSON) |

**PLAINTIFF'S SPECIFIC OBJECTIONS TO THE REPORT AND RECOMMENDATION (ECF NO. 90)**

Plaintiff Dion Storm Holland, proceeding pro se, submits these specific objections under 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and Local Rule 72.3. The principal constitutional recommendations rest on two errors apparent from the face of ECF No. 72. First, the R&R correctly states that *Memphis Light* requires meaningful pretermination consideration of a disputed utility bill, but then treats Plaintiff's transmission of an objection as though transmission itself established that the required review occurred. Second, the R&R states that the Second Amended Complaint does not specifically plead a First Amendment claim even though ECF No. 72 expressly invokes the First

Amendment, expressly pleads retaliation for protected petitioning, and expressly requests First Amendment relief.

Those errors concern the constitutional core of this action. In several additional places, the R&R likewise reaches dismissal by substituting a factual premise that the operative pleading expressly alleges the opposite. De novo review should therefore begin with the allegations actually pleaded and the reasonable inferences they support, not with a reconstructed version of ECF No. 72.

**<u>OBJECTION I</u>**

**THE R&R TREATS A DISPUTED DELINQUENCY AS AN ESTABLISHED FACT AT RULE 12(b)(6)**

Plaintiff objects to ECF No. 90 at 2-3, 13-14, and 17-21 insofar as the R&R repeatedly describes an outstanding bill, default, or nonpayment as an established premise. The SAC alleges an active dispute over the validity, accuracy, accounting, and enforceability of the claimed balance. ECF No. 72 ¶¶ 13-19, 37-44. Paragraph 19(a) describes the June 11 submission as disputing "all charges," and ¶ 40(b) alleges that the June 11 and July 2 disputes were never investigated.

Plaintiff does not ask the Court to adjudicate the billing merits on these objections. The Rule 12 point is narrower: the SAC does not admit payment default. It pleads disputed charges, lack of timely bill presentation, unresolved accounting, and alleged payments or credits. ECF No. 72 ¶¶ 19(a), 39-40, 103. Even assuming arguendo that Defendants ultimately prove some amount was

delinquent, that would not extinguish the protected property interest or substitute for constitutionally required pretermination process. The Court may not convert disputed liability into admitted default and then use that converted premise to defeat due process, disability, equal-protection, qualified-immunity, Monell, or state-law theories. The R&R itself states that well-pleaded facts must be accepted as true. ECF No. 90 at 7-11. De novo review should apply that rule to the pleaded dispute.

## OBJECTION II

## THE R&R STATES THE MEMPHIS LIGHT RULE, THEN CONTRADICTS IT BY TREATING SUBMISSION OF AN OBJECTION AS THE REQUIRED REVIEW

Plaintiff objects to ECF No. 90 at 21-24. The R&R correctly states the controlling utility-termination rule: due process requires a pretermination opportunity to present a disputed bill to designated personnel empowered to review the dispute and correct error. ***Memphis Light, Gas & Water Division v. Craft,*** 436 U.S. 1, 16 n.17, 18-22 (1978); ***Ransom v. Marrazzo,*** 848 F.2d 398, 409 (3d Cir. 1988). It then says that this is "precisely what happened here" because Plaintiff received actual notice and transmitted written objections. ECF No. 90 at 22-23. That conclusion cannot be reconciled with ¶ 40(b), which alleges that JSAJWA's Rule VII.F promised an "investigation" and that Plaintiff's disputes went "entirely

unacknowledged and uninvestigated." ECF No. 72 ¶ 40(b). Transmission is not adjudication; invocation is not review.

For the completed June 23 deprivation, the critical pretermination allegation is the June 11 dispute. Plaintiff alleges that he disputed the charges before termination and that the Authority did not investigate or decide that dispute before service was cut off. The July 2 submission bears separately on the later course of conduct. Actual notice answers whether Plaintiff knew a deprivation was coming; it does not answer whether the Authority actually considered the disputed basis for that deprivation before acting. Even assuming the door-hanger identified some avenue for complaint, the SAC alleges that the Authority did not operate the review process Plaintiff invoked.

Nor does the state court's conclusion that the June 11 writing was legally insufficient to suspend termination under the Pennsylvania Water Services Act establish that the Authority performed the separate review *Memphis Light* requires. Statutory sufficiency of Plaintiff's submission and governmental performance of pretermination review are distinct questions. The R&R collapses them when it treats the mere transmission of an objection - even an imperfect one - as proof that consideration occurred.

The distinction is reinforced by ***Logan v. Zimmerman Brush Co.,*** 455 U.S. 422, 433-37 (1982), which treats governmental failure to perform a required

adjudicatory step as a due-process problem, and by ***Ziegler v. City of Reading & Reading Area Water Authority,*** No. 1060 C.D. 2013, slip op. at 8-9 (Pa. Cmwlth. Jan. 24, 2014) (unreported). Applying *Memphis Light* and *Ransom*, *Ziegler* found deficient a municipal-water procedure where the customer submitted the Authority's complaint form but the Authority did not respond, consider the complaint, or provide consultation with empowered personnel. That is materially closer to the no-review facts pleaded here than cases involving actual pretermination consideration.

