**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DION STORM HOLLAND,<br>Plaintiff,<br><br>v.<br>JERSEY SHORE AREA JOINT WATER AUTHORITY, TIADAGHTON VALLEY MUNICIPAL AUTHORITY, ERIC S. JOHNSTON, TIMOTHY CONFAIR, JOHN DOE 1-5 in their individual capacities,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 4:25-CV-01323<br><br>The Honorable Keli M. Neary<br>(JUDGE)<br>(MAG. JUDGE CARLSON) |

**<u>BRIEF IN SUPPORT OF PLAINTIFF'S SPECIFIC OBJECTIONS TO THE REPORT AND RECOMMENDATION (ECF NO. 90)</u>**

Respectfully submitted,

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com

**TABLE OF CONTENTS**

I. INTRODUCTION 5

II. PROCEDURAL HISTORY 6, 7

III. STATEMENT OF FACTS 7

IV. QUESTIONS PRESENTED 8

V. STANDARD OF REVIEW 8, 9

VI. ARGUMENT 9

A. Procedural Due Process 9, 10 , 11

B. First Amendment Retaliation and Petition Clause 12, 13, 14, 15

C. Disability Claims and Federal Funding 15, 16,

D. Equal Protection 16, 17

E. Fourth Amendment and Takings 17, 18

F. Qualified Immunity and Monell 18, 19, 20, 21

G. Section 1985(3) and Unjust Enrichment 21

H. State-Law Issues and Amendment 22, 23

VII. CONCLUSION 24

CERTIFICATE OF WORD COUNT 25

CERTIFICATE OF SERVICE 26

# TABLE OF AUTHORITIES

**Cases**

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) 23

Barna v. Board of School Directors of Panther Valley School District, 877 F.3d 136 (3d Cir. 2017) 19

Foman v. Davis, 371 U.S. 178 (1962) 22

Furgess v. Pa. Dep't of Corr., 933 F.3d 285 (3d Cir. 2019) 15

Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010) 21

Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir. 2002) 23

Hickey v. University of Pittsburgh, 81 F.4th 301 (3d Cir. 2023) 21

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) 20

Johnson v. City of Shelby, 574 U.S. 10 (2014) 12

Jones v. City of Philadelphia, 890 A.2d 1188 (Pa. Cmwlth. Ct. 2006) 22

Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997) 21

McGreevy v. Stroup, 413 F.3d 359 (3d Cir. 2005) 20

Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978) 5, 9-11, 18

Meyer v. Community College of Beaver County, 93 A.3d 806 (Pa. 2014) 22

Mirabella v. Villard, 853 F.3d 641 (3d Cir. 2017) 12-13, 19

Monell v. Department of Social Services, 436 U.S. 658 (1978) 8, 18, 20, 24

Owen v. City of Independence, 445 U.S. 622 (1980) 19

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) 20

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) 9, 17, 23

Ransom v. Marrazzo, 848 F.2d 398 (3d Cir. 1988) 9, 10, 18

Soldal v. Cook County, 506 U.S. 56 (1992) 17

Stringer v. County of Bucks, 141 F.4th 76 (3d Cir. 2025) 18

Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006) 18

Tulio v. Lansdale Borough, 660 F. Supp. 3d 368 (E.D. Pa. 2023) 18

United States v. Jacobsen, 466 U.S. 109 (1984) 17

United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010) 11

Vogt v. Wetzel, 8 F.4th 182 (3d Cir. 2021) 12

Ziegler v. City of Reading & Reading Area Water Auth., No. 1060 C.D. 2013 (Pa. Cmwlth. Jan. 24, 2014) (unreported) 10

**Other Authorities**

U.S. Department of the Treasury, Coronavirus State and Local Fiscal Recovery Funds Compliance and Reporting Guidance, Version 10.1 (Sept. 23, 2025) 15

