**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DION STORM HOLLAND, | Civil No. 4:25-CV-01323-KMN |
| Plaintiff, | (Judge Keli M. Neary) |
| v. | (Magistrate Judge Carlson) |
| JERSEY SHORE AREA JOINT WATER AUTHORITY, et al., | |
| Defendants. | |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL OFFICIAL RECORDS AND EXHIBIT INDEX IN SUPPORT OF SPECIFIC OBJECTIONS TO ECF NO. 90**

1. Plaintiff submits the attached official governmental records in support of Objection VI to the Report and Recommendation, ECF No. 90 at 14-15, concerning the Rehabilitation Act's federal-financial-assistance element.

2. The operative Second Amended Complaint already alleges that Defendants are recipients of federal financial assistance. ECF No. 72 ¶ 57(d). The attached records are offered to supply concrete funding-source and timing detail relevant to de novo review.

3. Under 28 U.S.C. § 636(b)(1), the District Court may receive further evidence when conducting de novo review. Plaintiff respectfully requests consideration of these official records and, to the extent appropriate, judicial notice of their existence and contents as public governmental records under Federal Rule of Evidence 201.

4. Plaintiff does not contend that these records, standing alone, resolve every merits element of a Section 504 claim. They are submitted for the narrower purposes of identifying concrete sources of federal financial assistance, showing the timing of the identified funding relationships, and demonstrating that any funding-specific pleading deficiency identified by the R&R is, at minimum, curable.

# EXHIBIT INDEX

| Exhibit | Official Record / Included Pages | Limited Relevance |
|---|---|---|
| A | Lycoming County Board of Commissioners Public Meeting Minutes, March 30, 2023 - original PDF pp. 1-2. | Item 8.1 approves ARPA funds to Jersey Shore Area Joint Water Authority in the amount of $250,000. |
| B | Lycoming County Board of Commissioners Public Meeting Minutes, February 20, 2025 - original PDF pp. 1-2. | Item 5.2 approves JSAJWA Subrecipient Agreement Amendment #2 and extends the stated termination date from March 30, 2025 to September 30, 2026; the same item identifies the funding as an approved ARPA budget item. |
| C | Tiadaghton Valley Municipal Authority / PENNVEST Funding Agreement No. 71391 - original PDF pp. 7, 34-35, 56, 58. | Identifies TVMA as Funding Recipient; requires compliance with federal requirements including Section 504; identifies U.S. EPA Clean Water State Revolving Fund money (CFDA 66.458); states the agreement term; and identifies a $14,146,008 Federal CWSRF Equivalency Project loan. |
| D | U.S. Department of the Treasury, Coronavirus State and Local Fiscal Recovery Funds Compliance and Reporting Guidance, Version 10.1 (Sept. 23, 2025) - original PDF pp. 1, 4, 14-17. | Defines SLFRF subrecipients; requires pass-through entities to monitor subrecipients and identify SLFRF subawards and compliance requirements; confirms SLFRF funds retain their federal character; and expressly identifies Section 504 among the nondiscrimination requirements applicable to recipients of Treasury federal financial assistance. |

**Source note:** The attached exhibit pages are extracted from official governmental records or published federal guidance without alteration to the exhibit content. Page references above are the original PDF page numbers. Case authorities cited in the objections and supporting brief are not duplicated as exhibits.

Respectfully submitted,
/s/ Dion Storm Holland
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I certify that on September 28, 2026, I served a true and correct copy of the foregoing upon all counsel of record by a method authorized by Federal Rule of Civil Procedure 5 and the applicable Local Rules.

# EXHIBIT A

## LYCOMING COUNTY BOARD OF COMMISSIONERS PUBLIC MEETING MINUTES - MARCH 30, 2023

Included: original PDF pages 1-2. Relevant item: 8.1.

