IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION STORM HOLLAND | : |
| | : CIVIL NO. 4:25-CV-01323 |
| Plaintiff, | : |
| | : |
| vs. | : (JUDGE KELI M. NEARY) |
| | : |
| JERSEY SHORE AREA JOINT | : (MAG. JUDGE CARLSON) |
| WATER AUTHORITY, et al. | : |
| | : |
| Defendants: | : (ELECTRONICALLY FILED) |

**BRIEF OF DEFENDANTS JERSEY SHORE AREA JOINT WATER AUTHORITY, ERIC S. JOHNSTON AND TIMOTHY CONFAIR IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF JUDGE CARLSON (DOC.90)**

# TABLE OF CONTENTS


TABLE OF CONTENTS ............................................................ i-iii

TABLE OF CITATIONS ............................................................ iv-ix

I. PROCEDURAL HISTORY ................................................ 1

II. STATEMENT OF FACTS .................................................. 3

III. LAW AND ARGUMENT .. ................................................ 4

A. STANDARD OF REVIEW ........................................ 4

B. ANALYSIS OF HOLLAND'S OBJECTIONS ........... 4

C. THE COURT CORRECTLY DECIDED THAT HOLLAND FAILED TO STATE A COGNIZABLE PROCEDURAL DUE PROCESS CLAIM (Objections 1, 2 and 4) ............................................... 5

There is No Violation of Holland's Procedural Due Process Rights ................................................... 7

D. HOLLAND FAILED TO PLAUSIBLY ALLEGE FIRST AMENDMENT RETALIATION ON A VIOLATION OF THE PETITION CLAUSE............. 11

E. THE COURT PROPERLY DISMISSED HOLLAND'S ADA AND REHABILITATION ACT CLAIMS AGAINST JOHNSTON AND CONFAIR (Objections 5 and 6) .................................................. 14

F. THE RECOMMENDATION THAT THE EQUAL PROTECTION CLAIM SHOULD BE DISMISSED SHOULD BE ADOPTED (Objection 7) .................... 15

G. THE RECOMMENDATION THAT THE FOURTH AMENDMENT SEIZURE AND FIFTH AMENDMENT TAKINGS CLAIM SHOULD BE DISMISSED SHOULD BE ADOPTED (Objection 8) ........................................................... 18

1. Holland Has Not Suffered a Taking Under The Fifth Amendment By Virtue of the Disruption Of His Service on June 23, 2005......................... 18

2. The Fourth Amendment Claims Related to the JSAJWA Activity After the June 30, 2025 Restoration of Service Should be Dismissed Because Holland Has Not Alleged A Cognizable Deprivation Under the United States Constitution... 22

H. THE RECOMMENDATION THAT JOHNSTON AND CONFAIR ARE ENTITLED TO QUALIFIED IMMUNITY ON HOLLAND'S 42 U.S.C. §1983 CLAIM SHOULD BE ADOPTED (Objection 9)............ 24

I. HOLLAND'S SAC FAILS TO STATE A MUNICIPAL LIABILITY CLAIM (Objection 10) ......... 24

J. JUDGE CARLSON WAS CORRECT IN RECOMMENDING DISMISSAL OF THE 42 U.S.C. §1985 CIVIL CONSPIRACY CLAIM (Objection 11) ................................................................. 29

K. THE COURT WAS CORRECT IN RECOMMENDING DISMISSAL OF THE STATE LAW UNJUST ENRICHMENT CLAIM (Objection 12)........................... 31

L. DISMISSAL OF THE CLAIM BROUGHT UNDER THE PENNSYLVANIA CONSTITUTION (Objection 13).................................................................... 33

M. THE RECOMMENDATION SHOULD BE ADOPTED THAT ALL REMAINING STATE COMMON LAW AND STATUTORY CLAIMS BE DISMISSED (Objection 14) .................................................................... 33

1. Holland Fails To State A Claim Under The Unfair Trade Practices Act.................................... 33

2. Holland Fails To State A Claim For Intentional Infliction Of Emotional Distress Against Johnston, Confair and JSAJWA............................ 34

3. Holland's Claim For Breach of Fiduciary Duty Fails As A Matter Of Law............................. 35

N. THE COURT'S RECOMMENDATION REGARDING THE FUTILITY OF AMENDMENT OF THE DISMISSED CLAIMS WITH THE EXCEPTION OF THE REHABILITATION ACT CLAIM SHOULD BE ADOPTED (Objection 15) ........................................... 38

IV. CONCLUSION ..................................................................... 38

CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(b)(2)

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

## CASES

Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)......................... 8

Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1089) ....................... 16

Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 2008 WL3852256 (E.D. Pa. 2008) ................................................................ 37

Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002)...... 12

Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)........................................................................ 25

Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir. 1987) .......... 23

Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) .................................................................. 26, 28

Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) ................................. 4

Augustin v. City of Philadelphia, 897 F.3d 142 at 152 ....................... 20

Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ............................. 22

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007) ......... 4

Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) ................. 25

Butler v. Upper Merion Township, 765 F.Supp.3d 441, 451 (E.D. Pa. 2025) ......................................................................... 29

Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) ......................................................................... 28

City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ........................................... 29

City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998)........................................................................... 6

Cnty of Sacramento v. Lewis, 523 U.S. 833, 845 n.7, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ......................................... 23

Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ............................................ 23

Daniels v. Williams, 474 U.S. 327, 341, 106 S.Ct. 662, 88 L.Ed. 2d 662 (1986) ...................................................................... 9

Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990)........ 23

Doe v. Cnty. of Ctr. Pa, 242 F.3d 437 (3d Cir. 2001) ....................... 24

El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768 (E.D. Pa. 2007) ......................................................................... 11

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) ........... 30, 31

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)... 13

Gen. Refractories Co. v. Liberty Mut. Ins. Co., 199 U.S. Dist. LEXIS 18932, 1999 WL 1134530 (E.D. Pa. 1999)............................ 37

Great Am. Fed. Sav. & Loan Ass’n v. Novotny, 442 U.S. 366, 376 (1979) .............................................................................. 30

Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945, 2009 WL 5033966 (E.D. Pa. 2009)..................................................... 37

Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006)................ 17

Hopson v. Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992)............ 24

Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998).......................... 34

*In re* American Continental/Lincoln Savings and Loan Securities Litigation, 102 F.3d 1524, 1537 (9th Cir. 1996).................................. 6

*In re* Trs. Of Conneaut Lake Park, Inc., 855 F.3d 519, 526 (3d Cir. 2017) .................................................................... 19

James v. New Jersey State Police, 957 F.3d 165, 169 (3d Cir. 2020) .. 25

Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed 2d 415 (2006)........................................................... 9

Keenheel v. Com., Pennsylvania Sec. Comm'n, 579 A.2d 1358, 1361 (Pa. Cmwlth. 1990) ........................................................... 32

Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 497, 107 S. Ct. 1232, 94 L.Ed.2d 472 (1987)..................................... 21

