**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DION STORM HOLLAND,** | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 4:25-cv-01323-KMN |
| **JERSEY SHORE AREA JOINT** | : | (Judge Keli M. Neary) |
| **WATER AUTHORITY**; | : | (Magistrate Judge Carlson) |
| **TIADAGHTON VALLEY** | : | |
| **MUNICIPAL AUTHORITY**; | : | **CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFF'S SPECIFIC OBJECTIONS TO THE REPORT AND RECOMMENDATION** |
| **ERIC S. JOHNSTON**; **TIMOTHY** | : | |
| **CONFAIR**; and **JOHN DOE 1-5** in | : | |
| their individual capacities, | : | |
| Defendants. | : | |
| | : | |

**CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFF'S SPECIFIC OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Responses addressed: ECF Nos. 94 and 97
Objections: ECF No. 91
Report and Recommendation: ECF No. 90

Authorized by ECF No. 100 entered October 30, 2026
Deadline November 17, 2026
Maximum 10,000 words

Respectfully submitted,

/s/ Dion Storm Holland

Dion Storm Holland, Pro Se
In care of: 566 High Street
Jersey Shore, Pennsylvania 17740
(814) 574-9664 subarudion@gmail.com

# TABLE OF CONTENTS

I. SCOPE OF REPLY AND STANDARD OF REVIEW 7

II. PROCEDURAL DUE PROCESS REQUIRES MEANINGFUL REVIEW BEFORE TERMINATION 8

III. THE FIRST AMENDMENT CLAIM CONCERNS LATER RETALIATORY ACTS 17

IV. THE DISABILITY ANALYSIS MUST PRESERVE THE INSTITUTIONAL CLAIM 21

V. EQUAL PROTECTION REQUIRES A SEPARATE COMPARATOR ANALYSIS 24

VI. THE FOURTH AMENDMENT AND TAKINGS THEORIES REQUIRE DISTINCT ANALYSIS 26

VII. QUALIFIED IMMUNITY MUST ADDRESS THE PARTICULAR RIGHT AND ACTOR 29

VIII. MUNICIPAL LIABILITY REQUIRES A CAUSAL POLICY OR DECISION 32

IX. CONSPIRACY REQUIRES FACTS SUPPORTING AGREEMENT AND THE PARTICULAR STATUTE 35

X. UNJUST ENRICHMENT REQUIRES AN ACTUAL BENEFIT AND A SEPARATE CONTRACT ANALYSIS 37

XI. THE REMAINING STATE CLAIMS REQUIRE INDIVIDUAL TREATMENT 39

XII. AMENDMENT MUST BE ASSESSED BY CLAIM AND ACTUAL OPPORTUNITY TO CURE 43

XIII. REQUESTED DISPOSITION 47

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) 7, 24

City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) 46

Connick v. Thompson, 563 U.S. 51 (2011) 33

El Malik v. City of Philadelphia, 2007 U.S. Dist. LEXIS 21768 (E.D. Pa. 2007) 16

Erickson v. Pardus, 551 U.S. 89 (2007) 7

Farber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006) 36

Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000) 19

Foman v. Davis, 371 U.S. 178 (1962) 44

Furgess v. Pennsylvania Department of Corrections, 933 F.3d 285 (3d Cir. 2019) 22

Gagliardi v. Clark, 2006 WL 2847409 (discussed in ECF No. 94) 11, 26

Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir. 2002) 44

Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366 (1979) 36

Haines v. Kerner, 404 U.S. 519 (1972) 7

Hickey v. University of Pittsburgh, 81 F.4th 301 (3d Cir. 2023) 38

Johnson v. City of Saginaw, 980 F.3d 497 (6th Cir. 2020) 30

Johnson v. City of Shelby, 574 U.S. 10 (2014) 8

Kelly v. Borough of Carlisle, 622 F.3d 248 (3d Cir. 2010) 34

Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997) 19

Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997) 36

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) 14

Manza v. Newhard, 915 F. Supp. 2d 638 (S.D.N.Y. 2013) 30

Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) 9

Mathews v. Eldridge, 424 U.S. 319 (1976) 9

Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978) 9, 10, 11, 12, 14, 16, 30

Meyer v. Community College of Beaver County, 93 A.3d 806 (Pa. 2014) 40, 46

Mirabella v. Villard, 853 F.3d 641 (3d Cir. 2017) 18, 31

Owen v. City of Independence, 445 U.S. 622 (1980) 29

Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518 (1986) 14

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) 33

Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978) 28

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) 24, 44

Ransom v. Marrazzo, 848 F.2d 398 (3d Cir. 1988) 9, 30

Soldal v. Cook County, 506 U.S. 56 (1992) 26

Stringer v. County of Bucks, 141 F.4th 76 (3d Cir. 2025) 32

Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006) 17, 31

Tulio v. Lansdale Borough, 660 F. Supp. 3d 368 (E.D. Pa. 2023), aff'd, 2023 WL 8711822 (3d Cir. Dec. 18, 2023) 28

United States v. Jacobsen, 466 U.S. 109 (1984) 26

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) 19

Ziegler v. City of Reading, No. 1060 C.D. 2013 (Pa. Cmwlth. Jan. 24, 2014) (unreported) 16

**Statutes and Rules**

28 U.S.C. § 636(b)(1) 7

28 U.S.C. § 1738 14

42 U.S.C. § 1983 23, 29, 37, 46

42 U.S.C. § 1985(3) 35, 36

42 Pa.C.S. § 8550 41

53 Pa.C.S. § 5610(e) 34

Federal Rule of Civil Procedure 9(b) 41

Federal Rule of Civil Procedure 12(b)(6) 7

Federal Rule of Civil Procedure 72(b)(3) 7

Federal Rule of Civil Procedure 5(b)(2)(E) 50

Federal Rule of Civil Procedure 12(a)(4)(A) 48

Federal Rule of Civil Procedure 15(a)(2) 47

M.D. Pa. Local Rule 15.1 47

## I. SCOPE OF REPLY AND STANDARD OF REVIEW

Plaintiff seeks de novo review of his objections, ECF No. 91, to the Report and Recommendation (R&R), ECF No. 90. The Second Amended Complaint (SAC), ECF No. 72, alleges an unanswered billing dispute, termination despite a medical certificate, conditions on restoration, and a subsequent police warning. SAC ¶¶ 19(a), 20–23, 40(b), 43, 83.

This reply addresses TVMA's response, ECF No. 94, and the response of JSAJWA, Johnston, and Confair, ECF No. 97, under ECF No. 100 ¶¶ 2–4.

The parties agree that 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) require de novo review of properly objected-to recommendations, using the Rule 12(b)(6) standard. ECF No. 94 at 3; ECF No. 97 § III.A, at 4. Plaintiff must allege a plausible claim; legal conclusions and unwarranted inferences receive no presumption of truth. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678–79 (2009). But a response brief cannot resolve factual disputes against the pleading. A disputed balance cannot become an admitted delinquency, and an alleged absence of investigation cannot become a completed merits review, merely through Defendants' characterization.

***Haines v. Kerner***, 404 U.S. 519, 520–21 (1972), and ***Erickson v. Pardus***, 551 U.S. 89, 94 (2007), require liberal construction of pro se allegations. They do not eliminate plausibility or supply absent facts. They require reading the allegations for their substance, including facts appearing outside a particular count.

