# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alan B. Ziegler, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1060 C.D. 2013 |
| | : | |
| City of Reading and Reading Area Water Authority | : | Submitted: December 13, 2013 |

BEFORE: HONORABLE DAN PELLEGRINI, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER** **FILED: January 24, 2014**

Alan B. Ziegler (Ziegler) appeals from the Order of the Court of Common Pleas of Berks County (trial court) that dismissed Ziegler's Petition for Preliminary and Permanent Injunctive Relief (Petition). Ziegler's Petition sought injunctive relief to prevent the City of Reading (City) and the Reading Area Water Authority (Authority)[1] from shutting off water and sewer services to a property owned by Ziegler (Property) for non-payment of approximately $133.88. Also before this Court is the Authority's Application for Relief in the Form of a Motion to Dismiss

---

[1] As the trial court noted in its opinion, the City's involvement in this case is tangential; although the City handles some aspects of the Authority's billing process, it is the Authority, not the City, that would shut off Ziegler's water service. (Trial Ct. Op. at 2 n.1.)

Petitioner's Appeal (Motion to Dismiss). On appeal, Ziegler argues that: (1) the trial court erred in refusing to grant Ziegler supersedeas and the denial of supersedeas infringes on Ziegler's access to the courts; (2) to allow the Authority to shut off his water service would violate Ziegler's rights to due process; (3) the trial court erred in refusing to grant Ziegler a preliminary or permanent injunction; and (4) the trial court erred in allowing the admission of the water usage logs by the Authority. In its Motion to Dismiss, the Authority argues that Ziegler's appeal is moot because Ziegler has paid the disputed water bill and the Authority has resumed water service to the Property. Although we conclude that the appeal is not moot and the procedure followed by the Authority fell short of the requirements of due process, we affirm the trial court's Order because the hearing before the trial court adequately protected Ziegler's due process rights in this case.

Ziegler owns a building in Reading, Pennsylvania, the Property, that houses his business, a law office, and the law offices of another attorney. The Authority provides water to the Property, supplying two bathrooms and a steam boiler heating system. On September 13, 2012, Ziegler received a bill dated September 7, 2012, for $188.61 from the Authority, including $65.57 for water usage, $30.02 in service charges, and $93.02 for sewer usage. Ziegler's bill from the Authority is typically $40 per month. Ziegler called the Authority to report the unusually high bill and filed a complaint form provided by the Authority, but did not receive a response. (Trial Ct. Op. at 1-2.)

Instead of paying the disputed bill, Ziegler put the $188.61 into an escrow fund and, thereafter, paid to the Authority only the new amounts due for each

month's usage. The Authority, however, applied these amounts first to the original September 7, 2012 bill. On December 13, 2012, Ziegler received a collection letter demanding payment of $133.88. On January 11, 2013, Ziegler received a notice from the Authority that it would shut off his water to the Property if the Authority did not receive the then-current past due amount of $87.41 within 10 days. (Trial Ct. Op. at 2.)

On January 16, 2013, Ziegler filed the Petition seeking to prevent the Authority from shutting off the water to the Property. The trial court granted the temporary injunction the same day and scheduled a hearing for January 28, 2013 on the issue of whether to continue the injunction. Ziegler testified on his own behalf. The Authority adduced the testimony of one of its employees, Susan Rutolo. (Trial Ct. Op. at 2-3.)

Ziegler testified that, having previously had problems with high water bills, he regularly checks the bathrooms to make sure that the facilities are working properly and water is not running. (Hr'g Tr. at 4-5, R.R. at R-17 – R-18.) Ziegler testified that, after receiving the September 7, 2012 bill, he hired a plumber to make sure there were no leaks in the plumbing. (Hr'g Tr. at 16, R.R. at R-20.) Ziegler stated that a lack of water service would have a negative impact on his business, possibly deterring clients from doing business with him. (Hr'g Tr. at 13-14, R.R. at R-20.) Ziegler testified that the Authority had shut off his water once before and, afterwards, he had to have the boiler for his steam heating system replaced; although he could not prove that the shutoff damaged the boiler, he suspected it had. (Hr'g Tr. at 14-15, R.R. at R-20.)

Ms. Rutolo introduced water meter logs showing the actual water usage for the Property every 12 and 24 hours during the billing period at issue. (Hr'g Tr. at 19-20, R.R. at R-21.) Ms. Rutolo testified that the logs showed an unusually high amount of water usage from July 17, 2012 through August 8, 2012. (Hr'g Tr. at 21-22, R.R. at R-22.) Ms. Rutolo testified that the pattern of water usage could be caused by something like a stuck toilet flapper that would remain open until the toilet was flushed again. (Hr'g Tr. at 21, R.R. at R-22.)