The R&R's reliance on later state-court relief does not cure the pleaded pretermination failure. *Memphis Light* itself rejected a pretermination injunction and later judicial remedies as substitutes for the utility's own pretermination procedure. 436 U.S. at 19-22. *Espinosa* involved defective service where the creditor nevertheless had an actual adjudicative opportunity to object. ***United Student Aid Funds, Inc. v. Espinosa,*** 559 U.S. 260, 272 (2010). It does not hold that actual awareness of an impending shutoff substitutes for an independently required opportunity for meaningful review.

Finally, the R&R calls its contrary reconstruction "immutable facts," labels Count I "Fifth Amendment Procedural Due Process" even though Count I expressly invokes the Fourteenth Amendment, and gives the shutoff date as June 3 even though ECF No. 72 alleges June 23. ECF No. 90 at 21, 23; ECF No. 72 ¶ 21.

The date and heading errors are not independent grounds for rejection; they underscore why de novo review must return to the operative pleading. On the facts actually alleged, Count I should proceed.

## OBJECTION III

## THE R&R'S STATEMENT THAT NO FIRST AMENDMENT CLAIM IS PLEADED IS CONTRADICTED BY ECF NO. 72

Plaintiff objects to ECF No. 90 at 15 n.2. The R&R states that the SAC "does not specifically state a First Amendment claim." The operative pleading says otherwise. Its jurisdiction section expressly invokes the First Amendment; ¶ 83 alleges retaliation "actionable under the First Amendment and 42 U.S.C. § 1983"; the Prayer seeks declaratory relief for First Amendment violations; and ¶ 23 pleads the operative police-warning allegation. ECF No. 72 at 2, ¶¶ 23, 83, Prayer ¶ 136(A). This is not a case in which the Court must infer an unstated theory: the theory is expressly identified.

A separately captioned count is not a basis for terminal dismissal where the factual allegations and legal theory give fair notice. ***Johnson v. City of Shelby,*** 574 U.S. 10, 11-12 (2014). And because Plaintiff is pro se, the pleading must be liberally construed and the relevant legal principle applied even when a complaint fails to name it. ***Vogt v. Wetzel,*** 8 F.4th 182, 185 (3d Cir. 2021). Here, ECF No. 72 goes further and names the First Amendment expressly.

The SAC also plausibly alleges the elements identified in ***Mirabella v. Villard, 853 F.3d 641,*** 649-52 (3d Cir. 2017). Protected activity is alleged in Plaintiff's June 11 billing and medical-emergency grievances to a municipal authority and his continuing efforts to obtain governmental and judicial redress. Adverse action is alleged in ¶ 23: Defendants allegedly caused police to appear and officers warned that continued contact concerning the dispute could "turn criminal" and instructed Plaintiff not to contact the Authority except to pay. Mirabella applies an objective ordinary-firmness test; Plaintiff's decision to keep petitioning does not defeat the claim merely because he was not actually silenced.

Where the alleged retaliatory act itself consists of governmental speech, Mirabella applies a more specific rule: the communication must amount to "a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will follow." 853 F.3d at 651 (citation omitted). Paragraph 23 alleges precisely that type of warning: continued contact with the Authority regarding Plaintiff's dispute could "turn criminal." At Rule 12, that allegation cannot be reduced to a de minimis communication.

The same allegation also supports the pleaded Petition Clause theory. Mirabella separately held that a governmental no-contact directive can substantially burden the right to petition by restricting direct communication with government. Id. at 655-56. ECF No. 72 ¶ 23 alleges that Plaintiff was told not to

contact the Authority except to pay. Whether Defendants caused, adopted, or justified that restriction presents questions distinct from whether Plaintiff was actually deterred.

Causation is likewise pleaded, not left to speculation. Paragraph 23 alleges that Defendants caused the police appearance, that the warning expressly concerned Plaintiff's continued contact with the Authority "regarding his dispute," and that it occurred while Plaintiff was actively challenging the shutoff and preparing court filings. Whether discovery ultimately proves who requested the police response, what was communicated, and what motive caused it are merits questions. At Rule 12(b)(6), the pleaded causal allegations and reasonable inferences must be taken in Plaintiff's favor.

The R&R further narrows the alleged retaliation by describing ¶ 27 as a "direction to move his truck." ECF No. 90 at 15 n.2. ECF No. 72 does not plead a neutral direction to move a vehicle; it alleges a police-involved threat to tow the vehicle without a warrant or court order, after the June 27 lawsuit and June 30 restoration order. ECF No. 72 ¶¶ 24-27. The First Amendment theory must be evaluated on the full pleaded course of conduct, not selected fragments materially recast as de minimis.