**Statutes and Rules**

28 U.S.C. § 636(b)(1) 8, 16
29 U.S.C. § 794 16
42 U.S.C. § 1983 12, 21
42 U.S.C. § 1985(3) 21
53 Pa.C.S. § 5610(e) 20
Fed. R. Civ. P. 12(b)(6) 9
Fed. R. Civ. P. 15(a) 6, 20, 23
Fed. R. Civ. P. 72(b)(3) 8
M.D. Pa. L.R. 7.8 25
M.D. Pa. L.R. 72.3 8

## I. INTRODUCTION

The principal constitutional recommendations in ECF No. 90 rest on two errors apparent from the face of the operative pleading. First, the R&R correctly states the Memphis Light rule - established water service is protected property and a disputed bill requires meaningful pretermination consideration by personnel empowered to review and correct error - but then treats Plaintiff's transmission of an objection as though transmission itself established that review occurred. ECF No. 72 ¶ 40(b) alleges the opposite: the pretermination dispute went unacknowledged and uninvestigated.

Second, the R&R states that ECF No. 72 "does not specifically state a First Amendment claim." ECF No. 90 at 15 n.2. The pleading itself disproves that premise. It expressly invokes the First Amendment, expressly alleges retaliation for protected petitioning, alleges a police warning that continued contact concerning the dispute could "turn criminal," and expressly requests First Amendment relief. ECF No. 72 at 2, ¶¶ 23, 83, Prayer ¶ 136(A). The R&R then evaluates only selected fragments of the alleged retaliatory course of conduct.

Those two errors concern the constitutional core of this action. Other recommendations similarly describe allegations as absent when ECF No. 72 contains them, assume default or pretermination consideration contrary to the pleading, or collapse distinct liability routes. The Court may ultimately reject a

claim on its legal merits, but Rule 12 does not permit dismissal by replacing a well-pleaded allegation with its opposite or by narrowing the claim to facts different from those pleaded.

Plaintiff therefore asks the Court to reject dismissal of the Fourteenth Amendment procedural-due-process claim and the First Amendment retaliation/Petition Clause theory; adopt the favorable institutional Title II recommendation; consider the concrete Section 504 funding record or permit targeted amendment; and conduct claim-specific review of the remaining objections and of the recommendation for dismissal with prejudice.

## II. PROCEDURAL HISTORY

Plaintiff began this action in state court after the June 2025 termination; Defendants removed it. The original dismissal motions were mooted after the FAC superseded the original complaint. ECF No. 52. When Timothy Confair was identified, the Court directed Plaintiff to seek amendment, ECF No. 69, granted it, emphasized Rule 15's liberal policy, and dismissed the FAC motions as moot because the SAC superseded that pleading. ECF Nos. 70-71. The SAC, ECF No. 72, is therefore the first operative pleading subjected to a comprehensive merits recommendation. ECF No. 90 recommends that the institutional Title II claim proceed, § 504 be dismissed without prejudice, and all other claims be dismissed with prejudice. The separate contempt ruling does not resolve the June 23 due-

process issue: ECF No. 73 recommended denial because no second interruption occurred, and ECF No. 81 adopted that recommendation.

## III. STATEMENT OF FACTS

The SAC alleges a June 11 shutoff notice followed the same day by a written dispute of "all charges" and a medical-emergency notice. ECF No. 72 ¶¶ 13, 19(a). Rule VII.F allegedly offered an "investigation," yet Plaintiff alleges the June 11 and July 2 disputes went "entirely unacknowledged and uninvestigated." Id. ¶ 40(b). He obtained a physician certificate June 20, hand-delivered it to Johnston and Confair before the June 23 shutoff, and alleges service remained off until June 30. Id. ¶¶ 18, 20-22, 25.

The SAC further alleges a June 25 police warning that continued contact over the dispute could "turn criminal"; a June 27 state filing; a June 30 restoration order; a corrected sworn July 2 submission; and a July 9 return by personnel and police with a threat to tow Plaintiff's vehicle without warrant or court order. Id. ¶¶ 23-27. It separately pleads review defects, First Amendment retaliation, comparators, federal funding, conspiracy allegations, retained benefits, and municipal policy/custom. Id. ¶¶ 40(b), 43, 52-53, 57(d), 83, 88-91, 102-03, 129-35.