Commissioners:

SCOTT L. METZGER
*Chairman*

TONY R. MUSSARE
*Vice Chairman*

RICHARD MIRABITO
*Secretary*

Telephone (570) 320-2124
Fax (570) 320-2127

COUNTY of LYCOMING
48 WEST THIRD STREET
WILLIAMSPORT, PA 17701

MATTHEW A. McDERMOTT
*Director of Administration and Chief Clerk*

J. DAVID SMITH
*Solicitor*

www.lyco.org
county.commissioners@lyco.org

**LYCOMING COUNTY BOARD OF COMMISSIONERS**
**PUBLIC MEETING MINUTES**
**THURSDAY, MARCH 30, 2023**
**10:00 A.M.**

**Present: Commissioner Metzger, Commissioner Mussare Commissioner Mirabito, Director Matthew McDermott, and Solicitor Michael Wiley, via telephone.**

**1.0 OPERATIONS**

**1.1** Opening Prayer
**1.2** Pledge of Allegiance
**1.3** Convene Commissioners' Public Meeting
**1.4** Approve the Minutes of the Previous Meeting

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**1.5** Public Comment on Agenda Items Only

**No Comments**

**2.0 INFORMATION ITEMS**

**2.1** Richard Howell – Update and status on the Williamsport Regional Airport.

**3.0 REPORTS**

**3.1** Kalen Barnes – Vote to approve accounts payable cash requirement report through 4/5/2023 to be paid on 3/29/2023 in the amount of $3,193,291.64.

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**3.1 a** Kalen Barnes – Presented for ratification is one invoice to be paid to DarenThomas Excavating on 3/23/2023 in the amount of $124,800.00. This is funded 100% through the general fund and was not presented for ratification at last weeks meeting.

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**4.0 PERSONNEL ACTIONS**

**4.1** Jessica Segraves – Approve the following Personnel Actions as conditional offers of employment, subject to the successful completion of a background check and all other employment conditions as outlined in Attachment (A).

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**5. 0 TDA ACTIONS**

**5.1** Jessica Segraves – Approve the following TDA actions as outlined in Attachment (C).

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

***Recess Commissioners' Public Meeting for the Board of Assessment Revisions***

**6.0 BOARD OF ASSESSMENT REVISIONS**

**6.1** Convene Board of Assessment Revisions.

**6.2** Brooke Wright – Approve the following real estate exonerations as outlined in Attachment (C)

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**6.3** Adjourn Board of Assessment Revisions.

***Reconvene Commissioners' Public Meeting***

**7.0 TAX CLAIM**

**7.1** Brooke Wright – Approve the following tax claim:

- Riche Tabatabai – 67-011-219 - $173.23

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**8.0 ACTION ITEMS**

**8.1** Kristin McLaughlin – Vote to approve ARPA funds to the following:

- Jersey Shore Area Joint Water Authority - $250,000
- Raffaele M. Colone, Jr. /Trees for Life LLC/Woodrich - $43,600.00
- Nippenose Tavern $50,000 (increase from $10,363)
- Community Arts Center - $50,000
- Lycoming County Health Improvement Coalition - $10,589.00
- Covation Center, Inc - $50,000
- Special Olympics - $16,679
- Habitat for Humanity Affordable Housing Construction - $100,000

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**8.2** Jessica Segraves – Vote to approve Direct Replacement Agreement with AEROTEK (budget funds available)

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**8.3** Matthew McDermott – Vote to approve Memorandum of Understanding with American Federation of State, County and Municipal Employees AFL-CIO (2023 budgeted item)\

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**
**Mr. Mirabito made a motion to add a paragraph to the MOU that states the program termination date of 6.30.2023. Mr. Mussare 2nd the motion Approved 3-0**

**8.4** Matthew McDermott – Vote to approve Opioid Wave 2 Pharmacy Settlements involving Teva and Allergan and Pharmacies.

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

**8.5** Mya Toon – Vote to approve and award bid to DSC Solutions for janitorial services of the health and wellness center (2023 budgeted item).

**Mr. Mirabito moved to approve. Mr. Mussare 2nd the motion. Approved 3-0**

# EXHIBIT B

## LYCOMING COUNTY BOARD OF COMMISSIONERS
## PUBLIC MEETING MINUTES - FEBRUARY 20, 2025

Included: original PDF pages 1-2. Relevant item: 5.2.

Commissioners:

SCOTT L. METZGER
*Chairman*

MARC C. SORTMAN
*Vice Chairman*

MARK MUSSINA
*Secretary*

Telephone (570) 320-2124
Fax (570) 320-2127

COUNTY of LYCOMING
48 WEST THIRD STREET
WILLIAMSPORT, PA 17701

MATTHEW A. McDERMOTT
*Director of Administration and Chief Clerk*

CHRISTOPHER H. KENYON
*Solicitor*

www.lyco.org
county.commissioners@lyco.org

**LYCOMING COUNTY BOARD OF COMMISSIONERS**
**PUBLIC MEETING MINUTES**
**THURSDAY, FEBRUARY 20th, 2025**
**10:00 A.M.**

**Present: Commissioner Metzger, Commissioner Sortman, Commissioner Mussina, Director Matthew McDermott, and Solicitor Christopher H. Kenyon**

**1.0 OPERATIONS**

1.1 Opening Prayer
1.2 Pledge of Allegiance
1.3 Convene Commissioners' Public Meeting
1.4 Approve the Minutes of the Previous Meeting

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

1.5 Public Comment on Agenda Items Only **None**

**2.0 REPORTS**

2.1 Nicki Gottschall– Vote to ratify accounts payable cash requirement report for invoices due through 2/26/25 to be paid on 2/19/25 in the amount of $1,618,373.96.