Kisela v. Hughes, – U.S. –, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) ........................................................ 25

K.S.S. v. Montgomery Cty. Bd. Of Comm'rs., 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012)................................................................ 9

Krouse v. American Sterlizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997) ...................................................................... 13

Lackner v. Glosser, 892 A.2d 21,34 (Pa. Super. 2006)...................... 31

Lauren W. *ex rel*. Jean W. v. De Flaminis, 480 F.3d 259 (3d Cir. 2007) ......................................................................... 13

Leonard v. Owen J. Roberts Sch. Dist., No. 08-Cv-2016, 2009 U.S. Dist. LEXIS 51468, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2029) ........................................................... 8

Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 237, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) .......................................................................... 20

Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) .......................................................................... 19

Madar, 2021 U.S. Dist. LEXIS 100128, 2021 WL 2156362, at 8*...... 10

Mann v. Palmerton Area School District, 872 F.3d 165 (3d Cir. 2017)........................................................................................ 29

Maple Props., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 177 (3d Cir. 2005) ................................................ 9

Meyer v. Cnty. Coll. of Beaver Cnty., 93 A.3d 806, 815 (Pa. 2014).. 33

Mullenix v. Luna, 577 U.S. 7, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) .......................................................................... 25

Mulholland v. Gov't of Cty. Of Berks, No. 10-CV-5616, 2012 U.S. Dist. LEXIS 43521, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013) ........................................... 8

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)...................................................... 9

Murr v. Wisconsin, 582 U.S. 383, 137 S.Ct. 1933, 1942, 198 L.Ed.2d 497 (2017) ......................................................................... 18

Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d Cir. 2022) ..... 19, 20, 21

Parsons Steel, Inc. V. First Alabama Bank, 474 U.S. 518, 88 L.Ed 2d 877, 106 S.Ct. 768 (1986) ................................................ 8

Penn Central Transporation Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ......................................... 19, 20

Pension Benefit Guar. Corp. v. White Consol. Indus.,
998 F.2d 1192, 1196 (3d Cir. 1993) .................................................. 6

Puente v. Navy Fed. Credit Union, 2025 U.S. Dist. LEXIS 20229,
2025 WL 408677 (E.D. Pa. 2025) ...................................................... 37

Reese v. Pook & Pook, LLC, 158 F.Supp.3d 271, 298
(E.D. Pa. 2016) .............................................................................. 36

Rogin v. Bensalem Township, 616 F.2d 680, 690 (3d Cir. 1980) ...... 21

Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999) ..................... 24

Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007) ........................... 6

Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014) ................................ 6

Sioux City Bridge Co. V. Dakota County, 260 U.S. 441,
43 S.Ct. 190, 67 L.Ed. 340 (1923) ..................................................... 16

Snyder v. Crusader Servicing Corp., 231 A.3d 20, 31
(Pa. Super. 2020) ............................................................................ 36

Studli v. Children & Youth Families Central Reg'l Office,
346 F.App'x 804, 813 (3d Cir. 2009) ................................................. 8

Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) ...................... 22

Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).... 12

United States v. One Toshiba Color Television, 213 F.3d 147, 155
(3d Cir. 2000)...................................................................................... 9

United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825,
828–29 (1983) ................................................................................... 31

United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000) ........... 23

Village. Of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 2d 1060 (2000) ....................................................... 16

Wesby, 138 S.Ct. At 589)............................................................... 25

White v. Puly, 137 S.Ct. 548, 552 (2017) ........................................... 6

Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997).... 13

Yenchi v. Ameriprise Fin., Inc., 639 Pa. 618, 161 A.3d 811, 819-21 (Pa. 2017) ............................................................................ 37

Ziglar v. Abbasi, 582 U.S. 120, 137 S.Ct. 1843, 1866, 198 L.Ed.2d 290 (2017) ......................................................................... 25

**STATUES**

28 U.S.C. §1738........................................................................... 8

42 U.S.C. §1983........................................................................... 5,12,22,23

53 P.S. §3102.502(b)..................................................................... 8, 27

Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq ................................................................... 34

**OTHER AUTHORITIES**

U.S. Const. Amend. V .................................................................. 19

U.S. Const. Amend. XIV, §1........................................................... 17

## I. PROCEDURAL HISTORY

This action was originally filed in the Court of Common Pleas of Lycoming County on June 27, 2025 by Writ of Summons together with an Emergency Motion for Injunctive Relief. A hearing was held to address that Emergency Motion on June 30, 2025. In the Emergency Motion, Plaintiff Dion Storm Holland ("Holland") alleged that the Jersey Shore Area Joint Water Authority ("JSAJWA") acted unlawfully in discontinuing water service to his property for the non-payment of water service. In an Order of June 30, 2025[1], the Court held that one of the statutory notice requirements preceding a water shut-off had not been met and directed that service be restored. At the conclusion of the hearing, the service was restored.

On July 10, 2025, a Motion for Contempt was filed by Holland against JSAJWA and newly named Defendant Tiadaghton Municipal Sewer Authority ("TMSA"). Subsequent to that filing, the case was removed to this Court on July 21, 2025 (Doc. 1). On August 1, 2025, Plaintiff filed his First Amended Complaint ("FAC", Doc. 10). On August 4, 2025, Plaintiff filed a Request for Issuance of Summons against newly added Defendants Eric Johnston and John

[1] The Order of Judge William P. Carlucci, dated June 30, 2025, is appended to this brief as Exhibit "A", and to Holland's SAC (Doc. 72) as Exhibit "T".

Doe Defendants 1-5 (Doc. 13). Summons were issued on August 6, 2025 and undersigned counsel entered his appearance on behalf of Defendant Johnston on August 14, 2025 (Doc. 17). Defendants JSAJWA and Johnston on August 14, 2025, and TVMSA on August 15, 2025, filed motions to dismiss the FAC. The parties filed their respective briefs to these motions to dismiss.

On September 2, 2025, Plaintiff filed a Notice with the Court identifying Timothy Confair as one of the John Doe Defendants (Doc. 34). On January 7, 2026, this Honorable Court issued an Order (Doc. 69) that Plaintiff should move to amend his complaint and name Mr. Confair as a Defendant. On January 14, 2026, Plaintiff did file a Motion to Amend his Complaint (Doc. 70) and on January 21, 2026, this Honorable Court issued an Order granting Plaintiff's Motion and Plaintiff's Second Amended Complaint (Doc. 72) (hereinafter, "SAC") became the operative pleading in this matter.

On February 4, 2026, Moving JSAJWA Defendants[2] filed a Motion to Dismiss Plaintiff's SAC. A timely opposition was filed by Holland. On September 16, 2026, Judge Carlson entered a Report and Recommendation as follows:

> Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions to dismiss (Docs. 74, 76) be GRANTED in part and

---

[2] JSAJWA Defendants collectively refers to Defendants JSAJWA, Johnston and Confair.