***Johnson v. City of Shelby***, 574 U.S. 10, 11–12 (2014), rejects dismissal based merely on an imperfect statement of legal theory where the facts provide fair notice. Here, the SAC expressly invokes **the First Amendment** in its jurisdictional statement, ¶ 83, and Prayer ¶ 136(A). That theory cannot accurately be described as wholly absent.

JSAJWA groups the fifteen objections by subject. ECF No. 97 § III.B, at 4–5.

Unless identified as a PDF page, references to ECF Nos. 90, 91, 94, and 97 use their printed pages. The SAC repeats some paragraph numbers; references identify the count where necessary. ECF No. 10-1 contains the exhibits identified and incorporated in the SAC and relied upon by both responses. This reply relies on that existing record. The SAC remains the operative pleading; argument and an unfiled proposed amendment do not replace its allegations.

## <u>II. PROCEDURAL DUE PROCESS REQUIRES MEANINGFUL REVIEW BEFORE TERMINATION</u>

### A. The governing right concerns review of a disputed account

On June 11, Plaintiff disputed the $461.15 on the posted shutoff notice because his account showed $559.84 online. He requested an itemized statement and alleges that the Authority **<u>neither acknowledged nor investigated</u>** his dispute before shutting off his water on June 23. ECF No. 10-1, Ex. A PDF p. 4, Ex. B, PDF p. 6. SAC ¶¶ 19(a), 40(b), 43. The objection turns on whether Plaintiff had a

meaningful chance to present that discrepancy to someone authorized to correct it **before** the shutoff. ECF No. 91 at 2–6. See ECF No. 94 at 3–7 and ECF No. 97 at 5–11.

***Memphis Light, Gas & Water Division v. Craft***, 436 U.S. 1, 16–19, 22 (1978), addresses the procedural protection owed before termination when a utility customer disputes charges. Informal consultation can suffice. Plaintiff does not demand a trial at the utility office, a favorable determination, or constitutional production of every record in his accounting demand. He alleges that the basic review opportunity itself was missing. ***Ransom v. Marrazzo***, 848 F.2d 398, 409 (3d Cir. 1988), recognizes the protected interest and required safeguards in the Pennsylvania water-service setting.

***Marbury v. Madison***, 5 U.S. (1 Cranch) 137, 177–78 (1803), recognizes the Court's **duty** to **apply** the Constitution when deciding the case before it. The June 30 order resolved the statutory form of Plaintiff's submission. This Court must separately determine whether the pleaded process met the **Fourteenth Amendment**. ***Memphis Light*** applies the balancing framework of ***Mathews v. Eldridge***, 424 U.S. 319, 335 (1976). Continued residential water service is a substantial private interest. The conflicting amounts on the notice and online account illustrate the risk of error. Identifying a reviewer and providing a brief opportunity to raise the discrepancy before termination could reduce that risk while

preserving the Authority's ability to collect valid charges. ***Memphis Light***, 436 U.S. at 16–19.

**That distinction matters** even if an ultimately collectible balance existed. **Due process** regulates how government may deprive a person of a protected interest; its protection is not confined to people who ultimately prevail. The Court need not determine the correct balance to decide whether the SAC plausibly alleges denial of process. Nor must it endorse every accounting or commercial-law assertion to address the narrower billing question reflected in the documents.

The due-process claim rests on the alleged denial of a meaningful chance to contest the balance before termination. The missed mailing and unanswered dispute bear on whether Plaintiff could use the available procedures. ECF No. 94 at 4. SAC ¶¶ 19(a), 40(b), 43.

**B. Actual notice does not establish meaningful consideration**

JSAJWA relies on Plaintiff's receipt of the posted notice and prompt written objection. ECF No. 97 at 7–10. Those facts establish awareness of the threatened shutoff.

The June 11 door hanger tells customers how to arrange payment and seek restoration based on a medical emergency. It identifies no procedure for disputing the amount demanded or reaching anyone authorized to correct a billing error. ECF

No. 10-1, PDF p. 4. Under ***Memphis Light***, notice of a threatened termination **MUST** also **adequately advise the customer of an available procedure for challenging the disputed charge**. 436 U.S. at 13–15. In ***Gagliardi v. Clark***, No. 06-20, slip op. at 13–17 (W.D. Pa. Sept. 28, 2006), the record included a notice sent before termination that explained how to contest the shutoff, including a hearing procedure. The plaintiffs did not use the available PUC complaint process. Here, the June 11 door hanger gave no instructions for disputing the amount demanded. Plaintiff nevertheless emailed JSAJWA that day, identified the $461.15 balance on the notice and the $559.84 balance online, and requested an itemized statement. The SAC alleges that the Authority terminated service before Plaintiff had a meaningful opportunity to present that discrepancy to someone authorized to correct it. ECF No. 10-1, PDF pp. 4, 6. SAC ¶¶ 19(a), 40(b), 43.

TVMA disputes whether the SAC identifies what it received or whether it controlled review. ECF No. 94 at 5. The June 11 notice names both authorities and explains payment and medical restoration, but gives no instructions to submit a separate sewer dispute to TVMA. ECF No. 10-1, PDF p. 4. Plaintiff sent his written dispute to JSAJWA that day. Id., PDF p. 6. The joint notice supports an inference that TVMA participated in termination and supplies no basis to fault Plaintiff for failing to send a duplicate dispute. If the Court requires more detail,

Plaintiff requests targeted leave to clarify TVMA's role in issuing the notice and receiving, routing, or reviewing the dispute.

The R&R and JSAJWA rely on Plaintiff's ability to transmit an objection. ECF No. 90 at 22–24. ECF No. 97 at 10. The SAC alleges that the dispute went **unacknowledged and uninvestigated** and that Plaintiff **had no meaningful** protest procedure. SAC ¶¶ 40(b), 43, 45–49.

An internal determination that Plaintiff's papers were insufficient could identify defects in form while leaving him without a meaningful opportunity to present the discrepancy between the $461.15 door hanger and the $559.84 online balance to personnel authorized to investigate and correct it. ECF No. 10-1, Ex. B, PDF p. 6. SAC ¶¶ 19(a), 40(b), 43. As to the dispute submission, the June 30 order found only statutory-form defects after the June 23 termination. ECF No. 97-1, PDF pp. 2–3. **It does not** establish that the conflicting balances received pretermination review. ***Memphis Light***, 436 U.S. at 16–19.

**C. The incorporated documents identify a specific discrepancy**

The June 11 email identifies $461.15 demanded on the door notice and $559.84 displayed online, requests an itemized statement, and identifies attached **billing and medical notices**. ECF No. 10-1, Ex. B, PDF p. 6. The billing document requests transaction information and an explanation of the balance. Id.,

Ex. D, PDF pp. 11–12. Those materials supply an identifiable account question beyond a general objection to paying for water service.

The separate demand for information about **securities, credits, or public trust funds** does not establish their existence or an entitlement to an audit. ECF No. 10-1, PDF p. 12, item (3). The conflicting balances independently identify a concrete billing dispute.

Rule VII.F describes investigation of a questioned bill when a customer brings or mails it within the stated period. ECF No. 10-1, Ex. F, PDF p. 24; SAC ¶ 40(b). Its submission requirements cannot simply be ignored, and Plaintiff does not equate email automatically with every specified method. But the written rule's existence **is not proof** that a customer was afforded a meaningful opportunity to use it. Its operation on the pleaded facts **remains the question**.