By Order dated January 30, 2013, the trial court discontinued the preliminary injunction and dismissed Ziegler's Petition. Ziegler appealed[2] and filed a Motion for Supersedeas with the trial court. After a hearing on February 27, 2013, at which Ziegler testified that the Authority had shut off water to the Property the previous day, the trial court denied Ziegler's Motion for Supersedeas.

In its Opinion, the trial court held that an injunction was not warranted because Ziegler had an adequate remedy at law: he could pay the disputed amount to the Authority and then sue the Authority for the disputed amount. (Trial Ct. Op. at 6-7.) Thus, an injunction was not necessary to prevent irreparable harm. (Trial Ct. Op. at 6-7.) The trial court also held that Ziegler did not have a likelihood of success on the merits, given that he did not clearly show that the disputed bill was erroneous. (Trial Ct. Op. at 9.) Finally, the trial court held that an injunction would be adverse to the public interest because it would undermine the Authority's

[2] Ziegler initially appealed to the Superior Court, which transferred the case to this Court pursuant to Section 762(a)(4)(i) of the Judicial Code, 42 Pa. C.S. § 762(a)(4)(i), which gives this Court jurisdiction over appeals in certain matters involving municipalities and municipal authorities.

ability to use the threat of shutting off service as a collection tactic and because at least part of Ziegler's bill was legitimately owed. (Trial Ct. Op. at 9-10.)

Before this Court,[3] Ziegler argues that: (1) the trial court erred in refusing to grant Ziegler supersedeas and the denial of supersedeas infringes on Ziegler's access to the courts; (2) to allow the Authority to shut off his water service would violate Ziegler's rights to due process; (3) the trial court erred in refusing to grant Ziegler a preliminary or permanent injunction; and (4) the trial court erred in allowing the admission of the water usage logs by the Authority. The Authority, for its part, argues that Ziegler's appeal is moot.

We first address the Authority's argument that Ziegler's appeal is moot. In its Motion to Dismiss, the Authority argues that Ziegler's appeal is moot because, during the pendency of this appeal, Ziegler paid the disputed water bill and the Authority restored water service to the Property. (Motion to Dismiss ¶¶ 9-10.) This Court generally will not decide moot cases. Board of Commissioners of the County of Schuylkill v. Kantner, 26 A.3d 1245, 1250 (Pa. Cmwlth. 2011). "A case is moot when a determination is sought on a matter which, when rendered, cannot

[3] In reviewing a trial court's determination on a request for a preliminary injunction, this Court does not "'inquire into the merits of the controversy, but only examine[s] the record to determine if there were any apparently reasonable grounds for the action of the court below.'" Big Bass Lake Community Association v. Warren, 950 A.2d 1137, 1144 n.8 (Pa. Cmwlth. 2008) (quoting Roberts v. Board of Directors of the School District of the City of Scranton, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975)). This Court's "scope and standard of review of a grant or denial of a permanent injunction is whether the plaintiff established a clear right to injunctive relief as a matter of law." Coghlan v. Borough of Darby, 844 A.2d 624, 627 n.8 (Pa. Cmwlth. 2004). "In deciding whether the trial court committed an error of law in granting or denying the permanent injunction, our scope of review is plenary." Id.

have any practical effect on the existing controversy." Butler v. Indian Lake Borough, 14 A.3d 185, 188 (Pa. Cmwlth. 2011). Ziegler avers, in his Objection to and Answer to Application for Relief in the Form of a Motion to Dismiss Petitioner's Appeal (Answer to Motion to Dismiss), that the Authority still claims that Ziegler owes it money stemming from the disputed bill. (Answer to Motion to Dismiss ¶ 9.)[4] Because there is still a sum of money in dispute between Ziegler and the Authority, Ziegler is at risk of having his water service to the Property shut off. Thus, there remains a controversy upon which this Court's determination will have a practical effect, and Ziegler's appeal is not moot. We will, therefore, deny the Authority's Motion to Dismiss.

We next address Ziegler's argument that the trial court erred in denying Ziegler's Motion for Supersedeas and that this denial infringes on his right of access to the courts. First, with regard to Ziegler's Motion for Supersedeas, we note that the proper procedure for an appellant wishing to challenge a denial of supersedeas by a trial court is to request supersedeas from this Court, pursuant to Rule 1732 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1732. Second, this Court's disposition of Ziegler's appeal of the denial of the preliminary and permanent injunction renders the question of supersedeas pending such a disposition moot. Similarly, Ziegler's arguments that the trial court erred in denying his request for a preliminary injunction are also rendered moot by this Court's disposition of Ziegler's appeal of the denial of a permanent injunction.