Accordingly, the Court should reject the premise that no First Amendment claim was pleaded and deny dismissal of the retaliation/Petition Clause theory. At

an absolute minimum, if the Court concludes that the theory required a separately captioned count or greater factual organization, that is a readily curable pleading defect and cannot support dismissal with prejudice.

## OBJECTION IV

## THE R&R OMITS THE EXPRESS "UNLESS" CONDITION WHEN IT CHARACTERIZES POST-HEARING CONDUCT AS AUTHORIZED

Plaintiff objects to ECF No. 90 at 4-5 and 15 n.2 insofar as the R&R characterizes the June 30 order as broadly authorizing later termination after new notice. The order did not grant unconditional authority to terminate after mailing and posting. It directed restoration and stated that service could later be terminated after ten days following mailing and posting of a new notice "unless Plaintiff provides a written notice in the form required by the statute." ECF No. 5-3 at 3. The SAC alleges that Plaintiff served a corrected sworn packet on July 2 and that Defendants returned with personnel and police on July 9. ECF No. 72 ¶¶ 19(b)-(c), 27.

Plaintiff does not ask the Court at Rule 12 to decide conclusively whether the July 2 packet satisfied every requirement. The objection is narrower: the R&R cannot describe later conduct as categorically authorized while omitting the condition on which the order itself made that authority depend.

The earlier contempt disposition does not decide the completed June 23 deprivation. ECF No. 73 recommended denial of contempt principally because no

second interruption of service occurred, and ECF No. 81 adopted that recommendation. Those rulings did not adjudicate whether constitutionally adequate process preceded the June 23 shutoff. Nor may a later repair explanation for the July 9 visit displace the SAC's contrary well-pleaded allegations at Rule 12; the incident, dispatch records, communications, work order, and valve-maintenance evidence **have not** been developed.

## OBJECTION V

## THE ADVERSE DISABILITY-CAUSATION DISCUSSION USES A CHRONOLOGY CONTRARY TO THE SAC AND CONFLATES CAUSATION WITH ANIMUS

Plaintiff does not object to the recommendation allowing the institutional Title II ADA claim to proceed. He objects to ECF No. 90 at 13-14 insofar as it states that Defendants apparently resolved to terminate service before receiving disability notice and describes Section 504 as requiring discriminatory animus as the sole cause. The SAC alleges a June 11 medical-emergency communication, a physician certificate obtained June 20, hand-delivery of that certificate to Johnston and Confair on June 23 before termination, disability-related questioning by Johnston, and the actual shutoff later that day. ECF No. 72 ¶¶ 19(a), 20-22.

Section 504's sole-causation standard is demanding, but it is not a freestanding animus requirement. ***Furgess v. Pennsylvania Department of Corrections,*** 933 F.3d 285, 291-92 & n.25 (3d Cir. 2019), recognizes reasonable-

accommodation liability and explains that intentional discrimination for compensatory damages may be established through deliberate indifference - knowledge that a federally protected right is substantially likely to be violated followed by failure to act. The SAC expressly pleads failure to accommodate after actual notice. ECF No. 72 ¶¶ 20-22, 60-61. De novo review should preserve that theory and avoid adverse factual findings about timing, motive, or causation before discovery.

## OBJECTION VI

## OFFICIAL FUNDING RECORDS MATERIALLY CURE, OR AT MINIMUM RENDER CURABLE, THE SECTION 504 FUNDING ISSUE

Plaintiff objects to ECF No. 90 at 14-15. Count III expressly alleges federal financial assistance. ECF No. 72 ¶ 57(d). Official records now supply concrete sources. Lycoming County's March 30, 2023 minutes approve $250,000 in ARPA funds to JSAJWA. Its February 20, 2025 minutes approve "Subrecipient Agreement Amendment #2 with Jersey Shore Area Joint Water Authority (ARPA Funds)" and extend the agreement through September 30, 2026, encompassing the June 23, 2025 events.

TVMA's PENNVEST Funding Agreement No. 71391 identifies TVMA as Funding Recipient, incorporates Section 504 compliance, identifies U.S. EPA Clean Water State Revolving Fund money (CFDA 66.458), and describes a $14,146,008 federal CWSRF-equivalency loan with a long-term repayment period.

Plaintiff requests that the District Court receive these official records under 28 U.S.C. § 636(b)(1) or take appropriate judicial notice of their existence and contents. At minimum, they demonstrate that targeted amendment would not be futile.

Treasury's SLFRF Compliance and Reporting Guidance further confirms the federal character of the ARPA subrecipient relationship. Under "Civil Rights Compliance," Treasury states that recipients of its federal financial assistance must ensure that entities receiving that assistance **do not** deny benefits or services, or otherwise discriminate, on the basis of disability, and expressly identifies Section 504, 29 U.S.C. § 794. Supplemental Ex. D at 16. The guidance therefore reinforces the relevance of JSAJWA's ARPA subrecipient record to the funding element and, at minimum, makes targeted amendment nonfutile.