## IV. QUESTIONS PRESENTED

1. Whether Count I plausibly alleges denial of pretermination process where ECF No. 72 alleges that Plaintiff disputed the charges before the June 23 termination and that the Authority's promised investigation never occurred.

2. Whether the R&R may treat a First Amendment retaliation/Petition Clause theory as unpled where ECF No. 72 expressly invokes the First Amendment, expressly pleads retaliation, and alleges a police warning restricting continued contact over the dispute.

3. Whether qualified immunity and Monell may be resolved at Rule 12 by assuming admitted default, "some pre-deprivation consideration," or only a single isolated episode contrary to the operative pleading, and whether each constitutional theory must receive its own immunity analysis.

4. Whether the official federal-funding record and other identified pleading details warrant continuation or targeted amendment, and whether superseded pleadings can establish repeated failure to cure where ECF No. 90 is the first comprehensive merits analysis identifying the asserted defects.

## V. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), Rule 72(b)(3), and Local Rule 72.3, the District Court determines de novo the portions of the R&R to which specific objection is made and may accept, reject, or modify the recommendation, receive

further evidence, or recommit the matter. On Rule 12(b)(6), well-pleaded factual allegations and reasonable inferences are taken in Plaintiff's favor. ***Phillips v. County of Allegheny,*** 515 F.3d 224, 231-34 (3d Cir. 2008). De novo review therefore cannot begin by replacing a pleaded factual allegation with its opposite.

## VI. ARGUMENT

### A. The R&R states the Memphis Light rule, then applies its opposite: transmission of an objection is not review of that objection.

The R&R correctly recognizes a protected property interest in established utility service and accurately states Memphis Light's governing rule. ECF No. 90 at 21-22. Before termination, a customer disputing the bill must have an opportunity to present the complaint to responsible personnel empowered to review the dispute and rectify error. ***Memphis Light, Gas & Water Division v. Craft,*** 436 U.S. 1, 16 n.17, 18-22 (1978). ***Ransom v. Marrazzo,*** 848 F.2d 398, 409 (3d Cir. 1988), applies that protected-interest principle in this Circuit. Even if Defendants ultimately prove some amount was delinquent, delinquency does not itself supply the constitutionally required process.

The R&R then applies a different rule. It says the required process is "precisely what happened here" because Plaintiff received actual notice, transmitted written objections, and later obtained state-court relief. ECF No. 90 at 22-23. But ¶ 40(b) alleges that JSAJWA's own Rule VII.F offered an investigation and that the disputes went "entirely unacknowledged and uninvestigated." For the

completed June 23 deprivation, the critical pretermination allegation is the June 11 dispute. Actual notice establishes that Plaintiff knew a shutoff was threatened; it does not establish that the Authority considered the disputed basis for termination. Transmission is not adjudication; invocation is not review.

The state court's conclusion that the June 11 submission did not satisfy the Water Services Act does not establish that the Authority investigated the billing dispute. Those are separate questions. Even an imperfect objection does not become proof that government performed the review Memphis Light requires. ECF No. 72 pleads submission followed by governmental silence. At Rule 12, that allegation must be taken as true unless an incorporated document directly and indisputably contradicts it; the R&R may not simply infer consideration from the fact that an objection was sent.

*Ziegler* is unusually close. A Pennsylvania municipal-water customer submitted the Authority's complaint form and received no response. Applying *Memphis Light* and *Ransom,* the Commonwealth Court concluded that the procedure fell short because there was no indication the Authority considered the complaint or offered consultation with personnel empowered to resolve it. ***Ziegler v. City of Reading & Reading Area Water Authority,*** No. 1060 C.D. 2013, slip op. at 8-9 (Pa. Cmwlth. Jan. 24, 2014) (unreported). Ziegler did not impose a formal

evidentiary hearing requirement; its relevance is the distinction between having a procedure on paper and actually providing the required consideration.