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

***Recess Commissioners' Public Meeting for the Salary Board***

**3.0 SALARY BOARD- SALARY BOARD MINUTES CAN BE FOUND ON LYCO.ORG>ELECTED OFFICIALS>CONTROLLER**

3.1 Convene Salary Board.

3.2 Vote to approve the Salary Board minutes from the February 6th meeting.

3.3 Vote to approve the following Salary Board Actions:

- Delete one (1) part-time Victim Witness Coordinator – Adult
- Add one (1) full-time Victim Witness Coordinator – Adult
- Place one Assistant District Attorney position on hold. The money that is budgeted for this position will be used to make up for the shortfall from the grant for the additional full time Victim Witness Coordinator salary and fringe benefits.

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 4-0**

- DPS Bonus Structure – a temporary bonus structure (6-month period, ending September 1, 2025) will be put into place in the amount of $60.00 per shift for salaried employees.

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-1**

3.4 Adjourn Salary Board.

***Reconvene Commissioners' Public Meeting***

**4.0 PERSONNEL ACTIONS**

4.1 Mike Hagen – Approve the following Personnel Actions as conditional offers of employment, subject to the successful completion of a background check and all other employment conditions as outlined in Attachment (A).

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

**5.0 ACTION ITEMS**

5.1 Nicki Gottschall – Vote to approve the payment schedule for the Actuarially Determined Employer Contribution (ADEC) for the retirement fund in the amount of $1,037,000.00. This shall by paid monthly starting in April. (2025 approved budgeted item)

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

5.2 Kristin McLaughlin– Vote to approve the subrecipient Agreement Amendment #2 with Jersey Shore Area Joint Water Authority (ARAP Funds) to extend the termination date from 3/30/25 to 9/30/26. (2025 approved ARPA funds budgeted item)

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

5.3 Forrest Lehman – Vote to approve the invoice from Clear Ballot to provide four years of preventative maintenance and warranty coverage for a central scanner that is part of the certified electronic voting system in the amount of $10,000.00. (2025 approved budgeted item)

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

5.4 Mya Toon – Vote to approve Resolution # 2025-04 approving the acceptance of donated power tool equipment from Washington Township in the amount of $1,089.91 to be used by the Pre-Release Center.

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

5.5 Mya Toon– Vote to approve the Agreement with Diane Welch, GED Instructor in the amount of $7,000.00. (2025 approved budgeted item)

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

5.6 Mya Toon – Vote to approve the Addendum to the Agreement with Digital Assurance Certification, LLC in the amount of $500.00 per year for additional services. (2025 approved budgeted item)

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

5.7 Mya Toon - Vote to ratify the approval for the Grant Award for Lycoming County Victim Witness Services from PCCD in the amount of $122,201.00.

**Mr. Mussina moved to approve. Mr. Sortman 2nd the motion. Approved 3-0**

# EXHIBIT C

## TIADAGHTON VALLEY MUNICIPAL AUTHORITY / PENNVEST FUNDING AGREEMENT NO. 71391

Included: original PDF pages 7, 34-35, 56, and 58.

This AGREEMENT is made this 20th day of November, 2012, by and between the Tiadaghton Valley Municipal Authority, organized and existing under the Jaws of the Commonwealth of Pennsylvania or duly authorized to do business in the Commonwealth of Pennsylvania, with an address of P.O. Box 526, Jersey Shore, PA-17754-0526 (the Funding Recipient"). and the Pennsylvania Infrastructure Investment Authority, a body corporate and politic organized and existing under the laws of the Commonwealth of Pennsylvania, with an office at 22 South Third Street, Harrisburg, Pennsylvania (the "Authority").

WHEREAS, the Funding Recipient has applied for funds from the Authority for a project eligible for financing by the Authority;

WHEREAS, the Authority has approved funding for Funding Recipient's project; and

WHEREAS, on August 9,2012, the Funding Recipient accepted the funding offer provided by the Authority.