> DENIED in part as follows: First, the motion to dismiss Holland's ADA claim should be GRANTED, in part, and DENIED in part as follows: The motion should be GRANTED with respect to the individual defendants but DENIED as to the institutional defendants.
>
> Holland's Rehabilitation Act claim should be DISMISSED without prejudice.
>
> All other claims should be DISMISSED with prejudice.

(Doc. 90 at p. 47). On September 28, 2026, Holland filed Objections and a supporting brief along with a number of additional records in support of his Objections to the Report and Recommendation (Doc. 91). This brief is filed in opposition to Holland's Objections.[3]

## II. STATEMENT OF FACTS

Mr. Holland has asserted a veritable laundry list of objections, essentially challenging every determination made by Judge Carlson. JSAJWA submits that, while it does not agree with the Court's analysis of the Americans With Disabilities Act claim (a determination which JSAJWA does not challenge at this juncture), the balance of the Report and Recommendation is sound and should be adopted.

---

[3] On October 5, 2026, this Court granted JSAJWA an enlargement to October 27, 2026 for the submission of its opposition brief.

## III. LAW AND ARGUMENT

### A. STANDARD OF REVIEW

Under 28 U.S.C. §636(b)(1) and F.R.C.P. 72(b)(3), the District Court reviews *de novo* those portions of a report and recommendation to which a proper, specific objection is made. *De novo* review does not alter the Rule 12(b)(6) pleading standard. The Court accepts well-pleaded factual allegations as true, but it need not accept legal conclusions, conclusory characterizations or unwarranted inferences. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).

### B. ANALYSIS OF HOLLAND'S OBJECTIONS

It appears that Holland's objections can be broken down into eleven points wherein he maintains the Court erred in its reasoning:

C- The dismissal of his due process claims (Objections 1, 2 and 4);

D- The dismissal of his First Amendment Claim (Objection 3);

E- The dismissal of his ADA claim against Confair and Johnston and the dismissal of his Rehabilitation Act claim without prejudice[4] (Objections 5 and 6);

F- The dismissal of his equal protection claim (Objection 7);

---

[4] Based upon Holland's supplemental submissions (Doc. 91-2), JSAJWA does not challenge the Court's recommendation that he be permitted to amend the SAC in an effort to sufficiently plead a Rehabilitation Act claim.

G- The dismissal of his Fourth Amendment claim and Fifth Amendment takings claim (Objection 8);

H- The determination that Johnston and Confair are entitled to qualified immunity (Objection 9);

I- The dismissal of the Monell claim (Objection 10);

J- The dismissal of the 42 U.S.C. §1983 claim (Objection 11);

K- The dismissal of the state law unjust enrichment claim (Objection 12);

L- The dismissal of the Pennsylvania Constitution claim (Objection 13);

M- The dismissal of the remaining Pennsylvania common law and statutory claims (Objection 14); and

N- The Court's determination of futility relating to amendment of the dismissed claims with the exception of the Rehabilitation Act claim (Objection 15).

JSAJWA, Confair and Johnston will address each objection in the order in which it has been presented in Holland's submission.

## C. THE COURT CORRECTLY DECIDED THAT HOLLAND FAILED TO STATE A COGNIZABLE PROCEDURAL DUE PROCESS CLAIM (Objections 1, 2 and 4)

Holland's objections 1, 2 and 4 are all related to the termination of his service prior to the June 30, 2025 restoration of his service. JSAJWA submits that

Judge Carlson's recommendation should be adopted. Analysis of the allegata of Holland's SAC, together with the Exhibits appended to it, along with Judge Carlucci's Order[5] in which he explains the rationale for his ruling, dictate the dismissal of the SAC procedural due process claims.

There is no dispute that Mr. Holland had a past due balance for his water service at the time that the JSAJWA discontinued his service on June 23, 2025 (See, generally Doc. 72). Holland maintains that he took issue with the amount of his past due bill (Doc. 72 at ¶19a). Moreover, and critical to the analysis of Holland's constitutional claims, Holland acknowledges in Exhibits A-D of the SAC (Doc. 72), that he had been placed on actual notice of the discontinuation of his service. After the interruption of his service Mr. Holland instituted suit in the Court of Common Pleas of Lycoming County by Writ of Summons together with

---

[5] It is well-established that courts are permitted to consider matters of which they may take judicial notice at the 12(b)(6) motion stage, including records and reports of administrative bodies and publically available records and transcripts from judicial proceedings and related or underlying cases which have a direct relation to the matters at issue. *In re* American Continental/Lincoln Savings and Loan Securities Litigation, 102 F.3d 1524, 1537 (9th Cir. 1996).

It is well-settled in this Circuit that matters of public record may be considered without converting a motion to dismiss into one for summary judgment. Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014). Official court dockets and information contained in court files are matters of public record of which the court can take judicial notice. *See* City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). [I]n considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

an Emergency Motion for Injunctive Relief on June 27, 2025 (Doc. 72 at ¶24). On June 30, 2025, a hearing was held in which Judge William P. Carlucci issued an order indicating proper notice was not provided to Mr. Holland and that his service was to be restored within 24 hours (Exhibit "A"). Mr. Holland acknowledges that "service was restored that day before arriving home from the injunction hearing" (Doc. 72 at ¶25).

Holland's SAC asserts constitutional violations under the Fourteenth Amendment with respect to the Equal Protection and Procedural Due Process clauses as well as violations of the First, Fourth and Fifth Amendments. As it relates to the actual disruption of his water service from June 23, 2025 to June 30, 2025, these claims fail.

**There Is No Violation of Holland's Procedural Due Process Rights.**

Several admissions in Holland's SAC dictate dismissal of the procedural due process claim associated with the June 23, 2025 shut-off.

- Holland acknowledges he was aware of a posted door hanger placed more than ten days prior to shut-off of his water service advising him that it would occur (Doc. 72 at ¶13);

- Holland availed himself to the procedure (albeit unsuccessfully) put in place to avoid the shut-off (Doc. 72 at ¶19a);

- Holland acknowledged that Judge Carlucci determined that his submission to the Authority on June 11, 2025, was not effective to suspend the interruption of his service because he did not satisfy the

statutory requirements of the Pennsylvania Water Services Act.[6]

These factual admissions and the June 30, 2025 Court proceeding operate to defeat Holland's procedural due process claims. "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998). To establish a prima facie case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See* Studli v. Children & Youth Families Central Reg'l Office, 346 F.App'x 804, 813 (3d Cir. 2009); Mulholland v. Gov't of Cty. Of Berks, No. 10-CV-5616, 2012 U.S. Dist. LEXIS 43521, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013). Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *See* Leonard v. Owen J. Roberts Sch. Dist., No. 08-CV-

---

[6] 53 P.S. §3102.502(b). This Court can and should consider Judge Carlucci's June 30, 2025 ruling dispositive as it relates to his determination that Holland's notice to the Authority was not effective to suspend the disruption in service. The Full Faith and Credit Act requires federal courts to give state judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. §1738. As the Supreme Court stated in Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 88 L.Ed 2d 877, 106 S.Ct. 768 (1986), a federal court generally must give deference to a state court judgment, granting "the same preclusive effect to a state court judgment as another court of that State would give." *Id*. at 523.