TVMA argues that disagreement about an amount does not itself establish constitutional injury. ECF No. 94 § I.C, at 6–7. The discrepancy's significance is that it identifies the subject of the allegedly denied review. JSAJWA's description of delinquency as undisputed likewise cannot dispose of that claim while the SAC and incorporated email **dispute the demanded amount**. ECF No. 97 at 6; SAC ¶¶ 19(a), 40(b). Plaintiff's allegations do not prove nothing was owed; Defendants' characterization **does not prove review occurred**.

Plaintiff relies on *Memphis Light's* utility-specific holding. ***Logan v. Zimmerman Brush Co.***, 455 U.S. 422, 433–37 (1982), illustrates why the formal existence of a procedure does not establish a meaningful opportunity to be heard. See ECF No. 94 at 7.

**D. The June 30 order must receive its actual scope**

JSAJWA invokes the June 30 order and full faith and credit, including 28 U.S.C. § 1738 and Parsons Steel. ECF No. 97 at 8 n.6. The order found that the termination notice was posted but not mailed and that Plaintiff's submissions lacked the oath or affirmation and no-delay statement needed for the asserted statutory just defense. ECF No. 97-1, PDF pp. 2–3. Plaintiff does not seek contrary findings about those deficiencies in the June submission.

Those findings do not expressly adjudicate whether empowered utility personnel provided constitutionally adequate account review before June 23. The order directs restoration and specifies conditions governing another termination. It does not expressly find that the balance discrepancy was investigated before the initial shutoff. Its statutory findings deserve their proper effect; they should not be expanded into resolution of a separate federal issue merely because both concern the same account.

Issue preclusion requires attention to the issue actually determined. The written order alone **<u>does not</u>** establish adjudication of the **distinct federal review**

**question**. A hearing transcript or fuller state-court record might affect that analysis; ECF No. 97 does not identify such a record establishing decision of that particular question. The Court should distinguish the statutory submission finding Plaintiff accepts from the additional constitutional conclusion Defendants ask it to infer.

**E. Later relief does not establish adequate pretermination process**

TVMA argues that the hearing supplied adequate post deprivation process. ECF No. 94 § I.D, at 7. JSAJWA likewise relies on available judicial procedures. ECF No. 97 at 10–11. The SAC alleges termination June 23 and restoration after the June 30 hearing. SAC ¶¶ 18, 21, 24–25. The hearing therefore **followed** the initial **deprivation**.

Plaintiff filed this action in the Lycoming County Court of Common Pleas on June 27, 2025, after the June 23 shutoff. That court ordered restoration on June 30. TVMA then removed the action on July 21 with JSAJWA's consent. SAC ¶¶ 18, 24–25, 30. ECF No. 1 ¶¶ 1, 10. ECF No. 97-1, PDF p. 3. That sequence shows when Plaintiff obtained judicial relief and how the case reached this Court. The question raised by the objection is what opportunity Plaintiff had before June 23 to **present the conflicting balances to someone authorized to review and correct the account.**

***Memphis Light*** considered why available judicial remedies **did not** substitute for the utility review required in the circumstances before it. 436 U.S. at 19–22. Restoration can limit continuing injury and affect remedies. It does not establish what process preceded the completed interruption. Plaintiff **need not** allege a second interruption to challenge the process preceding the first.

***Ziegler v. City of Reading***, No. 1060 C.D. 2013, slip op. 7–11 (Pa. Cmwlth. Jan. 24, 2014) (unreported), illustrates the timing distinction. It identified a deficient procedure but affirmed denial of an injunction because a judicial hearing preceded the ensuing termination. The SAC alleges **the reverse sequence** for the June 23 shutoff. *Ziegler* is persuasive, nonbinding authority; it does not itself establish damages entitlement or resolve qualified immunity. Its actual outcome and its timing rationale both warrant consideration.

*El Malik*, cited by JSAJWA, concerns available relief. ECF No. 97 at 11 & n.7. The restoration order establishes when Plaintiff obtained judicial relief.

The June 30 order also allowed later termination following new mailing and posting unless Plaintiff supplied the specified statutory notice. ECF No. 97-1, PDF p. 3. SAC ¶¶ 19(b)–(c), 27 allege a corrected July 2 packet and July 9 enforcement activity. That condition prevents treating the order as unconditional permission for every later act. The present record does not establish that the corrected packet

necessarily satisfied the statute, that contempt occurred, or that another interruption followed. Those limits leave the pre-June 23 due-process question intact.

## III. THE FIRST AMENDMENT CLAIM CONCERNS LATER RETALIATORY ACTS

### A. The pleaded theory differs from denial of court access

TVMA addresses retaliation in ECF No. 94 § II.A–C, at 8–10; JSAJWA addresses it in ECF No. 97 § III.D, at 11–14. TVMA recognizes the First Amendment references but disputes factual sufficiency. JSAJWA repeats the premise that no First Amendment claim was pleaded. The SAC's jurisdictional statement, ¶ 83, and Prayer ¶ 136(A) **contradict** that premise. ECF No. 91 at 6–9 identifies the theory and the police restriction supporting it.

The elements remain protected activity, adverse action sufficient to deter a person of ordinary firmness, and a causal connection. ***Thomas v. Independence Township***, 463 F.3d 285, 296 (3d Cir. 2006). Submitting a grievance to government and petitioning a court are relevant activities; the pleading must connect the challenged response to them. Plaintiff's theory concerns punishment or threatened punishment for continued grievances, not an assertion that he was physically prevented from filing this lawsuit.

TVMA's observation that no one expressly forbade a court filing therefore does not answer the alleged restriction on direct petitioning of the Authority. ECF

No. 94 at 9. Plaintiff's eventual court filing also does not conclusively show that the alleged threat could not deter an ordinary person. The ordinary-firmness inquiry does not require the particular plaintiff to surrender his rights.

**B. The police warning requires analysis of its content**

SAC ¶ 22 alleges a request to verify the medical certificate and Johnston's refusal to restore service unless Plaintiff appeared to sign an agreement or paid the balance. Paragraph 23 then alleges that Defendants caused police to appear June 25, that officers warned further dispute-related contact could become criminal, and that contact with the Authority was restricted to payment. Together, those allegations describe an effort to obtain restoration followed by a warning directed at continued grievances.

***Mirabella v. Villard***, 853 F.3d 641, 649–52 (3d Cir. 2017), addresses retaliatory no-contact restrictions and government speech threatening punishment or adverse action. Every unwelcome official statement is not actionable. A police-delivered warning linking further grievances to criminal consequences, however, requires evaluation of its content and context. It is not inherently harmless because no arrest immediately followed.

TVMA points to the absence of an arrest. ECF No. 94 at 9. The Jersey Shore defendants quote the R&R's discussion of the truck and social media. ECF No. 97 at 12 (quoting ECF No. 90 at 15 n.2). SAC ¶ 23 alleges a separate incident on June

25, when officers warned Plaintiff that continued contact about the dispute could "turn criminal" and instructed him to contact the Authority only to make payment. The alleged restriction concerned access to the government office controlling an essential service during an ongoing dispute. That context bears on deterrence. Plaintiff seeks analysis of the pleaded warning, not liability based solely on disagreement with collection activity.