---

[4] In support, Ziegler attached a bill from the Authority to his Answer to Motion to Dismiss. From this bill, it appears that approximately $166.12 is currently in dispute. (Answer to Motion to Dismiss, Ex. A.)

We next address Ziegler's argument that to allow the Authority to shut off his water service would violate Ziegler's right to due process. Ziegler argues that the Authority's action violates his right to procedural due process because the Authority did not give him the opportunity to be heard before an impartial tribunal. The Fourteenth Amendment of the United States Constitution[5] "places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 9 (1978). "[T]he expectation of utility service rises to the level . . . of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the Due Process Clause." Ransom v. Marrazzo, 848 F.2d 398, 409 (3d Cir. 1988) (quoting Memphis Light, 436 U.S. at 9). However, because the expectation of utility service falls within the protections of due process a judicial hearing is not automatically required before such service may be discontinued. In Memphis Light, the United States Supreme Court held that, before utility service may be discontinued by a municipal utility, due process requires only that a customer receive notice of a proposed termination that advises "the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified," and "the provision of an opportunity for the presentation to a

[5] The Due Process Clause of the Fourteenth Amendment to the United States Constitution states "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. Similarly, Article I, Section 1 of the Pennsylvania Constitution provides "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I § 1. "[T]he due process provisions of the United States and Pennsylvania constitutions are generally treated as coextensive." Kovler v. Bureau of Administrative Adjudication, 6 A.3d 1060, 1062 n.2 (Pa. Cmwlth. 2010).

designated employee of a customer's complaint that he is being overcharged or charged for services not rendered." Memphis Light, 436 U.S. at 15-16.

Thus, although due process does not require that Ziegler receive a judicial hearing[6] before the Authority shuts off service to the Property, the procedures

---

[6] The Authority asserts that its authority to shut off service to the Property derives from Section 502(a) of the Water Services Act, Act of April 14, 2006, P.L. 85, 53 P.S. § 3102.502(a), which it characterizes as authorizing a water utility to terminate service to a customer for failure to pay for "water and/or sewer services." (Authority's Br. at 7.) This provision, however, applies not to the non-payment of *water* bills, but instead provides that water utilities may be directed to turn off service to customers who fail to pay *sewer* bills:

> (1) If the owner or occupant of a premises served by a water utility neglects or fails to pay, for a period of 30 days from the due date, a rental, rate or charge *for sewer, sewerage or sewage treatment service* imposed by a municipality or municipal authority, the water utility shall, at the request and direction of the municipality, the authority or a city, borough or township to which the authority has assigned its claim or lien, shut off the supply of water to the premises until all overdue rentals, rates, charges and associated penalties and interest are paid.

53 P.S. § 3102.502(a)(1). In addition, Section 502 includes specific due process protections providing for notice and an opportunity to be heard before water service may be shut off for non-payment of sewer bills:

> (b) Written notice.-- Except as set forth in subsection (c), all of the following apply:
>
> > (1) In no case shall the water supply to premises be shut off until ten days after a written notice of intention to do so has been posted at a main entrance and mailed to the person liable for payment of the rentals and charges and the owner of the property or property manager.
> >
> > (2) If during the ten-day period the person liable for payment of the rentals and charges delivers to the water utility authority or municipality supplying water to the premises a written statement under oath or affirmation averring that there is a just defense to all or part of the claim

*(Continued...)*

followed by the Authority fell short of the requirements of due process. The Authority provided Ziegler with a complaint form, which he completed and submitted to the Authority. (Complaint Form, R.R. at R-11; Trial Ct. Op. at 2.) The Authority, however, did not respond to the complaint. (Hr'g Tr. at 10, R.R. at R-19; Trial Ct. Op. at 2.) Because there is no indication in the record that the Authority even considered Ziegler's complaint or otherwise offered "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination," Memphis Light, 436 U.S. at 16 n.17, the procedure followed by the Authority in this case did not comport with the requirements of due process.[7]

Having concluded that the Authority failed to accord Ziegler due process on his claim that the disputed bill was in error, we now turn to the issue of whether the trial court erred in denying Ziegler a preliminary or permanent injunction

---

> and that the statement was not executed for the purpose of delay, the water supply shall not be shut off until the claim has been judicially determined.