## OBJECTION VII

## THE R&R SAYS COMPARATOR ALLEGATIONS ARE MISSING; PARAGRAPHS 52-53 PLEAD THEM

Plaintiff objects to ECF No. 90 at 16-18. The R&R says it is "notably lacking" that the SAC does not plead materially different treatment of other delinquent customers. Paragraph 52 expressly alleges that Defendants honored shutoff disputes and medical accommodations for other customers but intentionally refused Plaintiff's, and ¶ 53 alleges that payment or agreement-signing conditions imposed on Plaintiff were not imposed on those customers. ECF No. 72 ¶¶ 52-53.

***Phillips v. County of Allegheny,*** 515 F.3d 224, 244-46 (3d Cir. 2008), recognizes that a class-of-one complaint need not necessarily identify comparators by name; its defect there was the absence of an allegation that similarly situated persons were treated differently. The SAC contains that allegation. Whether greater comparator detail is ultimately required is a sufficiency question, not a basis to say comparator allegations are absent. The R&R also analyzes Count II exclusively as class-of-one although the SAC pleads disability-based differential treatment and, alternatively, lack of rational basis. ECF No. 72 ¶¶ 50-53. If greater specificity is required, targeted amendment should be permitted.

## OBJECTION VIII

## THE FOURTH-AMENDMENT AND TAKINGS ANALYSES REDUCE THE PLEADED PROPERTY INTERFERENCE TO AN ABSTRACT "UTILITY SERVICE" AND DO NOT ADDRESS THE ALLEGED PHYSICAL ENTRY AND SERVICE-LINE INTERFERENCE

Plaintiff objects to ECF No. 90 at 18-21. The R&R resolves Count IV principally by treating the object of the alleged interference as abstract "access to utility service" and by concluding that a utility employee's entry to shut off water is categorically reasonable. But the SAC alleges more than loss of an intangible service: Johnston and Confair allegedly entered Plaintiff's private front yard and residential curtilage without consent, exigency, or a warrant for the purpose of shutting off water and sewage service, followed by the alleged physical shutoff and interference with the water and sewage service lines. ECF No. 72 ¶¶ 66-69. A

Fourth Amendment seizure of property occurs when government meaningfully interferes with an individual's possessory interests in property. ***United States v. Jacobsen,*** 466 U.S. 109, 113 (1984); ***Soldal v. Cook County,*** 506 U.S. 56, 61-72 (1992). Soldal further confirms that Fourth Amendment protection of possessory interests is not limited to privacy invasions or criminal investigations.

Plaintiff does not rely on unpleaded appliance-specific facts as separate objects of a seizure. The SAC itself alleges entry onto the private front yard and curtilage, followed by a physical shutoff alleged to interfere with the water and sewage service lines, and resulting loss of essential service. ECF No. 72 ¶¶ 66-69. The narrower objection is that the R&R's statement that "access to utility service" is not itself a protected effect does not separately address the physical conduct and property interference actually pleaded. Whether those allegations amount to a seizure must be evaluated under Jacobsen and Soldal; ordinary household consequences of losing residential water may be considered, if at all, only as reasonable inferences rather than as additional pleaded property.

Count V presents a more demanding Takings Clause question, and Plaintiff does not contend that temporary loss of water automatically establishes a compensable taking or that ***Tulio v. Lansdale Borough*** should be ignored. The objection is to the R&R's broader factual statement that nothing in the pleading suggests Defendants denied Plaintiff use of property. ECF No. 90 at 20. The SAC

alleges a **seven-day** termination and pleads a property-interest theory arising from the shutoff itself. ECF No. 72 ¶¶ 71-76. Plaintiff does not ask the Court to treat unlisted appliances or fixtures as separately pleaded property. Whether the property interference actually alleged satisfies the Takings Clause is a legal question for de novo review. If the present takings theory is legally or factually insufficient, the separate Rule 15 question remains whether a truthful amendment could cure the deficiency.

## OBJECTION IX

## QUALIFIED IMMUNITY CANNOT BE ENTERED BY REPLACING THE PLEADED "NO INVESTIGATION" FACT WITH "SOME PRE-DEPRIVATION CONSIDERATION"

Plaintiff objects to ECF No. 90 at 24-28. The qualified-immunity analysis defines the factual setting as one in which Plaintiff received actual notice and was afforded "some pre-deprivation consideration." ECF No. 90 at 27-28. Paragraph 40(b) alleges the opposite: the dispute went "entirely unacknowledged and uninvestigated." Qualified immunity at Rule 12 cannot be entered by resolving that factual conflict against Plaintiff. ***Thomas v. Independence Township,*** 463 F.3d 285, 291 (3d Cir. 2006). Memphis Light and Ransom had long established that water-service deprivation requires meaningful pretermination process; whether the individual defendants can ultimately establish immunity must be evaluated on the no-review facts actually pleaded.