Later litigation cannot retroactively supply the pleaded missing pretermination process. Memphis Light rejected a pretermination injunction, post-termination damages action, and refund action as substitutes for the utility's own pretermination review. 436 U.S. at 19-22. *Espinosa* is materially different: despite defective service, the creditor actually received the bankruptcy plan and possessed a real adjudicative opportunity to object. ***United Student Aid Funds, Inc. v. Espinosa,*** 559 U.S. 260, 272 (2010). It does not hold that mere awareness of an impending deprivation substitutes for an independently required opportunity for review.

The R&R compounds the problem by recasting Count I as though Plaintiff "insists" only on a second mailed notice and by calling its contrary reconstruction "immutable facts." ECF No. 90 at 23. ECF No. 72 pleads both notice and review defects. The R&R also labels the claim "Fifth Amendment Procedural Due Process" although Count I expressly invokes the Fourteenth Amendment, and it gives the shutoff date as June 3 although the SAC alleges June 23. Those errors are not independently dispositive; they reinforce why de novo review must return to the pleading itself. On the facts alleged, Count I plausibly states a procedural-due-process claim and should proceed.

**B. The First Amendment retaliation/Petition Clause theory is expressly pleaded and must be evaluated on the full allegations.**

Footnote 2 states that the SAC "does not specifically state a First Amendment claim." ECF No. 90 at 15 n.2. That premise is contradicted by the pleading three times over: the jurisdiction section expressly invokes the First Amendment; ¶ 83 alleges retaliation "**actionable under the First Amendment and 42 U.S.C. § 1983**"; and the Prayer seeks **declaratory** relief for **First Amendment violations**. ECF No. 72 at 2, ¶ 83, Prayer ¶ 136(A). Paragraph 23 supplies the central facts. ***Johnson v. City of Shelby,*** 574 U.S. 10, 11-12 (2014), rejects threshold dismissal merely because a plausible federal theory is imperfectly labeled, and ***Vogt v. Wetzel,*** 8 F.4th 182, 185 (3d Cir. 2021), requires liberal construction of a pro se pleading and **application of the relevant legal principle** even when it is not named. Here, the First Amendment is named expressly.

***Mirabella v. Villard,*** 853 F.3d 641, 649-52 (3d Cir. 2017), supplies the governing elements: protected conduct, retaliatory action sufficient to deter a person of ordinary firmness, and causation. ECF No. 72 plausibly alleges each. The June 11 billing and medical-emergency grievances to a municipal authority and Plaintiff's continuing efforts to obtain governmental and judicial redress are petitioning activity. Paragraph 23 alleges that Defendants then caused police to appear and that officers warned continued contact with the Authority "regarding

his dispute" could "turn criminal" and instructed him not to contact the Authority except to pay.

That alleged warning cannot be dismissed merely because Plaintiff nevertheless filed suit two days later. Mirabella holds that adversity is judged objectively: the question is whether the governmental act would deter a person of ordinary firmness, not whether this plaintiff was actually silenced. 853 F.3d at 650. A police-backed warning that continued contact with a governmental authority over an ongoing grievance could become criminal plausibly crosses that threshold. Whether Defendants caused the warning, whether the officers made the statements alleged, and whether retaliatory motive is ultimately proven are merits questions; the SAC alleges the causal link directly and the warning itself allegedly referred to Plaintiff's continued contact about the dispute.

Mirabella also supplies a more specific standard because the alleged retaliatory act itself included governmental speech: official speech is actionable when it constitutes "a threat, coercion, or intimidation" intimating that punishment, sanction, or adverse governmental action will follow. 853 F.3d at 651. The alleged warning that continued contact about the dispute could "turn criminal" plausibly fits that standard. The same allegation also implicates the Petition Clause directly. Mirabella separately held that a governmental no-contact directive can substantially burden petitioning by restricting communication with government. Id.

at 655-56. Paragraph 23 alleges an instruction not to contact the Authority except to pay. Those theories should be evaluated on the pleaded facts, not as de minimis conduct.