NOW, THEREFORE, the Authority and the Funding Recipient, with the intention of being legally bo'und, hereby agree as follows:

## A. DEFINITIONS

The following words and phrases shall have the meanings given to them in this Section when used in this Agreement. Certain terms are defined elsewhere in the Agreement.

"ACT" shall mean the Pennsylvania Infrastructure investment Authority Act, act of March 1, 1988, P.L. 82, No. 16, as amended (35 P.S. § 751.1 et seq.).

"ATTORNEY" shall mean an attorney, licensed to practice law in the Commonwealth, retained by the Funding Recipient to provide legal assistance and advice with regard to the Funding Offer and Project Funding and to provide the requisite opinions of counsel at Settlement.

"AUTHORITY REGULATIONS" shall mean all regulations of the Authority, including 25 Pa. Code §§961, 963 and 965, as may be amended or supplemented from time to time.

"BOARD" shall mean the Authority Board of Directors.

"BOARD APPROVAL DATE" shall mean the date that the Board approved the funding request application for the Project.

"COMMONWEALTH" shall mean the Commonwealth of Pennsylvania.

"COMPLETION DATE" shall mean the date when the Project is expected to be completed as set forth in the Project Management Plan for the Project, attached hereto as Exhibit E.

"CONTRACTORS" shall mean the Persons retained by the Funding Recipient to provide the services or materials required to complete the Project in accordance with Project Plans, including any subcontractors, materialmen, or other parties employed by the Contractors to fulfill their obligations to the Funding Recipient.

Funding Recipient and steps shaJI be taken as deemed necessary to correct any deficiencies. lf after six (6) months following such fiscal year end, Net Revenues for such six (6) month period are not at least equal to one-half of the Coverage Requirements then due, Funding Recipient shall immediately employ or cause to be employed a Financial Consultant to analyze the deficiency and recommend by the then current fiscal year-end a revised schedule of rates, fees and charges, which Funding Recipient immediately shal1 implement and enforce or cause to be implemented and enforced to the extent authorized by the PUC, if required, and otherwise permitted by the Jaw. lf, at the end of the fiscal year next succeeding such Financial Consultant's recommendation, Net Revenues are still not sufficient to meet the Coverage Requirements, Funding Recipient shall immediately transfer or cause to be transferred management of the System Revenues to a Financial Consultant, subject to the rights of existing lienholders as set forth in the List of Liens, attached hereto as Exhibit B, and such future superior lienholders as may be approved by the Amhority pursuant to the Subsection entitled "Additional Debt; Refinancing" in Section D of this Agreement, until there has been a period of twelve (12) consecutive months during which the Net Revenues satisfy the Coverage Requirements; and provided, however, that if the Financial Consultant or the Authority determines that the failure to meet the Coverage Requirements is caused primarily by factors outside the control of management, the Financial Consultant shall not assume management.

29. AUTOMATIC CLEARING HOUSE PROCEDURES

The Funding Recipient hereby unconditionally agrees and consents to participate and follow any automatic clearing house procedures implemented, or to be implemented, by the Authority.in order to facilitate disbursements of the Project Funding, monitor the Funding Recipient's expenditures of Project Funding disbursements or facilitate the collection of Project Funding repayments. The Funding Recipient will provide any necessary information or written consent requested by the Authority upon receiving written notification that the Authority is implementing new or revised automatic clearing house procedures.

30. TAX STATUS OF DEBT OBLIGATION

The Debt Obligation shall not be reported as a tax-exempt obligation under the infonnation reporting requirements of Section 149 (e) of the Internal Revenue Code of 1986, as amended.

31. FEDERAL REQUIREMENTS

The Funding Recipient shall comply with the following federal requirements;

a. Federal State Revolving Loan Requirements

Subchapter VI of the Federal Water Pollution Control Act. 33 U.S.C. §1381 et seq.. as amended.

b. Discrimination

(i) Pursuant to Title VI of the Civil Rights Act of 1964. 42 U.S.C. § 2000d, the requirement not to discriminate on the basis or race, color or national origin in any activity funded through this Agreement.

(ii) Pursuant to the Age Discrimination Act, 42 U.S.C § 6101 et seq., the requirement not to

discriminate on the basis of age in any activity funded through this Agreement.

(iii) Pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the requirement not to discriminate on the basis of disability in any activity funded through this Agreement.