2016, 2009 U.S. Dist. LEXIS 51468, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2029) (citing Daniels v. Williams, 474 U.S. 327, 341, 106 S.Ct. 662, 88 L.Ed. 2d 662 (1986) (Stevens, J., concurring)). In other words, "the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." K.S.S. v. Montgomery Cty. Bd. Of Comm'rs., 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012). "The process that is 'due' in a given situation necessarily differs based on the particular circumstances." Maple Props., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 177 (3d Cir. 2005) (citations omitted).

The Eastern District recently explained:

> In the context of property deprivations, the United States Supreme Court "has never employed an actual notice standard in its jurisprudence. Rather, its focus has always been on the procedures in place to effect notice." United States v. One Toshiba Color Television, 213 F.3d 147, 155 (3d Cir. 2000). Thus, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed 2d 415 (2006). It mandates only that notice be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also* Flowers, 547 U.S. at 220 (holding that notice is "constitutionally sufficient if it was reasonably

> calculated to reach the intended recipient when sent.") The Supreme Court has explained that if, for example, notice by certified mail is returned unclaimed, the municipality must "take additional reasonable steps to attempt to provide notice to the property owners before selling his property, if it is practicable to do so." Flowers, 547 U.S. at 225. The Court recognized that such steps could include resending the notice by regular mail, addressing otherwise undeliverable mail to occupant, or posting notice on the front door. Flowers, 547 U.S. at 236-37.

Madar, 2021 U.S. Dist. LEXIS 100128, 2021 WL 2156362, at 8*.

The case law cited above establishes that the application of procedural due process concepts to a particular set of facts require a common sense approach to ensuring that a property deprivation does not occur without notice to the person suffering the deprivation. Here, immediately upon becoming aware of the ten day notice posting at his home on June 11, 2025, Mr. Holland authored a detailed notice to the JSAJWA setting forth his own "legal notices" and a set of demands to the Authority including a demand for a forensic audit and the termination of any further efforts to either terminate his service or attempt to collect the delinquent balance on his account (Doc. 72 at Ex. B). While Mr. Holland was not satisfied with the Authority's response to this demand, his conduct clearly demonstrates that he was on notice of the Authority's activity and apprised of what steps should be taken to protect his interests. The contentions in his objections are not persuasive as grounds to reject Judge Carlson's recommendations.

On these undisputed facts, the water service interruption running from June 23, 2025 to June 30, 2025, did not violate Holland's procedural due process rights.[7]

### D. HOLLAND FAILED TO PLAUSIBLY ALLEGE FIRST AMENDMENT RETALIATION ON A VIOLATION OF THE PETITION CLAUSE.

Scrutiny of the undisputed time line of events operates to defeat Holland's First Amendment retaliation and petition claims. He has alleged that the action to discontinue his service occurred prior to his petition related to his challenges to the bill and his claim of a medical exemption. The additional allegations do not rise to the level of governmental activity that would deter a person of ordinary firmness from the exercise of constitutional rights. As stated by Judge Carlson in his Report and Recommendation:

---

[7] JSAJWA acknowledges that Judge Carlucci ordered the restoration of Holland's service because, while the property was posted and it was undisputed that Holland had notice of the impending shut-off, the Authority failed to comply with also mailing notice to Holland. This fact, however, does not operate to defeat the procedural due process claim. *See*, El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768 (E.D. Pa. 2007):

> Most significantly, Plaintiffs admit they had **actual notice** of the pending demolitions when they visited the properties in March 2005 and saw the markings on the buildings. Those markings actually alerted them to the existence of a problem with their properties sufficient for them to contact the City. They were then told of the pending demolitions and advised of the action they could take – filing a court injunction – to stop the City from proceeding. Rather than pursuing their judicial remedies, they did nothing other than send a letter. As the Plaintiff had **actual notice** prior to the demolitions, they have no **procedural due process claim** based on inadequate notice procedures. [emphasis in the original].

El Malik, *supra.*

> In his motions papers, Holland also appears to allege that he is asserting a First Amendment retaliation claim in his second amended complaint, but we disagree. Holland's second amended complaint does not specifically state a First Amendment claim. In any event, the matters he alleges are retaliatory were either authorized by the state court, which said that the defendants could curtail Holland's water service provided they gave him the form of advance notice prescribed by state law, or were *de minimis*, like the direction to move his truck or the fact that a water authority employee followed him on social media. Therefore, this unpled claim would likely fail on its merits.

(Doc. 90 at p. 15, n.1).

Consideration of the requisite showing for claims brought on a theory of First Amendment retaliation establish that Holland's claim on this theory fail as a matter of law.

The elements of a retaliation claim under 42 U.S.C. §1983 predicated on the First Amendment are well-settled. Plaintiff must show (1) that he engaged in a protected activity, (2) that the defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. *See* Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity. *See* Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002).

This issue does not turn on a question of whether Holland engaged in a protected activity or whether JSAJWA engaged in the conduct that Holland ascribes to it, but rather whether there was a causal relationship between the two. After all, if there was not a causal relationship then JSAJWA could not have engaged in their conduct in retaliation for Holland having engaged in a protected activity. To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Krouse v. American Sterlizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the Court should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

The need for the Court to carefully analyze the causation issue and the important public policy considerations which support careful scrutiny of these claims was eloquently articulated by Third Circuit Judge Greenberg in the case of Lauren W. *ex rel*. Jean W. v. De Flaminis, 480 F.3d 259 (3d Cir. 2007):

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate

> and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmosphere thereby inviting litigation against themselves in which plaintiffs ask the court to second guess the actors' decisions.

Id., 480 F.3d at 267, 268. Holland advocates for this Court to adopt an approach which the *De Flaminis* decision rejects. The reflexive claim by Holland that Johnston and JSAJWA moved to discontinue his water service for non-payment was retaliatory has no support in this record. As such, this claim, to the extent it has even been properly raised, should be dismissed.

### E. THE COURT PROPERLY DISMISSED HOLLAND'S ADA AND RETALIATION ACT CLAIMS AGAINST JOHNSTON AND CONFAIR (Objections 5 and 6).

At this juncture, JSAJWA does not challenge the determination that the

ADA Claim should go forward as to it or that Holland should be given the opportunity to replead against it on the Rehabilitation Act claim. However, the Recommendation should be adopted insofar as these federal statutory claims should be dismissed against Johnston and Confair because neither statute provides a remedy against individual parties (Doc. 90 at p. 14).