**C. Causation must be assessed for each challenged act**

JSAJWA argues that collection began before protected activity and could not have been caused by it. ECF No. 97 at 11–13. That point may defeat an inference that an original collection decision retaliated against a later event. It does not resolve whether officials subsequently caused a police warning because Plaintiff continued disputing the account and seeking restoration. The initial collection decision and June 25 warning are different acts.

The June 25 warning allegedly linked possible criminal consequences to further contact about the dispute and allowed contact only for payment. SAC ¶ 23. The warning's terms support an inference that it targeted Plaintiff's continued petitioning over the disputed bill. ECF No. 94 at 9–10. ECF No. 97 at 13 (discussing Krouse, Farrell, and Woodson).

JSAJWA also invokes the same-decision principle and government's ability to perform its functions despite complaints. ECF No. 97 at 12–14. A legitimate

collection purpose matters, but it does not establish that every alleged criminal warning would have occurred absent protected grievances. Lawful collection and the additional conduct challenged **must** be distinguished. The SAC does not establish a right to obstruct operations; it alleges a **coercive limit on pursuit of an account dispute**.

The July 9 towing allegation likewise requires identification of the right asserted. SAC ¶ 27; ECF No. 94 at 10; ECF No. 97 at 22–24. An unexecuted threat does not automatically establish a completed seizure. But absence of a seizure or another shutoff does not itself defeat retaliation. Attribution, adverse effect under the objective standard, and causal connection remain necessary.

**D. Each defendant's responsibility requires separate consideration**

TVMA correctly argues that collective references cannot replace facts identifying its participation. ECF No. 94 § II.A, at 8. The SAC identifies Johnston and Confair as participants in termination and enforcement and alleges communications among authorities and police. SAC ¶¶ 8–9, 21–23, 27, 29. Those allegations require examination for what they actually attribute to each actor. Participation in the same litigation creates no presumption of shared responsibility. The June 11 termination notice identifies both authorities. ECF No. 10-1, Ex. A, PDF p. 4. The SAC alleges that a field worker handed Plaintiff a renewed ten-day termination notice when he returned home from the June 30 restoration hearing.

SAC ¶¶ 25–26, 42. Those allegations support an inference of coordination in pursuing termination. The SAC describes interagency communications on information and belief, and Plaintiff cannot identify from the present record who contacted the Borough or police about the July 9 enforcement. SAC ¶¶ 27–29. If the Court finds TVMA's role insufficiently pleaded, Plaintiff requests leave to specify what each authority did in issuing the renewed notices.

Institutional liability also requires a municipal-liability basis, discussed below. Plaintiff does not seek to hold TVMA liable merely because another defendant acted unlawfully. If attribution is insufficient, the Court should identify the missing connection and assess whether amendment could supply it. That determination should not rest on the inaccurate premise that the SAC contains no First Amendment theory or that an actual arrest was indispensable.

## IV. THE DISABILITY ANALYSIS MUST PRESERVE THE INSTITUTIONAL CLAIM

TVMA's amendment argument addresses funding, ECF No. 94 at 19–20; JSAJWA addresses the ADA and Rehabilitation Act in ECF No. 97 § III.E, at 14–15. The R&R recommends allowing the institutional ADA claim, dismissing it against individuals, and dismissing the Rehabilitation Act claim without prejudice. ECF No. 90 at 47; ECF No. 97 at 3–4 & n.4. JSAJWA expressly does not

challenge the favorable institutional recommendation at this juncture. The Court should preserve it.

The medical chronology matters. SAC ¶ 20 alleges that Plaintiff obtained the physician's certification June 20 and hand-delivered it June 23 before termination. Paragraph 22 alleges that Johnston would verify it but conditioned restoration on an in-person agreement or full payment. Those allegations should not be replaced by an assumption that notice of the accommodation need necessarily followed the relevant decision.

The theory is more specific than whether a disabled customer must ever pay charges. Plaintiff alleges a disability-related need for uninterrupted service and denial of accommodation in termination and restoration. ***Furgess v. Pennsylvania Department of Corrections***, 933 F.3d 285, 291–92 & n.25 (3d Cir. 2019), recognizes **that failure to provide a reasonable accommodation can constitute disability-based discrimination without an independent showing of personal animosity.** The accommodation, notice, causation, and applicable damages standard still require satisfaction.

JSAJWA relies on the medical-restoration policy's payment-arrangement condition and argues that Plaintiff had no intention of arranging payment. ECF No. 97 at 15–16. Plaintiff raised a specific billing discrepancy and requested an

itemized statement before termination. ECF No. 10-1, Ex. B, PDF p. 6. SAC ¶¶ 19(a), 40(b). Johnston allegedly conditioned restoration on an in-person agreement or payment of the full disputed balance after Plaintiff asked him to verify the medical certificate. SAC ¶ 22. Whether the policy allowed those conditions and whether the authorities reasonably accommodated the request remain distinct from the opportunity to dispute the balance before shutoff.

The reply does not create a new individual-capacity ADA claim. Johnston's and Confair's conduct nevertheless remains relevant to institutional notice and decision making and to their own potential Section 1983 liability. Dismissal of an individual statutory claim does not erase that conduct from the constitutional analysis.

ECF No. 91-2 supplies a concrete basis for curing the Rehabilitation Act funding allegation: an ARPA award, an extension through September 30, 2026, identification of TVMA as recipient, and federal civil-rights assurances. ECF No. 91-2, PDF pp. 5, 8, 10–12; ECF No. 91 at 11–12. Those materials do not automatically amend SAC ¶ 57(d) or prove every statutory element. They explain why a specific curative opportunity is meaningful. Funding and covered-program allegations must be assessed separately for each entity.

## V. EQUAL PROTECTION REQUIRES A SEPARATE COMPARATOR ANALYSIS

TVMA addresses equal protection in ECF No. 94 § III, at 10–12; JSAJWA does so in ECF No. 97 § III.F, at 15–18. Both challenge the absence of identified similarly situated customers and emphasize rational collection of unpaid charges. Plaintiff's objection identifies allegations of other customers whose disputes or medical requests were accommodated without the conditions allegedly imposed here. SAC ¶¶ 52–53; ECF No. 91 at 12–13. Those allegations should be evaluated under the governing standard rather than treated as nonexistent.

***Phillips v. County of Allegheny***, 515 F.3d 224, 244–46 (3d Cir. 2008), discusses the need to allege intentional differential treatment of similarly situated persons without a rational basis. It does not impose a universal requirement to identify comparators by name in the original pleading. Phillips also found the allegations before it deficient and required an opportunity to amend. Its significance is therefore limited: **absence of names is not an automatic rule of dismissal**, but sufficient facts showing material similarity remain necessary.

TVMA notes that *Phillips* preceded *Iqbal*. ECF No. 94 at 11. The SAC must still allege facts supporting materially similar circumstances and differential treatment.

JSAJWA quotes a policy requiring medical certification and an equitable arrangement concerning past and current bills and emphasizes Plaintiff's alleged refusal to arrange payment. ECF No. 97 at 15–16. If other customers differed materially in willingness or ability to satisfy applicable conditions, that difference matters. But the response's assertion cannot itself resolve the allegation that comparable customers received more favorable handling. The Court should examine whether the pleaded comparison has factual substance and, if insufficient, whether the deficiency can be cured.