53 P.S. § 3102.502(b). While it appears that the disputed water bill included a charge for sewer services, (Authority Utility Billing, R.R. at R-9), the Authority asserts that it shut off service to the Property due to a delinquent water bill, not due to delinquent sewer fees. (See, e.g., Shutoff Notice, R.R. at R-15 (stating that water will be turned off due to a delinquent water bill).) Thus, Section 502 is not directly applicable to this case. It is instructive, however, that even this provision upon which the Authority relies includes due process protections.

[7] Because there is no evidence that the Authority ever responded to the complaint, we are not faced with the question of whether such a written complaint procedure would have satisfied the requirements of due process. We note, however, that many courts, in determining what procedures due process requires, "have, on occasion, held 'paper hearing' procedures to be adequate where in the total context of the process, they are deemed to ensure adequate notice and a genuine opportunity to explain one's case." Gray Panthers v. Schweiker, 652 F.2d 146, 165 (D.C. Cir. 1980).

preventing the Authority from shutting off water service to the Property. The Pennsylvania Supreme Court has articulated the following criteria for the grant of a permanent injunction:

> In Pennsylvania, a permanent injunction will issue if the party establishes his or her clear right to relief. "[T]he party need not establish either irreparable harm or immediate relief," as is necessary when seeking a preliminary injunction, and "a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law."

Board of Revision of Taxes v. City of Philadelphia, 607 Pa. 104, 133, 4 A.3d 610, 627 (2010) (quoting Buffalo Township v. Jones, 571 Pa. 637, 644, 813 A.2d 659, 663 (2002)) (alteration in original). Here, Ziegler has established a clear right to relief because, as discussed above, the process by which the Authority shut off water service to the Property, and by which it may shut Ziegler's service off again in the future, deprives Ziegler of his right to due process. However, an injunction is not necessary to prevent a legal wrong because, in the process of seeking an injunction, Ziegler has essentially received the sort of interaction with the Authority required by due process. In fact, Ziegler has received a judicial hearing. At that hearing, Ziegler had the opportunity to confront an employee of the Authority, who explained that the Authority did not believe that the disputed bill was in error and that the bill was supported by the Authority's water usage logs.[8]

[8] Although the trial court did not make a definitive determination regarding the validity of the disputed bill, such a determination is not required for a municipal authority to shut off utility service. We note, however, that the trial court determined that Ziegler was not likely to succeed on his claim that the disputed bill was in error. (Trial Ct. Op. at 9.) Ziegler argues that the trial court erred in considering the water usage logs and relying on the testimony of Ms. Rutolo. Ziegler argues that the water usage logs were inadmissible because the Authority introduced them without laying a proper foundation regarding their provenance. However, Ziegler made no

*(Continued…)*

Having had the opportunity to confront the Authority regarding the disputed bill, Ziegler has received the necessary process due him. Therefore, no injunction is necessary to prevent a legal wrong.

For these reasons, we affirm the Order of the trial court.

**RENÉE COHN JUBELIRER, Judge**

President Judge Pellegrini concurs in the result only.

---

objection during the hearing to the admission of the water usage logs. By failing to object to their admission, Ziegler waived the argument that the water usage logs were inadmissible. City of Erie v. Stelmack, 780 A.2d 824, 828 (Pa. Cmwlth. 2001) (citing Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")).

Ziegler argues that the trial court erred in relying on the testimony of Ms. Rutolo because she had never visited the Property and her testimony that the high water usage could have been caused by a stuck toilet mechanism is speculative. We note that "[t]he trial court sitting in equity is the ultimate finder of fact and, especially, where credibility is concerned its findings are entitled to great weight." Commonwealth v. Down Low Nightclub, 993 A.2d 331, 336 n.3 (Pa. Cmwlth. 2010). Here, Ziegler's objections go to the weight he believes the trial court should have given to Ms. Rutolo's testimony, not its competence. Ms. Rutolo's testimony regarding a possible stuck toilet mechanism was not speculative; rather, she testified that in other cases with similar water usage patterns, the problem was a stuck toilet valve. (Hr'g Tr. at 21, R.R. at R-22.) "[I]t is not within this Court's province to reweigh the evidence or disturb the trial court's credibility determinations." Down Low Nightclub, 993 A.2d at 338. Therefore, we reject Ziegler's arguments that the trial court relied on incompetent or inadmissible evidence.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Alan B. Ziegler, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1060 C.D. 2013 |
| | : | |
| City of Reading and Reading Area Water Authority | : | |

**ORDER**

**NOW**, January 24, 2014, the Application for Relief in the Form of a Motion to Dismiss Petitioner's Appeal of the Reading Area Water Authority is hereby **DENIED**, and the Order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby **AFFIRMED**.

**RENÉE COHN JUBELIRER, Judge**