Recent precedential Third Circuit authority reinforces that point. ***Stringer v. County of Bucks,*** 141 F.4th 76, 85-88 (3d Cir. 2025), holds that qualified immunity at Rule 12 is proper only when entitlement is established from the face of the complaint. Where a complaint plausibly alleges a constitutional violation but lacks the factual detail needed to conduct the fact-bound clearly-established inquiry, the absence of detail does not itself establish immunity and limited factual development may be appropriate. Here, the R&R does not merely lack detail; it affirmatively replaces the pleaded no-review allegation with "some pre-deprivation consideration."

The R&R states that there is "no controlling Supreme Court decision, circuit precedent, or otherwise robust legal consensus" establishing a violation in the factual setting it describes - a brief termination after actual notice and an opportunity to lodge pre-deprivation objections. ECF No. 90 at 27-28. It then characterizes the relevant utility cases as involving customers afforded "some pre-deprivation consideration." Id. at 28. But those formulations assume the very premise ¶ 40(b) disputes: that Plaintiff received pre-deprivation consideration rather than an invoked dispute procedure followed by **no investigation**. Pages 21-22 of the R&R itself quote ***Memphis Light*** and ***Ransom*** for the requirement of pretermination consideration by personnel empowered to review and correct billing error. Once the pleaded facts are used, those authorities become materially more

relevant. The R&R's nonbinding authorities do not establish a robust consensus on those pleaded facts. Cadle involved materially different entitlement and Fourth Amendment issues and did not decide a *Memphis Light* claim based on an invoked billing-review procedure alleged to have been ignored. *Southside Trust* likewise does not establish that an official may ignore an invoked review process where state law supplies a protected utility entitlement.

The First Amendment theory requires a separate clearly-established-right analysis. *Mirabella* held in 2017 that a governmental no-contact directive imposed in response to protected petitioning could constitute First Amendment retaliation. 853 F.3d at 649-52. Mirabella granted qualified immunity because that particular right had not been clearly established when the earlier conduct occurred, id. at 652-57; the conduct alleged here occurred in 2025, years after Mirabella. Plaintiff does not contend that Mirabella automatically defeats qualified immunity. He submits that controlling circuit precedent materially relevant to the alleged police-backed communication restriction cannot be bypassed through one generalized conclusion that all constitutional rights in the case were unclear.

*Manza* is especially distinguishable because it was decided on summary judgment after factual development showed actual meetings, referral of the dispute to counsel, investigation of the asserted basis for the objection, communication of the decision, another meeting, and additional time before termination. ***Manza v.***

***Newhard,*** 915 F. Supp. 2d 638, 647-50 (S.D.N.Y. 2013). Those facts are the opposite of ¶ 40(b). Qualified immunity should therefore be evaluated on the no-review facts actually pleaded. Municipal defendants, moreover, do not receive qualified immunity. ***Owen v. City of Independence,*** 445 U.S. 622, 638, 650-57 (1980). ***Accord Barna v. Board of School Directors of Panther Valley School District,*** 877 F.3d 136, 145 (3d Cir. 2017) (applying Owen and holding that a municipal entity does not receive qualified immunity from § 1983 damages liability). Thus, even if Johnston or Confair ultimately establishes qualified immunity in an individual capacity, that defense does not itself dispose of the separate constitutional and Monell claims against JSAJWA and TVMA. Independently, qualified immunity is a defense to individual-capacity damages claims; it does not itself bar otherwise available prospective injunctive relief. ***Hill v. Borough of Kutztown*****,** 455 F.3d 225, 244 (3d Cir. 2006). Thus, even if Johnston or Confair were ultimately entitled to qualified immunity from damages on a particular constitutional theory, that immunity would not by itself justify dismissal of otherwise available prospective relief on that theory.

## OBJECTION X

## THE MONELL ANALYSIS RECITES THE FINAL-POLICYMAKER ROUTE, THEN ANALYZES ONLY A SINGLE-INCIDENT FAILURE-TO-TRAIN THEORY

Plaintiff objects to ECF No. 90 at 28-33. The R&R characterizes the case as a "single episode" and Count XIII as little more than a talismanic failure-to-train recital. ECF No. 90 at 28, 31-33. The SAC alleges more: ¶ 17 alleges that training and supervision deficiencies caused personnel to "routinely misunderstood, ignored, or deliberately disregarded" controlling law and orders; ¶¶ 23-29 allege related conduct on June 25, June 30, July 9, and July 13; and ¶¶ 131-135 expressly plead a policy, custom, or practice, specified training subjects, obvious risk, deliberate indifference, causation, and injury. ECF No. 72 ¶¶ 17, 23-29, 131-135. Whether those allegations survive *Twombly* is for de novo review, but they cannot accurately be reduced to one isolated mistake.