The R&R also materially narrows the later allegations when it characterizes ¶ 27 as a "direction to move his truck." ECF No. 90 at 15 n.2. The SAC alleges instead that, after Plaintiff filed suit and obtained emergency relief, Defendants returned with field workers and police and threatened to tow his vehicle without a warrant or court order. ECF No. 72 ¶¶ 24-27. The R&R may ultimately determine that some individual event is insufficient, but it cannot evaluate retaliation by omitting the June 25 warning and materially recasting the July 9 allegation.

Nor was every later act categorically authorized by the June 30 order. The order permitted renewed termination after mailing and posting of a new ten-day notice "unless Plaintiff provides a written notice in the form required by the statute." ECF No. 5-3 at 3. The SAC alleges a corrected sworn July 2 submission followed by the July 9 return. ECF No. 72 ¶¶ 19(b)-(c), 27. Plaintiff need not prove now that the July 2 packet ultimately satisfied the condition. The narrower Rule 12 point is that a conditional order cannot be treated as unconditional authorization.

The Court should therefore reject the R&R's premise that no First Amendment claim was pleaded and deny dismissal of the retaliation/Petition Clause theory. Alternatively, if the Court concludes that the existing allegations

needed a separately captioned count or greater organization, the proper course is targeted amendment rather than dismissal with prejudice.

**C. The disability claims must be evaluated on the pleaded chronology and the concrete federal-funding record.**

Plaintiff asks the Court to adopt the recommendation allowing the institutional Title II ADA claim to proceed. He objects only to adverse factual premises that could improperly narrow that surviving claim. The R&R says Defendants apparently resolved to terminate service before disability notice. ECF No. 90 at 13-14. The SAC alleges a June 11 medical-emergency communication, a June 20 physician certificate, hand-delivery to Johnston and Confair before the June 23 termination, disability-related questioning, and the shutoff later that day. ECF No. 72 ¶¶ 19(a), 20-22. That chronology must be taken as pleaded.

The R&R also describes Section 504 in terms of discriminatory animus as the sole cause. ***Furgess v. Pennsylvania Department of Corrections,*** 933 F.3d 285, 291-92 & n.25 (3d Cir. 2019), recognizes the demanding causation standard while also recognizing reasonable-accommodation liability and deliberate indifference as a route to intentional discrimination for compensatory damages. ECF No. 72 ¶¶ 60-61 plead refusal to modify after notice. The reason an account entered collection does not by itself resolve an accommodation claim arising from what happened after disability notice.

The funding issue is concrete and curable. Count III already alleges federal financial assistance. ECF No. 72 ¶ 57(d). Official Lycoming County records identify JSAJWA as an ARPA subrecipient during the relevant period, and TVMA's PENNVEST Funding Agreement No. 71391 identifies TVMA as a Funding Recipient, incorporates Section 504, and identifies EPA Clean Water State Revolving Fund money. Under 28 U.S.C. § 636(b)(1), the District Court may receive further evidence on de novo review. At minimum, these records defeat a blanket futility determination and warrant targeted amendment if the Court requires greater funding specificity.

Treasury's SLFRF Compliance and Reporting Guidance confirms the link. Under **"Civil Rights Compliance,"** Treasury states that recipients of its federal financial assistance must ensure that entities receiving that assistance **do not deny benefits or services, or otherwise discriminate**, on the basis of disability, and expressly identifies Section 504, 29 U.S.C. § 794. Supplemental Ex. D at 16. That official guidance materially reinforces the relevance of JSAJWA's ARPA subrecipient record to Section 504 and, at minimum, defeats futility.