(iv) Pursuant to Section 13 of the Federal Water Pollution Control Act Amendments of 1972, Oct 18, 1972, P.L 92-500, § 13, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., as amended, the requirement not to discriminate oi1 the basis of sex in any activity funded through this Agreement.

(v) Pursuant to Executive Order 11246, dated September 24, 1965, as amended by Executive Order 11375, dated October 13, 1967, and as supplemented by U.S. Department of Labor regulations set forth at 41 C.F.R. Ch. 60, the requirement to provide an equal opportunity for employment in all Project Contracts and subcontracts funded through this Agreement.

(vi) Pursuant to Executive Order 12898, dated February 11, 1994, the requirement not to fund any action through this Agreement that will have disproportionately high and adverse effects on minority or low•income populations.

c. FederaJ Single Audit Requirements

Single Audit Act Amendments of!996, as amended, 31 U.S.C. §§ 7501-7507.

d. Recycled Materials

The requirement to use recovered materials to the maximum extent possible in Project Plans for the procurement of items designated pursuant to Section 6002 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6962, and its implementing regulations set forth in 40 C.F.R. Part 247, provided that use of recovered materials does not jeopardize the intended end use of the item.

e. Real Property Acquisition

When acquiring Real Property, the Project Funding shall be used only for the following:

(i) To the extent the Project involves a publicly owned treatment works, real property or interests therein that are an integral part of the treatment process (including land used for the storage of treated wastewater in land treatment systems prior to land application) or used for ultimate disposal of residues resulting from such treatment and determined by the Authority to be eligible costs; and

(ii) Costs associated with compliance with Section 305 of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C. § 4655, provided that such costs are otherwise eligible.

f. Lobbying

The restrictions on lobbying set forth in 31 U.S.C. § 1352 and 40 C.F.
R. Part 34, which prohibit the use of federal funds to pay any person for influencing or attempting to influence an officer or employee of any agency or a member, officer or employee of Congress in connection with any federal action.

g. Drug-Free Workplace

The provisions in 40 C.F.R. Part 32. Subpart F, Drug-Free Workplace Requirements.

hereto as Exhibit A.

10. CFDA NUMBER

This Project will be funded in whole or in part with federal monies obtained by the Authority from the U.S. Environmental Protection Agency, awarded by the Authority to the Funding Recipient through the Clean Water State Revolving Fund carrying a Catalog of Federal Domestic Assistance (CFDA) number of66.458.

11. COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument. All signatures need not appear on the same copy hereof.

12. GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

13. TERM

The tenn of this Agreement shall commence with the date hereof and end on the date that all Project Funding have been paid in full and all obligations under the Funding Documents have been satisfied in full.

[THE BALANCE OF THIS PAGE IS INTENTIONALLY BLANK]

# EXHIBIT A
# PROJECT SPECIFIC TERMS

**Loan Number:** 71391 **Project Number:** 4!054021108-CS **Current Status:**_ Loan Closing

**Project Title:** -_ Tiadaghton VlyMA- Wastewater Treatment and Conveyance Facilities

**Funding Recipient:** TiadaghtonValley Municipal Authority

**Project Specific Terms**

Amended Date: Amendment Number:

**Approved Funding Amount**

Loan Amount: $14,146,008.00 Grant Amount: $3,717,312.00

**Approved Loan Interest Rates and Term:**

| | | | |
|---|---|---|---|
| Years 1-5: | 1.000 | Interest Only Period: | 36 months |
| Years 5+: | 1.000 | **Amortization Period:** | 316 months |

---

**Funding Sources;**

Loan: CWSRF-E - Federal Clean Water State Revolving Fund Equivalency Project (treatment works (212))

Grant: State - Any state grant funds

**Project Collateral:**

| ☐ | **Description** |
|---|---|
| **1. Lien on Revenues** | The bond ofTiadaghton Valley Municipal Authority secured by a lien on its sewer **revenues.** |
| 2. Other | The pro rata guaranties of Nippenose Township, Porter Township, and Jersey Shore Borough, secured by a pledge of their respective taxing authorities based on the percentage of the number of residential customers that are projected to reside in each municipality. This pro rata percentage breakdown presented in the application is as follows: Nippenose Township, (25.0%), Porter Township (20.0%), amd Jersey Shore Borough (55.0%). The aggregate of these pro rata guarantees shall not be less than 100% of the approved PENNVEST loan. |

**Special Conditions:**

# EXHIBIT D

## U.S. DEPARTMENT OF THE TREASURY

## CORONAVIRUS STATE AND LOCAL FISCAL RECOVERY FUNDS COMPLIANCE AND REPORTING GUIDANCE

Version 10.1 - September 23, 2025

Included: original PDF pages 1, 4, and 14-17.