### F. THE COMMENDATION THAT THE EQUAL PROTECTION CLAIM SHOULD BE DISMISSED SHOULD BE ADOPTED (Objection 7).

Holland asserts that the Recommendation related to his equal protection claim should be rejected and points to the general allegata of the SAC without proffering any meaningful legal analysis as to how the law was misapplied.

Holland alleges that he was treated differently because "[d]efendants honored shut-off disputes and medical accommodations for other customers but intentionally refused to honor Plaintiff's valid medical certificate ...." (Doc. 72 at ¶52). In support of this argument, Holland relies upon the termination notice (Doc. 72, Ex. A) which provides:

MEDICAL EMERGENCY NOTICE

> If you, or anyone presently and normally living in your home is seriously ill, we will restore your water service during such illness provided you:
>
> (a) Have a physician certify by phone or in writing that such illness exists and that it may be aggravated if your service is not restored; and
> (b) Make some equitable arrangements to pay the company your past due and current bills for service.
>
> (c) Contact us by calling the telephone number listed below.

Jersey Shore Area Joint Water Authority
Office: 1111 Bardo Avenue, Jersey Shore, PA 17740
Telephone: (570) 398-1443

Tiadaghton Municipal Sewer Authority
P.O. Box 5039, 290 Rice Road
Telephone: (570) 398-2366

This notification provides that the certifying physician confirm the existence of an illness and that some arrangements be made to deal with past due balances. Here, Mr. Holland has been transparent in his SAC and accompanying exhibits that he had no intention of arranging any type of payment plan in order to avoid a shut-off. As such, he did not satisfy the plain language of the Medical Emergency Notice.

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. Holland's Equal Protection argument in this case advances what is called a "class of one" claim, an assertion that the plaintiff has been treated differently than all others in some invidious fashion. In this regard, "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village. Of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 2d 1060 (2000) (citing Sioux City Bridge Co. V. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633,

102 L.Ed.2d 688 (1089)). However, the legal standard to be applied when examining such a claim in the context of a land use dispute is an exacting one, and has been defined by the Third Circuit in the following terms:

> The Supreme Court has held that a "class of one" can attack intentionally different treatment if it is "irrational and wholly arbitrary." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (internal citations omitted) (per curiam) .... The "irrational and wholly arbitrary" standard is doubtless difficult for a plaintiff to meet in a zoning dispute, *id*. at 565-66, 120 S.Ct. 1073, 1074 (Breyer, J., concurring), and we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation.

Eichenlaub, 385 F.3d at 296-87.

In order to sustain a "class of one" equal protection claim: "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 255 (3d Cir. 2006).

Here, Holland has failed to plausibly meet the exacting standard of articulating an equal protection violation because 1) he did not comply with the terms of the MEN; and 2) he has failed to identify even a single customer whose service was not turned off in circumstances such as his own.

Finally, and most importantly, notwithstanding Mr. Holland's demands to the contrary, the JSAJWA is entitled to a reasonable expectation for some payment in exchange for the provision of water service. Under these circumstances, the enforcement of payment obligations can hardly be attacked as constituting "irrational and wholly arbitrary" governmental conduct. *See*, Village of Willowbrook, *supra*, 528 U.S. at 564.

Accordingly, the Equal Protection Claim fails as a matter of law and Judge Carlson's Recommendation that this claim be dismissed should be adopted.

### G. THE RECOMMENDATION THAT THE FOURTH AMENDMENT SEIZURE AND FIFTH AMENDMENT TAKINGS CLAIMS SHOULD BE DISMISSED SHOULD BE ADOPTED (Objection 8).

#### 1. Holland Has Not Suffered a Taking Under The Fifth Amendment By Virtue of the Disruption Of His Service on June 23, 2005

In Count V of the SAC, Holland alleges that the termination of his water service constituted a "per se physical taking" and a "regulatory taking" (Doc. 72 at ¶74).

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property cannot be taken for public use without compensation. Murr v. Wisconsin, 582 U.S. 383, 137 S.Ct. 1933, 1942, 198 L.Ed.2d 497 (2017) (citing U.S. Const. Amend. V). A *per*

*se* regulatory taking occurs when a regulation renders the property "essentially idle." Nekrilov v. City of Jersey City, 45 F.4th 662, 670 (3d Cir. 2022) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)).

Holland argues that the JSAJWA's interruption in water service constitutes an improper taking. Yet, he concedes that he has refused to pay any portion of his delinquent bills or enter a payment plan until he is provided a forensic audit. He admits that he stopped paying his water bills because he contends he owes less. After he stopped paying, the Authority turned the services off.

There has been no *per se* taking. The JSAJWA has not physically taken Holland's property and has not deprived him of all economically viable uses of the property.

A partial regulatory taking may occur even when the owner is not deprived of all economically beneficial use. If he asserts that he has been improperly deprived of a legally cognizable property interest by government action, he may make a claim for a partial taking. Nekrilov, 45 F.4th at 669 ("A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest.")(citing *In re* Trs. Of Conneaut Lake Park, Inc., 855 F.3d 519, 526 (3d Cir. 2017)). A less than total deprivation limiting the property's use may amount to a compensable taking under the test established in Penn

Central Transportation Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The *Penn Central* factors are: (1) the economic impact of the regulation on the value of the property; (2) the extent to which the regulation has interfered with distinct investment backed expectations; and (3) the character of the government action. Nekrilov, 45 F.4th at 672 (quoting Murr, 137 S.Ct. At 1943).

This analysis begins with the character of the government action - disconnecting service and charging fees. When considering this factor, courts determine if the government action is closer to a compensable "classic taking," *id*. at 677 (citing Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 237, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), or to "some public program adjusting the benefits and burdens of economic life to promote the common good," *id*. (citing Penn Cent. Transp. Co., 428 U.S. at 124).

The Authority's enforcement of its fee schedule is non-compensable government action that advances the public interest. The government has a legitimate interest in collecting debts to stabilize municipal finances, and the public has a strong interest in a viable water distribution system. *See* Augustin v. City of Philadelphia, 897 F.3d 142 at 152 (discussing government interest in collecting municipal lien debts and public interest in provision of gas utilities). Courts typically uphold government regulations that "appl[y] generally to a broad

class of properties." Nekrilov, 45 F.4th at 677 (quoting Rogin v. Bensalem Township, 616 F.2d 680, 690 (3d Cir. 1980)). The water rates and charges set by the Authority are universally imposed on consumers throughout its service area. The Authority has not demanded Holland pay charges any different than others in the service area pay. The Authority's termination policies do not restrict or burden Holland any more than they do other water users.

The government action here is akin to non-compensable government regulation that regulates economic life to promote the common good. The reason he has no water services is not because the Authority singled him out. It treated him as it treats any other property owner who refuses to pay for the services. Allowing him to avoid paying for services would shift the cost of maintaining water service to other property owners.