Collection of lawful charges is a legitimate governmental objective. Neither disability nor veteran status automatically makes ordinary utility collection irrational. TVMA's rational-basis argument and JSAJWA's reliance on equal-protection cases therefore identify a real requirement. ECF No. 94 at 11–12; ECF No. 97 at 16–18. The pleaded theory concerns allegedly **unequal application of dispute and medical procedures**, not an entitlement to exemption from every charge. A valid collection objective does not alone explain every alleged difference in applying those procedures.

If SAC ¶¶ 52–53 require more detail, Plaintiff requests leave to amend this claim to the extent he can allege facts showing materially similar accounts and intentional differential treatment.

## VI. THE FOURTH AMENDMENT AND TAKINGS THEORIES REQUIRE DISTINCT ANALYSIS

### A. The alleged physical entry differs from a threatened future act

TVMA addresses entry and taking in ECF No. 94 § IV.A–B, at 12–13. JSAJWA addresses taking and later enforcement in ECF No. 97 § III.G.1–2, at 18–24. SAC ¶¶ 21, 66–69 allege physical entry onto the residential property to access the utility lines, without consent, warrant, or exigency. SAC ¶ 27 separately alleges the later towing threat. The Court should distinguish an alleged completed entry from an unexecuted future threat.

The Fourth Amendment is not confined to criminal investigations**.** ***Soldal v. Cook County***, 506 U.S. 56, 61–72 (1992), explains that governmental interference with possessory interests may require Fourth Amendment analysis even when privacy is not the central interest. ***United States v. Jacobsen***, 466 U.S. 109, 113 (1984), identifies meaningful interference with possessory interests as the relevant seizure concept. Neither decision establishes that every utility shutoff is a seizure or that every service-related entry is unreasonable.

TVMA relies on *Gagliardi* and the absence of a possessory interest in water not yet supplied. ECF No. 94 at 12–13. That argument addresses the asserted service interest; it does not automatically decide the separate allegation of physical intrusion onto protected residential property. Conversely, calling the front yard

curtilage does not conclusively establish that every location entered was constitutionally protected. The precise place, purpose, physical act, and existing access rights matter.

Rule IV.E authorizes utility access for specified purposes, including inspection and examination of equipment. ECF No. 94 at 13, citing ECF No. 10-1, Ex. F. Plaintiff must confront that authority rather than assert that any entry required a warrant regardless of consent or lawful access. The rule's scope, any easement or service agreement, the area entered, and the conduct performed bear on reasonableness. The current allegations do not supply every potentially material detail. If greater specificity is required, the Court should identify that curable factual issue rather than collapse physical entry into the distinct question of ownership of undelivered water.

**B. No completed tow or second shutoff should be invented**

JSAJWA correctly observes that a threatened tow not carried out is not automatically a completed seizure. ECF No. 97 at 22–24. Plaintiff does not ask the Court to treat a hypothetical tow as completed. Nor does SAC ¶ 27 establish another interruption of service merely by alleging enforcement activity.

The response nevertheless reasons too broadly when it treats absence of another shutoff as answering all later constitutional injury. Id. at 22–23. A completed seizure, a retaliatory threat, and noncompliance with a court order are

different issues. The lack of one does not decide the others. The First Amendment analysis therefore remains necessary even if the July 9 allegations do not state a Fourth Amendment seizure.

### C. The takings theory cannot rest on the service interruption alone

TVMA relies on *Tulio* to distinguish a temporary interruption from appropriation of property. ECF No. 94 at 13. JSAJWA separately addresses per se taking, total economic deprivation, and the Penn Central factors. ECF No. 97 at 18–22. Those arguments cannot be answered merely by repeating that water is essential or that its loss caused hardship. Constitutional importance of service does not by itself establish a compensable taking of an identified property interest.

The SAC must identify the property allegedly appropriated or burdened and facts fitting the applicable takings framework. SAC ¶¶ 71–76 allege a seven-day deprivation but do not quantify an economic impact or allege a permanent physical appropriation. A total-value theory faces the additional difficulty that temporary loss of service does not itself establish destruction of all economically beneficial use of the property. The Court should assess the actual allegations without assuming economic facts absent from the pleading.

That limitation does not resolve procedural due process. A protected interest in continued service may require fair termination procedures without making each interruption a compensable taking. Accordingly, an adverse takings ruling should

identify that claim's independent deficiency and address any genuinely curative amendment. It should not supply a reason to dismiss the billing-review or retaliation theories, which concern different rights and different alleged conduct.

## VII. QUALIFIED IMMUNITY MUST ADDRESS THE PARTICULAR RIGHT AND ACTOR

### A. The individual and institutional defenses must be separated

JSAJWA presents qualified immunity in ECF No. 97 § III.H, at 24–28. TVMA's separate no-underlying-violation argument appears in ECF No. 94 § V.C, at 16. Section 1983's reference to persons does not eliminate qualified immunity for individuals; the question is whether the alleged conduct violated a constitutional right that was clearly established at the relevant time. Plaintiff's objection addresses that question, not a categorical assertion that statutory language abolishes the defense. ECF No. 91 at 15–18.

The entities stand differently. Municipalities do not receive qualified immunity from Section 1983 liability. ***Owen v. City of Independence***, 445 U.S. 622, 638 (1980). Their liability still requires a constitutional violation and a municipal policy, custom, or qualifying decision. An individual's entitlement to immunity therefore does not alone establish that an entity has no liability. The Court should identify which element supports any dismissal and which defendant receives it.

**B. The due process right must be described at the proper level**

At issue is the right to a meaningful pretermination opportunity to present a genuine utility-billing complaint to personnel authorized to investigate and correct it. ECF No. 97 at 25–27.

***Memphis Light*** addressed that pretermination opportunity in 1978. 436 U.S. at 16–22. Ransom applied protected-interest and procedural-safeguards principles to Pennsylvania water service. 848 F.2d at 409. Both inform whether the right was clearly established for each individual defendant's alleged conduct in June 2025. See ECF No. 97 at 27.

The June 30 statutory finding does not conclusively supply that opportunity. ECF No. 97 at 26, 28. It establishes defects in the earlier submission's form, not an express finding that the disputed charges received pretermination review. If an official reasonably understood that a meaningful account-review opportunity had been supplied, that fact could matter to immunity. It cannot simply be assumed contrary to SAC ¶¶ 40(b), 43 at the pleading stage.

***Manza v. Newhard***, 915 F. Supp. 2d 638, 647–50 (S.D.N.Y. 2013), is a useful factual comparison because it describes meetings, investigation, and responses before termination. It does not establish that a utility's receipt of papers always equals meaningful consideration. ***Johnson v. City of Saginaw***, 980 F.3d 497 (6th Cir. 2020), slip op. 15–17, likewise distinguishes procedural protection in

a water-termination setting from broader substantive claims. Neither out-of-circuit authority alone creates a binding or robust consensus. They support careful application of the controlling utility cases rather than the categorical proposition that formal or silent rejection ends every federal inquiry.

**C. Retaliation requires its own clearly established law analysis**

The police warning must receive a separate immunity analysis. *Mirabella*, decided in 2017, addressed no-contact restrictions and threats of government punishment for protected petitioning. 853 F.3d at 649–52. It also granted qualified immunity for the earlier conduct involved there because the relevant right was not then clearly established. Id. at 655–56. Plaintiff does not conceal that result or describe *Mirabella* as denying immunity.