The R&R's failure-to-train analysis does not dispose of the separately pleaded final-policymaker route. ***Board of County Commissioners of Bryan County v. Brown,*** 520 U.S. 397, 404-06 (1997), distinguishes cases in which facially lawful municipal conduct indirectly causes an employee's violation from cases in which municipal action itself violates federal law or directs or authorizes the deprivation. Likewise, ***McGreevy v. Stroup,*** 413 F.3d 359, 367-69 (3d Cir. 2005), applying Pennsylvania law, recognizes that a single decision may constitute municipal policy when made by an official possessing final, unreviewable

authority over the subject and that such authority may be delegated. See also ***Kelly v. Borough of Carlisle,*** 622 F.3d 248, 264-65 (3d Cir. 2010) (recognizing the state-law inquiry while cautioning that merely going along with a subordinate's discretionary act is not delegation of policymaking authority).

Pennsylvania law makes the allocation of that authority particularly material here. Under 53 Pa.C.S. § 5610(e), an authority board has full authority to manage the authority's properties and business and determines the respective powers and duties of its officers, agents, and employees. Plaintiff therefore does not ask the Court simply to infer that Johnston or Confair was a final policymaker from title alone. The relevant inquiry is whether the governing Boards retained final authority, delegated final authority over termination, billing-dispute review, medical accommodations, restoration, or law-enforcement involvement to Johnston, Confair, or another official, or themselves participated in the challenged decisions.

That inquiry also bears directly upon the SAC's existing John Doe allegations. Paragraph 10 identifies John Does 1-5 as presently unnamed agents, supervisors, or decisionmakers whose roles are expected to be revealed through discovery. If Authority records identify Board members or other officials who personally authorized, directed, participated in, or possessed delegated final authority over the challenged conduct, Plaintiff should be permitted to substitute or

add the responsible persons consistent with Rules 15 and 21. At minimum, if the current allegations require greater specificity concerning Board action, delegation, or the identity of a final decisionmaker, that is a claim-specific Rule 15 question rather than a basis to collapse the policymaker route into failure-to-train and dismiss it categorically with prejudice.

## OBJECTION XI

## THE R&R SAYS CLASS-BASED MOTIVATION AND AGREEMENT ARE ABSENT; PARAGRAPHS 89-91 EXPRESSLY PLEAD BOTH THE ASSERTED CLASS MOTIVE AND AN AGREEMENT

Plaintiff objects to ECF No. 90 at 33-35. The R&R first states that the SAC is "devoid" of well-pleaded facts alleging racial or other class-based invidiously discriminatory animus. But ¶ 90 expressly alleges that Defendants acted "because of and motivated by Plaintiff's status as a disabled veteran." ECF No. 72 ¶ 90. Whether that asserted class ultimately satisfies Griffin, Lake, and Farber is a separate legal question; the class-based motivation allegation itself is not absent. ***Lake v. Arnold,*** 112 F.3d 682, 685-88 (3d Cir. 1997), also forecloses any categorical premise that disability can never support § 1985(3), while leaving the particular class inquiry demanding and fact specific.

The R&R separately states that the complaint is devoid of well-pleaded facts supporting an agreement. Paragraph 89 expressly alleges that JSAJWA, TVMA, Johnston, Confair, Does, and law enforcement "**entered into an agreement**" and

identifies the alleged June 25 and July 9 conduct; ¶ 91 alleges a shared plan, mutual understanding, and overt acts; and ¶ 29 separately alleges inter-agency communications concerning the account, shutoff orders, and enforcement actions. ECF No. 72 ¶¶ 29, 88-91. Those allegations may require greater factual particularity to cross the plausibility line, but they are not nonexistent. Plaintiff requests de novo, allegation-specific review and, if necessary, leave to particularize any curable deficiency.

Even if the Court ultimately concludes that the asserted disabled-veteran classification does not satisfy § 1985(3), that does not by itself establish futility of a distinct § 1983 conspiracy theory arising from the same alleged coordinated conduct. ***Great Western Mining & Mineral Co. v. Fox Rothschild LLP,*** 615 F.3d 159, 178 (3d Cir. 2010), requires factual matter supplying plausible grounds to infer an agreement. Count VII already alleges action under color of state law, identifies federal rights allegedly targeted, and pleads an agreement, shared plan, communications, and overt acts. ECF No. 72 ¶¶ 29, 89-91. Plaintiff does not contend that those allegations necessarily satisfy § 1983 conspiracy; he preserves the narrower Rule 15 point that failure of § 1985(3)'s separate class-animus element would not categorically foreclose a truthfully particularized § 1983 conspiracy amendment.

## OBJECTION XII

## THE R&R SAYS PLAINTIFF CONFERRED NO BENEFIT; PARAGRAPH 103 PLEADS RETAINED FEES, PAYMENTS, AND CREDITS

Plaintiff objects to ECF No. 90 at 44-46. The R&R first treats an express contractual relationship as established. But the SAC expressly disputes whether a written service agreement governs the challenged fees and pleads unjust enrichment in the alternative to the extent Defendants contend that no enforceable written contract applies. ECF No. 72 ¶¶ 14-16, 102. Alternative pleading exists precisely for that unresolved circumstance. ***Hickey v. University of Pittsburgh,*** 81 F.4th 301, 315-16 (3d Cir. 2023).