**D. The Equal Protection dismissal overlooks the comparator allegations actually pleaded.**

The R&R says it is "notably lacking" that the SAC does not allege different treatment of other delinquent customers. ECF No. 90 at 17-18. Paragraphs 52-53 allege that Defendants honored other customers' shutoff disputes and medical

accommodations but not Plaintiff's and imposed conditions on him not imposed on those customers. ***Phillips v. County of Allegheny,*** 515 F.3d 224, 244-46 (3d Cir. 2008), explains that class-of-one pleading need not necessarily name specific comparators; the complaint must allege differential treatment from similarly situated persons. The SAC does. Whether greater comparator detail is needed is different from saying no comparator allegation exists. The SAC also pleads disability-based differential treatment and, alternatively, lack of rational basis. ECF No. 72 ¶¶ 50-53.

**E. The Fourth Amendment and Takings analyses should address the pleaded physical entry and property interference, not only abstract utility service.**

Count IV alleges more than loss of an abstract utility service. It alleges that Johnston and Confair entered Plaintiff's private front yard and residential curtilage without consent, exigency, or a warrant for the purpose of shutting off service, followed by physical interference with the water and sewage service lines. ECF No. 72 ¶¶ 66-69. A Fourth Amendment seizure occurs when government meaningfully interferes with a possessory interest, ***United States v. Jacobsen,*** 466 U.S. 109, 113 (1984), and ***Soldal v. Cook County,*** 506 U.S. 56, 61-72 (1992), confirms that the Amendment is not confined to privacy invasions or criminal investigations. The R&R's conclusion that abstract access to utility service is not a protected "effect" does not separately resolve the physical-entry and property-interference allegations.

Count V is materially harder under ***Tulio v. Lansdale Borough,*** 660 F. Supp. 3d 368, 379-81 (E.D. Pa. 2023), which rejected a takings theory arising from water termination for nonpayment. Plaintiff does not argue that temporary loss of water automatically establishes a taking. The narrower point is that any ruling on Count V should not be used to support blanket prejudice as to analytically distinct constitutional claims.

**F. Qualified immunity and Monell must be decided on the factual scenario actually pleaded and by distinct liability routes.**

The R&R grants qualified immunity by defining the relevant factual setting as a brief termination after actual notice, an opportunity to lodge objections, and "some pre-deprivation consideration." ECF No. 90 at 27-28. Paragraph 40(b) alleges no such consideration: the dispute went "entirely unacknowledged and uninvestigated." ***Thomas v. Independence Township***, 463 F.3d 285, 291 (3d Cir. 2006), permits qualified immunity at Rule 12 only when the defense is established on the face of the complaint. Because Memphis Light and Ransom clearly identified meaningful pretermination review as the governing utility-process requirement, immunity must be assessed on the no-review facts actually pleaded, not on the R&R's contrary reconstruction.

***Stringer v. County of Bucks,*** 141 F.4th 76, 85-88 (3d Cir. 2025), now reinforces Thomas. Stringer holds that Rule 12 qualified immunity is proper only when entitlement is established on the face of the complaint. Where a complaint

states a constitutional violation but lacks enough factual detail to conduct the fact-bound clearly-established inquiry, the lack of detail does not itself establish immunity and limited factual development may be appropriate. Here, the problem is stronger: the R&R affirmatively substitutes "some pre-deprivation consideration" for the pleaded allegation of no investigation.

The First Amendment theory requires its own clearly-established-right inquiry. Mirabella held in 2017 that a governmental no-contact directive imposed in response to protected petitioning could constitute First Amendment retaliation, while granting qualified immunity because that particular right had not been clearly established when the earlier conduct occurred. 853 F.3d at 649-57. The events alleged here occurred in 2025, after Mirabella, and involve an alleged police warning that continued contact over the grievance could "turn criminal." Plaintiff does not contend that Mirabella automatically defeats immunity; he submits that this controlling precedent must be considered in a claim-specific analysis rather than subsumed into a generalized conclusion about a brief utility shutoff.