Relevant portions: SLFRF subrecipient definition and oversight; subrecipient monitoring and federal character of SLFRF funds; and Treasury civil-rights compliance language expressly identifying Section 504 of the Rehabilitation Act.

# Compliance and Reporting Guidance

## State and Local Fiscal Recovery Funds

THE DEPARTMENT OF THE TREASURY 1789

***September 23, 2025***
***Version: 10.1***

# Part 1: General Guidance

This section provides an orientation on recipients' compliance responsibilities and Treasury's expectations and recommended best practices where appropriate under the SLFRF program.

Recipients under the SLFRF program are the eligible entities identified in sections 602 and 603 of the Social Security Act as added by section 9901 of the American Rescue Plan Act of 2021 (the "SLFRF statute") that receive an SLFRF award. Subrecipients under the SLFRF program are entities that receive a subaward from a recipient to carry out the purposes (program or project) of the SLFRF award on behalf of the recipient.

Recipients are accountable to Treasury for oversight of their subrecipients in accordance with 2 CFR 200.332, including ensuring their subrecipients comply with the SLFRF statute, SLFRF Award Terms and Conditions, Treasury's 2021 IFR, 2022 final rule, 2023 IFR, Obligation IFR, other applicable federal statutes and regulations, and reporting requirements.

### A. Key Principles

There are several guiding principles for developing your own effective compliance regimes:

- Recipients and subrecipients are the first line of defense and responsible for ensuring the SLFRF award funds are not used for ineligible purposes, and there is no fraud, waste, or abuse associated with their SLFRF award;
- Many SLFRF-funded projects respond to the COVID-19 public health emergency[1] and meet urgent community needs. Swift and effective implementation is vital, and recipients must balance facilitating simple and rapid program access widely across the community and maintaining a robust documentation and compliance regime;
- Transparency and public accountability for SLFRF award funds and use of such funds are critical to upholding program integrity and trust in all levels of government, and SLFRF award funds should be managed consistent with Administration guidance per Memorandum M-21-20 and Memorandum M-20-21.

### B. Statutory Eligible Uses

As a recipient of an SLFRF award, your organization has substantial discretion to use the award funds in the ways that best suit the needs of your constituents – as long as such use fits into one of the following seven statutory categories:

1. To respond to the COVID-19 public health emergency or its negative economic impacts;
2. To respond to workers performing essential work during the COVID-19 public health emergency by providing premium pay to eligible workers of the recipient that are performing such essential work, or by providing grants to eligible employers that have eligible workers who perform essential work;
3. For the provision of government services, to the extent of the reduction in revenue of such recipient due to the COVID–19 public health emergency, relative to revenues collected in the most recent full fiscal year of the recipient prior to the emergency;
4. To make necessary investments in water, sewer, or broadband infrastructure;
5. To provide emergency relief from natural disasters or the negative economic impacts of natural

[1] The SLFRF rule defines "COVID-19 public health emergency" as "the period beginning on January 27, 2020 and lasting until the termination of the national emergency concerning the COVID-19 outbreak declared pursuant to the National Emergencies Act." See 31 CFR 35.3. As discussed in FAQ 4.11, following the termination of the National Emergency on April 10, 2023, recipients generally may continue to make investments using their SLFRF funds without changes, with the exception of projects in the premium pay eligible use category. Please refer to FAQ 4.11 for more information.

this guidance for a full overview of recipient reporting responsibilities.

Consolidated jurisdictions or other types of jurisdictions that received multiple SLFRF allocations (e.g., a county and city with a consolidated government) are only required to file once per reporting period, and such reports will cover the total SLFRF allocations received by the jurisdiction. This includes non-entitlement units of local government ("NEUs") and/or units of general local government located within counties that are not units of general local government. In addition, the total SLFRF allocations across all sources for a given jurisdiction will be used to identify that jurisdiction's Reporting Tier.

11. **Subrecipient Monitoring.** SLFRF recipients that are pass-through entities as described under 2 CFR 200.1 are required to manage and monitor their subrecipients to ensure compliance with requirements of the SLFRF award pursuant to 2 CFR 200.332 regarding requirements for pass-through entities.