In considering the economic impact factor, the Court must "compare the value that has been taken from the property with the value that remains in the property." Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 497, 107 S. Ct. 1232, 94 L.Ed.2d 472 (1987). The disconnection of services and charging fees do not amount to a taking. There has been no diminution in the property's value.

Because the JSAJWA was exercising its legitimate interest in providing the regulating service and because payment for water service was reasonably

expected, there was no diminished investment-backed expectation supporting a finding of a taking. Therefore, because there has been no taking, the JSAJWA is entitled to dismissal on Holland's Fifth Amendment Claim.

**2. The Fourth Amendment Claims Related to the JSAJWA Activity After the June 30, 2025 Restoration of Service Should Be Dismissed Because Holland Has Not Alleged A Cognizable Deprivation Under the United States Constitution.**

Holland readily concedes that by the time he returned home from the June 30, 2025 hearing, his water service had been restored and there has been no interruption in service since (Doc. 72). His allegations related to post June 30, 2025 JSAJWA conduct are grounded in his suspicion that certain activity was undertaken in anticipation of a future shut-off. This suspicion on Holland's part does not support any of the constitutional claims going forward under 42 U.S.C. §1983. Liability under §1983 requires injury, *see* Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) ("Section 1983 is a tort statute. A tort statute requires injury." (Quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). Here, Holland does not claim that his service has been interrupted since June 30, 2025. Therefore, any activity by the JSAJWA without more– cannot constitute the basis of a constitutional violation.

Simply stated, an attempted violation of Holland's constitutional rights is not remediable under §1983, as no actual deprivation of his federally protected

rights has occurred since the restoration of his service. *See* Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ("Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution")(citing 42 U.S.C. §1983); *cf.* Cnty of Sacramento v. Lewis, 523 U.S. 833, 845 n.7, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (attempted seizures of person are beyond scope of the Fourth Amendment); United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000) ("[I]f the police make a show of authority and the suspect does not submit, there is no seizure.); *see also*, *e.g.*, Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir. 1987) ("[T]he mere *attempt* to deprive a person of his [constitutional] rights is not, under ususal circumstances, actionable under section 1983) (emphasis in the original). It may be that Holland thinks that the JSAJWA staff should be liable because they planned, wanted or conspired to deprive him of water service. If so, §1983 does not provide a remedy. A §1983 claim is viable only if there has been an actual deprivation of a constitutional right. Andree, 818 F.2d 1306, 1311 (7th Cir. 1987); *see also* Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990). Accordingly, as Holland did not suffer an interruption in service after June 30, 2025, he was not deprived of any constitutional right.

Holland also asserts that he was threatened with the towing of his vehicle (Doc. 72 at ¶27). While he does not specify the exact nature of the threats, mere

verbal threats do not provide the basis for a viable §1983 claim. *See* Hopson v. Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992).

For these reasons, all of Holland's allegations related to Fourth Amendment violations after the restoration of his water service fail to state a claim under 42 U.S.C. §1983.

### H. THE RECOMMENDATION THAT JOHNSTON AND CONFAIR ARE ENTITLED TO QUALIFIED IMMUNITY ON HOLLAND'S 42 U.S.C. §1983 CLAIMS SHOULD BE ADOPTED (Objection 9).

Judge Carlson was correct in recognizing that Johnston and Confair are entitled to qualified immunity for their actions leading up to the June 23, 2025 shut-off as well as all of Holland's allegations relating to their post June 30, 2025 conduct.

The Third Circuit has articulated a three-part framework to assess whether a municipal official is entitled to qualified immunity. First, a plaintiff must allege a violation of a statutory or constitutional right. Second, the right at issue must have been clearly established at the time of the alleged misconduct. And third, a reasonable official in the defendant's position would have understood that the challenged conduct violated that right. Doe v. Cnty. of Ctr. Pa, 242 F.3d 437 (3d Cir. 2001) (citing Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999)). The latter two prongs demand an "objective legal reasonableness" inquiry of an

official's action, assessed considering legal rules that were "clearly established" at the time the officials took the action. *Id*. (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Throughout the inquiry, the officials' subjective intent is irrelevant. Anderson, 483 U.S. 635 at 639.

"[I]n most cases, a plaintiff must show that a right is clearly established because 'the violative nature of [the] particular conduct [was] clearly established."'James v. N.J. State Police, 957 F.3d 165 at 169 (3d Cir. 2020) (quoting Ziglar v. Abbasi, 582 U.S. 120, 137 S.Ct. 1843, 1866, 198 L.Ed.2d 290 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015))). In other words, "'settled law' ... must 'squarely govern []' the specific facts at issue." *Id*. (quoting Wesby, 138 S.Ct. At 590 and Kisela v. Hughes, – U.S. –, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018)). This standard can be satisfied by identifying a case where an officer acting under similar circumstances was held to have violated the constitutional provision at issue. James, 957 F.3d at 169-70 (quoting White v. Puly, 137 S.Ct. 548, 552 (2017).

In this setting "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals."' *Id*. (quoting Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted)); *accord* Wesby, 138 S.Ct. At 589-90 ("To be clearly established, a legal principle must ... [be] dictated

by controlling authority or a robust consensus of cases of persuasive authority[.]"). A case directly on point is not required to show a right is clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

Turning to the facts of this case, Johnston, as manager of JSAJWA, is responsible for ensuring that customers pay their bills and take appropriate action when delinquencies are not satisfied. Admittedly, while a ten day notice was not mailed to Holland prior to June 23, he has readily acknowledged that he was aware of the situation by receiving the notification on his property and that he took steps to avoid the shut-off by providing a medical certification and demanding a forensic audit (Doc. 72 at Ex. A-D). However, as has been noted, Judge Carlucci has made a merits determination (Exhibit "A") that Holland's notice did not satisfy the relevant provisions of the Water Services Act[8] which would operate to postpone termination; accordingly, this Court should adopt that determination as it relates to the qualified immunity analysis.

---

[8] 53 P.S. §3102.502(b)(2) provides as follows:

> (2) If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of the claim and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been judicially determined.

Most importantly, even assuming that Johnston erred in disconnecting the service on June 23, 2025 the second prong of the qualified immunity analysis requires that Holland identify precedent that holds that a constitutional violation has occurred in a factually analogous scenario.

Johnston and Confair submit that Holland will be unable to identify any U.S. Supreme Court or Third Circuit cases that recognize under similar facts that someone engaging in suspending water or utility services for nonpayment violates constitutional rights. Similarly, there does not exist a robust collection from our federal courts of appeal that would put Johnston and Confair on notice that this suspension in service would violate constitutional rights.

Holland will be unable to identify any Supreme Court case that recognizes under similar facts and circumstances that suspending services for non-payment of bills when the customer is disputing the charges violates constitutional rights. Similarly, he will not be able to identify a robust collection of cases from the federal courts of appeals that support such a proposition. Thus, Mr. Holland has failed to identify a robust consensus of precedent predicated on substantially similar facts and circumstances that gave every reasonable governmental official notice that proceeding with the shut-off would constitute a violation of his constitutional rights.