Its precedential analysis nevertheless predates the 2025 events alleged here. The question is whether the alleged police-enforced restriction on further dispute-related contact falls within the right *Mirabella* subsequently articulated. Differences in the warning's wording, the official's authority, legitimate reasons for contact restrictions, and the individual defendant's participation matter. A conclusion that collection itself was lawful does not perform that separate inquiry.

**D. The face of the pleading must establish the defense before dismissal**

***Thomas*** recognizes both the availability of qualified immunity at an early stage and the need to assess the defense against the conduct actually alleged. 463

F.3d at 291–94. ***Stringer v. County of Bucks***, 141 F.4th 76, 85–88 (3d Cir. 2025), addresses that pleading-stage task. Plaintiff invokes *Stringer* for the **procedural analysis**, not as a decision establishing substantive utility rights before the events here. The Court need not authorize discovery merely because immunity is disputed; it must determine whether the face of a plausibly pleaded claim establishes the defense.

Johnston's alleged role includes participation in termination and the stated restoration conditions. Confair's alleged role includes physical participation in the service-related events. SAC ¶¶ 8–9, 20–23, 27. Their knowledge, authority, and participation cannot be treated as identical solely because counsel represents both. Any missing facts about personal responsibility require a defendant-specific sufficiency assessment. If dismissal is warranted, the Court should distinguish absence of a plausible violation, clearly established law, and insufficient attribution rather than announce blanket immunity for all events and defendants.

## VIII. MUNICIPAL LIABILITY REQUIRES A CAUSAL POLICY OR DECISION

Municipal liability turns on whether a policy, custom, deliberately indifferent failure to train, or qualifying final decision caused the alleged constitutional deprivation. ECF No. 94 at 14–16. ECF No. 97 at 28–29.

The no-underlying-violation argument depends on the claim-specific issues already discussed. ECF No. 94 at 16; ECF No. 97 at 29. If the SAC plausibly alleges denial of review or retaliatory restriction, municipal causation remains to be assessed. If a particular constitutional theory fails, a municipal label cannot rescue that theory. Those propositions require separate analysis rather than allowing a disputed characterization of due process to decide every municipal issue.

TVMA relies on *Connick* for the ordinarily necessary pattern of similar violations and the narrowness of single-incident failure-to-train liability. ECF No. 94 at 14–15. ***Connick v. Thompson***, 563 U.S. 51, 61–64 (2011), supports that limitation. SAC ¶¶ 17, 129–135 identify alleged training deficiencies, but listing subjects on which employees should have been trained does not itself establish deliberate indifference. Several events involving one account do not automatically establish a widespread custom or a preexisting pattern that put policymakers on notice.

A final-policymaker theory is analytically different. ***Pembaur v. City of Cincinnati***, 475 U.S. 469, 480–83 (1986), recognizes that a qualifying final decision can constitute municipal policy, while distinguishing final policymaking authority from ordinary discretion. Plaintiff's objection invokes that route as well as training. ECF No. 91 at 19–21. Defendants' emphasis on absence of other

customers' incidents **does not** alone dispose of a properly supported final-decision theory.

TVMA correctly argues that 53 Pa.C.S. § 5610(e), standing alone, does not make every manager a final policymaker. ECF No. 94 at 15–16. The source and scope of authority, reservation of review, and actual decision must be identified. ***Kelly v. Borough of Carlisle***, 622 F.3d 248, 264–65 (3d Cir. 2010), distinguishes final policymaking from decisions subject to another body's review. A manager's title, ability to direct field work, or isolated exercise of discretion is not conclusive.

Rule VI conditions renewed service on acceptance of a new application and correction of the conditions causing disconnection. Rule X generally conditions restoration on payment, subject to its exceptions. ECF No. 10-1, Ex. F, PDF pp. 24, 27–28. Johnston's alleged demand for an in-person agreement or full payment supports the inference that he applied JSAJWA's Rules VI and X while Plaintiff's billing-review and medical requests remained unresolved. SAC ¶ 22.

The fact that conduct allegedly violated a written rule also matters. It can undermine an assertion that the written rule itself caused the injury. It does not categorically resolve whether a different official policy, settled practice, or qualifying final decision caused the alleged denial. Plaintiff must identify the route

and supporting facts for each authority, not combine inconsistent labels as a substitute for causation.

The SAC's allegations about roles, communications, and restoration conditions provide the starting point. SAC ¶¶ 8–9, 17, 22, 29, 129–135. If they do not sufficiently establish a policy or final decision, Plaintiff requests leave to specify the responsible body or official, the source of authority, the decision or practice, and its causal connection. He does not ask the Court to assume delegation, board ratification, or a pattern absent supporting facts. A defined amendment directed to those matters differs from an unlimited request to search for a municipal theory.

## IX. CONSPIRACY REQUIRES FACTS SUPPORTING AGREEMENT AND THE PARTICULAR STATUTE

TVMA challenges conspiracy in ECF No. 94 § VI, at 16–17; JSAJWA does so in ECF No. 97 § III.J, at 29–31. Both identify two independent questions: whether facts plausibly support an agreement and whether the alleged class-based motivation fits Section 1985(3). SAC ¶¶ 89–91 allege a shared plan, overt acts, and disability-related motivation; ¶ 29 alleges communications among participants. The objection addresses those allegations and the statutory distinction. ECF No. 91 at 21–22.

Labels such as conspiracy, coordination, and shared plan cannot establish agreement by themselves. Nor does routine communication between a utility and police necessarily imply an unlawful objective. The alleged content of the warning and its connection to restoration efforts supply relevant context, but the Court still must determine whether facts support a meeting of minds among identified actors rather than parallel conduct or ordinary enforcement communication. Any curative amendment must supply available facts about the participants and agreement, without inventing a conversation or assuming that every defendant joined it.

JSAJWA's reliance on *Farber* and *Novotny* correctly emphasizes that Section 1985 is not a general remedy for every coordinated wrong. ECF No. 97 at 30–31. Plaintiff's objection invokes ***Lake v. Arnold***, 112 F.3d 682, 685–88 (3d Cir. 1997), which recognized the class at issue there in a claim involving intellectual disability. *Lake* prevents treating race as the only possible protected class, but does not automatically establish that every physical disability or veteran classification is covered. The alleged class, invidious motivation, agreement, and deprivation require separate analysis.

Likewise, successful filing of this action does not answer every conspiracy theory merely by disproving total exclusion from court. ECF No. 97 at 31. But Plaintiff must identify the particular statutory provision and deprivation; references to access cannot replace its elements. A Section 1985 deficiency also does not

eliminate a separately pleaded Section 1983 retaliation or due-process claim against an actor who personally caused a violation.

The objection's alternative reference to concerted action under Section 1983 should be understood within that limit. ECF No. 91 at 22. A brief cannot add a new cause of action or cure absent agreement allegations by renaming them. If the Court finds a statutory or factual deficiency, Plaintiff requests an opportunity to clarify the supported theory and facts. The ruling should identify that deficiency without treating failure of the conspiracy count as a defense to all direct constitutional claims.