The R&R then says Plaintiff "did not confer any benefit" and focuses on veterinary expenses paid to a third party. ECF No. 90 at 46. ECF No. 72, Count IX ¶ 103(a)-(b), at 29-30, identifies a different benefit: shutoff and reconnection fees plus **payments and credits** allegedly **taken or offset** from Plaintiff's account and retained by Defendants. Veterinary expenses may be consequential damages and may not themselves constitute a benefit conferred, but they are not the benefit on which Count IX ¶ 103(a)-(b) rests. De novo review should evaluate the alternative claim actually pleaded.

## OBJECTION XIII

## THE R&R DISPOSES OF A PENNSYLVANIA-CONSTITUTION DAMAGES THEORY THAT THE SAC EXPRESSLY DISCLAIMS

Plaintiff objects to ECF No. 90 at 35-36. Count VI expressly states: "Plaintiff does NOT assert independent causes of action for damages directly under the Pennsylvania Constitution." ECF No. 72 ¶ 85. It instead seeks declaratory and injunctive relief while invoking state constitutional provisions alongside the federal theories. The R&R nevertheless treats the count as a "freestanding" Pennsylvania constitutional claim and invokes the rule barring state-constitutional damages. ***Jones v. City of Philadelphia,*** 890 A.2d 1188, 1216 (Pa. Cmwlth. 2006), distinguishes unavailable damages from declaratory or prospective equitable relief. The R&R therefore disposes of a damages theory the SAC expressly disclaims without separately addressing the relief actually requested.

The R&R also calls this theory "Count VII," although ECF No. 72 labels it Count VI and labels the § 1985 claim Count VII. ECF No. 72 at 22, 25. The numbering error is not independently dispositive. It reinforces the larger objection: de novo review should decide the theory and relief actually pleaded rather than a different claim.

## OBJECTION XIV

## THE R&R'S UTPCPL, FRAUD, IIED, AND FIDUCIARY-DUTY RULINGS REQUIRE DEFENDANT-SPECIFIC AND CLAIM-SPECIFIC REVIEW

Plaintiff objects to ECF No. 90 at 36-44 to the limited extent described here. Plaintiff accepts ***Meyer v. Community College of Beaver County,*** 93 A.3d 806 (Pa. 2014), as to the municipal authorities. To the extent any UTPCPL theory is asserted against Johnston or Confair individually, however, the R&R should address that defendant-specific theory and its statutory elements rather than treating Meyer alone as dispositive of every defendant. If reliance, causation, trade-or-commerce conduct, or ascertainable loss is insufficiently pleaded as to either individual, the defect should be identified and amendment allowed if it can truthfully be cured.

The fraud discussion says it is unclear whether Confair made any representation. Paragraph 95(e), however, attributes alleged misrepresentations to Johnston and Confair and identifies oral statements, written notices, billing records, law-enforcement communications, and date ranges. ECF No. 72 ¶ 95(e). That may still require greater defendant-specific precision under Rule 9(b), but it is not an absence of any allegation. The IIED discussion likewise reduces Count XI to a one-week billing interruption even though ¶¶ 116-120 allege an aggregate course of conduct that includes a known medical emergency, police intimidation,

conditional restoration, and continuing shutoff threats. The governing standards remain demanding, but they should be applied to the allegations actually pleaded.

As to fiduciary duty, Plaintiff does not contend that an ordinary arm's-length utility relationship automatically creates the confidential relationship described by the R&R. If Count XII fails as a matter of Pennsylvania law, the Court may so hold. That conclusion, however, does not support blanket prejudice as to distinct federal constitutional claims or otherwise curable pleading defects.

## OBJECTION XV

## DISMISSAL WITH PREJUDICE IMPROPERLY EQUATES SUPERSEDED PLEADINGS WITH REPEATED FAILURE TO CURE

Plaintiff specifically objects to ECF No. 90 at 46-47 insofar as the R&R relies upon Plaintiff having filed "three separate complaints" to support dismissal with prejudice. The procedural history **does not** establish repeated failure to cure the deficiencies now identified. ECF No. 90 is the first comprehensive judicial merits analysis identifying the pleading deficiencies now relied upon to recommend prejudice. Plaintiff therefore **has not** repeatedly failed to cure those identified deficiencies after merits-based opportunities directed toward curing them.

The procedural history confirms the distinction. The motions directed to the original complaint were dismissed as moot after amendment rather than adjudicated on their merits. ECF No. 52. When Timothy Confair was later

identified, the Court itself directed Plaintiff to move to amend to name him. ECF No. 69. Plaintiff complied, and ECF No. 71 granted amendment, expressly recognized that Rule 15 **strongly favors** amendment and that leave should be liberally granted when justice requires, held that the amended pleading superseded the prior pleading, and dismissed the pending motions to dismiss as moot. The SAC, ECF No. 72, is thus the first operative pleading subjected to the comprehensive merits analysis in ECF No. 90.