Municipal entities do not receive qualified immunity. ***Owen v. City of Independence,*** 445 U.S. 622, 638, 650-57 (1980); ***Barna v. Board of School Directors of Panther Valley School District,*** 877 F.3d 136, 145 (3d Cir. 2017). Thus, even if Johnston or Confair ultimately establishes individual immunity from damages on a particular claim, that defense does not erase the antecedent

constitutional question or independently dispose of a properly pleaded Monell theory against JSAJWA or TVMA. Independently, qualified immunity does not itself bar otherwise available prospective injunctive relief. ***Hill v. Borough of Kutztown*,** 455 F.3d 225, 244 (3d Cir. 2006).

The Monell analysis also should not be confined to a single-incident failure-to-train theory. ECF No. 72 alleges repeated related conduct across several dates and pleads policy/custom and training deficiencies. More importantly, the R&R itself recites the final-policymaker route. ***Pembaur v. City of Cincinnati,*** 475 U.S. 469, 480-81 (1986), and ***McGreevy v. Stroup,*** 413 F.3d 359, 367-69 (3d Cir. 2005), recognize that a single decision can constitute municipal policy when made by an official possessing final, unreviewable authority, including delegated authority. Under 53 Pa.C.S. § 5610(e), an authority board manages the authority and determines the powers and duties of officers, agents, and employees. Whether final authority was retained by the Boards, delegated, or exercised by an unidentified decisionmaker is therefore a state-law and factual question, not a reason to collapse every Monell route into failure to train.

If ECF No. 72 requires greater specificity concerning Board action, delegation, or presently unidentified decisionmakers, that is a targeted Rule 15 issue. It is not a basis to treat the final-policymaker route as though it was never

raised or to grant the municipal defendants the functional equivalent of qualified immunity.

**G. The § 1985(3) and unjust-enrichment recommendations likewise rest on allegations the SAC actually contains.**

The R&R says class-based motive and agreement are absent. ECF No. 90 at 34-35. Yet ¶ 90 alleges motivation based on Plaintiff's asserted disabled-veteran status; ¶ 89 alleges an agreement; ¶ 91 alleges a shared plan and overt acts; and ¶ 29 alleges inter-agency communications. ECF No. 72 ¶¶ 29, 88-91. ***Lake v. Arnold,*** 112 F.3d 682, 685-88 (3d Cir. 1997), does not automatically establish that the asserted class satisfies § 1985(3). The narrower point is that the allegations are not absent, and any failure of § 1985(3)'s class-animus element does not alone establish futility of a distinct, adequately particularized § 1983 conspiracy theory. See ***Great Western Mining & Mineral Co. v. Fox Rothschild LLP,*** 615 F.3d 159, 178 (3d Cir. 2010).

Count IX presents a similar mismatch. ECF No. 72 disputes whether an express written agreement governs the challenged fees and pleads unjust enrichment in the alternative. ECF No. 72 ¶¶ 14-16, 102; see ***Hickey v. University of Pittsburgh,*** 81 F.4th 301, 315-16 (3d Cir. 2023). And while the R&R focuses on veterinary expenses, ¶ 103(a)-(b) identifies the asserted benefit as fees, payments, and credits allegedly retained by Defendants. Whether that alternative theory ultimately succeeds is different from saying no benefit was pleaded.

**H. The state-law issues and the dismissal-with-prejudice recommendation require claim-specific treatment.**

Count VI expressly disclaims independent damages under the Pennsylvania Constitution and instead seeks declaratory and injunctive relief. ECF No. 72 ¶ 85. The R&R nevertheless disposes of a freestanding state-constitutional damages theory. ***Jones v. City of Philadelphia,*** 890 A.2d 1188, 1216 (Pa. Cmwlth. 2006), distinguishes unavailable damages from prospective equitable relief. Whatever Count VI's ultimate scope, the Court should decide the relief actually pleaded.