First, your organization must clearly identify to the subrecipient: (1) that the award is a subaward of SLFRF funds; (2) any and all compliance requirements for use of SLFRF funds; and (3) any and all reporting requirements for expenditures of SLFRF funds.

Next, your organization will need to evaluate each subrecipient's risk of noncompliance based on a set of common factors. These risk assessments may include factors such as prior experience in managing Federal funds, previous audits, personnel, and policies or procedures for award execution and oversight. Ongoing monitoring of any given subrecipient should reflect its assessed risk and include monitoring, identification of deficiencies, and follow-up to ensure appropriate remediation.

Accordingly, your organization should develop written policies and procedures for subrecipient monitoring and risk assessment and maintain records of all award agreements identifying or otherwise documenting subrecipients' compliance obligations.

Recipients should note that NEUs are not subrecipients under the SLFRF program. They are SLFRF recipients that report directly to Treasury.

Recipients should also note that subrecipients do not include individuals and organizations that received SLFRF funds as end users. Such individuals and organizations are beneficiaries and not subject to audit pursuant to the Single Audit Act and 2 C.F.R. Part 200, Subpart F.

Many recipients may choose to provide a subaward or contract to other entities to provide services to other end users. For example, a recipient may provide a subaward to a nonprofit to provide homeless services to individuals experiencing homelessness. In this case, the subaward to a nonprofit is based on the services that the recipient intends to provide (assistance to households experiencing homelessness), and the nonprofit is serving as the subrecipient, providing services on behalf of the recipient. Subrecipients are subject to an audit pursuant to the Single Audit Act and 2 CFR part 200, subpart F regarding audit requirements, whereas contractors are not subject to an audit pursuant to the Single Audit Act and 2 CFR part 200, subpart F regarding audit requirements.

Please note that as outlined in FAQ 13.14, recipients' use of funds in the revenue loss eligible use category does not give rise to subrecipient relationships. As a result, subaward reporting is not required for projects in the revenue loss eligible use category. While there is no federal program or purpose to carry out in the same way that there is for the other SLFRF expenditure categories, these funds retain their federal character and recipients remain subject to laws and regulations applicable to Federal financial assistance programs.

As discussed in SLFRF FAQ 17.6, Treasury considers an interagency agreement, including an agreement in the form of a memorandum of understanding, to constitute a "transaction requiring payment" similar to a contract or subaward and therefore an obligation for purposes of the SLFRF rule, if the agreement satisfies certain conditions. If a recipient has not yet provided funds to a unit of its government and would like to do so for that unit to carry out an eligible project and count as an obligation, the recipient may do so under FAQ 17.6.

If a recipient previously entered into an agreement with a unit of its government and reported that arrangement as a subaward, then the recipient may maintain that treatment or revise its reporting to reflect an interagency agreement, as long as the requirements of FAQ 17.6 are met. If the recipient is reporting the arrangement as a subaward, the recipient should note that the subrecipient monitoring and other requirements applicable to subawards at 2 CFR Part 200 continue to apply. In either case, the use of funds must be appropriately managed and overseen in accordance with the program's award terms and conditions, including the requirements at 2 CFR 200.329 or 2 CFR 200.331, as applicable.

If a recipient obligates funds via an interagency agreement with an agency, department, or part of government according to the provisions described in FAQ 17.6 or 17.23, that agency, department, or part of government may itself enter into subawards and contracts. Because the interagency agreement is considered an obligation, the obligation deadline does not apply to that agency, department, or part of government.

12. **Special Tests and Provisions.** From time-to-time, Treasury may issue subregulatory guidance as well as frequently asked questions.

Across each of the compliance requirements above, Treasury has described some best practices for development of internal controls in **Table 1** below, with an example of each best practice.

**Table 1: Internal controls best practices**

| Best Practice | Description | Example |
|---|---|---|
| **Written policies and procedures** | Formal documentation of recipient policies and procedures | Documented procedure for determining worker eligibility for premium pay |
| **Written standards of conduct** | Formal statement of mission, values, principles, and professional standards | Documented code of conduct / ethics for subcontractors |
| **Risk-based due diligence** | Pre-payment validations conducted according to an assessed level of risk | Enhanced eligibility review of subrecipient with imperfect performance history |
| **Risk-based compliance monitoring** | Ongoing validations conducted according to an assessed level of risk | Higher degree of monitoring for projects that have a higher risk of fraud, given program characteristics |
| **Record maintenance and retention** | Creation and storage of financial and non-financial records. | Storage of all subrecipient payment information. |