Finally, on these facts which are not in dispute, Johnston and Confair's conduct was objectively reasonable.

Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131, S.Ct. 2074, 179 L.Ed.2d 1149 (2011). And even where a clearly established constitutional right has been violated, if the official's mistake as to what the law requires was reasonable, then qualified immunity shields the officer from liability. Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004). Applied in this manner, the doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft, 563 U.S. at 743, 131 S.Ct. 2074 (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). Here, assuming the previous deficiencies in Holland's case can somehow be overlooked, Holland has done nothing more than allege that Johnston and Confair made a reasonable mistake about the scope of the law as it related to the notice to which he was entitled under applicable law. Consequently, Johnston and Confair are entitled to qualified immunity and Judge Carlson's Recommendation should be adopted.

## I. HOLLAND'S SAC FAILS TO STATE A MUNICIPAL LIABILITY CLAIM (Objection 10).

At the outset, JSAJWA maintains that there can be no municipal liability

because Holland has not asserted a facially plausible underlying constitutional violation. Mann v. Palmerton Area School District, 872 F.3d 165 (3d Cir. 2017). In the event this Court holds to the contrary, the municipal liability claim should still be dismissed.

To establish *Monell* liability, a plaintiff must allege that: "(1) he possessed a constitutional right of which he was deprived; (2) the municipality being sued had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiffs constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" Butler v. Upper Merion Twp, 765 F.Supp3d at 451 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Holland's SAC fails to identify any municipal policy or the moving force behind the alleged constitutional violation. While Holland alleges that JSAJWA failed to follow various state regulatory protections, he points only to his own dissatisfaction with the decisions associated with his account. Holland has not articulated a single other instance wherein other customers had their service terminated unlawfully. As such, the *Monell* claim fails.

**J. JUDGE CARLSON WAS CORRECT IN RECOMMENDING DISMISSAL OF THE 42 U.S.C. §1985 CIVIL CONSPIRACY CLAIM (Objection 11).**

As he does throughout his Objections to the Report and Recommendation,

Holland offers a general recitation of the elements of a 42 U.S.C. §1985(3) claim and asserts that he has either satisfied the requisite pleading standard or, in the alternative, he should be given the opportunity to amend the SAC. Scrutiny of the SAC establishes that the only averment which would apply to this claim is that a) he is a disabled veteran; and b) that he was subject to a conspiracy to deprive him of rights because of that status. This allegation falls far short of what is required to plead a plausible 42 U.S.C. §1985(3) claim.

Section 1985(3) "creates no rights." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979). Rather, "[i]t is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Id*.

In other words, it "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting § 1985(3)).

To state a claim under § 1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities

under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber, 440 F.3d at 134 (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983)).

Here, Plaintiff sets forth no facts that support his assertion that he was prevented from the free exercise of his rights to due process, to petition the court, or equal protection. To the contrary, Plaintiff was able to immediately access the court, as he filed his Complaint within five days of his water being shut off and was granted a preliminary injunction within three days of filing his Complaint. He also baldly asserts that he was targeted for being a disabled veteran, but offers no facts to support this statement.

As such and consistent with Judge Carlson's Recommendation, Plaintiff's claims of conspiracy pursuant to §1985 should be dismissed for legal insufficiency.

**K. THE COURT WAS CORRECT IN RECOMMENDING DISMISSAL OF THE STATE LAW UNJUST ENRICHMENT CLAIM (Objection 12).**

"The elements of unjust enrichment are 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Lackner v. Glosser,

892 A.2d 21,34 (Pa. Super. 2006).

Municipal Authorities are permitted by law to establish reasonable rules and regulations. 53 Pa.C.S.A. § 5607(d)(17). The rules and regulations of JSAJWA are lawfully adopted rules and regulations of the JSAJWA, which Plaintiff concedes and relies upon in his allegations that the rules were violated. *See*, SAC, ¶ 37, 39-41, 44, and Exhibit F.

The rules permit the Authority to charge penalties and fees associated with water shutoff. *(See*, SAC Ex. F). As such, it is not "unconscionable" for JSAJWA to charge and ultimately retain these fees for water shutoff and reconnection. Had Plaintiff paid his bill in a timely manner, the fees would not have been incurred.

With regard to his claim for veterinary bills, Plaintiff does not establish that the Defendants received some benefit in exchange for his payment of those fees. As such, Plaintiff's claim for unjust enrichment should be dismissed.

Further, "[t]he purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract." <u>Keenheel v. Com., Pennsylvania Sec. Comm'n</u>, 579 A.2d 1358, 1361 (Pa. Cmwlth. 1990). "One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract." *Id*. It would be impossible for Plaintiff to return the water and sewer services he received. As such, recision is not a proper remedy and should be

dismissed.

### L. DISMISSAL OF THE CLAIM BROUGHT UNDER THE PENNSYLVANIA CONSTITUTION (Objection 13).

Holland fails to articulate the relief to which he believes he is entitled under the Pennsylvania Constitution other than to say that injunctive and declaratory relief are available under the Pennsylvania Constitution. The law is well settled and outlined in the Report and Recommendation as to why Holland's Pennsylvania Constitutional claim fails as a matter of law.

### M. THE REPORT AND RECOMMENDATION SHOULD BE ADOPTED THAT ALL REMAINING STATE COMMON LAW AND STATUTORY CLAIMS BE DISMISSED (Objection 14).

#### 1. Holland Fails To State A Claim Under The Unfair Trade Practices Act.

Holland claims that Defendants violated the UTPCL[9] by engaging in deceptive practices. However, the UTPCL does not apply to political subdivision agencies such as JSAJWA. Meyer v. Cnty. Coll. of Beaver Cnty., 93 A.3d 806, 815 (Pa. 2014).

Therefore, Holland's claims under the UTPCL and demand for treble damages and attorney's fees are legally insufficient and should be dismissed.

[9] Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq.

### 2. Holland Fails To State A Claim For Intentional Infliction Of Emotional Distress Against Johnston, Confair and JSAJWA.

JSAJWA is immune from tort claims such as a claim of Intentional Infliction of Emotional Distress (IIED) pursuant to the Political Subdivision Tort Claims Act. 42 Pa.C.S.A. § 8541. There is no exception to the Political Subdivision Tort Claims Act that applies to this claim. However, even if an exception existed, "[t]o prove intentional infliction of emotional distress, Holland must set forth facts so extreme and outrageous that the conduct described must 'go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998).

Here, Holland generically asserts that Defendants shut off water and sewer service "during a medical emergency," "enlisting police officers to intimidate Plaintiff under threat of arrest or towing," "conditioning restoration on an in-person signing or full payment despite a court injunction," and "continuing to bill and threaten further shut-offs in knowing violation of state law and judicial order." *See*, Amended Complaint.