## X. UNJUST ENRICHMENT REQUIRES AN ACTUAL BENEFIT AND A SEPARATE CONTRACT ANALYSIS

TVMA addresses unjust enrichment in ECF No. 94 § VII.D, at 18–19; JSAJWA does so in ECF No. 97 § III.K, at 31–33. Both emphasize that Plaintiff received utility service, that charges were authorized, and that rescission could not return consumed water. Those points require analysis of the actual benefit allegedly retained and the alternative basis on which restitution is sought.

Count IX alleges retention of particular payments, charges, and credits, not simply that Plaintiff suffered a deprivation. SAC ¶ 103(a)–(b) (Count IX, p. 29). The claim requires a benefit conferred on the defendant and circumstances making its retention unjust. Expenses paid to third parties do not necessarily enrich either

authority. In particular, claimed veterinary expenses are not an actual benefit retained by Defendants merely because the same course of events allegedly caused them. Those losses cannot substitute for identifying the money or credit each defendant received.

JSAJWA relies on its rules and statutory fee authority to establish lawful retention. ECF No. 97 at 32. General power to impose charges does not itself establish correct calculation or application of every disputed fee. Conversely, a discrepancy or alleged procedural violation does not automatically require return of all payments for service. The pleaded restitution theory must connect an identified benefit to a reason that particular retention was unjust.

The parties also dispute whether a governing contract exists and what it covers. SAC ¶¶ 14–15; ECF No. 94 at 18–19; ECF No. 97 at 31–32. Plaintiff's lack-of-signature argument does not by itself prove there could be no enforceable service obligation. But the pleading's dispute over an agreement's existence or scope requires identification of the agreement governing the particular fees before that agreement can conclusively bar alternative relief.

***Hickey v. University of Pittsburgh***, 81 F.4th 301, 315–16 (3d Cir. 2023), permits alternative unjust-enrichment pleading where the existence or scope of the asserted contract remains disputed. It does not authorize duplicative recovery or

disregard of a contract later shown to govern. Here, the Court should identify whether a particular enforceable agreement conclusively covers the challenged retention before applying the contractual bar.

Rescission presents a distinct remedial problem. Consumed water cannot literally be returned, and Plaintiff must identify a legally available form of relief rather than assume complete unwinding is practicable. ECF No. 97 at 32–33. Failure of that requested remedy does not automatically resolve whether restitution of an identifiable, improperly retained payment or credit is available. If the present allegations are insufficient, amendment should specify the recipient, transaction, amount or ascertainable benefit, and reason retention was unjust.

## XI. THE REMAINING STATE CLAIMS REQUIRE INDIVIDUAL TREATMENT

### A. The Pennsylvania constitutional count does not seek a new damages remedy

TVMA addresses the Pennsylvania Constitution in ECF No. 94 § VII.A, at 17; JSAJWA does so in ECF No. 97 § III.L, at 33. Both correctly reject an unsupported independent state constitutional damages remedy. SAC ¶ 85 expressly disclaims that remedy and requests declaratory or injunctive relief. ECF No. 91 at 24. The Court should apply the limitation actually pleaded rather than dismiss the count as though it demanded the damages remedy it excludes.

That clarification does not automatically establish entitlement to equitable relief. TVMA argues that a declaration concerning only completed past conduct would be advisory or redundant. ECF No. 94 at 17. Plaintiff must identify an ongoing controversy and a proper basis for prospective relief; a past shutoff alone does not prove a sufficiently imminent future injury. The Court should assess the requested relief and allegations about continuing conditions, distinguish any viable prospective issue, and identify any factual deficiency separately from the unavailable damages remedy.

**B. The entity and individual UTPCPL theories are different questions**

TVMA invokes *Meyer* in ECF No. 94 § VII.B, at 17–18; JSAJWA does so in ECF No. 97 § III.M.1, at 33. Plaintiff's filed objection already accepts the rule concerning political subdivision agencies. ECF No. 91 at 25. *Meyer v. Community College of Beaver County*, 93 A.3d 806, 815 (Pa. 2014), cannot be avoided merely by calling a municipal authority a commercial enterprise.

The separate individual theory nevertheless requires its own elements and attribution. An individual's involvement does not automatically create UTPCPL liability; the pleading must connect that person to actionable conduct and satisfy the applicable private-action requirements, including justifiable reliance and ascertainable loss. SAC ¶ 105 and the incorporated factual allegations require evaluation on that basis. If those allegations fail, the question is whether particular

facts could cure the individual theory, not whether the entity's statutory exclusion necessarily resolves it.

**C. Tort immunity and the elements of each tort must be distinguished**

TVMA separately invokes governmental immunity and failure of the tort elements. ECF No. 94 § VII.C, at 18. These are independent grounds. A local agency's immunity is not lost simply because a plaintiff calls conduct intentional. The applicable exceptions must actually fit. Nor does the willful-misconduct provision automatically remove an authority's own immunity.

Individual liability requires a different assessment. Section 8550 addresses specified employee protections when the required judicial determination establishes a crime, actual fraud, actual malice, or willful misconduct causing injury. 42 Pa.C.S. § 8550. Merely attaching one of those labels is insufficient; the underlying factual allegations must support the required intentional misconduct. The Court should distinguish the entities, the individuals, and the cause of action rather than apply one undifferentiated immunity conclusion to all defendants.

The fraud allegations identify representations about notices, balances, and account handling, attribute oral and written conduct to Johnston and Confair, and allege reliance through delayed pursuit of emergency relief. SAC ¶¶ 95(a)–(e), 97. TVMA disputes particularity and actionable reliance. ECF No. 94 at 18. Rule 9(b) requires identification of the who, what, when, where, and how with sufficient

particularity; generalized references to all defendants or a range of events may still be inadequate. The Court should evaluate the actual representations and alleged reliance, not assume that every erroneous charge necessarily constitutes fraud.

In particular, the billing dispute's existence does not itself establish falsity, knowledge, materiality, justifiable reliance, and resulting injury. If those allegations need clarification, a curative pleading must distinguish the particular speaker, statement, knowledge, action taken in reliance, and resulting loss. The objection seeks that targeted opportunity, not judicial acceptance of every accounting assertion as proof of fraud. ECF No. 91 at 25–26.

**D. The emotional distress theory alleges a course of conduct beyond collection alone**

JSAJWA addresses intentional infliction of emotional distress in ECF No. 97 § III.M.2, at 34–35; TVMA challenges it at ECF No. 94 at 18. Pennsylvania's demanding outrageousness standard cannot be met by ordinary billing disagreement or collection pressure alone. The Court must nevertheless evaluate the alleged conduct as pleaded rather than omit its medical and police context.

SAC ¶¶ 20, 22–23, 116–120 allege **knowledge of medical need, the challenged termination and restoration conditions, the police warning, severe distress, and a need for medical or psychological care**. Those allegations do not prove the tort or dispense with the required evidentiary support. They identify why the claim

should not be assessed as merely an unpleasant demand for payment. Attribution, intent or recklessness, outrageousness, causation, severity, and immunity remain separate requirements.

**E. A fiduciary duty requires a factual basis beyond the service relationship**

JSAJWA addresses fiduciary duty in ECF No. 97 § III.M.3, at 35–38; TVMA does so in ECF No. 94 at 18. Ordinary customer dependence on an essential service does not automatically establish a confidential or fiduciary relationship. SAC ¶¶ 123–128 assert duties concerning account funds and trust, but the description of funds as trust property is a legal conclusion requiring a source and factual basis.