The record also shows that Plaintiff sought curative leave before ECF No. 90 ever identified these asserted defects. ECF No. 58 at 38 expressly requested leave under Rule 15(a)(2) if any constitutional theory required more specific enumeration. When Confair's status was later disputed, Confair himself argued that Rule 15(a)(2) required a further amended complaint formally naming him. ECF No. 62 at 2-3. The amendment that produced ECF No. 72 was therefore not a failed attempt to cure the substantive defects first identified in ECF No. 90.

Against that history, three docketed pleadings do not themselves establish Foman's "repeated failure to cure deficiencies by amendments previously allowed." ***Foman v. Davis,*** 371 U.S. 178, 182 (1962). ***Grayson v. Mayview State Hospital,*** 293 F.3d 103, 108-09 (3d Cir. 2002), is especially close: even receipt of motions to dismiss and a magistrate judge's recommendation identifying pleading deficiencies was not the functional equivalent of being expressly afforded an opportunity to

amend and cure them. ***Alston v. Parker,*** 363 F.3d 229, 235-36 (3d Cir. 2004), likewise requires a curative opportunity unless amendment would be inequitable or futile. Nothing in the R&R identifies bad faith, dilatory motive, or unfair prejudice from a narrowly tailored curative amendment, and the record shows Plaintiff complied when the Court directed amendment to identify Confair.

***Phillips v. County of Allegheny,*** 515 F.3d 224, 245-46 (3d Cir. 2008), makes the point concrete for Equal Protection. The Third Circuit agreed that the class-of-one allegations there were inadequately pleaded but nevertheless held dismissal premature and remanded for an opportunity to amend. Present insufficiency therefore does not itself establish futility.

The R&R's own language confirms that several identified defects concern factual particularity rather than categorical legal impossibility. Equal Protection fails "in the absence of further well-pleaded facts"; § 1985 is described as deficient "in its current form" and for lack of "sufficient factual detail"; fraud fails "in the absence of further well-pleaded facts"; and Section 504 is expressly treated as curable through additional funding allegations. Those formulations are difficult to reconcile with the blanket conclusion that essentially all other defects "cannot be cured by any more artful form of pleading."

Plaintiff does not seek endless amendment and does not contend that Rule 15 requires amendment of a claim foreclosed by a categorical substantive rule. He

requests claim-specific analysis. Potentially curable matters include comparator particularity, defendant-specific Rule 9(b) attribution, the legal source and scope of final policymaking authority, identification of presently unknown actors or Board participation where a good-faith factual basis exists, federal-funding specificity, and clarification or organization of constitutional theories already referenced in the SAC. Most notably, if the only perceived defect in the First Amendment theory is the absence of a separately captioned count, that defect can be cured directly without altering the underlying factual allegations. A curable defect cannot justify prejudice merely because earlier pleadings were superseded for other reasons.

ECF No. 90 therefore cannot simultaneously function as the first comprehensive judicial identification of these alleged pleading deficiencies and as proof that Plaintiff repeatedly failed to cure those same deficiencies. Plaintiff respectfully requests a claim-by-claim futility determination and a defined curative opportunity for any deficiency based on factual specificity unless the Court independently determines that amendment of that particular claim would be inequitable or futile.

## CONCLUSION

Plaintiff respectfully requests that the Court conduct de novo review and: (1) reject the recommendation to dismiss Count I and permit the Fourteenth Amendment procedural-due-process claim to proceed; (2) reject the R&R's

conclusion that no First Amendment claim was pleaded and permit the First Amendment retaliation/Petition Clause theory to proceed; (3) adopt the favorable recommendation allowing the institutional Title II ADA claim to proceed; (4) consider the official Section 504 funding records or permit targeted amendment; (5) decide qualified immunity and Monell on the facts and liability routes actually pleaded; (6) conduct allegation-specific review of the remaining federal and state theories identified in these objections; and (7) reject dismissal with prejudice as to any deficiency that can be cured by a truthful, targeted amendment consistent with Rule 11.

Respectfully submitted,

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2026, I caused a true and correct copy of the foregoing PLAINTIFF'S SPECIFIC OBJECTIONS TO R&R (ECF 90.) to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(E), upon the following counsel of record:

Sean P. McDonough, Esq. (PA I.D. #47428)
Dougherty, Leventhal & Price, LLP
459 Wyoming Avenue
Kingston, PA 18704
E-mail: smcdonough@dlplaw.com

Michael J. Crocenzi, Esq. (PA I.D. #66255)
Barley Snyder
100 East Market Street
York, PA 17401
E-mail: mcrocenzi@barley.com

Sarah L. Doyle, Esq. (PA I.D. #321149)
Barley Snyder
100 East Market Street
York, PA 17401
E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.
/s/ Dion Storm Holland
Dion Storm Holland, Pro Se
In Care of: 566 High Street
Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com