For the remaining state claims, Plaintiff accepts ***Meyer v. Community College of Beaver County,*** 93 A.3d 806 (Pa. 2014), as to the municipal authorities under the UTPCPL and does not ask the Court to relax Pennsylvania's demanding fraud, IIED, or fiduciary-duty standards. His narrower point is that the R&R should apply those standards to the allegations actually made, and that a curable defendant-specific Rule 9(b) defect should be treated as an amendment question rather than proof that every claim is categorically futile.

The broader prejudice recommendation is different. ECF No. 90 relies on three complaints, but ***Foman v. Davis,*** 371 U.S. 178, 182 (1962), addresses repeated failure to cure deficiencies by amendments previously allowed. The original dismissal motions were mooted when the FAC superseded the original complaint; later motions were mooted after the Court itself directed amendment to name Confair and granted it. ECF Nos. 52, 69-71. ECF No. 90 is the first

comprehensive merits analysis identifying the present defects. *Grayson v. Mayview State Hospital,* 293 F.3d 103, 108-09 (3d Cir. 2002), ***Alston v. Parker,*** 363 F.3d 229, 235-36 (3d Cir. 2004), and ***Phillips v. County of Allegheny,*** 515 F.3d 224, 245-46 (3d Cir. 2008), require a curative opportunity in a civil-rights case unless amendment is inequitable or futile.

The record also negates repeated curative failure. Before ECF No. 90 identified these defects, Plaintiff expressly requested leave to amend if constitutional theories required greater specificity. ECF No. 58 at 38. Confair later argued that Rule 15(a)(2) required a further amended complaint formally naming him. ECF No. 62 at 2-3. The resulting SAC was therefore not a failed attempt to cure the substantive deficiencies first identified in ECF No. 90.

The R&R itself repeatedly describes defects as missing factual detail and expressly treats Section 504 as curable. Most strikingly, it says the First Amendment claim was not specifically stated even though ECF No. 72 names it. If the Court believes a separately captioned First Amendment count or additional organization is necessary, that defect is plainly curable. ECF No. 90 cannot simultaneously be the first comprehensive identification of these alleged deficiencies and proof that Plaintiff repeatedly failed to cure them.

## VII. CONCLUSION

The Court should adopt the favorable recommendation allowing the institutional Title II ADA claim to proceed; reject dismissal of Count I and permit the Fourteenth Amendment procedural-due-process claim to proceed; reject the conclusion that no First Amendment claim was pleaded and permit the retaliation/Petition Clause theory to proceed; consider the official Section 504 funding record or permit targeted amendment; decide qualified immunity claim-by-claim on the facts actually alleged; evaluate Monell through all pleaded routes; conduct allegation-specific review of the remaining federal and state objections; and reject dismissal with prejudice as to any deficiency that can be cured by a truthful, targeted amendment consistent with Rule 11.

Respectfully submitted,

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se

In care of: 566 High Street

Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com

**CERTIFICATE OF WORD COUNT**

I certify that this brief contains 4,908 words, as calculated by the word-processing system, and does not exceed the 5,000-word limit of Local Rule 7.8(b)(2).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2026, I caused a true and correct copy of the foregoing BRIEF IN SUPPORT OF SPECIFIC OBJECTIONS TO R&R to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(E), upon the following counsel of record:

Sean P. McDonough, Esq. (PA I.D. #47428)
Dougherty, Leventhal & Price, LLP
459 Wyoming Avenue
Kingston, PA 18704
E-mail: smcdonough@dlplaw.com

Michael J. Crocenzi, Esq. (PA I.D. #66255)
Barley Snyder
100 East Market Street
York, PA 17401
E-mail: mcrocenzi@barley.com

Sarah L. Doyle, Esq. (PA I.D. #321149)
Barley Snyder
100 East Market Street
York, PA 17401
E-mail: sdoyle@barley.com

I declare under penalty of perjury that the foregoing is true and correct.
/s/ Dion Storm Holland
Dion Storm Holland, Pro Se
In Care of: 566 High Street
Jersey Shore, Pennsylvania 17740

(814) 574-9664 subarudion@gmail.com