## E. Award Terms and Conditions

The Award Terms and Conditions of the SLFRF financial assistance agreement sets forth the compliance obligations for recipients pursuant to the SLFRF statute, the Uniform Guidance, Treasury's 2022 final rule, 2023 IFR, the Obligation IFR, and other applicable federal laws and regulations. Recipients should ensure they remain in compliance with all Award Terms and

Conditions. These obligations include the following items in addition to those described above:

1. **SAM.gov Requirements.** All eligible recipients are required to have an active registration with the System for Award Management ("SAM") (https://www.sam.gov) pursuant to 2 CFR Part 25. To ensure timely receipt of funding, Treasury has stated that NEUs who have not previously registered with SAM.gov may do so after receipt of the award, but before the submission of mandatory reporting.[5]

2. **Recordkeeping Requirements.** Generally, your organization must maintain records and financial documents for five years after all funds have been expended or returned to Treasury, as outlined in paragraph 4.c. of the Award Terms and Conditions. Treasury may request transfer of records of long-term value at the end of such period. Wherever practicable, such records should be collected, transmitted, and stored in open and machine-readable formats.

   Your organization must agree to provide or make available such records to Treasury upon request, and to the Government Accountability Office ("GAO"), Treasury's Office of Inspector General ("OIG"), and their authorized representative in order to conduct audits or other investigations.

3. **Single Audit Requirements.** Recipients and subrecipients that expend more than $750,000 in Federal awards during their fiscal year—or, for fiscal years that start on or after October 1, 2024, that expend more than $1,000,000 in Federal awards during their fiscal year—will be subject to an audit under the Single Audit Act and its implementing regulation at 2 CFR Part 200, Subpart F regarding audit requirements.[6] Note that the Compliance Supplement provides information on the existing, important compliance requirements that the federal government expects to be considered as a part of such audit. For example, the SLFRF Compliance Supplement describes an alternative to the Single Audit for eligible recipients. Recipients should consult the Compliance Supplement for more information about the alternative compliance examination engagement. The Compliance Supplement is routinely updated, and is made available in the Federal Register and on OMB's website: https://www.whitehouse.gov/omb/office-federal-financial-management/ Recipients and subrecipients should consult the Federal Audit Clearinghouse to see examples of Single Audit submissions.

4. **Civil Rights Compliance**. Recipients of Federal financial assistance from the Treasury are required to meet legal requirements relating to nondiscrimination and nondiscriminatory use of Federal funds. Those requirements include ensuring that entities receiving Federal financial assistance from the Treasury do not deny benefits or services, or otherwise discriminate on the basis of race, color, national origin (including limited English proficiency), disability, age, or sex, in accordance with the following authorities: Title VI of the Civil Rights Act of 1964 (Title VI) Public Law 88-352, 42 U.S.C. 2000d-1 et seq., and the Department's implementing regulations, 31 CFR part 22; Section 504 of the Rehabilitation Act of 1973 (Section 504), Public Law 93-112, as amended by Public Law 93-516, 29 U.S.C. 794; Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. 1681 et seq., and the Department's implementing regulations, 31 CFR part 28; Age Discrimination Act of 1975, Public Law 94-135, 42 U.S.C. 6101 et seq., and the Department implementing regulations at 31 CFR part 23.

   In order to carry out its enforcement responsibilities under Title VI of the Civil Rights Act, Treasury will collect and review information from recipients to ascertain their compliance with the applicable requirements before and after providing financial assistance. Treasury's implementing regulations, 31 CFR part 22, and the Department of Justice (DOJ) regulations, Coordination of Non-discrimination in Federally Assisted Programs, 28 CFR part 42, provide for the collection of

[5] See flexibility provided in https://www.whitehouse.gov/wp-content/uploads/2021/03/M_21_20.pdf.
[6] For-profit entities that receive SLFRF subawards are not subject to Single Audit requirements. However, they are subject to other audits as deemed necessary by authorized governmental entities, including Treasury and Treasury's OIG.

data and information from recipients (see 28 CFR 42.406). Treasury may request that non-tribal recipients submit data for post-award compliance reviews, including information such as a narrative describing their Title VI compliance status. As explained in Treasury FAQ 12.1, the award terms and conditions for Treasury's pandemic recovery programs, including the SLFRF program, do not impose antidiscrimination requirements on Tribal governments beyond what would otherwise apply under federal law.