Preliminarily, Defendants' rules for service reasonably require payment of bills in exchange for water and sewer service. This is not outrageous or extreme. As such, conditioning restoration of service on full payment does not rise to the

level of intentional infliction of emotional distress.

Further, the Court Order dated June 30, 2025 (SAC at Exhibit T) indicates that Plaintiff failed to produce evidence that his claim of a just defense for non-payment was sufficient to serve as a bona fide dispute consistent with 53 Pa.C.S. § 3102.502. In fact, the Order states that water service may be discontinued if the statutory process is followed by Defendants. As such, Holland's claim that continued threats of shutoff were in violation of state law and court order is meritless.

Additionally, Plaintiff provides no detail regarding what the medical emergency was, or why shutting off water and sewer was conduct was "beyond all possible bounds of decency." He further fails to provide any context for his interactions with the police officers, other than they "intimidated" him. This falls far short of the conduct contemplated by the Pennsylvania Supreme Court in Hoy, particularly considering that Plaintiff admits he owes payment for water services and was aware that non-payment could result in water shut-off.

As such, Holland's claim for IIED should be dismissed for legal insufficiency.

**3. Holland's Claim For Breach of Fiduciary Duty Fails As A Matter Of Law.**

Plaintiff claims that the Defendants breached their fiduciary duty to

Plaintiff.

"To prevail on [a] breach of fiduciary duty claims, [Plaintiff is] required to prove the following elements: the existence of a fiduciary relationship between Plaintiff and [Defendants], that [Defendant] negligently or intentionally failed to act in good faith and solely for [Plaintiff]'s benefit, and that [Plaintiff] suffered an injury caused by [Defendants'] breach of … fiduciary duty." Snyder v. Crusader Servicing Corp., 231 A.3d 20, 31 (Pa. Super. 2020).

For the reasons outlined in preceding arguments, Holland's claim on this Count against JSAJWA is barred by the Political Subdivision Tort Claims Act.

Holland also fails to state a claim for breach of a fiduciary duty against Johnston and Confair. In order to allege a breach of fiduciary duty, Holland must assert that a "fiduciary or confidential relationship existed between themselves and [d]efendants." Reese v. Pook & Pook, LLC, 158 F.Supp.3d 271, 298 (E.D. Pa. 2016) (internal citations omitted). After a plaintiff adequately pleads that such a relationship exists, a plaintiff must show that (1) the defendants negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which they are employed; (2) plaintiffs suffered injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries. *Id.* "Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a

relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Id*. (internal citations omitted).

In the case of Yenchi v. Ameriprise Fin., Inc., 639 Pa. 618, 161 A.3d 811, 819-21 (Pa. 2017), the Pennsylvania Supreme Court did not recognize the existence of a therapist-patient or even doctor-patient relationship as evidence of a fiduciary relationship. The Court in Yenchi specifically uses the word "deal" to contextualize the fiduciary relationship. *Id*. Breach of fiduciary duty claims usually arise within the context of a business transaction, where a duty is created through a financial relationship, the benefit of which is some sort of exchange of management or monies or services related to business or personal affairs management. *See, e.g.*, Puente v. Navy Fed. Credit Union, 2025 U.S. Dist. LEXIS 20229, 2025 WL 408677 (E.D. Pa. 2025); Gen. Refractories Co. v. Liberty Mut. Ins. Co., 199 U.S. Dist. LEXIS 18932, 1999 WL 1134530 (E.D. Pa. 1999); Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 2008 WL3852256 (E.D. Pa. 2008); Health Robotics, LLC v. Bennett, 2009 U.S. Dist. LEXIS 119945, 2009 WL 5033966 (E.D. Pa. 2009).

Johnston's counsel is unable to locate a case where a fiduciary or confidential relationship, for breach of fiduciary duty purposes, existed between parties similar to those in the present case. Considering the guidance of the

Supreme Court, the cases in this Circuit regarding fiduciary duty, and the lack of other cases indicating otherwise, the Court should find that there is no fiduciary duty or confidential duty within the context of a Breach of Fiduciary claim that exists in the present case. Holland's claim for breach of fiduciary duty should be dismissed.

### N. THE COURT'S RECOMMENDATION REGARDING THE FUTILITY OF AMENDMENT OF THE DISMISSED CLAIMS WITH THE EXCEPTION OF THE REHABILITATION ACT CLAIM SHOULD BE ADOPTED (Objection 15).

Magistrate Judge Carlson's thoughtful analysis establishes that with respect to each claim, with the exception of the ADA and Rehabilitation Act claims, Holland's very detailed factual predicate simply does not provide a basis to support the claims he has advanced. As such the Recommendation regarding futility of amendment should be adopted.

## V. CONCLUSION

For these reasons, JSAJWA, Confair and Johnston pray for the adoption of the Report and Recommendation in its entirety.

Respectfully submitted:

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

By: s/Sean P. McDonough
Sean P. McDonough, Esquire
Attorney for Defendants Jersey Shore Area

Jt. Water Authority, Johnston & Confair
PA ID# 47428
459 Wyoming Avenue
Kingston, PA 18704
Phone (570) 347-1011 or 570-288-1427
Fax (570) 347-7028 or 570-288-7099
smcdonough@dlplaw.com

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(b)(2)[10]**

I, Sean P. McDonough, Esquire, Attorney for Defendants Jersey Shore Area Joint Water Authority, Eric Johnston and Timothy Confair, hereby certify that the foregoing brief complies with Fed.R.Civ.P. 11 in that the brief does not exceed 15,000 words in length. This brief contains 9,191 words.

Date: October 27, 2026

S/Sean P. McDonough
Sean P. McDonough, Esquire
Attorney for Defendants Jersey Shore Area Jt. Water Authority, Johnston & Confair

[10] On October 21, 2026, Moving Defendants filed a motion to file a brief in excess of 5,000 words. On October 23, 2026, the Court issued an order granting Defendants' motion and their brief cannot exceed 15,000 words in length.

## CERTIFICATE OF SERVICE

I, SEAN P. McDONOUGH, ESQUIRE, hereby certify that on the 27th day of October, 2026, I served the foregoing Jersey Shore Defendants' Brief in Opposition to Plaintiff's Objections to the Report and Recommendation of Magistrate Judge Carlson upon the persons indicated below as follows:

Via email transmission

Dion Storm Holland
566 High Street
Jersey Shore, PA 17740
subarudion@gmail.com
(Plaintiff- pro se)

Via electronic filing

Michael J. Crocenzi, Esquire
Sarah L. Doyle, Esquire
100 East Market Street
York, PA 17401
mcrocenzi@barley.com
sdoyle@barley.com
(Counsel for Defendant Tiadaghton Mun. Sewer Authority)

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

SEAN P. McDONOUGH, ESQUIRE
Attorney for Defendants Jersey Shore Area Jt.
Water Authority, Johnston & Confair