A viable theory would require facts establishing the particular relationship or undertaking and the duty breached. A request for an accounting cannot itself create such a relationship. If the existing allegations do not suffice, Plaintiff requests a determination whether available facts could cure that defect. Failure of this theory should not decide the independent question **whether the government owed constitutional process before terminating service**.

## XII. AMENDMENT MUST BE ASSESSED BY CLAIM AND ACTUAL OPPORTUNITY TO CURE

TVMA opposes blanket leave in ECF No. 94 § VIII, at 19–20; JSAJWA urges futility in ECF No. 97 § III.N, at 38. Plaintiff does not request unlimited

amendments or insist that every legal defect can be cured. He requests a defined opportunity to correct factual deficiencies after the Court identifies them, while respecting legal barriers that additional allegations cannot overcome.

***Foman v. Davis***, 371 U.S. 178, 182 (1962), identifies the relevant reasons for denying leave, including undue delay, bad faith, repeated failure to cure, undue prejudice, and futility. ***Grayson v. Mayview State Hospital***, 293 F.3d 103, 108–09 (3d Cir. 2002), **requires a curative opportunity** in the civil-rights setting unless amendment would be inequitable or futile. *Phillips* likewise distinguishes an insufficient existing pleading from the possibility of a curative amendment. 515 F.3d at 245–46. These principles call for analysis, not an assumption that numbering the present complaint second amended **establishes futility**.

**The actual docket history matters**. ECF No. 52 at 2 dismissed the original motions as moot. ECF No. 69 at 2 directed Plaintiff to move to amend to name Confair. ECF No. 71 at 1–2 granted amendment and dismissed the prior motions as moot, leading to the operative SAC, ECF No. 72. See also ECF No. 97 at 1–2; ECF No. 91 at 26–29. Those events establish prior pleadings and an amendment opportunity. They do not, without more, establish repeated failure to correct every substantive deficiency **first addressed in the present recommendation**.

TVMA objects that no proposed Third Amended Complaint was filed with the objections and that a general promise to add facts is insufficient. ECF No. 94 at 19–20. A proposed pleading's absence matters when the Court assesses the adequacy of the proffer. Plaintiff does not ask the Court to treat an unfiled draft as operative or already submitted for approval. Pending objections likewise do not themselves grant leave to amend. The request here is that any dismissal of a curable claim allow submission of a properly proposed pleading through the required procedure.

The proposed cures address funding by recipient, program, and period, personal participation by actor, the handling of the billing dispute, municipal policy and decision-making authority, and available comparator and fraud details.

The prepared amendment supplies a more concrete proffer than a promise to replead. It separates the June 11 discrepancy and request for investigation from the statutory affidavit issue; states what Plaintiff communicated to Johnston during the June 23 visit; identifies the June 23 restoration email and repeated requests; and distinguishes the original collection decision from the later police warning. It also identifies Rules VI and X as a potential cause of JSAJWA's restoration conditions and separates institutional accommodation allegations from individual statutory liability. These proposed clarifications are offered for the amendment inquiry, not as historical facts newly inserted into the SAC by reply. Remaining theories

require their own factual support; Plaintiff does not claim that a proposed amendment automatically cures every count.

Different treatment is appropriate for legal barriers. Additional adjectives cannot create an independent Pennsylvania constitutional damages remedy, make a municipal authority a covered person under *Meyer*, or turn an ordinary service relationship into a fiduciary relationship without supporting facts. Plaintiff's request is therefore not that every count survive unchanged. It is that the Court separate incurable legal defects from potentially curable allegations and preserve independent claims already sufficiently pleaded.

TVMA also invokes the bar on municipal punitive damages. ECF No. 94 at 19. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), bars punitive damages against municipalities under Section 1983. That limitation concerns a particular remedy against a particular type of defendant; **it does not establish that no constitutional violation occurred** or that all compensatory and appropriate equitable relief is unavailable. The Court should apply the remedial limitation without treating it as a ground for dismissing an otherwise **sufficient constitutional claim in its entirety.**

The R&R is a recommendation, not itself a final judgment. The Court can decide the objections and specify the permitted amendment before entering a

disposition that would require post judgment relief. Plaintiff seeks to submit a complete proposed Third Amended Complaint through a separate Rule 15(a)(2) motion, with the exhibits and comparison required by Local Rule 15.1. He requests that any such motion pending when the Court decides the objections be evaluated before a final futility ruling on the claims it proposes to cure. This reply does not represent that a motion has already been filed. Alternatively, if the Court rules before that submission, Plaintiff requests twenty-one days after the order to move for leave as to claims the Court finds potentially curable. That period is requested relief, not an existing deadline.

A claim-specific order would also prevent uncertainty about what remains pending. It should identify the surviving institutional ADA claim, the disposition of each constitutional theory, any defendant-specific immunity ruling, the scope of permitted amendment, and the date for the next pleading. That approach permits orderly progress without making the objection-stage reply a substitute for an amended complaint.

## XIII. REQUESTED DISPOSITION

Plaintiff asks the Court to sustain his objections to dismissal of the due-process and First Amendment claims. The SAC alleges that Plaintiff lost water service before he could obtain review of a specific billing discrepancy and that the June 25 warning threatened criminal consequences for continuing to press the

dispute. SAC ¶¶ 19(a), 21–23, 40(b), 43. The June 30 order addressed statutory defects and restoration after the shutoff. ECF No. 97-1, PDF pp. 2–3.

Plaintiff further requests that the Court preserve the institutional ADA claim, assess individual qualified immunity and municipal causation separately for each applicable defendant, and direct the applicable defendants to answer the surviving claims by a date certain under Fed. R. Civ. P. 12(a)(4)(A). If the Court concludes that any challenged claim is deficient, Plaintiff requests leave to cure any curable deficiency before dismissal with prejudice. If Plaintiff's separate motion for leave is pending, Plaintiff asks the Court to consider the proposed Third Amended Complaint before ruling that amendment would be futile. If the Court rules before that motion is filed, Plaintiff requests 21 days from entry of the order to move for leave to amend any claim the Court finds potentially curable.

Respectfully submitted,

/s/ Dion Storm Holland
Dion Storm Holland, Plaintiff pro se
566 High Street
Jersey Shore, Pennsylvania 17740
subarudion@gmail.com
(814) 574-9664

Date: November 15, 2026

## CERTIFICATE OF WORD COUNT

I certify that this consolidated reply contains 9,900 words, counting the caption, both tables, and both certificates. ECF No. 100 permits up to 10,000 words.

/s/ Dion Storm Holland
Date: November 16, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November 2026, I caused a true and correct copy of the foregoing Consolidated Reply to be served by electronic filing through the Court's CM/ECF system, which constitutes service under Fed. R. Civ. P. 5(b)(2)(E), upon the following counsel of record:

Sean P. McDonough, Esquire
Dougherty, Leventhal & Price, LLP
smcdonough@dlplaw.com
Counsel for JSAJWA, Eric S. Johnston, and Timothy Confair

Sarah L. Doyle, Esquire
Michael J. Crocenzi, Esquire
Barley Snyder
sdoyle@barley.com
mcrocenzi@barley.com
Counsel for TVMA

/s/ Dion Storm Holland